# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

John H. Benge, Jr., )
           )
   Petitioner )
           )      Civil Action No. 08-78(GMS)
     v. )
           )
           )
Michael DeLoy, )
Warden, Sussex Correctional )
Institution; and Joseph R. )
Biden, III, Attorney General )
of the State of Delaware )
           )
   Respondents )

FILED

MAY 22 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

---

## Petitioner's Brief In Support Of Petition For *Habeas Corpus*

---

Date: May 21, 2008

John H. Benge, Jr.
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947

**TABLE OF CONTENTS**

**Page**

Table of Citations……………………………………………………………………….. v

Statement Of The Nature
And Stage Of The Proceeding…………………………………………………….. 1

Summary Of Argument…………………………………………………………….. 10

Statement Of Relevant Facts…………………………………………………….. 12

      The Indictment…………………………………………………………………….. 12

      The Underlying Family Court Order……….. ……………. 12

      The Plea Agreement And Its Documents…………………. 12

      The Statutory Structure Of The
      Alleged Underlying Offenses…….. ……………………… 14

      The Plea Proceeding………………………………………………………… 16

      The Sentencing Proceeding……………………………………………….. 17

      Table A: Summary Of Plea/Sentencing
      Proceedings………………………………………….. ……………..……….. 19

Argument

I. Introduction – Standards Applicable to
   And Timeliness Of The §2254 Petition…………………………. 20

A. Standards Applicable To The §2254 Petition……….. 20

B. Timeliness Of The §2254 Petition………………………….……. 24

Table B: Timeliness Of The Filing
Of The Petition…………………………………………………………………………... 29A

II. The Holding Of The Delaware Supreme
   Court That Petitioner's Rule 35(a)
   "Multiple Punishments" Double
   Jeopardy Claim Was Waived By Guilty
   Plea Is Contrary To *Menna v. New York* ……………….. 30

i

A. The Double Jeopardy Claim Is Both Fully
   Exhausted And Not Procedurally Barred……………….       30

B. Petitioner's Rule 35(a) Double
   Jeopardy Claim Attacks An
   "Illegal Sentence"……………………………………………………..       33

C. Double Jeopardy Bars Punishment
   On Both Indictment Counts 6 And 12……………….………..       33

D. There Was No Waiver Of
   Petitioner's Double Jeopardy Claim………………………….       35

E. Counsel's Mistaken Belief
   Does Not Trump Double Jeopardy…………………………..……       36

F. Ground One Warrants *Habeas* Relief…………………………….       44

III. The Enhanced Sentences Violate
     The *Apprendi/Blakely* Rule
     Requiring Such Sentences To Be Based
     Upon Jury Verdicts Or Admitted Facts………………...       46

A. Petitioner's Two *Apprendi/Blakely* Claims…..….………       46

B. Superior Court Rule 35 Is Not An
   "Adequate And Independent" State Rule………………………       46

C. Procedural Bars Are Overcome:
   "Cause" And "Prejudice" And
   "Actual Innocence"
   Are All Present In This Case…………………….………………       60

1. "Cause"……………………………………………………………………………….       61

2. "Prejudice"……………………………………………………………………….       62

3. "Actual Innocence"……………………………………..…….….……………       62

D. Each Sentence Violates
   *Apprendi/Blakely*……………………..………………………………….….       62

1). The Use of §4204(k)………………………………………………………..       62

2). Enhancement To The Non-suspendable
    Minimum §1271A (c) Sentence…………………………………………       63

IV. The Record Reflects Such Confusion
    i) As To What Offense Petitioner Was
    To Plead Guilty And ii) As To The
    Applicable Maximum Sentences As
    To Render Petitioner's Pleas
    Involuntary Under *Brady v. United States*............... 70

    A. Cause, Prejudice And Actual Innocence
       Petitioner's Ground Three………………………………………………. 70

1. "Cause"………………………………………………………………………………………………………. 70

2. "Prejudice"………………………………………………………………………………………………. 70

3. "Actual Innocence"………………….……………………………………………..….…. 70

B. Petitioner's Plea Was Not "Voluntary"
   Under *Brady v. United States*………………………………………………... 72

V. *Habeas Corpus* Relief Is Warranted
   On Petitioner's Ground Four Because
   The Prosecution Breached The Plea
   Agreement By Arguing Against The
   Recommendation It Had Agreed To
   Make To The Court………………………….……………………………..……………. 75

A. Cause, Prejudice, And Actual
   Innocence – Petitioner's Ground Four:
   Breach Of The Plea Agreement……………………………………..……. 70

1. The Bar Of Rule 61 Is Not An
   "Adequate And Independent" Rule:
   It Has Not Been Consistently
   And Regularly Applied………………………………………………………..….……………… 75

2. "Cause" And "Prejudice"………………………………………………………………… 75

3. "Actual Innocence"……………………………………………………………..….……… 76

B. Plea Agreement As Contract……………………………………………………. 76

C. The Content Of The Agreement………………………………………………. 77

D. Breach Of The Plea Agreement By The State……………….. 78

VI. Actual Innocence…………………………………………..……………………………….. 82

Conclusion.................................................................................................................. 85

Certificate of Service

## TABLE OF CITATIONS

**Page**

### CASES

*Abercrombie v. Davies,* 123 A.2d 893 (Del., 1956)............. 42

*Adams v. United States ex rel. McCann,*
317 U.S. 269 (1942).........................................................….. 37

*Albrecht v. Horn*, 485 F.3d 103 (3rd Cir., 2007)..................... 21

*Alexander v. State,* 832 A.2d 1250 (Del., 2003)................... 27

*Alexander v. State*, Del. Supr. No. 237, 2003)
(September 29, 2003)...........................................................….. 27

*Allen v. State,* 509 A.2d 87 (Del., 1986)................................….. 29

*Amadeo v. Zant,* 486 U.S. 214 (1988)....................................…. 70

*Apple v. Horn*, 250 F.3d 203 (3rd Cir., 2001).............................. 20

*Apprendi v. New Jersey*, 530 U.S. 466 (2001)......................….. 5;
*passim post*-19

*Artuz v. Bennett*, 531 U.S. 4 (2000)....................................…… 24

*Bailey v. State*, 588 A.2d 1121 (Del., 1991)............................. 49

*Benge v. DeLoy*, No. 05-0550(GMS),
June 22, 2007, Sleet, J.(D. Del)..........................................…. 51

*Benge v. DeLoy*, No. 05-0551(GMS),
July 2, 2007, Sleet, J.(D. Del).............................................…. 51

*Benge v. State*, __ A.2d __ (Del., 2008)
No. 262, 2007 (January 25, 2008)
Reargument denied (April 4, 2008)..............…....................…. 59

*Blackledge v. Perry*, 417 U.S. 21 (1974)........................................ 35

*Blackwell v. State,* Del. Supr. No. 53, 1999,
Holland, J. (September 10, 1999)...........................................…. 57

*Blakely v. Washington*, 542 U.S. 296 (2004) ................................. 5
passim post-11

*Blockburger v. United States,* 284 U.S. 299 (1932) ............ 34

*Bousley v. United States*, 523 U.S. 614 (1998) ....................... 72

*Boo'ze v. State*, Del. Supr., No. 331, 2003
(March 3, 2004) ................................................................................................ 49

*Boyer v. State*, Del. Supr.,
No. 418, 2002 (August 4, 2003) ............................................................ 31

*Boykin v. Alabama*, 395 U.S. 238 (1969) .......................................... 73

*Brady v. United States*, 397 U.S. 742 (1970) ........................... 70

*Brewer v. Williams*, 430 U.S. 387 (1977) ...................................... 35

*Brittingham v. State,* 705 A.2d 577 (Del., 1998) ............... 27

*Brown v. Ohio,* 432 U.S. 161 (1971) ......................................................... 34

*Brown v. State*, Del. Supr., No. 196, 2002
(October 10, 2002) ......................................................................................... 60

*Brookhart v. Janis*, 384 U.S. 1 (1966) ............................................ 36

*Burns v. Morton*, 134 F.3d 109 (3rd Cir., 1998) ................... 25

*Campbell v. Burris*, 515 F.3d 172,
(3rd Cir., 2008) ................................................................................................ 33

*Cannon v. Carroll*, No. 05-577(GMS)
(Dist. Del., October 17, 2006) .................................................................. 24

*Capano v. State*, 781 A.2d 552 (Del., 2001)
("*Capano II*") .................................................................................. 13

*Capano v. State,* Del. Supr., No. 131, 2005
Ridgely, J. (January 10, 2006)("*Capano III*") ....................... 47

*Carey v. Saffold*, 536 U.S. 214 (2002) ............................................. 25

*Carter v. Litship,* 275 F.3d 663 (7th Cir., 2000) ............... 26

*Cassidy v. Cassidy*, 689 A.2d 1182 (Del., 1997) ..................... 84

*Chao v. State,* 604 A.2d 1351 (Del., 1972) ................................. 9

*Chao v. State*, 931 A.2d 1000 (Del., 2007) ................................. 9

*Cleveland v. Alaska*, Ak. Supr., No A-9054
(August 25, 2006) ....................................................................... 53

*Coleman v. Thompson*, 501 U.S. 722 (1991) ......................................... 22

*Colon v. State*, Del. Supr., No. 572, 2005
(May 12, 2006) .............................................................................. 45

*Cunningham v. California,* __ U.S. __ (2007) .............................. 64

*Daniel v. Warden , State Correctional*
Institution, 794 F.2d 880 (3rd Cir., 1986) ................................. 35

*Defoe v. State*, 750 A.2d 1200 (Del., 2000) ................................. 30

*Deshields v. State*, Del. Supr.,No. 604, 2005
(June 6, 2006) .............................................................................. 55

*Dorman v. Wainwright,* 798 U.S. 1358
(11th Cir., 1986) .......................................................................... 70

*Downer v. State,* 543 A.2d 309 (Del. Super., 1988) ............. 6

*Dugger v. Adams,* 489 U.S. 401 (1989) .......................................... 32

*Dunn v. Colleran*, 247 F.3d 459
(3rd Cir., 2001) ............................................................................. 75

*Edwards v. Carpenter*, 529 U.S. 446 (2000) ................................. 23

*Engle v. Issac,* 456 U.S. 107 (1982) ......................................... 57

*Evans v. Chavis*, 546 U.S. __ (2006) ......................................... 25

*Evans v. State,* Del. Supr. No. 64, 2004,
*per curiam,* (April 11, 2005) ....................................................... 17

*Fatir v. Thomas,* 106 F. Supp.2d 572 (D. Del., 2000) ....... 30, 50

*Fay v. Noia*, 377 U.S. 391 (1963) ............................................... 37

*Flamer v. State,* 585 A.2d 736 (Del., 1990) ................................. 25

*Florida v. Nixon,* 543 U.S. 175 (2004) ............................................. 36

*Ford v. Georgia*, 498 U.S. 411 (1991) ................................................. 32

*Franklin v. State*, 855 A.2d 274 (Del., 2004) ............................. 83

*Gaines v. State*, 571 A.2d 765 (Del., 1990) ................................. 53

*Garnett v. State*, Del. Supr., No. 529
(April 9, 1998) .............................................................................................. 57

*Government of the Virgin Islands v. Joseph,*
765 F.2d 394 (3rd Cir., 1987) .......................................................... 9

*Granberry v. Greer*, 481 U.S. 129 (1987) .......................................... 51

*Gural v. State,* 243 A.2d 692 (Del., 1968) ................................. 47

*Hall v. State*, Del. Supr., No. 649, 2006,
(October 30, 2007) .................................................................................. 35

*Hamilton v. State,* 769 A.2d 743 (Del., 2001) ........................... 27

*Hamilton v. State,* 831 A.2d 881
No. 576, 2002, (Del., 2003) .................................................... 54

*Hartman v. Carroll*, 492 F.3d 478 (3 Cir., 2007) ................. 48

*Harris v. State*, 410 A.2d 500 (Del., 1979) ................................. 47

*Harris v. United States*, 536 U.S.   (2002) ................................. 8, 60

*Haskins v. State*, Del. Supr., order, No. 188, 1991,
Moore, J. (August 19, 1991) .......................................................... 6, 35

*Henderson v. Morgan*, 426 U.S. 637 (1976) .................................. 74

*Hepburn v. Moore*, 215 F.3d 1208 (11th Cir., 2000) ............. 26

*Hill v. United States*, 368 U.S. 424 (1962) ................................. 47

*Himmelfarb v. United States*, 175 F.2d 924
(9th Cir., 1949) ........................................................................................ 37

*Hodson v. State,* 239 A.2d 222 (Del., 1968) .............................. 47

*Holloway v. Horn*, 355 F.3d 707 (3rd Cir., 2004) ......... 22

*Johnson v. Pinchak,* 392 F.3d 151 (3rd Cir., 2005) ............. 47

*Johnson v. State,* 280 A.2d 712 (Del., 1971) ................................ 47

*Johnson v. State,* Del. Supr., No. 122, 2000
(August 1, 2000)) ........................................................................... 31, 53

*Johnson v. Williams*, 2001 LEXIS 25598, No. 00-851(JJF)
Farnan, J. (D. Del., February 16, 2001) ........................................ 27, 52

*Johnson v. Zerbst,* 304 U.S. 458 (1938) ........................................... 36

*Jones v. State*, Del. Supr., No. 523, 2002
(April 10, 2003) ................................................................................. 27

*Jones v. State,* Del. Supr., No. 131, 2003
(May 5, 2003) ..................................................................................... 30

*Jones v. State*, Del. Supr., No. 665, 2002
(May 30, 2003) ................................................................................... 26

*Jones v. United States,* 526 U.S. 277 (1999) .............................. 46

*Kapral v. United States*, 166 F.3d 565
(3rd Cir., 1999) ................................................................................ 26

*Lambert v. Blackwell*, 134 F.3d 506 (3rd Cir., 1997) ........ 22

*Lee v. Kemna*, 534 U.S. 362 (2002) ................................................. 56

*Lilly v. State,* 649 A.2d 1055 (Del., 1994) .............................. 24

*Lines v. Larkin,* 208 F.3d 153 (3rd Cir., 2000) ..................... 22

*Lindh v. Murphy*, 521 U.S. 320 (1997) ............................................. 24

*Lookingbill v. Cockrell*, 293 F.3d 256
(5th Cir., 2002) .................................................................................. 25

*Lovasz v. SCIG Superintendnet Vaughan*, 134 F.3d 146
(3rd Cir., 1998) .............................................................................. 25

*Martini v. State*, Del. Supr.,
No. 643, 2006 (December 21, 2007) ................................................ 52

*Maxion v. State,* 686 A.2d 148 (Del., 1996) ................................. 21

*Mabry v. Johnson,* 476 U.S. 504 (1984) ................................................ 75

*McCandelless v. Vaughn*, 172 F.3d 255
3rd Cir., 1998) ....................................................................................... 22

*Menna v. New York*, 423 U.S. 61 (1975) ................................................ *passim*

*Monroe v. State*, Del. Supr.,
No. 407, 2003 (February 24, 2004) ....................................................... 31

*Murray v. Carrier,* 477 U.S. 478 (1986) ............................................. 70

*New York v. Hill*, 528 U.S. 110 (2000) ................................................ 36

*Newell v. Hanks*, 283 F.3d 827 (7th Cir., 2002) ....................... 70

*Neville v. Butler*, 867 F.2d 886 (5th Cir., 1989) ................. 43

*Nix v. Secretary For Dept. Of Correction*,
293 F.3d 1235 (11th Cir., 2004) .................................. . .................. 25

*Ohio v. Johnson*, 467 U.S. 493 (1984) ................................................ 34

*Olano v. United States*, 507 U.S. 725 (1993) ............................... 36

*O'Sullivan v. Boerckel,* 526 U.S. 838 (1999) .............................. 21

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005) ...................................... 24

*Patterson v. State*, 724 A,.2d 558 (Del., 1999) ................... .. 24

*Payor v. Virginia,* 469 U.S. 1062 (1989) ...................................... 34

*Pennsylvania v. Finley*, 481 U. S. 551 (1987) ......................................... 50

*Pleasanton v. State*, 817 A.2d 791 (Del., 2003) ................................ 31

*Porter v. State*, Del. Supr., No. 32, 2005,
Order (August 15, 2005) ..................................................................... 30, 51

*Quandt v. State*, Del. Supr. No., 28, 2007
(August 3, 2007) *reargument denied* (September 20, 2007) ....... 54

*Redden v. McGill*, 549 A.2d 695 (Del., 1988) ....................................... 83

*Reed v. Ross*, 468 U.S. 1 (1981) .................................................... .. 57

*Revel v. State*, Del. Supr., No. 273, 2003
(August 11, 2003).................................................................... 54

*Reynolds v. Ellingsworth,* 843 F.2d 712
(3rd Cir., 1982).................................................................. 24, 33

*Ring v. Arizona*, 536 U.S. 584 (2002)................................... 49

*Robinson v. Johnson*, 313 F.3d 128 (3rd Cir., 2002)............ 24

*Rutledge v. United States,* 517 U.S. 292 (1996)..................... 34

*Santobello v. New York,* 404 U.S. 257 (1971)............................. 30

*Satterfield v. Johnson*, 434 F.3d 185
3rd Cir., 2006)...................................................................... 24

*Schlup v. Delo*, 513 U.S. 298 (1995)..................................... 23

*Schmitz v. Carroll*, No. 02-1527(GMS)
(D. Del., October 7, 2002)........................................................ 54

*Schmitz v. State*, Del. Supr.,
No. 226, 20002 (August 27, 2002)........................................... 54

*Shabazz v. State*, Del. Supr.,
No. 545, 2004 (June 14, 2005)................................................. 54

*Siple v. State*, 701 A.2d 79 (Del., 1997)................................. 50

*Smith v. Horn*, 120 F.3d 400 (3rd Cir., 1995).......................... 57

*Smith v. State*, 751 A.2d 878 (Del., 2000)................................. 31

*Somerville v. State*, 703 A.2d 629 (Del., 1997)..................... 29

*Spencer v. State,* 868 A.2d 821 (Del., 2005)............................ 15

*State v. Benge*, Del. Supr., No0210012355B,
Graves, J. (May 2, 2007)........................................................... 81

*State v. Insley*, 141 A.2d 619 (Del., 1958)............................... 29

*State v. Lewis*, 797 A.2d 1198 (Del., 2002)............................... 47

*State v. Wilson,* 545 A.2d 1178 (Del., 1988)............................ 83

*Stricker v. Green,* 527 U.S. 263 (1990) ............................................ 70

*Strickland v. Washington*, 466 U.S. 668 (1984) .................... 43

*Swartz v. Meyers*, 204 F.3d 417 (3rd Cir., 2000) .................... 25

*Sweger v. Chesney*, 294 F.3d 506 (3rd Cir., 2002) .............. 23

*Tatem v. State*, 787 A.2d 80 (Del., 2001) ............................................. 31

*United States v. Beckett,* 208 F.3d 140
(3rd Cir., 2000) ................................................................................................... 34

*United States v. Blocker,* 8902 F.2d 1102
(9th Cir., 1986) ..................................................................................................... 36

*United States v. Booker*, 543 U.S. 220 (2005) ........................... 53

*United States v. Broce,* 488 U.S. 563 (1989) ............................. 35

*United States v. Colvin,* 204 F.3d 1221
(9th Cir., 2000) ..................................................................................................... 26

*United States v. Dixon,* 509 U.S. 699 (1993) .......................... 34

*United States v. Frady*, 456 U.S. 152 (1982) .............................. 72

*United States v. Gebbie*, 294 F.3d 540
(3rd Cir., 2002) ................................................................................................... 71

*United States v. Gagnon*, 470 U.S. 522 (1985) ........................ 37

*United States v. Herzog,* 644 F.2d 713
(8th Cir., 1981) ..................................................................................................... 42

*United States v. Lankford*, 196 F.3d 563
(5th Cir., 1999) ..................................................................................................... 39

*United States v. Mastrangelo*, 733 F.2d 793
(11th Cir., 1984) ............................................................................................ ............................ 39

*United States v. Marino*, 682 F.2d 449
(3rd Cir., 1982) ................................................................................................... 39

*United States v. Morehead*, 959 F.2d 1489
(10th Cir., 1992) ................................................................................................... 39

*United States v. Munoz, 408 F.3d 222*
*(5ᵗʰ Cir., 2005)*................................................................................ 78

*United States v. Muzak*, 789 F.3d 580
(7th Cir., 1986)................................................................................ 48

*United States v. Nolan-Cooper*, 155 F.3d 221
(3ʳᵈ Cir., 1998)................................................................................ 76

*United States v. Pennycooke*, 65 F.2d 9
(3ʳᵈ Cir., 1995)................................................................................ 37

*United States v. Pollen*, 978 F.2d 78
(3ʳᵈ Cir., 1992)................................................................................ 35

*United States v. Rivera,* 375 F.3d 290
(3ʳᵈ Cir., 2004)................................................................................ 78

*United States v. Rosenbarger*, 536 F.2d 715
(6th Cir., 1976)................................................................................ 39

*United States v. Vaval,* 404 F. 3d 144
(2ⁿᵈ Cir., 2005)................................................................................ 77

*United States v. Weathers,* 186 F. 3d 948
(D.C. Cir., 1999)................................................................................ 40

*Via v. State,* Del. Supr., No. 154, 2001
(August 20, 2001)................................................................................ 52

*Washington v. State*, 844 A.2d 293 (Del., 2004)................. 76

*Weatherspoon v. State*, Del. Supr. No. 336, 2006
October 17, 2006)................................................................................ 55

*Webster v. State*, 604 A.2d 1364 (Del., 1992)......................... 27

*Weedon v. State*, Del. Supr., No. 246, 1999,
(April 14, 2000)................................................................................ 27

*Wells v. State*, 396 A.2d 161 (Del., 1978)................................... 29

*Williams v. State*, 818 A.2d 906 (Del., 2002)........................... 9

*Williams v. Taylor,* 529 U.S. 362 (2000)........................................ 20

*Wilson v. Beard*, 426 F.3d 653 (3ʳᵈ Cir., 2005)....................... 28

*Wilson v. State*, Del. Supr., No. 549, 2005
(May 9, 2005) ........................................................................................... 49

*Ylst v. Nunnemaker*, 501 U.S. 797 (1991) ........................................ 32

*Zebroski v. State*, 715 A.2d 75 (Del., 1998) ................................ 76

## CONSTITUTIONAL PROVISIONS

### FEDERAL

Amendment 5 ....................................................................... 5

Amendment 6 ................................................................................ *passim*

Amendment 14 ..................................................................... *5*

### FEDERAL STATUTES

28 *U.S.C.* §2244(b) .................................................................. 2

28 *U.S.C.* §2554 .................................................................... *passim*

28 U.S.C. §2254(b) .................................................................. 51

### FEDERAL ACTS

Antiterrorism And Effective Death
Penalty Act Of 1996 ........................................................................ 20

### STATE STATUTES

10 *Del. C.* § 913 ....................................................................... 83

10 *Del. C.* § 915 ....................................................................... 83

10 *Del. C.* § 921 ....................................................................... 83

11 *Del. C.* §206(a) .................................................................. 3

11 *Del. C.* §1271A ...................................................... *passim*

xiii

11 *Del. C.* §1271A(c) ...................................................................……………… *passim*

11 *Del. C.* §1448(a)(6) ................................................................…………. *passim*

11 *Del. C.* §1448(c) …….………………………………………………..……………. *passim*

11 *Del. C.* §4202(k) ………………….………………………………..…………………. *passim*

11 *Del. C.* §4202(m) ………………….…………………………………..………………. 23

## FEDERAL COURT RULES
## (FORMER)

Rule 35(a), Federal Rules of Criminal Procedure………….. 47

## STATE COURT RULES

Superior Court Rules of Criminal Procedure

   Rule 11……………………………………………………………………………………..*passim*

   Rule 35(a) …………………………………………………………………………..…… *passim*

   Rule 61………………………………………………………………………..…………. *passim*

   Rule 61(i)(3) …………………………………………………………………………….. 7

Family Court Rules Of Civil Procedure

   Rule 53…………………………………………………………………………………. 83

   Rule 53.1………………………………………………………………………………… 83

## OTHER

SENTAC BENCHBOOK, 2001………………………………………..…………………… 3, 49

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Following an October, 2002 confrontation in Rehoboth Beach with the paramour of his former wife, state prisoner and *habeas corpus* petitioner John H. Benge, Jr. ("Petitioner") was charged with 10 felonies and 2 misdemeanors. The statutory maximum sentences for those charges exposed Petitioner to life plus 144 years in prison.

Two first degree kidnapping and two possession of firearms charges were dismissed by the Superior Court of the State of Delaware in and for Sussex County on pretrial motion for legal insufficiency. After a two week jury trial in August, 2003 on the remaining major charges, Petitioner was acquitted of attempted first degree murder, assault first degree, burglary, assault second degree (chemical spray), and all of the possession of a  firearm during the commission of a felony charges alleged. Despite the jury's rejection after deliberations of just two hours of the prosecution's attempted 1st° murder theory (the only offense upon which the prosecution offered a theory of the case to the jury), Petitioner was sentenced on October 10, 2003 to the maximum (and a historically long sentence for a first time offender) prison term totaling 9 years and 30 days on the second degree assault, trespassing, and offensive touching offenses on which the jury did convict him. That sentence imposed represented every possible day of imprisonment that the Superior Court could statutorily impose upon Petitioner including a 365 day prison term, not subject to reduction, for the misdemeanor offense of trespass. Each of those sentences was ordered to be served pursuant to 11 *Del. C.* §4204(k)

which prohibits any diminution of prison time by earned goodtime or otherwise. In short, although the jury rejected the prosecution's attempted murder theory, the sentencing judge imposed sentences upon Petitioner that significantly exceeded the Delaware SENTAC guideline sentences for even far more serious offenses than those for which the jury had actually convicted Petitioner.

Prior to the 2003 trial, three additional charges contained in the indictment against Petitioner had been severed from the main body of offenses tried to the jury in August of 2003. Those alleged offenses – which underlie this §2254 *habeas corpus* petition[1] – consisted of a single felony count of possession of a deadly weapon by a person prohibited (i. e., a person subject to a Family Court protection from abuse order) and two misdemeanor counts of criminal contempt of a Family Court order. The allegations in one misdemeanor charge in the indictment were facially duplicative of the "person prohibited" felony charge, a key factor in this case and one not contested by the State at any stage.

Confronted with the prospect of Petitioner receiving a second lengthy prison sentence[2] on the severed charges despite the jury's

---

[1] The convictions and sentence orders at issue in two *habeas corpus* cases previously filed in this Court in August of 2005, *i. e.*, Benge v. DeLoy, No. 05-0550(GMS) and Benge v. DeLoy, No 05-0551(GMS), did not involve the judgment of conviction or sentence for any of the offenses here involved; the petition filed in this case, No. 08-78(GMS), is therefore *not* a second or subsequent *habeas corpus* petition within the meaning of 28 U.S.C.§2244(b).

[2] The unusual severity of the October 10, 2003 sentences imposed on the jury verdict, and hence counsel's concern, is apparent from the fact that that 8 year sentence that Petitioner received on the lead offense – assault second degree – was almost as severe as the 10 year term provided for a conviction of assault *first* degree by a defendant *with* a prior criminal history of *2 or more violent felonies*, *i. e.*, a habitual offender; *see*, Delaware Sentencing Accountability Commission 2001 SENTAC Benchbook; in addition, Petitioner on October 10, 2003 received a prison term on

2

August 2003 acquittals, Petitioner's counsel attempted to structure a plea agreement on the day scheduled for trial. That plea agreement and the proceedings relevant thereto are more fully detailed in the Statement of Relevant Facts and Argument sections of this brief as the same are central to two of Petitioner's *habeas corpus* claims in the instant case.

On January 20, 2004, Petitioner entered pleas of guilty to three charges and was sentenced by the Superior Court to 6 months in prison on the felony weapons possession charge and 15 days at Level V on each of the two criminal contempt charges. The 6 month Level V sentence was made subject to 11 *Del. C.* §4202(k), *i.e.*, not subject to "goodtime" credit or other diminution, and the two 15 day sentences were imposed as minimum non-suspendable sentences as requested by the prosecutor. The court also ordered a period of probation. Those sentences were embodied in the Superior Court's initial sentence order in the case below of January 20, 2004 [Appendix to Petitioner's Brief ("Appendix"), A30-36].

Although these sentences exceeded the recommended sentence in the plea bargain, Petitioner's counsel filed no direct appeal of the January 20, 2004 sentence order although Petitioner had himself

---

each offense that he was convicted of, not just the lead offense. *Cf.*, 2001 Benchbook, ¶ 8-9, 32, pp. 56-59. Counsel was thus acutely aware of the severity of those sentences as the window for a plea bargain began to close on the severed charges. As matters turned out, the sentence received by Petitioner for the electronic eavesdropping offenses that were the subject of C.A. No. 05-0551(GMS) in this court exceeded the sentences meted out to *any* defendant in the 1972 Watergate case, fully justifying any fears counsel may have had.

initiated an appeal of the October 10, 2003 sentence order.[3] On September 20, 2005, however, Petitioner, acting *pro se*, filed a motion for correction of the January 20, 2004 sentence under Superior Court Rules of Criminal Procedure ("SCRCrP") Rule 35(a) (Super. Ct. docket entry no. 28). That motion was addressed to the length of the probation and its "consecutive" rather than "concurrent" term. Petitioner's Rule 35(a) motion was granted in part (as to the length of probation) and denied in part (as to concurrency of the probation part of the sentences) on October 3, 2005 (Super.Ct. docket entry no. 30). Petitioner moved on October 13, 2005 for reargument of this initial ruling (Super.Ct. docket entry no. 31). Although reargument was at first denied by the Superior Court (Super. Ct. docket entry no. 32), a renewed motion for reargument was eventually granted and Petitioner's sentence was again corrected (as to the concurrent running of probation) on November 10, 2005 (Super. Ct. docket entry no. 35; "corrected order," Appendix A37-43). No appeal by either party was lodged from this second "corrected" order.

Petitioner filed a second *pro se* SCRCrP Rule 35(a) motion to correct sentence on December 5, 2006 (Super. Ct. docket entry no. 36). That motion sought relief on completely separate and distinct grounds from the October, 2005 motion to correct. Petitioner's Rule 35(a) motion was accompanied by a motion for post-conviction relief under SCRCrP Rule 61 (docket entry no. 37).

---

[3] This Court is familiar with Petitioner's appeal of adverse judgments at each stage of the proceedings brought against him from the briefs and other filings in previous *habeas corpus* cases filed by Petitioner in this Court, *i.e.*, Nos. 05-0550(GMS) and 05-0551(GMS).

Petitioner's 2005 Rule 35(a) sentence correction and Rule 61 post conviction relief motions set forth a total of four claims for relief. The first two of those claims were the basis of Petitioner's Rule 35(a) motion while all four claims were asserted in the Rule 61 motion. The claims presented in the motions were: i) Ground One: that the Double Jeopardy protection of the United States Constitution as established in *Menna v. New York*, 423 U.S. 61 (1975) bars punishment on *each* of the two facially duplicative counts of the indictment in this case alleging possession of a deadly weapon while subject to a Family Court protective order – *i.e., both* Count 6 *and* Count 12; ii) Ground Two: each of the three separate sentences imposed upon Petitioner exceeds the maximum sentence permitted under *Apprendi v. New Jersey,* 530 US 466 (2001)and *Blakely v. Washington*, 542 US 296 (2004) because of the necessity for the sentencing judge to find facts beyond the guilty plea; those sentences therefore were imposed contrary to the jury trial protection of the 6th Amendment to the federal constitution; iii) Ground Three: each of the three separate pleas of guilty entered by Petitioner was not made knowingly, voluntarily, and intelligently in the circumstances of this case as is required by 5th and 14th Amendments due process protection of the federal constitution and, accordingly, Petitioner sought to withdraw such pleas: and iv) Ground Four: the prosecution breached the plea agreement by arguing against the probation agreed upon in the plea bargain with Petitioner; as a result of that breach, 5th and 14th

5

Amendment due process under the federal constitution was the basis upon which Petitioner sought to withdraw his pleas of guilty.

Each of Petitioner's motions also contained the following paragraph:

Each of the separate and distinct grounds for relief relied upon by Defendant in this motion is independently based upon all applicable Federal constitutional protections, applicable Delaware state constitutional protections, and decisional and statutory law of the State of Delaware.

The State filed a single response in Superior Court to the two motions, combining the grounds in opposition to each. The State's contention in its response was that each of the grounds upon which Petitioner sought relief were procedurally barred.

On May 2, 2007, the Superior Court in a single letter opinion denied both of Petitioner's December 5, 2006 motions (docket entry no. 45, 46). In that opinion, the sentencing judge found all claims for relief asserted by Petitioner to be procedurally barred by the provisions of SCRCrP Rule 61(i)(3) by the fact that no direct appeal was taken from the sentence order of January 20, 2004. In the alternative to the procedural bar ruling, the Superior Court ruled that Petitioner "is bound by his [plea] agreement and the waiver in open Court." For this alternative ruling on the merits, the sentencing judge relied upon *Haskins v. State*, Del. Supr., order, No. 188, 1991, Moore, J. (August 19, 1991) (a case refusing to apply the bar of Double Jeopardy in a retrial after appeal context – *not* a case in which the defendant sought relief from multiple punishments as is the claim in Petitioner's *habeas corpus* petition Ground One).

6

The Superior Court further asserted: "If a person can plead guilty to a charge that dose not exist, *Downer v. State*, 543 A.2d 309 (Del., 1988), he can surely waive his known constitutional rights pursuant to a plea. He is estopped from now asserting a contrary position." The Superior Court emphasized that the purported waiver of Double Jeopardy was "done in order to obtain a plea recommendation." The court did not conduct any analysis of Petitioner's Double Jeopardy claim in light of *Menna v. New York, supra,* although that case was the long pole in the tent of Petitioner's Double Jeopardy claim in both Superior Court (as well as the appeal that followed).

As to the "*Apprendi*" claims, as the Superior Court labeled Petitioner's two distinct claims in the Rule 35(a) motion Ground Two, the Superior Court saw the separate grounds as but one claim and made the blanket holding that *Apprendi* does not limit the authority of a Delaware court to sentence a defendant to the penalty prescribed up to the statutory limit.

Petitioner's appeal to the Delaware Supreme Court followed. The issues raised in that appeal were identical to those in Petitioner's December 5, 2006 Rule 35(a) and 61 motions in the Superior Court, expressly ruling on both motions.

In an opinion dated January 25, 2008, the Supreme Court of Delaware affirmed the rulings of the Superior Court. The Supreme Court held, without elaboration and despite a long line of cases to the contrary, that Petitioner's SCRCrP Rule 35(a) Double Jeopardy illegal sentence claim was procedurally defaulted not under Rule

7

35(a) but under SCRCrP *Rule 61(i)(3)* (the Superior Court post-conviction remedy) because it had not been presented on direct appeal; it also ruled that counsel's waiver of Double Jeopardy was binding. Again, as had the Superior Court, the Delaware high court did not conduct an analysis of the applicability of *Menna v. New York, supra,* but relied upon its previous holding in *Hall v. State*, No. 649, 2006, WL 3170467, order (October 30, 2007) (holding that a Double Jeopardy claim based upon prosecutions by both Pennsylvania and Delaware of separate offenses occurring in each of those states was "waived;" *Hall* presented no *multiplicity* issue).

The Delaware Supreme Court also treated Petitioner's separate 6th Amendment *Apprendi/Blakely* sentencing claims as one and held, as it had with prior cases, that *Apprendi* and its progeny do not affect Delaware, *i. e.*, that the 6th Amendment plays no role in non-capital criminal sentencing in Delaware courts. The Delaware court also held that *Harris v, United States*, 536 U.S. 545 (2002) limited *Apprendi* by holding that a jury need not consider facts that impact a sentence within the statutory range.

The Delaware court also found that the remaining post-conviction claims were procedurally barred but made alternative rulings on the merits. The court's opinion recognized that the guilty plea documentation and statements by the trial court indicated that Petitioner would be exposed to maximum possible penalties of *either* 2 or 8 years but found that these conflicting statements did not "prejudice" Petitioner because he was sentenced to only 2 years. In addition to its holding that the degree of the

8

offense, *i. e.,* whether a Class D felony (possession of a firearm) or a Class F felony (possession of a deadly weapon) - to which Petitioner entered his entered his guilty pleas was immaterial to the voluntariness of that plea - this ruling left open (as had the May 2, 2007 ruling of the Superior Court) the question of just what offense Petitioner had been adjudged guilty of by virtue of his plea.[4]

Finally, the Delaware Supreme Court found that the prosecutor's argument at sentencing that Petitioner had deliberately disobeyed a court order was simply an "explanation" of the State's position, *not* advocacy for an enhanced sentence in breach of the parties' plea agreement.

Petitioner on February 6, 2008 timely sought reargument of the Delaware court rulings of January 25, 2008 pursuant to Rule 18 of that court. By order dated April 4, 2008, the Delaware Supreme Court denied reargument on its previous decision. *See, Benge v. State*, Del. Supr., No. 262, 2007, order, Holland, J. (April 4, 2008).

---

[4] This represented the second time that the Delaware Supreme Court left open the question of the exact nature of the offense for which Petitioner had been sentenced. The lack of a specific unanimity jury instruction in the Superior Court trial underlying the convictions at issue in Petitioner's *habeas corpus* petition in C.A. No. 05-0550(GMS) and the failure of the State in that case to argue a lesser included offense theory to the jury left the nature of the lead offense of second degree assault in doubt, *i.e.,* whether the jury found that the assault was by intentional or reckless use of chemical spray or a firearm. Beyond the basic due process notion that the offense for which a defendant is sentenced should be identifiable when distinct offenses are involved, *Government of Virgin Islands v. Joseph,* 765 F.2d 394 (3rd Cir., 987) there is, of course, the additional consequence that the failure to specify the offense deprives a defendant of the ability to seek appropriate relief should any material changes occur in the construction of the state criminal statutes underlying a conviction as has occurred, for example, with the federal firearms "possession" statute at issue in *Bailey v. United States,* 516 U.S. 137 (1995) or recently in the Delaware Criminal Code regarding necessary predicate conduct to an offense; *see, Williams v. State,* 818 A.2d 906 (Del., 2002 ) and *Chao v. State,* 931 A.2d 1000 (Del., 2007) overruling *Chao v. State,* 604 A. 2d 1351 (Del., 1972).

9

Petitioner's instant §2254 petition was timely filed by its delivery to prison authorities on February 4, 2008.

## SUMMARY OF ARGUMENT

1.    *Habeas corpus* relief is appropriate in this case because the decision of the Delaware Supreme Court is contrary to the constitutional protection of Double Jeopardy as clearly established by the relevant cases of the Supreme Court of the United States. Under *Menna v. New York*, a Double Jeopardy claim is not subject to "waiver" by a guilty plea or by counsel as the state is constitutionally prohibited from imposing multiple punishments.

2.    *Habeas corpus* relief is appropriate in this case because each of the sentences imposed upon Petitioner are contrary to the decisions of the United States Supreme Court in *Apprendi/Blakely* as: i) not all facts necessary to the enhanced 15 day non-suspendable minimum sentence imposed under 11 *Del. C.* § 1271A(c) were tried to a jury or admitted by Petitioner; and ii) each of the sentences was enhanced above the SENTAC guidelines based upon facts not admitted and/or tried to a jury. Sentences imposed contrary to *Apprendi/Blakely* are not authorized under the 6th Amendment and therefore are illegal sentences within the meaning of SCRCrP Rule 35(a). Procedural bars, if applicable to Petitioner's *Apprendi/Blakely* claims, are overcome in the circumstances of this case by the presence of "cause," "prejudice," and a "fundamental miscarriage of justice" because of Petitioner's "actual innocence."

3.    The Delaware Supreme Court's refusal to permit Petitioner to withdraw his guilty pleas is contrary to clearly established federal law as set forth in the decision of the United States Supreme Court in *United States v. Brady* because the record establishes that there

11

was such confusion as to both the nature of the offenses to which Petitioner was to plead guilty and the maximum penalties for those offenses as to render those pleas involuntary in a constitutional sense. Any applicable procedural bars of SCRCrP Rule 61 are overcome in the circumstances of this case by the presence of "cause," "prejudice," and a "fundamental miscarriage of justice." *Habeas corpus* relief is appropriate in this case because to remedy the ruling contrary to *Brady*.

4.    The Delaware Supreme Court's refusal to permit Petitioner to withdraw his guilty pleas is contrary to clearly established federal law as set forth in decisions of the United States Supreme Court in *Santobello v. New York* and *Mabry v. Johnson* because the prosecutor breached the plea agreement by failing to recommend probation as promised in the plea agreement and by arguing in such terms as could only consist of advocating for an enhanced sentence. Any applicable procedural bars of SCRCrP 61 are overcome in the circumstances of this case by the presence of "cause,"    "prejudice," and a "fundamental miscarriage of justice." *Habeas corpus* relief is therefore appropriate in this case.

**SUMMARY OF ARGUMENT**

1.    *Habeas corpus* relief is appropriate in this case because the decision of the Delaware Supreme Court is contrary to the constitutional protection of Double Jeopardy as clearly established by the relevant cases of the Supreme Court of the United States. Under *Menna v. New York*, a Double Jeopardy claim is not subject to "waiver" by a guilty plea or by counsel as the state is constitutionally prohibited from imposing multiple punishments.

2.    *Habeas corpus* relief is appropriate in this case because each of the sentences imposed upon Petitioner are contrary to the decisions of the United States Supreme Court in *Apprendi/Blakely* as: i) not all facts necessary to the enhanced 15 day non-suspendable minimum sentence imposed under 11 *Del. C.* § 1271A(c) were tried to a jury or admitted by Petitioner; and ii) each of the sentences was enhanced above the SENTAC guidelines based upon facts not admitted and/or tried to a jury. Sentences imposed contrary to *Apprendi/Blakely* are not authorized under the 6th Amendment and therefore are illegal sentences within the meaning of SCRCrP Rule 35(a).    Procedural    bars,    if    applicable    to    Petitioner's *Apprendi/Blakely* claims, are overcome in the circumstances of this case by the presence of "cause," "prejudice," and a "fundamental miscarriage of justice" because of Petitioner's "actual innocence."

3.    The Delaware Supreme Court's refusal to permit Petitioner to withdraw his guilty pleas is contrary to clearly established federal law as set forth in the decision of the United States Supreme Court in *United States v. Brady* because the record establishes that there

11

was such confusion as to both the nature of the offenses to which
Petitioner was to plead guilty and the maximum penalties for those
offenses as to render those pleas involuntary in a constitutional
sense. Any applicable procedural bars of SCRCrP Rule 61 are overcome
in the circumstances of this case by the presence of "cause,"
"prejudice," and a "fundamental miscarriage of justice." *Habeas
corpus* relief is appropriate in this case because to remedy the
ruling contrary to *Brady*.

4.    The Delaware Supreme Court's refusal to permit Petitioner to
withdraw his guilty pleas is contrary to clearly established federal
law as set forth in decisions of the United States Supreme Court in
*Santobello v. New York* and *Mabry v. Johnson* because the prosecutor
breached the plea agreement by failing to recommend probation as
promised in the plea agreement and by arguing in such terms as could
only consist of advocating for an enhanced sentence. Any applicable
procedural bars of SCRCrP 61 are overcome in the circumstances of
this  case  by  the  presence  of  "cause,"     "prejudice,"  and  a
"fundamental  miscarriage  of  justice." *Habeas  corpus*  relief  is
therefore appropriate in this case.

## Statement of Relevant Facts

**The Indictment:** The pertinent parts of the twelve count indictment

returned against Petitioner read as follows:

### COUNT 6 – POSSESSION OF A FIREARM BY A PERSON PROHIBITED
### 02-10-0929

**JOHN H. BENGE**, on or about the 20th day of October, in the County of Sussex, State of Delaware, did have in his possession a handgun, a deadly weapon as defined under 11 Del. C., §222(5), while being under a Family Court protection from abuse order, in violation of Title 11, §1448(a)(6) of the Delaware Code.

### COUNT 12 – CRIMINAL CONTEMPT – 03-04-1012

**JOHN H. BENGE**, on or about the 20th day of October, in the County of Sussex, State of Delaware, did commit the act of criminal contempt when the defendant knowingly violated or failed to obey any provision of a protective order issued by Family Court, to wit: the defendant possessed firearms, in violation of Title 11, §1271A of the Delaware Code.

(Superceding Indictment, docket entry no. 3)

It is significant in this case that neither of these two counts contains any allegation of physical injury, domestic violence, or the presence of children during the course of the commission of the offense alleged.

**The Underlying Family Court Order:** As is readily apparent from the language of the indictment, each of the three offenses alleged was based upon the assumption of the existence of a prior, valid order of the Delaware Family Court. The purported order in issue in this case appears at A56 – A55 of the Appendix; it is dated August 2, 2002 and was signed by a commissioner of the Family Court, Martha Sackovich, not a Family Court judge.

**The Plea Agreement And Its Documents:** The plea agreement in this case was negotiated on the day of trial [transcript of January 20,

2007 plea agreement ("Plea Trans."), Appendix A8-9]. The prosecutor was quite busy that day and was unable to be present in the courtroom when the court below was ready to proceed with the plea (Plea Trans., Appendix A8).

Prior to the plea, Petitioner's counsel had prepared three motions, which the presiding judge had read, in support of Petitioner's claim that he was not guilty of the three PFA related charges. Defense counsel described these three motions as follows [January 20, 2004 sentencing transcript ("Sent. Trans."), Appendix A17-18]:

> ...I had prepared three motions in anticipation of the matter being tried. One of the motions was that Counts 11 and 12 were multiplicious...In addition, I indicated in the motion that Counts 6 and 12 were mutiplicious...Thirdly, I took the position that the Commissioner was not empowered under the statutory authority to issue a PFA. It was an invalid PFA. ...[a]ll three of the counts were invalid.

The plea agreement entered into by the parties, accompanied by a "Truth-in-Sentencing Guilty Plea Form," was the only document in the trial court that related to the plea. Neither the plea transcript nor that of the sentencing proceeding contains an account in any detail of the parties' negotiations leading to the plea.

The plea agreement (Appendix A6) provides as follows: Defendant will plead guilty to:

| Count | Cr.A.## | Charge | [LIO if applicable] |
|-------|---------|--------|---------------------|
| 1. 6 | 021000929 | PFBPP | |
| 2. 11 | 03 02 110168 | Cont. of a PFA | |
| 3. 12 | 03 02 0304 1012 | Cont. of a PFA | |

Sentence Recommendation/Agreement:

(1) 2 yrs. L 5 susp. For 1 yr. L3 (2) 1 yr L5. After serving 15 days, balance susp for 1 yr. L3.(3) 1 yr. L5, After serving 15

14

days, balance sis for 1 yr. L3. The level 3 sentence may run concurrently"

The TIS guilty plea form (Appendix A7) contained the following entries:

| OFFENSE | STATUTORY PENALTY | | TIS GUIDELINE |
|---|---|---|---|
| | Incarceration | Fine | |
| | | (range if applicable) | |
| Poss.Firearm Person Prohib. | 0-2 | Disc | up to 2 yrs. L-3 |
| Criminal contempt | 0-1 | 2300 | 15 day min. |
| Criminal contempt | 0-1 | 2300 | 15 day min. |

**TOTAL CONSECUTIVE MAXIMUM PENALTY: Incarceration: 4 yrs. Fine: Disc.**

Contrary to the finding of the Superior Court (letter opinion of May 2, 2007, page 5), the record contains no indication of who prepared any of the plea documents.

In sum, the plea agreement provided for Petitioner to plea guilty to three offenses: two violations of 11 *Del. C.* §1271A criminal contempt and a single violation of 11 *Del. C.* §1448(a)(6), possession of a deadly weapon by a person prohibited (Family Court PFA). In exchange, the prosecutor promised to recommend a suspended sentence and probation. The plea agreement was silent as to whether sentencing was to be enhanced pursuant to 11 *Del. C.* §1448(c) or §1271A(c).

**The Statutory Structure Of The Underlying Alleged Offenses:** §1448(a)(6) in fact establishes two distinct offenses: one such offense is classified under the Delaware Criminal Code as a Class D felony and the other offense is a Class F felony; see 11 *Del C.* §1448(c). However, the statute under which a defendant *is charged* – as opposed to the statue under which a defendant *is to be sentenced* – for either offense is numbered identically in the Delaware Criminal

15

Code. The separate and enhanced Class D sentence prescribed by §1448(c) is distinguished by the type of deadly weapon possessed by a defendant, i.e., whether the weapon is a "firearm" or ammunition or other deadly weapon as defined by the Delaware Criminal Code. The maximum sentence for a Class D felony differs significantly from that of a Class F felony as do the SENTAC presumptive sentences. See 11 *Del. C.* §4204. Class D felonies are punishable by 0-8 years at Level V and carry a SENTAC presumptive sentence of up to 2 years at Level V; Class F felonies are punishable from 0-3 years at Level V with a SENTAC presumptive sentence of up to 9 months.

No crime with which Petitioner might have been charged has the statutory penalties (0-2 years Level V) or SENTAC presumptive sentence (up to two years) set forth on the TIS guilty plea form used in this case or stated by the Superior Court presiding judge (Plea Trans., Appendix A11).

Similarly, the offense styled "criminal contempt of a Family Court protective order" by 11 *Del. C.* §1271A actually defines two separate offenses with two separate punishments: one is punishable by up to one year at Level V and the second offense within that statute carries a minimum fifteen day non-suspendable Level V sentence under §1271A (c). The enhanced penalty follows *judicial* findings of fact at sentencing as follows:

(c) a person found guilty of criminal contempt of a domestic violence protective order shall receive a minimum sentence of 15 days incarceration if:

        (1) Such contempt resulted in physical injury; or
        (2) Such contempt involved the use or threatened
           use of a deadly weapon; or
        (3) The defendant was convicted of criminal contempt

16

> of a domestic violence protective order under this
> section on 2 or more occasions prior to this offense.

Enhanced penalties for violation of 11 *Del. C.* §1271A(c) are also applicable when:

> children are present during the crime OR are the victims of
> the offense; against a co-defendant if a conspirator was under
> the age of 14 and the codefendant was 4 or more years older
> that the child at the time of the crime.
> TIS Benchbook 2001, p. 46,
> "Special Domestic Violence Category."

**The Plea Proceeding:** The transcript of the January 20, 2004 sentencing proceeding reflects that confusion reigned in that proceeding as to what offense Petitioner was pleading guilty to and being sentenced for, i.e., the Class D or Class F felony under §1448(a)(6) or under §1488(c).

During the plea proceeding, the presiding judge (also later the sentencing judge) referred to the felony offense as "possession of a deadly weapon by a person prohibited." (Plea Trans. Appendix A9) and noted that Petitioner had been "charged with" possession of a firearm (Sent. Trans., Appendix A27).

At no point prior to the court's acceptance of Petitioner's plea did the presiding judge advise Petitioner that he was pleading guilty to "possession of a firearm;" or a Class D felony; or that Petitioner would be sentenced under §1448(c); or that Petitioner was pleading guilty to any offense alleging facts within the scope of 11 Del. C. §1271A(c); or that Petitioner would be sentenced under §1271A(c).

The prosecutor, on the other hand, referred to the felony involved in the plea agreement as "possession of a firearm by a

17

person prohibited" (Plea Trans., Appendix, A 8) - a title not borne by any offense in the Delaware Criminal Code.

**The Sentencing Proceeding:** At sentencing, the confusion continued unabated. The prosecution "moved to amend" the indictment, but without specifying the precise amendment sought, *i.e.*, whether to change the *caption* of Count 6 of the indictment from "firearm" to "deadly weapon" or to somehow otherwise amend.

An unidentified judge's secretary, noting a "need to clarify on the first charge," initiated an exchange between counsel and the Court about the nature of the offense. This exchange left the Court puzzling about how "Oz" (apparently the Superior Court's computer system) would recognize the offense. (Sent. Trans., Appendix A27-29). Rather than clarify the situation, the exchange between counsel and the Court added to the confusion, as no one spoke directly to the question that had been raised by court staff.

The records of the Department of Correction indicate that the offense for which Petitioner was sentenced was the Class D felony, possession of a firearm; see the DOC status sheet attached hereto.[5]

The table overleaf from page 18 (and in the Appendix hereto in enlarged form) summarizes the references to the two separate felony offenses at sentencing. For ease of reference, the areas shaded in blue reflect a reference to the Class D felony while the areas shaded in buff show references to the Class F offense. The offense

---

[5] The records of the Delaware Department of Correction, prepared by the Department's clerical staff, have been recognized as being relevant to a determination of the nature of the sentence being served by a defendant and hence the offense for which that sentence was meted out. *Evans v. State*, No. 67, 2005 (April 11, 2005) ("*Evans* II"), slip opinion, p. 39.

18

was referred to, primarily by the prosecutor, as a "firearm" offense a total of 7 times. Conversely, the felony to which Petitioner was to plead guilty was referred to 10 times by the trial judge as the "deadly weapon" offense. (*see*, Table A, overleaf). The two transcripts are remarkable only in what is *not present*: there is no instance in either the plea or the sentencing transcript in which the prosecutor and the presiding judge indicated that they were referring to the same offense.

| Reference To | Indictment | Plea Agreement | TIS Plea Form | Plea Transcript | Sentencing Transcript | Sentence Order | DOC Status Sheet |
|---|---|---|---|---|---|---|---|
| Reference To Title 11 § No. Of Offense | YES $1448(a)(6) | NO | NO | YES @p.3: $1448(a)(6) | YES $1448(a)(6) @p.8:p.12 | NO | YES |
| Reference To Offense Name | YES Count 6 "Possession of a firearm by a person prohibited" | YES "..PFBPP.." | YES "..Poss. Firearm Person Prohib." | YES By the State:@p.2: "possession of a firearm by a person prohibited" By the court:@p.3: "possession of a deadly weapon by a person prohibited." | YES By the court:@p.8: "..straight up deadly weapon possession." By the court:@p.12-13: "..possession of a deadly weapon." By the court: @p.12: "But charged possession of a firearm." By the court:@p.13: "..firearm included in deadly weapon." | YES "PDWBPP FC-PFA" | YES "..posses firearm.." |
| Reference To Felony As ClassD/ClassF | NO | NO | NO | NO | NO | NO | NO |
| Reference To Maximum Penalty As:Two Years L5 | NO | NO | YES:"0-2" | YES:@pp.5-6: "Two years" | NO | NO | NO |
| As:Eight Years L5 | NO | NO | NO | NO | NO | NO | NO |
| As:Three years L5 | NO | NO | NO | NO | NO | NO | NO |
| Reference To Presumptive Sentence As: 0-2 years | NO | NO | YES:2yrs. @L3 | NO | NO | NO | NO |
| As: 0-3 YEARS L5 | NO | NO | NO | NO | NO | NO | NO |
| Reference To Sentence Being Imposed For Class D Felony Under 11 Del.C.§1448(c) | NO | NO | NO | NO | NO | NO | NO |

**ARGUMENT**

I. Introduction -Standards Applicable To And Timeliness Of The Petition

A. Standards Applicable To A §2254 Petition: The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") authorizes a federal court to grant *habeas corpus* relief solely on the grounds that a petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §2254. Such relief may be granted where a state court's adjudication of a claim has (1) resulted in a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court; or (2) resulted in a decision that was based upon an unreasonable determination of the facts relevant to a case in light of the evidence presented in a state court proceeding. 28 U.S.C. §2254(d) (1); *Williams v. Taylor*, 529 U.S. 362 (2000); *Apple v. Horn*, 250 F.3d 203 (3rd Cir., 2001).

A writ of *habeas corpus* is properly granted on the "contrary to clearly established federal law" grounds of §2254 if a state court adjudication arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v Taylor, supra.* That is, when a state court decision is "substantially different from the relevant precedent," it is contrary to established Supreme Court law. *Id.* In applying the "contrary to" precept, the failure of the state

court decision to cite controlling federal cases is a bellweather indicator. *Appel v. Horn, supra*, 250 F.3d, at 211.

"Clearly established federal law as determined by the Supreme Court" refers to the holdings – not merely *dicta* - of that court as of the time of the decision of a state court. *Williams v. Taylor, supra.*

An "unreasonable application" of such clearly decided federal law is one in which a state court correctly identifies the governing legal principle for the decisions of the Supreme Court but unreasonably – in an "objective" sense and not just "incorrectly" – applies that legal principle to a petitioner's case. *Id.* The "unreasonable application" precept "permits a federal habeas court to grant the writ if the state court identifies the correct governing principle but unreasonably applies that principle to the facts of a petitioner's case, or if it unreasonable refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S., at 407-08. In this regard, the "focus" of a state court decision is critical in terms of the issue determining the outcome of the case – whether it is the relevant constitutional law precept or an issue of state law that serves as the basis of the state court decision. *See, e.g., Albrecht v. Horn*, 485 F.3d 103 (3rd Cir., 2007), at 119.

Absent exceptional circumstances, a federal court cannot grant *habeas corpus* relief unless a *habeas corpus* petitioner has exhausted all means of relief under state law. 28 U.S.C. §2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). The requirement of exhaustion is based upon principles of comity and thus a petitioner must give state courts

"one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.*, 526 U.S., at 844-45. A petitioner satisfies this requirement of exhaustion by demonstrating that the claims relied upon for federal *habeas corpus* relief were "fairly presented" to the state courts whether on direct appeal or by post-conviction proceeding. *Lambert v. Blackwell*, 134 F.3d 506 (3rd Cir., 1997). "Fair presentation" of a claim has occurred when the petitioner presents the factual and legal substance of a federal claim to the state courts in a manner that puts the state courts on notice that a federal claim is being asserted. *Holloway v. Horn*, 355 F.3d 707 (3rd Cir., 2004).

A *habeas corpus* petitioner's failure to exhaust state court remedies will be excused if state procedural rules preclude an application for further relief in the state courts. *Lines v. Larkin,* 208 F.3d 153 (3rd Cir., 2000). However, such unexhausted claims may be procedurally barred. *Lines v. Larkin*, *supra*, 208 F.3d, at 160. Federal courts may not consider the merits of a procedurally barred claim unless the petitioner demonstrates "cause" for the procedural default and resulting "actual prejudice" or that a "fundamental miscarriage of justice" will result if the federal court does not review the claims for *habeas corpus* relief. *Coleman v. Thompson*, 501 U.S. 722 (1991); *McCandeless v. Vaughn*, 172 F.3d 255 (3rd Cir., 1999).

Although the concept of "cause" is not a precise one, *Reed v. Ross*, 468 U.S. 1 (1984), a petitioner may demonstrate the presence of "cause" by a showing that "some objective factor external to the defense" impeded an effort to comply with the state procedural rule.

22

*Murray v. Carrier*, 477 U.S. 478 (1986). Similarly, while the full import of "prejudice" remains an open question, *Murray v. Carrier, supra,* a petitioner may demonstrate "actual prejudice" by showing that alleged errors created more than just the possibility of prejudice but in fact "worked to [petitioner's] actual and substantial disadvantage, infecting [petitioner's] entire trial with error of constitutional dimension." *Id.*, at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that a "fundamental miscarriage of justice" can be avoided only by federal court review of a claim. *Edwards v. Carpenter*, 529 U.S. 446 (2000). Such a showing is demonstrated by a petitioner establishing that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray v. Carrier, supra*, 477 U.S., at 496, that is, "factual innocence" not mere "legal insufficiency," *Bousley v. United States*, 523 U.S. 614 (1998), meaning that in light of all of the evidence in a case it is more likely than not that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298 (1995), at 327-328; *Sweger v. Chesney* 294 F.3d 506 (3rd Cir., 2002).

"Cause," "prejudice," "fundamental miscarriage of justice," and "actual innocence" in a federal *habeas corpus* case are all issues solely of federal law and need not have been argued to or exhausted in the state courts. See, *e.g.*, *Edwards v. Carpenter*, *supra*; *Murray v.*

*Carrier*, *supra*; and *Schlup v. Delo, supra. Reynolds v. Ellingsworth,* 843 F. 2d 712 (3rd Cir., 1982).

**B. Timeliness Of The §2254 Petition**: *Habeas corpus* petitions filed by state prisoners after the 1996 effective date of AEDPA must comply with the requirements of that act. *Lindh v. Murphy*, 521 U.S. 320 (1997). AEDPA prescribes a one year limitations for the filing of such petitions which generally begins to run from the date on which the judgment sought to be reviewed became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. §2244(d) (1) (A).

The one year statutory period for filing is not jurisdictional, *Robinson v. Johnson*, 313 F.3d 128 (3rd Cir., 2002), and is tolled by 28 U.S.C. §2244(d) (2) which provides that the time during which a properly filed application for post-conviction or other collateral review with respect to the *pertinent judgment* is pending shall not be counted towards the one year limitations. In this regard, "properly filed" means timely delivery to and acceptance by the proper court in compliance with applicable law and rules governing filings. *Artuz v. Bennett*, 531 U.S. 4 (2000); *Satterfield v. Johnson*, 434 F.3d 185 (3rd Cir., 2006). "Properly filed" does not mean that all or any of the claims asserted in state court must have merit, *Artuz v. Bennett*, *supra*, but, rather, that the application simply was not rejected as untimely under governing state procedure. *Pace v. DiGuglielmo*, 544 U.S. 408 (2005). *Cf., Cannon v. Carroll*, No. 05-577(GMS) (Dist. Del.,

October 17, 2006) (holding that an untimely appeal does not toll the AEDPA limitations).

"Finality" of a judgment for purposes of §2244(d) (1) (A) is a question of federal law. *Artuz v. Bennett, supra*. When a state's procedure permits a second or subsequent post-conviction review procedure, the limitations statute is tolled during the pendency of those further state court proceedings. *Lovasz v. SCIG Superintendent Vaughan*, 134 F.3d 146 (3rd Cir., 1998). The period of tolling includes a timely filed motion for rehearing or reargument of a state court's initial disposition of a case. *Lookingbill v. Cockrell*, 293 F.3d 256 (5th Cir., 2002); *Nix v. Secretary for Department of Correction*, 293 F.3d 1235 (11th Cir., 2004). The time provided under state law for an appeal of a judgment is included in the tolling period regardless of whether or not an appeal is actually docketed. *Swartz v. Meyers*, 204 F. 3d 417 (3rd Cir., 2000). This means that the "appeal gap" – the period of time between the decision of a lower court and the time when the petitioner's appeal is actually docketed in an appellate court _ is included in the tolling period. *Evans v. Chavis*, 546 U.S. __ (2006); *Carey v. Saffold,* 536 U.S. 214 (2002). A state prisoner's §2254 petition is deemed "filed" for purposes of AEDPA's limitations when the petition is delivered to prison authorities for forwarding. *Burns v. Morton*, 134 F.3d 109 (3rd Cir., 1998).

When a *habeas corpus* petitioner has been resentenced following a successful appeal or collateral attack of a sentence order, the relevant *judgment* for purposes of 28 U.S.C. §2244(d)(1)(A) is the

25

amended or corrected judgment and the one year limitations period begins from the date of the resentecning - in other words, the one year time limit is reset when a sentencing order is amended or corrected and *habeas corpus* relief is later sought. *Hepburn v. Moore,* 215 F.3d 1208 (11th Cir., 2000) (holding that identifying the amended or corrected judgment as the relevant "judgment" for *habeas corpus* review and the commencement of the AEDPA limitations period is in accordance with the "plain meaning" of the statute); see also, *United States v. Colvin*, 204 F.3d 1221 (9th Cir., 2000) [citing *Kapral v. United States*, 166 F.3d 565(3rd Cir., 1999)] and holding that a judgment cannot be considered final as long as a defendant may appeal either the conviction or the sentence). *See also*, *Sweger v. Chesney, supra; Carter v. Litship*, 275 F.3d 663 (7th Cir., 2000); and *Jones v. State*, Del. Supr., No.665, 2002 (May 30, 2003) (re-sentencing restores all rights available under Delaware procedure specifically including the right to appeal an issue otherwise time barred in the absence of resentencing).

In Petitioner's case, the one year AEDPA limitations period begins to run from the date of the second corrected sentence order entered in the Superior Court on November 10, 2005. *Swartz v. Meyers, supra.* Although no appeal was taken, 30 days is nonetheless added to the date of the resentencing, *Evans v. Chavis, supra; Carey v. Saffold, supra*, and the one year AEDPA limitation period therefore begins to run from December 8, 2005. Petitioner's second set of post-conviction applications, timely filed under both SCRCrP Rule 35(a) and 61 on December 5, 2006, again tolls the AEDPA limitation period,

*Swartz v. Meyers, supra*, with 3 days remaining in that one year period after Petitioner's December 5, 2006 set of post-conviction motions. That second set of post-convictions motion was timely under Delaware procedure because: i) the SCRCrP Rule 61 motion, the first such motion filed by Petitioner, was filed within three years of the date of the initial sentence order of January 20, 2004 [see SCRCrP Rule 61(i)(1) and *Jones v. State*, Del. Supr., No. 523, 2002 (April 10, 2003); *Johnson v. Williams*, 2001 LEXIS 25598, No. 00-851(JJF), Farnan, C.J. (D. Del., February 16, 2001); and ii) a second or subsequent SCRCrP Rule 35 (a) motion is permitted provided only that the grounds in the second or subsequent Rule 35(a) motion have not been previously adjudicated by the Delaware Supreme Court. *Brittingham v. State,* 705 A.2d 577 (Del., 1998); *Alexander v. State,* Del. Supr., No. 237, 2003 (September 29, 2003); *but see*, *Hamilton v. State*, 831 A.2d 881 (Del., 2003) [specifically overruling the denial of Rule 35(a) relief on the same issue previously presented in *Hamilton v. State*, 769 A.2d 743 (Del., 2001)] and *Weedon v. State,* Del. Supr. No. 246, 1999, Walsh, J. (April 14, 2000), holding that even the prior adjudication rule is not an absolute one if a previous ruling by the same court on the same issue was "clearly in error."

The tolling of the AEDPA limitations continues in Petitioner's case from the May 2, 2007 date of the Superior Court's denial of Petitioner's post-conviction motions through the January 25, 2008 date of the decision of the Supreme Court of Delaware affirming the Superior Court's judgment. *Lovasz v. SCIG Superintendent Vaughan, supra.* As the Supreme Court's opinion was mailed to Petitioner on

27

Friday, January 25, 2008, the restarting of the tolling period is enlarged by five days (3 days for mailing plus an additional 2 because of the intervening weekend) under Rule 6(a) and (e), Federal Rules of Civil Procedure. See *Wilson v. Beard*, 426 F.3d 653 (3rd Cir., 2005). However, because Petitioner on February 5, 2008 timely filed a motion for reargument of the Delaware Supreme Court's January 25, 2008 decision (ultimately denied by the Delaware Court without opinion on April 4, 2008) the AEDPA limitation period continues to be tolled. Petitioner's §2254 petition was filed on February 4, 2008, the date upon which it was delivered to prison officials for mailing, *Burns v. Morton, supra,* while the AEDPA limitation period remained tolled.

A timeline reflecting the timeliness of Petitioner's §2254 *habeas corpus* petition appears overleaf.

Petitioner's §2254 *habeas corpus* petition was timely filed in this Court and the claims set forth therein are not barred by the one year limitations of AEDPA.

## Timeline For Calculation Of AEDPA Limitations Period

January 20, 2004: initial sentence order

September 20, 2005: first SCRCrP Rule 35(a) motion

October 3, 2005: Superior Court grants Rule 35(a) motion in
        part and denies in part and enters first corrected
        sentence order

October 17, 2005: first motion for reargument of
        Superior Court ruling of October 3, 2005

**November 7, 2005**: Superior Court grants reargument of
        October 3, 2005 corrected sentence order
        and enters second corrected sentence order
        AEDPA one year commences 12/8/05 and
        Expires 12/8/06

> Entry of second corrected order commences one year AEDPA limitations after expiration of 30 day appeal period; this is the *judgment* that Petitioner seeks to have reviewed on *habeas corpus*

**December 5, 2006**: Rule 61 motion and second Rule 35(a) motion
        docketed in Superior Court attacking
        November 7, 2005 sentence order

> Filing of these motions tolls AEDPA limitations after the expiration of 362 days

May 2, 2007 Superior Court denies Dec. 5, 2006 motions

May 25, 2007: Appeal of Superior Court order of May 2, 2007
        docketed in Delaware Supreme Court

January 25, 2008: Delaware Supreme Court affirms May 2, 2007
        order of Superior Court

**February 4, 2008**: Petitioner's pending federal *habeas corpus*
        petition [08-78(GMS)] filed by
        delivery to prison authorities

> AEDPA limitations tolled throughout appeal process

February 6, 2008: docketing of motion for reargument
        of Delaware Supreme Court decision
        of January 25, 2008

April 4, 2008: reargument denied without opinion

**II. Ground One: The Holding Of The Delaware Supreme That Petitioner's Rule 35(a) "Multiple Punishments" Double Jeopardy Claim Was Waived By Guilty Plea Is Contrary To *Menna v. New York***

**A. The Double Jeopardy Claim Is Exhausted And Is Not Procedurally Barred:** Petitioner's Double Jeopardy claim was presented to both the Superior Court and the Supreme Court of Delaware as a claim for relief based upon federal constitutional law in the same form as set forth in Petitioner's pending *habeas corpus* petition; this claim for relief is exhausted.(*see*, Appendix, A56 - A109; A124 - A208). SCRCrP Rule 35(a) provides that an illegal sentence may be corrected "at any time:" the Rule 35(a) remedy is thus open-ended and without an express procedural bar. *Defoe v. State,* 750 A.2d 1200 (Del., 2000). Indeed, it has been held that a motion under SRCCrP Rule 35(a) faces *no* procedural bars. *Fatir v. Thomas,* 106 F. Supp.2d. 572 (D. Del., 2000), at 582. Rule 35(a) therefore stands in contrast to SCRCrP Rule 61, see *Brittingham v. State, supra,* at 578, and SCRCrP Rule 35(a); *see*, *Jones v. State*, Del. Supr., No. 131, 2003 (May 5, 2003). Accordingly, there is no procedural bar in existing Delaware law to the relief sought by Petitioner in the *habeas corpus* challenge to the legality of his sentences.

The procedural history of *Porter v. State*, Del. Supr., No. 32, 2005, order (August 15, 2005) leaves no room for doubt about the absence of any procedural bar under SCRCrP Rule 35(a). In *Porter*, the defendant was initially sentenced in 1991 pursuant to a guilty plea. No direct appeal was taken from this first sentence order. Following a violation of the defendant's probation in 2001, he was resentenced and again did not appeal. Defendant next filed motions for post-conviction

relief under both SCRCrP Rules 35(b) and 61. Finally, in December of 2004 the defendant moved for correction of his sentence under Rule 35(a) on the basis of an *ex post facto* claim. The Delaware Supreme Court directed that his sentence be corrected despite the thrice repeated failure of the defendant to appeal before seeking Rule 35(a) relief. *See also*, *Pleasanton v. State*, 817 A.2d 791 (Del., 2003) [*ex post facto* claim under SCRCrP Rule 35(a) not waived by guilty plea conviction not directly appealed].

The Delaware Supreme Court has consistently held [even under the narrowest reading that it has given to SCRCrP Rule 35(a)] that an "illegal" sentence includes a sentence that is internally inconsistent; omits a necessary term; is uncertain or ambiguous as to any of its terms; violates Double Jeopardy; or is not authorized by the statute of conviction. *Brittingham v. State, supra*; *Smith v. State*, 751 A.2d 878 (Del., 2000); *Johnson v. State*, 758 A.2d 937 (Del., 2000); *Tatem v. State*, 787 A.2d 80 (Del., 2001); *Boyer v. State*, Del. Supr., No. 418, 2002 (August 4, 2003); *Monroe v. State*, Del. Supr., No. 407, 2003 (February 24, 2004).[6]

Nevertheless, and quite remarkably, in Petitioner's case the Delaware Supreme Court, ignoring its own line of precedents following *Brittingham v. State, supra*, and despite *Jones v. State, supra*, held that Petitioner's SCRCrP Rule 35(a) motion for correction of sentence Double Jeopardy claim was procedurally barred not by that rule's terms

---

[6] As this Court noted in *Fatir v. Thomas, supra*, however, the definition of "illegal sentence" under SCRCrP Rule 35(a) is more expansive than the above definition as according to *Fatir* it includes not only a sentence imposed contrary to the constitutional protection of Double Jeopardy but also an *ex post facto* law or a sentence contrary to the 8th Amendment ban on cruel and unusual punishments.

31

but by the SCRCrP Rule *61(i)(3)* "failure to docket a direct appeal" provision. The Delaware court did not explain how Rule 61(i)(3) had cross-application to a Rule 35(a) "motion to correct sentence" in its jurisprudence or cite any case in which Rule 61(i)(3) had previously served as authority for procedurally barring a Rule 35(a) motion. Moreover, given its numerous precedents holding that an "illegal sentence" within the meaning of SCRCrP Rule 35(a) unquestionably includes sentences imposed contrary to Double Jeopardy, *Brittingham v. State, supra*, the Delaware court did not explain how, suddenly, in Petitioner's case a Rule 35(a) Double Jeopardy claim was to be procedurally barred under SCRCrP Rule 61. Applying the quantitative standard made applicable to "adequate and independent" state procedural rules of decision by *Dugger v. Admas,* 489 U.S. 401 (1989), it is clear that the Delaware Supreme Court created a new procedural bar solely for application to Petitioner's case. A newly created procedural bar does not, under *Dugger,* foreclose federal *habeas* review. *See also, Ford v. Georgia*, 498 U.S. 411 (1991) (procedural rule adopted after petitioner's trial did not bar *habeas* review). As no potentially applicable procedural bar other than SCRCrP Rule 61 (i)(3) was actually relied upon by the Delaware Supreme Court to bar Petitioner's claim, its holding on procedural grounds does not bar the relief sought by Petitioner. *Coleman v. Thomas*, supra; *Ylst v. Nunnemaker*, 501 U.S. 797 (1991).

While the Delaware Supreme Court is free to torture its own precedents and court rules as a matter of state law, a state procedural rule invoked for the first time in a defendant's case does

32

not constitute an "adequate and independent" state rule of decision procedurally barring federal *habeas corpus* relief. *Reynolds v. Ellingsworth, supra; see also, Campbell v. Burris,* 515 F.3d 172 (3rd Cir., 2008).

**B. The Rule 35(a) Double Jeopardy Claim Attacks An "Illegal Sentence:"** The first grounds upon which Petitioner seeks *habeas corpus* relief is that the decision of the Delaware Supreme Court is contrary to clearly established federal law in *Menna v. New York*, *supra* that its decision fails to recognize that the Double Jeopardy protection of the United States Constitution (Amendment 5, cl.2) bars conviction and punishment of Petitioner on both Count 6 and Count 12 of the Superceding Indictment of April 23, 2003 in this case. A sentence imposed in violation of the Double Jeopardy protection has consistently been recognized as an "illegal sentence" within the meaning of SCRCrP Rule 35(a). *Brittingham v. State, supra,* and cases following – see footnote 6 *infra*.

**C. Double Jeopardy Bars Sentences On Both Counts 6 And 12:** Counts 6 and 12 of the Superceding Indictment (set forth above in full at p. 11 of this brief) involve a single act of Petitioner and allege precisely the same conduct as constituting two separate offenses – that is to say, the *face* of the Superceding Indictment contains two counts which allege the same facts – *precisely the same conduct on the same day* – as constituting the commission of *two* separate offenses.

When the same conduct of a defendant forms the basis for two separate offenses alleging identical charges brought by the same sovereign, the Double Jeopardy protection prohibits multiple

33

prosecutions. *Blockburger v. United States*, 284 U.S. 299 (1932). "When the same act violates two distinct statutory provisions the test to determine whether there are multiple offenses is whether each statute requires proof of an additional fact which the other does not." *Id.*, 284 U.S., at 304; see also, *United States v. Dixon*, 509 U.S. 699 (1993); *United States v. Beckett*, 208 F. 3d 140 (3rd Cir., 2000).

Double Jeopardy under the Federal Constitution, therefore, bars successive prosecutions for greater and lesser included offenses. *Rutledge v. United States,* 517 U.S. 292 (1996); *Payor v. Virginia*, 469 U.S. 1062 (1989); *Brown v. Ohio*, 432 U.S. 161 (1977).

The State has at no point contested Petitioner's assertion that the elements of the offenses alleged in Count 6 and Count 12 of the Superceding Indictment are *identical on their face*; that is, both allege that Petitioner possessed a deadly weapon while subject to a Family Court protective order in the same terms:

### COUNT 6 – POSSESSION OF A FIREARM BY A PERSON PROHIBITED
### 02-10-0929

**JOHN H. BENGE,** on or about the 20th day of October, in the County of Sussex, State of Delaware, did have in his possession a handgun, a deadly weapon as defined under 11 Del. C., §222(5), while being under a Family Court protection from abuse order, in violation of Title 11, §1448(a)(6) of the Delaware Code.

### COUNT 12 – CRIMNAL CONTEMPT – 03-04-1012

**JOHN H. BENGE,** on or about the 20th day of October, in the County of Sussex, State of Delaware, did commit the act of criminal contempt when the defendant knowingly violated or failed to obey any provision of a protective order issued by Family Court, to wit: the defendant possessed firearms, in violation of Title 11, §1271A of the Delaware Code.

Neither offense requires proof of a fact that the other offense does not. Prosecution and punishment for *both* offenses separately – *i.*

34

*e.*, *each count of the indictment* - is therefore barred under *Blockburger* and the State is constitutionally prohibited from imposing a dual penalty. *Ohio v. Johnson*, 467b U.S. 493 (1975).

**D. There Was No Waiver Of Petitioner's Double Jeopardy Claim:** The Delaware Supreme Court grounded its rejection of Petitioner's appeal to that court firmly upon the notion that a waiver of the Double Jeopardy protection - and hence the empowerment of the State to impose two punishments for one offense - occurred when Petitioner's counsel "waived" Double Jeopardy in connection with the entry of Petitioner's guilty plea.    However, the Delaware court did not cite *Menna v. New York*, the basis of Petitioner's Double Jeopardy claim, nor did that court suggest a basis to distinguish this case from the *Menna* rule.[7]

Any findings of fact made by the Delaware courts in connection with the conclusion that Double Jeopardy does not bar the sentences imposed on both Counts 6 and 12 of the indictment are not entitled to any presumption of correctness for purposes of federal *habeas corpus* review. *Daniel v. Warden, State Correctional Institution*, 794 F.2d 880 (3 Cir., 1986).

Whether Petitioner "waived" the Double Jeopardy protection is an issue of federal law in habeas corpus proceedings. *Brewer v. Williams*, 430 U.S. 387 (1977); accordingly, the findings and conclusions of the state court do not receive deference under 28 U.S.C. §2254(e)(1).

---

[7] The Superior Court did rely upon *Haskins v. State*, Del. Supr., No. 70, 1993, Moore, J. (September 7, 1993) and the Delaware Supreme Court relied upon *Hall v. State*, Del. Supr., No. 649, 2006 (October 30, 2007). Neither of these case, however, are *multiple punishment* Double Jeopardy cases; *Haskins* is a "retrial after appeal" case and *Hall* involves the constitutional legitimacy of punishments by separate state sovereigns, *i.e.*, Delaware and Pennsylvania.

The fact that Petitioner pleaded guilty to the offense now collaterally attacked is no bar to the Rule 35(a) relief sought: a guilty plea to separate counts in an indictment does not bar a later claim based upon Double Jeopardy where the counts in an indictment are facially duplicative. *Menna v. New York*, *supra,* (specifically noting reliance by the New York Court of Appeals on an alleged "waiver" of the Double Jeopardy claim: "We simply hold that a plea of guilty to a charge does not waive a claim that – judged on its face – the charge is one which the State may not constitutionally prosecute." *Id.,* ftnt. 2); see also, *Blackledge v. Perry*, 417 US 21 (1974); *United States v. Broce*, 488 U.S. 563 (1989); *United States v. Pollen*, 978 F.2d 78 (3rd Cir., 1992). Collateral estoppel arising as a result of the operation of the guilty plea precludes only a claim of Double Jeopardy in cases where a factual hearing would be necessary to determine whether the offenses were identical. *Menna v. New York, supra.* No such hearing has been suggested as necessary at any stage of this case. "Where the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." *Menna v. New York*, 423 U.S., at 62. One court has stated the controlling law in unambiguous terms: there is simply "no merit" to the contention that failure to object at sentencing results in a waiver of Double Jeopardy. *United States v. Blocker*, 802 F.2d 1102 (9th Cir., 1986). A sovereign is constitutionally barred from cumulative punishment, *Ohio v. Johnson*, *supra*, irrespective of any purported "waiver;" *Menna v.*

*New York, supra.* Petitioner may not, consistently with the Double Jeopardy protection, be punished for both the offense alleged in Count 6 and that in Count 12 and the guilty plea entered by Petitioner does not work a waiver of this constitutional protection. *United States v. Broce, supra; United States v. Pollen, supra.*

**E. Petitioner's Counsel's Mistaken Belief Does Not Trump The Double Jeopardy Protection:** Simply stated, counsel – *qua* counsel – for a defendant who is to be sentenced pursuant to a guilty plea is not empowered to vest the State with that authority which it is constitutionally denied from exercising – *i.e.*, to punish an individual twice for the same offense. Counsel's mistaken belief as to governing law does not constitute a "waiver" of the Double Jeopardy protection and counsel cannot authorize that which is otherwise denied to the State.

Approaching the question more analytically, a criminal defendant has certain rights that are deemed to be fundamental and therefore "personal" to the defendant and may be not be waived by counsel; *New York v. Hill*, 528 U.S. 110 (2000). As the *Hill* stated the matter, the nature of the right at issue determines whether the defendant must personally participate in a waiver of that right and what procedures must be followed to establish that the waiver was informed. See also, *Olano v. United States*, 507 U.S. 725 (1993) and *Florida v. Nixon*, 543 U.S. 175 (2004).

Cases recognizing the panoply of rights that a defendant must personally waive include *Johnson v. Zerbst*, 304 U.S. 458 (1938) (right to counsel); *Boykin v. Alabama*, 395 U.S. 238 (1968) and *Brookhart v.*

*Janis*, 384 U.S. 1 (1966) (what plea to enter); *Adams v. United States ex rel. McCann*, 317 U.S. 269 (1942). (right to a jury trial); *Florida v. Nixon, supra* (listing the right to testify as personal to the defendant), see also, *United States v. Pennycooke*, 65 F.3d 9 (3rd Cir., 1995) as to the right to testify as personal; *United States v. Gagnon*, 470 U.S. 522 (1985) (the right to be present during judicial proceedings); *Fay v. Noia*, 377 U.S. 391 (1963) (the right to appeal); and *Himmelfarb v. United States*, 175 F.2d 924 (9th Cir., 1949 (Double Jeopardy in retrial after mistrial).

The record in this case is devoid of any suggesting that Petitioner personally participated in any alleged "waiver" of the Double Jeopardy protection against multiple punishments or that the Superior Court made any effort to inform Petitioner of the nature of that right and the legal significance of any attempt to waive it – that is, purportedly vesting the State with the power to impose a punishment constitutionally denied to the State. Indeed, to state the nature of the colloquy that might be necessary to inform Petitioner of the effect of waiving Double Jeopardy demonstrates how no rational judge could proceed with such a sentencing.

The foregoing rights are all of a procedural nature and yet it has been unequivocally held that a defendant must personally waive these rights and that such rights may not be waived simply by counsel. The Double Jeopardy protection against multiple punishments is a substantive check upon the power of the state to punish an individual for a single offense by limiting that power to a single punishment. *Blockberger v. United States, supra*. Such a right is, surely, both

fundamental and personal – not subject to waiver by counsel as was purportedly done in this case. The Delaware Supreme Court's rationale, therefore, *i.e.*, that Petitioner's counsel expressly waived the Double Jeopardy protection against multiple punishments and cannot claim the benefit of that protection post-sentencing, does not square and cannot be reconciled with *Menna v. New York, supra.*

On Petitioner's direct appeal to the Delaware Supreme Court, the State relied upon an implicit waiver argument, reducing the Double Jeopardy protection to a pleading matter under SCRCrP Rule 12. In its appellate brief to the Delaware court, the State relied what it offered up as the practice under Rule 12 of the Federal Rules of Criminal Procedure ("FRCrP") as supporting the precept that preliminary defenses not raised by motion prior to trial are waived. However, the State's argument fails to take into account two aspects of practice under FRCrP Rule 12.

The first of those two aspects is that the FRCrP 12 includes a "good cause" exception. Thus, where a defendant has in fact failed to move prior to trial to dismiss multiplicious counts in an indictment, good cause exits to excuse that procedural default under FRCrP Rule 12 because enforcement of a Rule 12 based "waiver" of Double Jeopardy would result in a defendant serving an unconstitutional sentence contrary to the 5th Amendment. *United States v. Marino*, 682 F.2d 449 (3rd Cir., 1982). In other words, Double Jeopardy trumps any Rule 12 "waiver" of that protection.

Further, the Double Jeopardy issue in Petitioner's *habeas corpus* petition, as the State is well aware, is addressed to the multiple

sentences imposed upon Petitioner. Federal courts of appeal recognize, virtually universally, that FRCrP Rule 12 does not bar a defendant from asserting for the first time on appeal a Double jeopardy claim based upon *sentences* resulting from a multiplicious indictment. *See, e.g.,* in addition to *United States v. Marino, supra, United States v. Lankford,* 196 F.3d 563 (5th Cir., 1999); *United States v. Rosenbarger,* 536 F.2d 715 (6th Cir., 1976); *United States v. Morehead,* 959 F.2d 1489 (10th Cir., 1992); *and United States v. Mastrangelo,* 733 F.2d 793 (11th Cir., 1984).

Each of the above cases proceeded in District Court at the plea and sentencing stages on the implicit good faith belief of counsel that a waiver of the Double Jeopardy protection against multiple punishments could be effected. However, the Courts of Appeal held otherwise because of the nature of that right. The good faith of counsel, no matter how sincerely and affirmatively expressed, is insufficient to overcome the constitutional prohibition enjoining upon the state barring more than one punishment.

The practice employed by federal courts under FRCrP Rule 12 simply does not serve to defeat the Double Jeopardy protection as is urged upon this Court by the State.

Finally, the State has heretofore attempted to argue that Petitioner's case is analogous to *United States v. Weathers*, 186 F.3d 948 (D.C. Cir, 1999) in that the multiplicity defect in the Superceding Indictment of April 28, 2004 was a "curable" defect. The Delaware Supreme Court's opinion in this case references the distinction under SCRCrP Rule 12 of "curable" versus "non-curable"

defects in an indictment, although in the context of cases not involving dual punishments for the same conduct, citing *Hall v. State*, Del. Supr., No. 649, 2006 (October 20, 2007) (holding that separate prosecutions by Delaware and Pennsylvania were not constitutionally prohibited).

However, because the offenses alleged in Count 6 and Count 12 occurred at the same time and place and involved the same conduct, the State could not in fact "cure" the Superceding Indictment by alleging "different" conduct as constituting the offense charged in either count or "substituting" other criminal conduct in the indictment thus distinguishing this case from *United States v. Weathers, supra.* Unlike the instant case, the prosecution in *Weathers did not* concede that the several counts of the indictment were *facially* multiplicious. Beyond that, however, the key finding of the District of Columbia Federal Court of Appeals in *Weathers* was that, if the defendant in that case had filed a timely Rule 12 objection to the indictment, the Government could have "cured" the "defective" indictment by obtaining a superceding indictment replacing Count Four and Five of the indictment in *Weathers* "with three new counts for making threats…on three separate occasions" and Counts Three and Six "with five new counts."

In the instant case, unlike the situation in *Weathers*, the State has failed at every and any stage of this case to offer a suggestion as to how it might have "replaced" *any* counts in the Superceding Indictment of April 28, 2004. The State's failure to make such a showing of the ability to "cure" the Superceding Indictment through an amendment does not surprise because there *was no* "other" instance or

instances of alleged criminal behavior by Petitioner that the State could substitute for Count 12. The overriding fact in this case is that the prosecution was on a mission to bring any and all possible charges that could have been brought against Petitioner in the Superceding Indictment (which was the third indictment obtained by the State against Petitioner). The State simply overreached by charging Petitioner twice with one offense. *Weathers*, because of its central holding, is simply wholly inapposite to the State's implicit waiver argument.

Moreover, that the plea in this case was made pursuant to a plea bargain agreement is of little moment to either the express or implied "waiver" argument raised by the State in state court proceedings. The prosecutor did not dismiss any charges below pursuant to the plea agreement reached between the parties; it therefore cannot claim to have itself been overreached by Petitioner in the plea negotiations or in any other way prejudiced. *Cf., United States v. Herzog*, 644 F2d 713 (8th Cir., 1981)(plea bargain involved the dismissal of numerous counts of an indictment).

The prosecutor below had no reasonable expectation in *any* event that the plea agreement as to Count 12 would ultimately stand in light of both the Petitioner's pretrial motions and the trial judge's pointed questioning regarding the duplicate penalties at sentencing foreshadowed that the constitutionality of the dual punishment would be questioned.

The State's argument does, however, lend itself to an entirely different remedy than the imposition of a sentence in violation of

42

Double Jeopardy as sought by the State; rather than sustain an illegal sentence, the plea agreement reached below could simply be rescinded to deprive Petitioner of the benefit of both the plea agreement pursuant to which the State recommended a specific sentence *and* Double Jeopardy. While the remedy suggested by Petitioner – that the "illegal" part of the plea agreement calling for Petitioner to be sentenced for a multiplicious count should be excised – is consistent with the law of contracts in Delaware, *Abercrombie v. Davies*, 123 A2d 893, *cause remanded*, 130 A.2d 338, *on remand*, 131 A.2d 822 (Del. Ch., 1956), it is also well recognized that the state courts may also void the agreement in it entirety if its central purpose has been thwarted. *Id.* In any event, how the state courts chose to deal with the remedy to follow a writ of *habeas corpus* is an issue that this Court need not reach at this stage; it is sufficient to state at this point that a means exists to deprive Petitioner of any disadvantage visited upon the State in the guilty plea proceedings.

This Court's initial March 17, 2008 scheduling order in this matter (docket entry No. 7) includes paragraph 2f. directing the Respondents, in boldface type, to produce any parts of the record of proceedings in state court in this case that consist of responses to allegations by Petitioner of ineffective assistance of counsel. Because similar provisions are apparently not routinely included in initial scheduling orders entered by this Court in *habeas corpus* cases filed by state prisoners, Petitioner presumes to reach the conclusion that the Court's order may anticipate an exhaustion issue. However, as cases such as *Neville v. Butler,* 867 F.2d 886 (5th Cir., 1989) amply

demonstrate, Petitioner's *Menna* claim is not grounded upon a claim that Petitioner's counsel was ineffective in connection with the entry of Petitioner's plea of guilty or, indeed, otherwise. Because the Delaware Supreme Court held, in essence, that Petitioner was "estopped" to assert Double Jeopardy and that a "waiver" of the Double Jeopardy protection therefore resulted, all that Petitioner must demonstrate, as was done by the petitioner in *Neville*, is that the state court's holding that counsel's erroneous legal argument constituted a waiver is contrary to the settled constitutional principle of *Menna.* The fact that Petitioner did not expressly claim in the state courts that his counsel was ineffective is therefore not relevant to the *Menna* claim on *habeas corpus* as such a claim is superfluous to application of the constitutional precept of Double Jeopardy upon which relief is sought by Petitioner.

Under *Menna*, the Double Jeopardy protection stands as a firewall between Petitioner and the power of the State to impose multiple punishments. That constitutional barrier exists independently of any allegation of ineffective assistance of counsel; analysis under *Strickland v. Washington*, 466 U.S. 668 (1984) is not necessary predicate to the relief sought by Petitioner through his Double Jeopardy claim.

**F. Ground One Warrants *Habeas* Relief:** The judgment of conviction and sentence of the Superior Court under Count 12 of the Superceding Indictment are contrary to the Double Jeopardy protection against multiple punishments as clearly defined by the Supreme Court of the United States in *Menna v. New* York. Those rulings are "contrary to"

because in Petitioner's case, the Delaware Supreme Court reached a result substantially different than that of *Menna* on a materially indistinguishable set of facts. Despite the holding in *Menna*, the Delaware court concluded that Double Jeopardy could be waived by a guilty plea to facially duplicative counts of an indictment and that the state could therefore impose two punishments for what is but a single offense. The failure of the Delaware Supreme Court to cite *Menna* is a highly relevant factor in determining if that state court's decision is "contrary to." *Albrecht v. Horn, supra.*

Should this Court reach the issue of "unreasonable application," the conclusion that *habeas corpus* relief is warranted does not change: the Delaware courts correctly identified the precept that the Double Jeopardy protection may be waived in some cases but unreasonably extended that precept to a case involving facially duplicative indictment counts – contrary to *Menna v. New York.* It is possible that the Delaware court extended too far the language of the second footnote in *Menna* – "We do not hold that a double jeopardy claim may never be waived." However, the Court in *Menna* in that same footnote clearly limited the circumstances in which a waiver of Double Jeopardy could be affected and excepted those cases in which Double Jeopardy "stand[s] in the way of [a] conviction." Or perhaps the focus of the Delaware Supreme Court was on reconciling its denial of Petitioner's Double Jeopardy claim as a matter of state with the rule of *Downer v. State, supra*, in which that court held that a plea of guilty to a non-existent offense was valid.

45

In any event, here, just as was the case in *Menna*, the State may not punish Petitioner twice no matter how validly evidence of his guilt may be established. *Habeas corpus* relief is warranted on Petitioner's Ground One.

**III.   The   Enhanced   Sentences   Violate   The   *Apprendi/Blakely*   Rule Requiring Such Sentences To Be Based Upon Jury Verdicts Or Admitted Facts**

**A.   Petitioner's   Two   *Apprendi/Blakely*   Claims:**   Ground   Two   in Petitioner's *habeas corpus* petition actually presents two separate bases for federal *habeas corpus* relief because each of the sentences imposed upon Petitioner in this case were enhanced by the sentencing judge upon the basis of facts that were neither admitted by Petitioner nor found by a jury beyond a reasonable doubt contrary to *Apprendi* and *Blakely.* Ground Two is in fact a diptyph: the first distinct aspect is that the sentence imposed on the Count 6 felony possession of a deadly weapon offense was enhanced by the sentencing judge from the SENTAC presumptive   sentence   pursuant   to   11   *Del.   C.*   §4204(k)   (i.e.,   no diminution by goodtime or otherwise) on the basis of facts not tried to a jury or admitted; the second aspect is that the court below enhanced the misdemeanor contempt offenses from the SENTAC presumptive sentence of "up to 12 months Level II probation" to a greater offense level requiring a non-suspendable minimum sentence under 11 *Del. C.* §1271A(c) without jury findings of fact or admissions by Petitioner that were necessary to an enhanced offense level and sentence.

**B. Superior Court Rule 35 Is Not An "Adequate And Independent" State Rule:** Although on Petitioner's direct appeal the Delaware Supreme Court Sentences repeated as an alternative holding its nostrum that "*Apprendi* and its progeny do not impact Delaware's sentencing scheme…," *Benge v. State, supra*, slip opinion page 6, that court held that Petitioner's Ground Two *Apprendi/Blakely* claims were procedurally bared under SCRCrP Rule 35.

That holding, however, does not foreclose federal *habeas corpus* review as the issue whether SCRCrP 35 is an "adequate and independent" state procedural rule of decision is a question of federal law. *Lee v. Kemna*, 534 U.S. 362 (2002), at 375, citing *Coleman v. Thompson*, 501 U.S. 722 (1991), at 729. Resolving that question turns upon whether or not the practice of the Delaware Supreme Court in applying Rule 35 conforms to the quantitative, issue specific "consistently and regularly applied" standard of *Dugger v. Adams, supra, see Campbell v. Burris, supra*, and whether Rule 35 has been applied in the cases of defendants similarly situated to Petitioner. *Johnson v. Pinchak,* 392 F.3d 151 (3rd Cir., 2005). In its pre-1987 form, SCRCrP Rule 35 failed to pass the "adequate and independent" state rule test. *Reynolds v. Ellingsworth, supra*.

The Delaware Supreme Court's cases applying SCRCrP Rule 35 demonstrate that it is not an adequate and independent state rule because it has not been consistently and regularly applied in two respects: in the types of cases that are held to present "illegal sentence" claims and in the number of cases in which the procedural bar of Rule 35 has not been applied.

SCRCrP 35(a) was borrowed from the Federal Rules of Criminal Procedure. The Superior Court rule is the "functional equivalent" of its federal counterpart. *State v. Lewis*, 797 A.2d 1198 (Del., 2002). *See also, Brittingham v. State, supra* [citing case law under Federal Rule 35(a) to explain the scope of SCRCrP 35(a)] and *Harris v. State*, 410 A.2d 500 (Del., 1979) [SCRCrP Rule 35(a), like its federal counterpart, gives a defendant a last chance to correct a

"constitutionally infirm sentence"]. Federal Rule 35(a), itself now supplanted by statute, permitted correction of a sentence where the sentence was in excess of the penalty prescribed by relevant statutes; imposed multiple sentences for the same offense; or where the terms of the sentence were legally *or constitutionally* invalid. *Hill v. United States*, 368 U.S. 424 (1962). Procedural bars, other than *res judicata*, were inapplicable to former Federal Rule 35(a) practice. See, e.g., *United States v. Muzak*, 789 F.2d 580 (7th Cir., 1986).

Prior to the 1987 amendments, the Superior Court's Rule 35 addressed post-conviction remedies for both convictions and sentences. Former SCRCrP 35 expressly authorized the court to correct an "illegal" sentence that was imposed: in violation of constitutional or statutory constraints; by a court lacking jurisdiction; in excess of the maximum authorized by law; or was otherwise subject to collateral attack. *Gural v. State, supra.* (*Gural* has since been expressly held to continue as good law under the 1987 amendments to SCRCrP Rule 35; *see State v. Lewis, supra*]. The purpose of that rule was therefore to provide a remedy *in lieu* of *habeas corpus* and *coram nobis* "to the defendant who claims that his conviction was obtained *or his sentence imposed in violation of his constitutional guaranties*." *Johnson v. State, supra*, (emphasis supplied).

The 1987 amendments to the Superior Court Rules of Criminal Procedure replaced former Rule 35 in its entirety and adopted in its stead current SCRCrP Rules 35 and 61. The Delaware Supreme Court held in 1991 that the 1987 amendments to the Superior Court Rules of Criminal Procedure were "purely procedural" – *i. e.*, not substantive –

48

and that new Rule 35(a) remained applicable to "sentencing errors."
*Bailey v. State*, 588 A.2d 1121 (Del.,1991), at 1124. Rule 35(a) drew
the distinction for the first time between an "illegal" sentence and a
sentence "imposed in an illegal manner."

Post-1987, relief from an "illegal" sentence may be had "at any
time" while relief from a sentence imposed in an "illegal manner" is
subject to the 90 day time bar of Rule 35(b) – a rule that otherwise
addresses a "plea for leniency." *State v. Lewis, supra; see also
Hartman v. Carroll*, 492 F.3d 478 (3rd Cir., 2007). Current SCRCrP Rule
61(a)(1), by contrast, "…provides for relief on the ground that the
court lacked jurisdiction or on any other ground that is a sufficient
factual and legal basis for a collateral attack upon a criminal
sentence …" and may be resorted to only by a defendant who is "in
custody or subject to further custody for the particular sentence
being challenged." *State v. Lewis, supra.*

SCRCrP Rule 35 lacks organic definitions of the two types of
sentences it describes. Seemingly, Rule 35 on its face divides
sentences within its scope into those imposed contrary to a
substantive rule of law – "illegal sentences' – and those sentences
imposed by means of a process omitting a prescribed material step –
"legal sentences imposed in an illegal manner." Although the
distinction between "illegal" and "illegal manner" is "critical" for
purposes of applying Rule 35. *Wilson v. State*, Del. Supr., No. 549,
2005 (May 9, 2005), the Delaware Supreme Court has not recognized the
"substantive/procedural" distinction in its caselaw nor has it
attempted to adopt categorical definitions of either type of sentence.

49

The Delaware Supreme Court had held that the definition of an "illegal sentence" includes a sentence that was imposed contrary to constitutional guarantees. *Defoe v. State, supra: Johnson v. State*, 280 A.2d 712 (Del., 1971); *Gural v. State*, 243 A.2d 692 (Del., 1968); *Hodsdon v. State*, 239 A.2d 222 (Del., 1968); see also, *Fatir v. Thomas, supra,* F. Supp.2d, at p. 582.

Rather, the Delaware court has, beginning beginning in 1998with *Brittingham v. State, supra*, attempted to substantially constrain the scope of Rule 35 and held that the "narrow function" of SCRCrP Rule 35(a) is to correct a sentence that : i) exceeds the statutorily-authorized limits; ii) violates Double Jeopardy; iii) or "is ambiguous to he time and manner in which it is to be served, is internally contradictory, omits a term required to be imposed by statute, is uncertain as to the substance of the sentence, or is a sentence which the judgment of conviction does not authorize." 705 A.2d, at 578. [Although *Brittingham* cites to *Hill v. United States*, 368 U.S. 424 (1961) as one of the sources of the definition of illegal sentence in *Brittingham* omits *Hill*'s inclusion within that definition of an illegal sentence as one "where the terms of the sentence were legally or constitutionally invalid."]

Significantly, the *Brittingham* definition of "illegal sentence" under Rule 35 differs materially from the scope of review of a sentence on *direct appeal*: "unconstitutionality; factual predicates which are either false, impermissible, or lack minimum indicia of reliability, judicial vindictiveness, bias, a sentencing with a

'closed mind,' and any other illegality." *Siple v. State*, 701 A.2d 79 (Del., 1997).

The fundamental flaw in the Delaware court's "illegal sentence" definition – the attempt to "read out" constitutionally flawed sentences from the scope of Rule 35 – has led to incongruities in the cases following *Brittingham*. Because the *Brittingham* definition would facially exclude racial and religious bias from the scope of Rule 35 review (but not review on direct appeal) as well as other constitutional bases for correction of sentence, the Delaware court has been left to correct constitutionally flawed "illegal" sentences on an *ad hoc* basis. For example, in *Porter v. State*, *supra*, the Delaware court in an appeal from denial of SCRCrP Rule 35(a) motion summarily corrected a sentence that violated the constitutional prohibition against *ex post facto* laws but without reference to the *Brittingham* formulation. Similarly, in *Capano III*, the Delaware Supreme Court, applying *Apprendi* but again not citing *Brittingham*, held that a "constitutional flaw" in sentencing procedure required that a sentence be vacated regardless of the validity of the underlying conviction. *Capano v. State*, Del Supr., No. 131, 205 (January 10, 2005) ("*Capano III*") slip opinion, p. 4.

*This* Court has also noted that 8th Amendment claims are included with the scope of Rule 35(a). *Fatir v. Thomas, supra,* suggesting by that decision the unrealistic narrowness of the *Brittingham* formulation of "illegal sentence" as it omits constitutionally prohibited punishments.

Notwithstanding its precedents, the Delaware court chose in Petitioner's case (although not in at least two other cases asserting a similar 6th Amendment attack on a sentence – see below) to identify Petitioner's *Apprendi/Blakely* Ground Two as asserting a claim challenging not an "illegal sentence" but a "legal sentence imposed in an illegal manner" – thus triggering the procedural bar of SCRCrP Rule 35. This required the Delaware court to adhere to the *Brittingham v. State, supra*, restrictive and highly selective definition of "illegal sentence" as being limited to the *Brittingham* definition of "Double Jeopardy/ambiguous/incomplete/unauthorized" sentences.

A sentence imposed contrary to the 6th Amendment and a state constitutional right to trial by jury is quite simply more than just a "sentence imposed in an illegal manner." *Apprendi* (enhanced sentence represented an "unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system")and *Blakely*, as well as the Supreme Court's reasoning as far back as *Jones v. United States*, 526 U.S. 277 (1999) (issue of "sentencing provisions" presents a "serious constitutional question") *Ring v. Arizona*, 536 U.S. 584 (2002)(rejecting a "meaningless and formalistic" approach to 6th Amendment violations in sentencing) and *Cunningham v. California*, __U.S.__ (2007), all clearly establish that "because the [state's] sentencing procedure did not comply with the Sixth Amendment, [the] sentence is *invalid*" (emphasis supplied) not just procedurally flawed because the right to jury trial is "no mere procedural formality." *Blakely v. Washington, supra*. A judge thus "acquires [the] authority" in a *Blakely* 6th Amendment sense, and under *Brittingham v. State,*

*supra*, to exceed a SENTAC presumptive sentence only when a jury's verdict or admitted facts permit the exercise of that authority: a contrary sentence is "unconstitutional." *Id.*

A sentencing judge in Delaware may impose a sentence outside the SENTAC presumptive sentences if there are "substantial and compelling reasons justifying an exceptional sentence." *Boo'ze v. State*, Del. Supr., No., 331, 2003 (March 3, 2004), slip opinion, p. 9; accord, *Wilson v. State, supra*, slip opinion, ftnt. 2, page 9. To hold, as the Delaware Supreme Court has done in this case, that a sentence imposed in violation of *Apprendi/Blakely* is a "legal sentence" that was merely imposed in an "illegal manner" marginalizes the 6th Amendment right to jury trial in Delaware sentencing and reduces the right to jury trial to a "mere procedure" contrary to the express holding in *Blakely*. In short, there is no principled way in which a sentence imposed contrary to the jury trial right is a "lawful sentence imposed in an illegal manner." Significantly, other states that have adopted the federal Rule 35 post-conviction remedy model have unhesitatingly recognized a sentence violative of *Apprendi/Blakely* as an "illegal sentence." *See, e.g., Cleveland v. Alaska*, Ak. Supr., No. A-9054 (August 25, 2006).

Because the Delaware precedents are unclear and unevenly applied, the triggering event for the application of the Rule 35 procedural bar in Petitioner's case - *i.e.*, the use of the restrictive non-constitutional claim *Brittingham* definition - must be taken into account in any determination as whether that procedural bar is "independent and adequate."    The Delaware court's practice does not support a conclusion that Rule 35 is "consistently and regularly"

applied and is therefore contrary to the *Dugger/Campbell and Johnson v. Pinchak* standards.

The Delaware court's narrow and restrictive construction of SCRCrP Rule 35 contrary to its own precedents and the precedents of this Court creates what is perhaps an unintended problem in a case presenting an *Apprendi/Blakely* claim. The Third Circuit Court of Appeals has reflected upon the interplay of the 90 day time limit of SCRCrP Rule 35 with the jurisdictional 30 day direct appeal limitation applicable to Delaware Supreme Court practice. *Hartman v. Carroll, supra*. The Third Circuit concluded that, given the 90 day limit of Rule 35, "most defendants" who file a Rule 35 motion "will do so during the pendency of a direct appeal." *Hartman v. Carroll*, slip opinion, p. 10. Whether this conclusion is empirically valid or not may be open to question; however, as the Delaware Supreme Court has held that a motion for post-conviction relief that is filed in Superior Court during the pendency of a direct appeal to the Delaware Supreme Court is subject to dismissal by the Superior Court on *jurisdictional* grounds, *Jones v. State*, Del. Supr., No. 665, 2002, (May 30, 2003), the point is moot.

States are under no constitutional obligation to provide a post-conviction remedy to criminal defendants. *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Accordingly, because Rule 35, as construed by the Delaware Supreme Court with respect to *Apprendi/Blakely* based claims, creates a 90 procedural bar for a remedy that may not be availed during the pendency of a direct appeal and is not tolled by the pendency of a direct appeal, the issue arises whether Delaware

54

procedure provides any "corrective process" at all within the meaning of 28 U.S.C. §2254(b) for *Apprendi/Blakely* based claims - or, indeed any other constitutionally based sentencing claims other than Double Jeopardy, ambiguous or incomplete sentence, or "sentences not authorized by statute." Because exhaustion is not a jurisdictional *habeas corpus* requirement, *Granberry v. Greer*, 481 U.S. 129 (1987), the Delaware court's construction of Rule 35 creates an issue for this Court requiring an inquiry of an entirely nature - whether no post-conviction remedy is available in Delaware practice for *Apprendi/Blakely* claims. The Delaware court's highly selective extension of Rule 35 relief to only certain constitutionally based claims and its exclusion of 6th Amendment jury based claims from the scope of Rule 35 "illegal sentences" cannot escape the impact of 28 U.S.C. §2254(b).

Petitioner is of course aware of the rulings of this Court upholding as the Delaware SENTAC sentencing guidelines scheme as a "reasonable application" of *Blakely* in *Benge v. DeLoy*, No. 05-0550(GMS), June 22, 2007, Sleet, J. (D. Del) *Benge v. DeLoy*, No. 05-0551(GMS), July 2, 2007, Sleet, J.(D. Del), and the order of the Court of Appeals upholding that ruling in 05-050(GMS)[8], and in the former of those two decisions finding that a challenge to a sentence based upon an enhancement resulting form the exercise of Petitioner's 1st

---

[8] Petitioner submits that the recent decision in *Martini v. State*, Del . Supr., No. 643, 2006 (December 21, 2007) (violation of probation sentence vacated "because the judge deviated from the sentencing guidelines without any explanation," slip opinion, p. 2; 10) substantially undermines the Delaware caselaw basis of the opinion of this Court in No. 05-0551(GMS) as *Martini* cannot be reconciled with *Via v. State*, Del. Supr., No 154, 2001 (August 20, 2001) a decision relied upon by this Court in its opinion in No. 05-0551(GMS).

Amendment rights is imposed only in an illegal manner and thus subject to the 90 time bar of SCRCrP Rule 35(b).

However, *Apprendi/Blakely* present multifaceted aspects of the role of the 6th Amendment in sentencing. The *Apprendi/Blakely* claims that Petitioner asserts in his Ground Two for relief include but also go beyond a challenge to Petitioner's sentences based upon the fact that those sentences exceed the SENTAC guidelines – Ground Two also asserts the claim that the sentencing judge enhanced the statutory degree of the offense as was done in *Apprendi*.

*Dugger v. Adams, supra*, and *Campbell v. Burris, supra*, unequivocally hold that the standard against which a state procedural bar must be measured is a quantitative, issue specific one. Because the Delaware Supreme Court applied the 90 day procedural bar of Rule 35(b), made applicable by the second part of Rule 35(a),[9] only after it applied the restrictive non-constitutional claim *Brittingham* definition of "illegal sentence," it is the practice under both sections of Rule 35 that analyzed in light of *Dugger/Campbell*.

Applying the *Dugger/Campbell* standard to the procedural bar of Rule 35(b), it is clear that that bar has not been "consistently" or "regularly" applied. *Brittingham v. State, supra*, involved a due process-based Rule 35(a) motion filed 16 months after sentencing; the Delaware court did not apply any procedural bar. In *Gaines v. State*, 571 A.2d 765 (Del., 1990), the initial, if nascent, due process challenge to a departure from the SENTAC presumptive sentences, the

---

[9] The decision of the Delaware Supreme Court does not purport to apply the procedural bars of Rule 61 to Petitioner's Ground Two.

defendant filed a Rule 35(a) motion 6 months after sentencing. The Delaware Supreme Court decided the case on the merits without reference to the 90 day procedural bar of Rule 35.

Following *Gaines*, the Delaware court has decided numerous cases in which "correction of sentence" claims were determined on the merits and where the procedural bar of Rule 35 would have been applicable yet was *not* relied upon or *even cited* by the court. In *Garnett v. State*, Del. Supr., No. 529, 1998 (April 9, 1998) (11 month delay in filing of motion after sentencing), *Marshall v. State*, Del. Supr., No. 339, 1998 (November 20, 1998) (motion one year after sentencing) and *Johnson v. State*, Del. Supr., No. 122, 2000 (August 1, 2000), (motion approximately two years after sentencing), the court decided a constitutionally based due process claim on the merits [the claim in *Johnson* was later the subject in this Court in *Johnson v. Williams*, No. 00-851(JJF) (D. Del., February 16, 2001) where the *habeas corpus* petition was dismissed for failure to exhaust, not on a procedural bar or failure to state a federal constitutional claim].

In *Monroe v. State*, *supra*, [Rule 35(a) motion based upon due process claim delayed one and one-half years after sentence); *Hamilton v. State*, Del. Supr., No. 576, 2002 (August 4, 2003)(Rule 35 motion to correct filed 14 years after sentence); *Boyer v. State*, Del. Supr., No. 418, 2002 (August 4, 2003) (6th Amendment claim filed 6½ years after sentencing); *Revel v. State*, Del. Supr., No. 273, 2003 (August 11, 2003) (due process miscalculation of sentence claim delayed for approximately one year after sentence); *Evans v. State, supra* (22 year delay in the filing of a Rule 35 motion following sentencing); *Porter*

*v. State*, *supra* [Rule 35 (a) motion based upon *ex post facto* claim delayed three years after sentence first imposed]; *Deshields v. State*, Del. Supr. No. 604, 2005 (June 6, 2006) (due process based motion delayed seven years); and *Weatherspoon v. State*, Del. Supr. No. 336, 2006 (October 17, 2006) (due process based motion delayed six years), the Delaware Court did not procedurally bar the delayed motion to correct under Rule 35 or otherwise and decided each of those cases on the merits, granting affirmative relief to the defendant in two of those cases.

With respect to motions to correct based specifically on constitutional claims attacking sentences enhanced above the SENTAC presumptive sentences, the Delaware Supreme Court did not procedurally bar such a claim in either *Schmitz v. State*, Del. Supr., No. 226, 2002 (August 27, 2002) (approximately 2 year delay in filing motion) [defendant Schmitz later presented his constitutional claim based upon departure from the SENTAC guidelines to this Court in a *habeas corpus* petition decided in *Schmitz v. Carroll*, No. 02-1527(GMS) (D. Del., October 7, 2003) - this Court did not hold that the *Schmitz* sentencing claim was procedurally bared but dismissed the claim as failing to present a federal constitutional issue] or *Shabazz v. State*, Del. Supr., No. 545, 2004 (June 14, 2005)(approximate 4 year delay in filing motion after sentencing). Rather, the Delaware Court decided both of these cases on the merits without reference to any procedural bar. [The *Apprendi/Blakely* claim in *Wilson v. State*, *supra*, was procedurally defaulted under Delaware Supreme Court Rule 8 because it had not been presented to the court below; *Wilson* raised

*Apprendi/Blakely* for the first time on his appeal. Rule 8 is not at issue in Petitioner's case].

Indeed, it was not until the post-*Blakely*, post-*Booker*, decision in *Colon v. State*, Del. Supr., No. 572, 2005 (May 12, 2006) that the Delaware Court first applied the Rule 35(b) 90 day bar to an *Apprendi/Blakely* claim or to any constitutionally based challenge to enhanced sentences under Rule 35(a).

Under the *Dugger/Campbell* quantitative standard and *Johnson v. Pinchak, supra*, the procedural bar of Rule 35(a) does not foreclose federal *habeas corpus* review because it is not a "consistently" and "regularly" applied state procedural rule of decision and has not been applied to the cases of defendants similarly situated to Petitioner. A *Dugger/Campbell* quantitative analysis reveals that since 1990, the Delaware Supreme Court did not apply the procedural bar of SCRCrP Rule 35 in at least fifteen cases through *Shabazz* collaterally attacking sentences on constitutional grounds where that court *could* have applied the bar of Rule 35 because of the lapse of more than 90 days and the absence of any articulable "extraordinary circumstances" within the meaning of Rule 35(b). Post-*Apprendi/Blakely*, the Delaware court rule did not apply the procedural bar of SCRCrP Rule 35(a) in two cases specifically raising a constitutional claim based upon a sentence enhanced above the SENTAC presumptive sentences – *Schmitz* and *Shabazz.*

Prior to the Superior Court denying Petitioner's Ground Two in May of 2007, the Delaware courts had procedurally barred an *Apprendi/Blakely* claim only in *Colon* [*Quandt v. State, supra,* is post-

59

May 2007, the date of the Superior Court decision on Petitioner's Rule 35 motion, and therefore is not taken into account for purposes of a "consistently and regularly applied" determination; *Ford v. Georgia*, supra; *Lee v. Kemna*, 534 U.S. 362 (2002) – a procedural bar initially recognized after a defendant's case is decided does not foreclose federal *habeas* review]. The *Dugger/Campbell* "score"? –    Respondents lose: non-procedurally barred cases: 2, procedurally barred cases: 1. A full 66% of the *Apprendi/Blakely* Rule 35 cases decided by the Delaware court were not procedurally barred. Such a record fails to even approach the "vast majority" of cases standard envisioned by *Dugger v. Adams*.

[Petitioner believes that *Brown v. State,* Del. Supr., No. 196, 2002 (October 10, 2002), a case presenting an *Apprendi/Blakely* challenge to a sentence, also came before the Delaware Supreme Court on a SCRCrP Rule 35(a) motion although the opinion in that case does not reveal its procedural posture. The Superior Court opinion, not available to Petitioner, would, of course, confirm whether the defendant in *Brown* filed a Rule 35(a) motion. If so, because *Brown* did not involve the procedural bar of Rule 35, the percentage of *Apprendi/Blakely* Rule 35 cases in which no procedural bar was applied reaches 75%]

Simply stated, the Delaware Supreme Court decision employing the procedural bar of SCRCrP Rule 35 in Petitioner's case resulted in that case being decided in a manner that is inconsistent with that court's decisions in the cases of other defendants similarly situated to Petitioner; that renders the procedural bar of SCRCrP Rule 35

inapplicable under *Dugger/Campbell* and *Johnson v. Pinchak, supra*. The Delaware court not only applied the definition of "illegal sentence' – the trigger to the procedural bar – in an inconsistent manner, but also applied the 90 day bar in Petitioner's case in a manner distinct from similar cases.

**C. Procedural Bars Are Inapplicable: "Cause" And "Prejudice" And "Actual Innocence" Are All Present In This Case:** Any state procedural bars are inapplicable to Petitioner's Ground Two claim as "cause" and "prejudice" are both present in the circumstances of this case.

**1."Cause:"** "Cause" is present as to Petitioner's Rule 35(a) Ground Two claim as the Delaware Supreme Court did not recognize the *Apprendi* principle that underlies Claim Two until the 2005 decision in *Capano III* [*Capano v. State,* Del. Supr., No. 131, 2005 Ridgely, J. (January 10, 2006); the "…jury must unanimously find a statutory aggravating circumstance."] which was decided well after the entry of Petitioner's 2004 sentence order.

Prior to *Capano III*, the Delaware Supreme Court consistently foreclosed operation of the jury trial right in Delaware's sentencing scheme, expressly rejecting *Apprendi* and what the Court viewed as its "too formalistic… not bearing on any issue in this case" approach. *Capano II* [*Capano v. State*, 781 A.2d 552 (Del., 2001)]. The Delaware court continues to reject *Blakely's* applicability to presumptive sentences under 11 Del. C. §2404(m); *see, e.g., Quandt v. State*, Del. Supr. No., 28, 2007 (August 3, 2007) *reargument denied* (September 20, 2007).

When a state's highest court has ruled unfavorably on a claim involving materially identical issues to that raised in a federal *habeas corpus* petition – and there is no plausible reason to believe that a "replay will persuade the court  to reverse its field" – the "futility" doctrine establishes "cause" excusing a procedural default. *Lines v. Larkin, supra; see also Johnson v. Pinchak, supra; Smith v. Horn*, 120 F.3d 400 (3rd Cir., 1997) *cert. denied* 522 U.S. 1109 (1998). "Futility" is a corollary to the "novelty" doctrine constituting "cause." *Engle v. Isaac*, 456 U.S. 107  (1982); *Reed v. Ross*, 468 U.S. 1 (1981).

**2. "Prejudice:"** "Prejudice" is present as Petitioner's sentence, as imposed, is more severe and, as corrected, will be less so, *i. e.*, probation not incarceration. *Cf., Blackwell v. State,* Del. Supr., No. 53, 1999, Holland, J. (September 10, 1999).

**3. "Actual Innocence:"** See Argument VI herein.

**D. Each Sentence Violates *Apprendi/Blakely*:1). The Use of §4204(k):** The Level V sentence of imprisonment for the offense of possession of a deadly weapon under a Family Court protective order was made subject to 11 *Del. C.* §4204(k) and Petitioner was therefore denied any diminution of that sentence for earned goodtime; January 20, 2004 sentence order, page 1.(Appendix, A37-43, docket entry no. 34) Use of §4204(k) is not only a sentence enhancement above the SENTAC presumptive sentence, it also increase the otherwise applicable sentence by the amount of time that would have been credited to reduce the sentence; *see* ¶34 of the SENTAC statement of policy in the Truth In Sentencing Benchbook (2001) which states that:

> Because such sentences add significant complexity to the
> management of the population of incarcerated offenders,
> and, if used indiscriminately, would substantially increase
> the prison population, Section 4204(k) should be used by
> judges only in exceptional circumstances.
>     Since imposition of a sentence pursuant to 11 Del. C., sec.
> 4202(k) is, in effect, a departure from the presumptive
> sentencing guidelines, the reason for use of Sec 4204(k) must be
> stated on the record and included in the sentencing order.

The sentencing judge enhanced Petitioner's sentence by use of §4202(k) on the basis of facts not found by a jury or admitted by Petitioner, i.e., that the sentence was required to prevent "undue depreciation of the offense." (Corrected sentence order, Appendix A37-43).

**2). Enhancement To The Non-suspendable Minimum §1271A (c) Sentence:** The sentences imposed in both Count 6 and Count 12 of the indictment for the two alleged violations of the offense of criminal contempt of a Family Court protective order were enhanced from "up to 12 months Level II probation" to a fifteen day non-suspendable minimum Level V sentence pursuant to 11 Del. C. §1271A (c) (see January 20, 2003 Sentence Order, page 2, Appendix, A38).) which states that the fifteen day minimum sentence follows findings of fact as follows:

    (c) a person found guilty of criminal contempt of a domestic
violence protective order shall receive a minimum sentence of 15 days
incarceration if:
                (1) Such contempt resulted in physical injury; or
                (2) Such contempt involved the use or threatened
                    use of a deadly weapon; or
                (3) The defendant was convicted of criminal contempt
                    of a domestic violence protective order under this
                    section on 2 or more occasions prior to this offense.

Enhanced penalties for violation of 11 *Del. C.* §1271A are also applicable when:

> children are present during the crime OR are the victims of the
> offense; against a co-defendant if a conspirator was under the
> age of 14 and the codefendant was 4 or more years older that the
> child at the time of the crime.
>                     TIS Benchbook 2001, p. 46,
>                     "Special Domestic Violence Category."

The sentences on each of the criminal contempt offenses were enhanced contrary to both *Apprendi* and *Blakely*: *Apprendi* because as with the New Jersey hate crime in *Apprendi*, not all of the facts necessary to the enhanced penalty under §1271A(c) were tried to a jury or admitted and *Blakely* because the sentence was enhanced pursuant to §1217A (c) by statute (not the SENTAC guidelines) on the basis of facts not charged in the Superceding Indictment and therefore not admitted by Petitioner. This Court's previously decided *Blakely* cases do not impact the enhanced sentence imposed in this case under §1271A(c).

In this case, the specific facts necessary to enhancement of the §1271A(c) offense - those facts set forth in that statute or the SENTAC Benchbook - were not alleged in the indictment and never so much as mentioned in passing by the prosecution at either the plea or sentencing proceedings. Under *Apprendi*, the penalty enhancement was contrary to the right to jury trial.

Neither the precedents of this Court nor the caselaw of the Delaware Supreme Court refusing to apply *Blakely v. Washington* to the presumptive sentence scheme established by 11 *Del. C.* §4204(m) do not impact Petitioner's Ground Two claim under §1271A(c) because that claim is an *Apprendi* claim as it involves an enhanced offense level.

The Delaware Supreme Court cited *Harris v. United States*, 536 U.S. 563 (2002) and *Brown v. State*, Del. Supr., No. 196, 2002, order

(October 10, 2002) as supporting its alternative ruling that Petitioner's *Apprendi* claim was without merit. *Benge v. State*, __ A.2d __ (Del., 2008), slip opinion, page 3.

*Harris v. State*, supra, does not "refine *Apprendi*" as suggested by the Delaware court. Rather, *Harris,* applying a series of statutory construction principles and Federal Sentencing Guideline provisions specific to the issue involved in that case, determines that 18 U.S.C. §924(c)(1)(A) defines but a single offense and that subdivisions (i), (ii), and (iii) of that statute alter *only the minimum* sentence to be imposed. Therefore, the *Harris* Court held, because the sentencing judge could have sentenced defendant Harris to a sentence "well in excess" of the minimum, the subdivisions of 18 U.S.C. §924(c)(1)(A) do not effect the maximum penalty and therefore were intended by Congress as sentencing factors and not as elements of an enhanced offence. The Court reaffirmed *Apprendi's* holding that any fact "extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime." In short, *Harris* is specific to §924(c)(1)(A) and can be reasonably extended only to cases where an increased penalty is statutorily authorized for use or "brandishing" of a weapon.

The Delaware court in the case at bar did not conduct an analysis similar to that set forth in *Harris*. It did *not* find that the subdivisions of §1271A (c) (1), (2) and (3) are merely "sentencing factors" and do not create enhanced offenses. Indeed, the Delaware court did not purport to address at all whether those subdivisions create separate crimes or are "sentencing factors." And the Delaware

65

court is familiar with the offense elements/sentencing factors distinction; in *Capano v. State, supra*, the court found that statutory aggravating circumstances "operated as the functional equivalent of an element of a greater offense" and were not "merely sentencing factors." An application of *Harris* requires the predicate finding that aggravating factors are not elements of a greater offense – that conclusion is not presumed in the absence of a finding that such factors are simply sentencing factors. This Court is therefore left to only speculate as to whether the Delaware court's citation to *Harris* somehow implies that it found §1271A to create but a single crime. *Brown v. State*, *supra*, also relied upon by the Delaware court, is unavailing to its holding in Petitioner's case because it involved a sentence enhanced based upon a prior conviction – a fact specifically exempted from the scope of the *Blakely* holding.

It is not surprising that the sentencing judge did not treat the subdivisions of §1271A as sentencing factors – the 20001 SENTAC Benchbook supports the notion that those subdivisions speak to separate offenses: the enhanced sentences under §1271A apply to "criminal *charges* involving domestic violence…which may be considered as deserving aggravated punishment in that the actions have been repetitive prior to the first formal charge in Court." (emphasis supplied. SENTAC Benchbook, 2001, p. 46

What *is* clear is that the *sentencing judge* did *not* treat §1271A (c) (1), (2) and (3) as sentencing factors for purposes of sentencing Petitioner. Rather, the Superior Court recited in its sentencing order that Petitioner's sentence was being enhanced based upon "undue

depreciation of the offense" and the fact that Petitioner was at the time of the offense subject to a Family Court order – an element of the offense involved – (without, of course, any explanation as to what facts justified such aggravating factors or, indeed, just how either factor had application to the case). See, sentence order of January 20, 2003 (Appendix, pp.A-38; 40; 42). The sentencing order makes no reference to which of the three §1271A (c) factors, if any, had application.

In fact, unlike the District Court sentencing proceeding in *Harris*, the Superior Court sentencing judge conducted no hearing on the §1271A (c) factors and did not specify any applicable standard of proof. The enhancement to Petitioner's sentence above the SENTAC presumptive sentence was not based upon any of the three §1271A (c) factors. In short, the sentencing judge himself did not treat the three §1271A (c) factors at all as if they were in fact sentencing factors.

Moreover, *Harris* does not address Petitioner's claim that the enhanced sentences – in excess of the SENTAC guidelines and not subject to diminution under §4204(k) – imposed upon Petitioner are contrary to *Apprendi/Blakely*; that argument was not addressed by the Delaware Supreme Court's opinion. Because the *Apprendi/Blakely* precept is a "bright line rule" and because the Delaware court's rationale is unavailing to the issue, constitutional doubt about the sentence, the genesis of the precept in *United States v. Jones, supra*, requires that Petitioner's sentences be voided.

Each of the sentences imposed in this case was enhanced above the SENTAC presumptive sentence or, with respect to the §1271A offenses, enhanced as to offense level, on the basis of facts that were neither charged in the Superceding Indictment, tried to a jury and proven beyond a reasonable doubt, nor admitted by the Defendant as part of the plea process. Those sentences were therefore imposed contrary to the right to trial by jury of the United States and must be vacated as illegal sentences.

After obtaining an indictment under 11 Del. C. §1271A for criminal contempt of a Family Court order that did not include any of the three aggravating factors of §1271A(c) and thereafter securing Petitioner's agreement to plead guilty to the offense charged, the prosecutor in Petitioner's case, like the prosecutor in *Apprendi*, "switched gears" at sentencing. Despite the absence of allegations in the Superceding Indictment relating to such aggravating factors, or a hearing before a jury on those factors, or admission by Petitioner of facts relating to those factors, the sentencing judge enhanced the sentences imposed upon Petitioner by sentencing him to a 15 day minimum term of imprisonment and by ordering that Petitioner's sentence not be reduced by goodtime. Such sentences exceeded the SENTAC presumptive sentence and were based on two aggravating factors *de hors* §1271A(c).

The decision of the Delaware Supreme Court in Petitioner's case is "contrary to" federal law as established by the decision of the United States Supreme Court in *Apprendi* and *Blakely* because that decision does not observe *Blakely's* "bright line" and permits a

Delaware sentencing judge to impose an enhanced sentence on the basis of facts neither charged in the indictment, proven to a jury beyond a reasonable doubt, nor admitted by the defendant contrary to the 6th Amendment right to trial by jury. "That should be the end of the matter" – *Cunningham v. California*, __ U.S.__ (2007)*, citing *Blakely v. Washington, supra*. The Delaware court cited *Harris v. United States, supra*, to support its conclusion that "*Apprendi* and its progeny do not impact Delaware" – not to distinguish elements of an offense from sentencing factors or to support a "reasonable application" of *Apprendi/Blakely*. The sentencing judge impose an enhanced sentence upon Petitioner based on facts not found by a jury and differing from the statutory offense level elevating aggravating factors. *Habeas corpus* relief is therefore appropriate on Petitioner's Ground Two.

**IV. The Record Reflects Such Confusion As To Which Felony Petitioner Was To Plead Guilty And As To The Applicable Maximum Sentences As To Render Defendant's Pleas Involuntary Under *Brady v. United States***

Petitioner's Ground Three is a 5th Amendment based claim that results from the confusion at Petitioner's plea and sentencing proceedings reaching such a level as to the elements of the offense involved and the maximum penalties applicable thereto that Petitioner's plea was rendered involuntary under *Brady v. United States*, 397 U. S. 742 (1970.

**A. Cause, Prejudice And Actual Innocence: Petitioner's Ground Three Involuntary Plea Claim:** Under federal law, "cause" – something "external" to the defense – may be established by conduct of the prosecutor. See, e.g., *Murray v. Carrier*, 477 U.S. 478 (1986); *Amadeo v. Zant*, 486 U.S. 214 (1988); *Newell v. Hanks*, 283 F.3d 827 (7th Cir., 2002); and *Dorman v. Wainwright*, 798 F.2d 1358 (11th Cir., 1986). Conduct attributable to the State that impedes access to the facts necessary to assert a claim constitutes "cause." *Strickler v. Green*, 527 U.S. 263 (1999).

The confusion at Petitioner's plea and sentencing proceedings rose to such a level as to render it capable of being represented graphically – Table A, overleaf from page 18 of this brief, depicts that confusion: the area in blue identifies references to the Class D felony, the areas in buff, references to the Class F felony.

**1. "Cause" In The Instant Case:** In the case at bar, Rule 61 (i) (1) (A) "cause" is present as to Petitioner's Ground Three as a result of circumstances brought about by the conduct of the prosecutor in

connection with the plea proceedings – *i. e.*, matters "external" to the defense.

As a matter of due process, the *prosecutor*, not the Petitioner, is chargeable under due process with creating the confusion surrounding the plea agreement in this case. *United States v. Gebbie*, 294 F.3d 540 (3rd Cir., 2002). The prosecutor did not seek to correct the errors, now acknowledged to exist by all concerned, in the TIS guilty plea form; the prosecutor did not state the degree of the offense on the record at sentencing (i.e., whether a Class D or Class F felony); the prosecutor did not at sentencing state – accurately or otherwise – the maximum penalties applicable to the offenses for which Petitioner was to be sentenced; the prosecutor created the misnomer of the offense in Count 6 of the indictment; and the prosecutor did not lend her voice to clarify the confusion as to the charge other than to belatedly and confusingly "move to amend" the name of the felony offense in the indictment. Even had the prosecutor done as much as state that the Petitioner was to be sentenced after pleading "guilty as charged," the confusion would not have been ameliorated because of the misnomer of the offense and the section of the Delaware Criminal Code under which Petitioner was to be sentenced.

Even if Petitioner had promptly sought to review the sentencing proceeding transcript to determine exactly what had transpired or had sought to obtain a copy of his sentencing order to determine precisely what transpired at sentencing and the class of felony that he was sentenced for, the time involved would have foreclosed a timely appeal (the sentencing proceeding transcript required 90 days to prepare: it

71

was ordered shortly after March 9, 2005 and not docketed until June 29, 2005 – see Appendix A45 and docket Entry No. 27, 6/29/05). See *Dorman v. Wainwright, supra.*

**2. "Prejudice:"** As to Petitioner's Rule 61 Ground Three, "prejudice" [i.e., a circumstance that worked to the Petitioner's substantial disadvantage, "…infecting [the proceedings] with error of constitutional magnitude, *United States v. Frady*, 456 U.S. 152 (1982)], is present in this case as Petitioner, although presenting a colorable claim of innocence in the motions described by his counsel (Sent. Trans., Appendix A17-18), was induced to accept a plea resulting in a Level V sentence of imprisonment based upon a plea agreement that was confused and confusing to the point that the plea was "involuntary' in a constitutional sense.

**3. "Actual Innocence:"** Under *Bousley v. United States*, 523 U.S. 614 (1998), a plea of guilty may be collaterally attacked years after the plea in a case where a defendant can make the requisite showing of actual innocence – as illustrated by the facts in *Bousley* where the defendant argued that he was not guilty of an offense because of an inadequate factual basis to establish guilt. Any procedural default is therefore overcome and federal *habeas* review may be conducted. See Argument VI hereto for the facts establishing Petitioner's actual innocence in this case.

**B. Petitioner's Plea Was Not "Voluntary" Under *Brady v. United States*:** To be consistent with the requirements of due process, a plea of guilty must be made voluntarily, intelligently, and knowingly. *Brady v. United States, supra.*

Explicit in a voluntary, intelligent, and knowing plea of guilty is the concept that a defendant, before a guilty plea is made and accepted, will at a minimum know what offense that defendant is pleading guilty to and the maximum penalty for the offense to which the plea of guilty is taken. A voluntary, knowing, and intelligent plea of guilty can only be made "with sufficient awareness of the relevant circumstances." *Brady*, 397 U.S., at 748. This includes the necessity for being advised of the elements of the crime involved. *Henderson v. Morgan*, 426 U.S. 637 (1976).

The judge accepting a plea of guilty is constitutionally responsible for ensuring "a record adequate for any review that may later be sought." *Boykin v. Alabama,* 395 U.S. 238 (1969), at 244. As is clear from both the plea and sentencing transcripts in this case, the court in this case did not rely upon counsel's representations as to what Petitioner had been advised but simply conducted a colloquoy with the *prosecutor*.

Delaware has both embodied the *Brady* principle in the Superior Court Rules of Criminal Procedure and recognized its significance in case law. SCRCrP Rule 11(c) provides that the Court is to ascertain that a defendant is aware of the nature of the charge and maximum possible penalties and further state that the Court is to advise the defendant that "the court is required to consider any applicable sentencing guidelines and may depart from those guidelines under some circumstances." Rule 11(c)(1), SCRCrP.

However, the degree of confusion in Petitioner's case reflecs more than just a "technical violation" of a procedural rule applicable

to guilty pleas. *Cf., United States v. Timmreck*, 441 U.S. 780 (1979). As summarized at pages 12-18 of the Statement of Relevant Facts in this brief, there was *no* clarity as to any of the *offenses* to which Petitioner was to plead guilty *or* the maximum penalty for those offenses. Because a defendant is entitled to "real notice of the true nature of the charges against him," *Henderson v. Morgan, supra*, and because a meaningful determination must be made of the defendant's understanding of the elements of the offense and the penalties attendant thereto, the plea proceeding in Petitioner's case was so infected with confusion as to render the resultant convictions unconstitutional under *Brady*.

In the instant case, given the clear and convincing evidence – capable of being graphically illustrated (Table A hereto) –  of confusion as to *both* the offenses involved *and* the maximum sentences, the plea made by Petitioner, to whatever offense that plea was addressed, cannot be said to have been knowingly and intelligently made. A plea in the vicinity of one of the range of possible offenses to which a defendant might plead guilty does not meet the applicable constitutional test.

The decision of the Delaware Supreme Court in this case suggesting that a "close enough" standard is constitutionally sufficient is contrary to *Brady*. That holding is both contrary to and an unreasonable application of *Brady*.

**V. *Habeas Corpus* Relief Is Warranted On Petitioner's Ground Four Because The Prosecution Breached The Plea Agreement By Arguing Against The Recommendation It Had Agreed To Make To The Court**

Breach of a plea agreement "strikes at public confidence in the fair administration of justice and, in turn, the integrity of our criminal justice system." *Dunn v. Colleran,* 247 F.3d 459 (3rd Cir., 2001). In imposing a sentence, a judge may not rely upon a recommendation in violation of the plea agreement. *Id.* Where there has been a breach of the plea agreement, "relief will be granted." *Santobello v. New York,* 404 U.S. 257 (1971). A conviction in such a case "cannot stand." *Mabry v. Johnson,* 476 U.S. 504 (1984), at p. 509. This case – one in which the prosecutor arguing at Petitioner's sentencing has asserted a belief that she is unconstrained by any obligation to deny being bound by the express terms of the written plea agreement that she drafted and agreed to (see Superior Court docket entry no. 13, April 25, 2007) is a particularly deserving case for federal *habeas corpus* relief.

**A. "Cause," "Prejudice," And "Actual Innocence" – Petitioner's Ground Four. 1. "Cause" And "Prejudice:"** "Cause" and "prejudice" are present as to Petitioner's Ground Four and established by the same circumstances recited in Argument III and IV above in this brief. Additionally, the procedural bar of SCRCrP Rule 61 has not been consistently and regularly applied in the case of a defendant similarly situated to Petitioner who asserted a "breach of plea agreement" claim both in state court and on federal *habeas corpus*. *See Schmitz v. State, supra, and Schmitz v. Carroll, supra.* Application of the precept of *Dugger v. Adams, supra,* and *Campbell v. Burris, supra,*

results in that state rule – the procedural bar of SCRCrP Rule 61 – being adjudged neither "independent" nor "adequate."

**3. "Actual Innocence"** – See Argument VI herein.

**B. Plea Agreement As Contract:** Remarkably, the State attempted in Superior Court to refute Petitioner's Ground Four claim for relief (based upon breach of the plea agreement) through an argument well past its expiration date: *i.e.*, that there was no legally enforceable agreement between the State and Petitioner [the State's "… [sentencing] comments did not amount to a violation of a *supposed* "*contract*" between the State and defendant." (Superior Court docket entry no.13, ¶ 11, p. 7) (quotations in original; emphasis supplied)]. While appellate counsel for the State was free to correct the State's erroneous argument to the Superior Court and counsel for Respondents may follow a similar tact, the fact that the State's Superior Court argument was crafted by the same prosecutor who appeared for Petitioner's plea and sentencing proceedings reflects upon the perspective of that attorney and hence the license thought by her to be had to argue freely for sentence enhancement irrespective of any contractual commitment to the Petitioner.

Whether a plea agreement constitutes a "contract" between a defendant and a prosecutor – for purposes of due process – is an issue not admitting of principled debate. *Santobello v. New York*, 404 U.S. 257 (1971); ("… a plea agreement is a contract…"); *Mabry v. Johnson*, 476 U.S. 504 (1984); *Dunn v. Colleran*, *supra*; *United States v. Nolan-Cooper, 155 F.3d 221* (3rd Cir., 1998) (plea agreement governed by law of contracts); *Schmitz v. Carroll, supra*; *Zebroski v. State*, 715 A.2d

75 (Del., 1998); see also, *Washington v. State*, 844 A.2d 293 (Del., 2004).

As with all matters of contract, the plea bargaining system is based upon good faith dealing and therefore "…presupposes fairness in securing agreement between an accused and a prosecutor." *Santobello v. New York, supra,* at 261. When a plea agreement contains promises that are "unfulfilled or unfulfillable," such an agreement was procured by "misrepresentation" and cannot be permitted to stand. *Brady v. United States, supra,* at 755. "When the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false promise, and hence his conviction cannot stand." *Mabry v. Johnson, supra,* at 509.

**C. The Content Of The Agreement:** As was done by this Court in *Schmitz*, Petitioner begins his Ground Four claim with what the prosecutor promised to do in the plea agreement.   In the instant case, the prosecution entered into a plea agreement (Appendix A7) in which it expressly agreed to recommend probation – nothing more, nothing less – as the "end result" of the sentencing. The prosecutor did not reserve the right to "explain" the State's position or to comment on any possible facts "in aggravation" of the offense. In addition, unlike *Schmitz*, defense counsel made no remarks requiring the prosecutor to "respond" with remarks relating to aggravating factors.

A prosecutor breaches a plea agreement by not fulfilling the promises therein; this includes: i) providing information that could only be used to enhance a sentence; see, *e.g., United States v. Vaval*, 404 F.3d 144 (2nd Cir., 2005); ii) endorsing facts suggesting an

enhanced sentence; see, *e.g., United States v. Rivera,* 375 F.3d 290 (3rd Cir., 2004); and/or iii) going beyond the information in a plea agreement to suggest enhancement of a sentence. See, *e.g., United States v. Munoz,* 408 F.3d 222 (5th Cir., 2005).

**D. Breach Of The Plea In This Case:** When confronted with a record demonstrating a clear breach by the State of the plea agreement with Petitioner in a case where the prosecutor was extremely disappointed with the outcome of the August, 2003 trial, the State (predictably given its denial that its agreement with Petitioner was legally enforceable) has argued that the sentence recommendation it agreed to make was somehow "…just a …recommendation" (Superior Court docket entry no.13, ¶ 11, p. 7). The prosecution dissembles in making this argument: when confronted by this self-same "end-run" around a plea bargain promise in *Dunn v. Colleran, supra*, the Third Circuit Court of Appeals held that the prosecution was bound to make "nothing more, noting less" than the "recommendation" in the plea and, in contending that a "recommendation" was somehow not part of a binding promise the prosecutor began "…sliding down a slippery slope on her way to denouncing her legal obligation." Starting with what the prosecutor agreed to do in the instant case (see, *e.g., Dunn v. Colleran, supra; Schmitz v. Carroll, supra*), the plea agreement called for a recommendation of *probation* – not argument referring to Petitioner's conduct as a "very blatant thumbing of the nose to the court system" (Sent. Trans., Appendix A22), an impassioned remark inviting the judicial response of an enhanced sentence.

As in *Dunn v. Colleran, supra*, the prosecutor in the instant case breached the "letter and the spirit" of the plea agreement by an "impassioned statement" that would clearly justify the enhanced sentence of imprisonment while not once expressly calling for probation as agreed or *even using the word "probation"* as she addressed the Court. The prosecutor did all she could do to marginalize the recited recommendation in the plea agreement. Such conduct was thoroughly condemned by the court in *Dunn v. Colleran, supra,* and should not be excused in this case.

Despite the parties' agreement, which was in fact drafted by the prosecution, at no point during the January 20, 2004 sentencing proceeding did the prosecution recommend to the Court that it sentence Petitioner to probation as agreed. Rather, the prosecution's remarks ignored the substantial evidence at trial of Petitioner's emotional distress as she exclusively addressed a purported aggravating factor; i.e., that Petitioner deliberately defied the court:

> ...it was a matter of principle for the State that had he abided by those court orders none of this would have happened...So it was a very blatant thumbing of his nose to the court system in general. As a matter of principle, I wanted it on his record that he had done that.

> Sent. Trans., Appendix A22.

In response to the prosecution's assertion that Petitioner had deliberate distain for the judicial system, the Superior Court predictably sentenced Petitioner to imprisonment rather than the probation called for in the plea agreement.

The failure of the prosecution at sentencing to make a recommendation for a sentence of probation as agreed upon by the

79

parties in the plea agreement while at the same time drawing the sentencing judge's focus to aggravating factors constituted a breach of that agreement by the prosecution. As Petitioner had relied upon the prosecution to recommend probation, the breach was material and should be redressed by grant of a federal writ of *habeas corpus*.

The Superior Court conducted no evidentiary hearing on any claim presented by the SCRCrP Rue 35 and 61 motions field by Petitioner. Nonetheless, the Delaware Supreme Court concluded that the prosecutor's remarks at sentencing were made merely for the purpose of "explaining" the State's position – even though such an explanation was never requested.

To the extent that it may be suggested in the instant *habeas corpus* proceeding that the Delaware court's characterization of the prosecutor's remarks constitute a finding of fact entitled to a presumption of correctness under 28 U.S.C. §2254 (e)(1), the entire record of this case does not warrant deference to that view of the State's remarks.

The prosecutor was never asked to state her motive in making the statements that she offered to the judge at sentencing. However, she did submit an affidavit (Superior Court docket entry no., April 5, 2007, page 7) in which she stated that after responding to a question from the bench, "The State did continue to speak and mentioned the importance of having the defendant plead guilty to both counts of contempt of the PFA because it was the defendant's blatant violation that lead to the offenses charged. But these comments did not amount

to a violation of a supposed "contract" between the State and the defendant." (quotations in original).

The prosecutor's own view of the comments she made at sentencing were that she in fact exceeded any necessary "explanation." Remarkably, despite having the prosecutor's affidavit before it, the Superior Court found only that "[i]n the comments at sentencing, the State did not recommend any additional time directly *or by inference."* (emphasis supplied), *State v. Benge*, Del Super., No. 0210012355B, Graves, J. (May 2, 2007) (In fact, the first suggestion that the remarks were made to explain why the prosecutor said what she did or what the State's purposes at sentencing were appears at page 21 of the State's reply brief on direct appeal of the denial of Petitioner's Rule 35 motion: "The prosecutor simply explained the decision to pursue the remaining charges and the nature of the recommendation." This attempt *on appeal* to gloss over the impact of the prosecutor's remarks is a transparent effort to conceal the fact that the prosecutor gave the sentencing judge every reason to impose an enhanced sentence and to disregard the State's recommendation by undermining a "deal" that by which she considered herself not to be bound.

The Delaware court's decision is both contrary to and an unreasonable application of *Santobello*.

## VI. Petitioner Is "Actually Innocent" Of The Offenses Alleged Because No Valid Family Court Order Was Ever Entered In This Case

"Where a constitutional violation has resulted in the conviction of one who is actually innocent, a federal court may grant [a writ of *habeas corpus*] even in the absence of a showing of cause for [a] procedural default." *Murray v. Carrier, supra*, 477 U.S., at 495-96.

In *Bousley v. United States, supra*, the United States Supreme Court held that a federal *habeas corpus* petitioner, having entered a plead of guilty five years before seeking *habeas* relief, would be entitled to relief, notwithstanding that the claims relied upon were procedurally barred, if a showing of actual innocence could be made. Further, it mattered not that the factual basis of the claimed circumstances comprising actual innocence was known, or knowable, to the petitioner at the time of entry of the plea of guilty.

Significantly, the *Bousley* court recognized that the scope of "actual innocence" that the petitioner in that case might demonstrate included a showing that the conduct alleged failed to constitute a crime under the governing statute – "actual innocence" in its essential form: no criminal offense has been committed. The plea in Bousley, as with the plea in Petitioner's case, did not involve the prosecution foregoing more serious charges. *Bousley*, at pp. 623-24.

Petitioner, like the petitioner in *Bousley*, asserts in the instant case that the conduct alleged as an offense in Counts 6, 11, and 12 of the Superceding Indictment in this case fail to state the commission of criminal acts because a necessary legal predicate is absent. That is because each of the offenses alleged to have occurred

in this case is absolutely dependent upon the prior existence of a duly entered order of the Family Court of the State of Delaware - and therein lies the undoing of the legal basis for any conviction in this case on the offenses alleged because no such order ever came not existence. The controlling equation in this case is "no valid court order = no legal basis for conviction."

The purported Family Court "order" in this case was signed by a commissioner, Martha Sackovich, not a judge of the Family Court. When acting as a Family Court commissioner, the powers that Ms. Sackovich is authorized to exercise are not only carefully circumscribed but also entirely delegated both by statute and order of the Chief Judge of the Delaware Family Court.

The statutory basis for the powers delegated to a Family Court commissioner is found in 10 Del. C. §915 (c): pursuant to that statute, the Chief Judge - the statute does not authorize the appointment of a designee of the Chief Judge - is tasked with establishing a procedure for the assignment of cases to the Family Court commissioners. The powers of such commissioners are expressly limited by §915 (c)(2) to the power to "hear any civil case within the jurisdiction of the Family Court, as designated by the Chief Judge."

In the instant case, no order of reference of the civil case underlying the purported order signed by Commissioner Sackovich was entered by the Chief Judge empowering her as commissioner to hear that case. In addition, unlike the Superior Court, the Family Court has not adopted an administrative procedure generally applicable to the use of commissioners within the court. (The Superior Court administrative

order governing the case assignment of commissioners, Administrative Order 2000-3, is set forth in the Appendix to this brief, A-48).

The Family Court rules governing commissioners do not address the cases that they are authorized to hear; those rules speak only to appeals from the orders of commissioners. *See*, Rule 53.1 Family Court Rules Of Civil Procedure.

Although the Delaware Supreme Court exercised its discretion under its Rule 8 "plain error" review standard not to confront the question of whether the use of commissioners is an unconstitutional delegation of judicial power, see *Cassidy v. Cassidy*, 689 A.2d 1182 (Del., 1997), has consistently held that masters and court commissioners "have no independent power of adjudication," *Redden v. McGill*, 549 A.2d 695 (Del., 1988). The Delaware court has also held that the acts of commissioners, who lack state "constitutional qualifications" cannot ripen in to a judgment of the court. *Franklin v. State*, 855 A.2d 274 (Del., 2004) and *State v. Wilson*, 549 A.2d 695 (Del., 1988). Accordingly, where there is no order of reference of a case to a Family Court commissioner, there is no valid judgment.

No order of reference was entered in the Family Court case in which the purported order was entered. Therefore, the legal predicate to the offenses alleged in the indictment in this case never came into being and no offense can follow. Petitioner is "actually innocent."

## CONCLUSION

None of the four claims for relief in Petitioner's timely filed federal *habeas corpus* petition are procedurally barred. Ground One presents an "illegal sentence" claim under SCRCrP Rule 35 which is not subject to any procedural bar. Ground Two is not barred because the Delaware Supreme Court has not regularly and consistently applied the bar of Rule 35 in cases presenting constitutionally based claims for relief under that rule, specifically *Apprendi/Blakely* claimed. Grounds Three and Four are not barred because of the presence in this case of cause, prejudice, and actual innocence.

The decision of the Delaware Supreme Court with respect to Petitioner's exhausted Ground One Double Jeopardy multiplicity claim is contrary to the decision of the United States Supreme Court in *Menna v. New York, supra.* A guilty plea, even one that is counseled and otherwise fully voluntary in a *Brady v. United States* sense, does not waive the Double Jeopardy protection against multiple punishments. *Menna* does not admit of nuance – this is not a case that turns upon whether or not this Court can find that the Delaware Supreme Court's decision does not reflect a manifestly "unreasonable" application of *Menna*. The Delaware Supreme Court found waiver of a Double Jeopardy to be not only possible but to have occurred in Petitioner's case despite Petitioner's reliance on *Menna* in his SCRCrP Rule 35(a) motion and appeal. That result cannot be viewed as anything but contrary to *Menna*.

Similarly, Petitioner's exhausted Grounds Two, Three, and Four each present claims for *habeas corpus* relief resulting form rulings by

the Delaware Supreme Court that are contrary to and/or an unreasonable application of *Apprendi/Blakely, Brady, and Santobello*.

A conditional writ of *habeas corpus* should issue in this case pending further proceedings in the state courts not inconsistent with the relief granted by this Court.

Date: May 21, 2008

John H. Benge, Jr.
P.O. Box 500
Georgetown, DE 19947

**86**

## 28 U.S.C. §1746 DECLARATION OF SERVICE AND FILING BY DEPOSIT OF PLEADING IN PRISONER MAIL SYSTEM

COMES NOW, JOHN H. BENGE, JR., who makes the following declaration pursuant to 28 U.S.C. §1746:

1. That he is currently incarcerated at Sussex Correctional Institution, Georgetown, DE, a facility of the Delaware Department of correction; and

2. That on March 10, 2008 he deposited in the internal mailing system maintained by Sussex Correctional Institution for the deposit of prisoner mail the "Petitioner's Brief In Support Of Petition For *Habeas Corpus*" and the "Appendix" thereto attached hereto;

3. That first class postage therefor was prepaid and the aforesaid document(s) was/were addressed to:

Clerk of the Court
United States District Court
United States Courthouse
844 North King Street
Lockbox 18
Wilmington, DE 19947

and

Loren C. Meyers, Esq.
Deputy Attorney General Assembly
Delaware Department of Justice
840 North French Street
Wilmington, DE 19801

I hereby certify under penalty of the laws of the United States of America that the foregoing is true and correct.

Executed on: March   , 2008                          _____
                                                      John H. Benge, Jr.



**PRIORITY MAIL**
UNITED STATES POSTAL SERVICE
Label 228, February 2006
www.usps.com

From John H. Benge, Jr.
P.O. Box 500
Georgetown, DE. 19947

TO Clerk of the Court
U.S. District Court
U.S. Courthouse    Lockbox
844 N. King St.    #18
Wilmington, DE  19801



U.S. POSTAGE
PAID
GEORGETOWN, DE
19947
MAY 21, 08
AMOUNT
$9.75
0003488l-08
19801
0000
UNITED STATES
POSTAL SERVICE