# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

John H. Benge, Jr.,                )
                                   )
    Petitioner                     )
                                   )        Civil Action No. 08-78(GMS)
        v.                         )
                                   )
                                   )
Michael DeLoy,                     )
Warden, Sussex Correctional        )
Institution; and Joseph R.         )
Biden, III, Attorney General       )
of the State of Delaware           )
                                   )
    Respondents                    )

**FILED**

MAY 2 2 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

N) Scanned

---

## Appendix To
## Petitioner's Brief In Support Of
## Petition For *Habeas Corpus*

---

Date: May 21, 2008

John H. Benge, Jr.
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947

## TABLE OF CONTENTS
## APPENDIX TO PETITIONER'S BRIEF

**Page No.**

Docket entries............................................................... A1

Plea agreement............................................................. A6

TIS guilty plea from...................................................... A7

Plea transcript January 10, 2004.................................. A8

Sentencing transcript January 20, 2004..................... A17

Sentencing order January 20, 2004............................ A30

Corrected sentencing order, November 11, 2005...... A37

DOC status sheets........................................................ A43

Transcript order form................................................... A45

SENTAC statistical abstracts........................................ A46

Superior Court Administrative Order 2000 – 3 ........... A48

Family Court Order of August 30, 2002....................... A51

Superior Court Rule 35(a) Motion filed 12/5/2007....... A56

Reply Memorandum To Rule 35(a) Motion................ A69

Superior Court Rule 61) Motion filed 12/5/2007........... A78

Reply Memorandum To Rule 61 Motion...................... A101

SENTAC Statistical Abstracts....................................... A110

Transcript Order Form................................................... A119

Delaware Supreme Court Brief filed 8/7/2007.......... A124

Superior Court Decision of May 2, 2007................... A169

Delaware Supreme Court Reply Brief......................... A175

Delaware Supreme Court Motion
For Reargument filed 2/6/2008................................... A203

Table A........................................................................... A209

```
                SUPERIOR COURT CRIMINAL DOCKET              Page    1
                     ( as of   05/10/2007 )

State of Delaware v.  JOHN H BENGE                    DOB: 10/22/1948
State's Atty: MELANIE C WITHERS , Esq.        AKA:
Defense Atty: JOSEPH A HURLEY , Esq.


Assigned Judge:

Charges:
Count     DUC#        Crim.Action#     Description      Dispo.   Dispo. Date
-----------------------------------------------------------------------------
 001    0210012355B   IS02100929R1    PFBPP W/ PFA     GLTY     01/20/2004
 002    0210012355B   IS03041012R1    CRIM CNTMPT DVP  GLTY     01/20/2004
 003    0210012355B   IS02110168R1    CR CON PRO ORD   GLTY     01/20/2004

       Event
No.   Date          Event                              Judge
-----------------------------------------------------------------------------
1   10/31/2002
      CASE ACCEPTED IN SUPERIOR COURT.
      ARREST DATE: 10/20/2002
      PRELIMINARY HEARING DATE:
      BAIL:  SECURED BAIL-HELD                12,000.00
2   01/13/2003
      INDICTMENT, TRUE BILL FILED.
3   04/28/2003
      SUPERCEDING INDICTMENT FILED
4   04/30/2003
      RULE 9 SUMMONS ISSUED ON 03-04-1012
5   05/21/2003                              HOWARD ALICIA B.
      ARRAIGNMENT CALENDAR:  RULE 9 SUMMONS RETURNED.
      CASH BAIL                    11,000.00
      SECURED BAIL-HELD             1,000.00
      DEFENDANT ARRAIGNED, PLED NOT GUILTY, WAIVED READING OF INDICTMENT,
      REQUESTED TRIAL BY JURY.
      CASE REVIEW DATE:   7/9/03.
6   07/09/2003                              BRADLEY E. SCOTT
      HEARING ON VARIOUS MOTIONS HEARD.  DURING THE HEARING A MOTION TO
      SEVER CHARGES WAS GRANTED.  S02-10-0929, S02-11-0168 AND S03-04-1012
      ARE NOW SEVERED FROM THE MAIN FILE.  S02-10-0929, S02-11-0168 AND
      S03-04-1012 ARE NOW UNDER ID # 0210012355B.  MEMO SENT TO ATTORNEYS
      AND CASE SCHEDULING NOTIFYING THEM OF THE SEVERANCE.
7   07/09/2003
      MEMORANDUM FILED.
      TO COURT, ATTORNEYS AND CSO RE:  NOTIFYING THEM OF THE SEVERANCE.
      DUE TO SEVERANCE, BOND IS AS FOLLOWS:  AS TO 0210012355A -
      $100,000.00 CASH PLUS $23,000.00 SECURED.  AS TO S0210012355B -
      $12,000.00 CASH.
8   07/22/2003
```

A1

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    2
                         ( as of   05/10/2007 )

State of Delaware v.  JOHN H BENGE                    DOB: 10/22/1948
State's Atty: MELANIE C WITHERS , Esq.       AKA:
Defense Atty: JOSEPH A HURLEY , Esq.


      Event
No.   Date            Event                            Judge
-----------------------------------------------------------------------------
      MOTION FOR REVIEW OF BOND FILED BY MELANIE WITHERS, DAG. MOTION TO BE
      HEARD ON FRIDAY, JULY 25, 2003 AT 11:00A.M.
 9    07/22/2003
      LETTER FROM MELANIE WITHERS TO COURT RE: ADVISING THE STATE HAS FILED
      A MOTION TO REVIEW BOND, REQUESTING BOND BE REVOKED UNTIL THE DAY OF
      THE MOTION.
10    07/22/2003                              BRADLEY E. SCOTT
      LETTER FROM COURT TO MELANIE WITHERS AND JOSEPH HURLEY, ESQ. RE:
      ADVISING THE BOND HAS BEEN REVOKED, AND THE MOTION IS SCHEDULED FOR
      FRIDAY, JULY 25, 2003 AT 11:00A.M.
12    07/22/2003
      DEFENDANT'S RESPONSE TO THE STATE'S MOTION SEEKING TO REVIEW BOND.
13    07/22/2003
      LETTER FROM JOSEPH HURLEY TO COURT RE: OPPOSING THE REQUEST THAT THE
      DEFENDANT BE HELD W/O BAIL.
14    07/23/2003
      LETTER FROM JOSEPH HURLEY, ESQ. TO COURT RE: ADVISING HE WILL NOT BE
      PRESENT ON FRIDAY, JULY 25, 2003.
15    07/23/2003
      LETTER FROM JOSEPH HURLEY, ESQ. TO COURT RE: RESCHEDULING.
11    07/25/2003                              BRADLEY E. SCOTT
      OFFICE CONFERENCE/TELECONFERENCE PROCEEDINGS HELD.
      DEF.ATTY. JOSEPH HURLEY, ESQ./DAG. MELANIE WITHERS/CC WILLIAMS
      CR WASHINGTON/ CASE SCHEDULING TAMMY KEARNEY
      RE: POSSIBLE SCHEDULING DATES:
      7/28
      8/4
      8/18
      10/6
      10/13
      STATE IS TO CONTACT WITNESSES TO SEE IF SOONER DATES ARE AVAILABLE.
16    07/25/2003
      LETTER FROM MELANIE WITHERS TO COURT RE: ATTEMPT TO CONTACT WITNESSES.
17    07/25/2003                              BRADLEY E. SCOTT
      ORDER OF BOND
18    09/12/2003                              GRAVES T. HENLEY
      LETTER FROM JUDGE GRAVES TO EILEEN KIMMEL.
      RE:  ASKING THAT EXPEDITED REQUEST FOR TRANSCRIPT BE CONSIDERED.
19    10/07/2003
      LETTER FROM JOE HURLEY, ESQ TO JUDGE BRADLEY RE: OPPOSITION TO THE
      REQUEST OF THE AG'S OFFICE FOR A CONTINUANCE OF THE TRIAL.
20    10/07/2003                              BRADLEY E. SCOTT
```

A2

```
              SUPERIOR COURT CRIMINAL DOCKET              Page    3
                    ( as of   05/10/2007 )

ɔtate of Delaware v.  JOHN H BENGE                  DOB: 10/22/1948
ɜtate's Atty: MELANIE C WITHERS , Esq.      AKA:
 ʔefense Atty: JOSEPH A HURLEY , Esq.


      Event
ʼo.  Date          Event                        Judge
-------------------------------------------------------------------
     LETTER FROM COURT TO MELANIE C. WITHERS AND JOSEPH A. HURLEY RE:
     CONFIRMING THAT AN OFFICE CONFERENCE HAS BEEN SCHEDULED WITH JUDGE
     BRADLEY ON FRIDAY, OCTOBER 10, 2003, IMMEDIATELY FOLLOWING THE 11:00
     AM SENTENCING TO DISCUSS THE REQUEST FOR CONTINUANCE OF THE TRIAL
     SCHEDULED TO BEGIN ON NOVEMBER 10, 2003.
`1   10/10/2003                            BRADLEY E. SCOTT
     MOTION FOR CONTINUANCE GRANTED.
     STATES REQUESTS CONTINUANCE DUE TO OFFICER UNAVAILABILITY.
     F.C.R. - 1/7/04.  TRIAL - 1/20/04.
     CR-KIMMEL.
ʌ2   01/06/2004
     SUBPOENA(4) ISSUED.
:3   01/06/2004
     SUBPOENA(1) ISSUED.
ʔ4   01/06/2004
     SUBPOENA(2) ISSUED.
:5   01/07/2004                            BRADLEY E. SCOTT
     FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL
     MR. BRADY APPEARED ON BEHALF ON MR. HURLEY.
     TRIAL SCHEDULED FOR 1/20/04 AT 9:00A.M.
     CR-KIMMEL
ʔ6   01/20/2004                            GRAVES T. HENLEY
     JURY TRIAL CALENDAR:  PLED GUILTY-SENTENCED
     IMMEDIATE SENTENCE, PLEA AGREEMENT, GUILTY PLEA FORM AND
     NOLLE PROSS FILED.
     DEF. PLED TO 02-10-0929, PDWBPP, BUT SUPERCEDING INDICTMENT READS
     PFBPP, WHICH ARE SAME STATUTES AND SUBSECTIONS.
     CR-PURNELL
ʔ7   06/29/2005
     TRANSCRIPT OF PROCEEDINGS FILED BY CHRISTINE QUINN, COURT REPORTER
     JANUARY 20, 2004
ʔ8   09/20/2005                            GRAVES T. HENLEY
     MOTION FOR CORRECTION OF SENTENCE FILED BY DEFENDANT.
ʔ0   10/03/2005                            GRAVES T. HENLEY
     CORRECTED SENTENCE FILED.  SENTENCE OF 1/20/04  CORRECTED AS FOLLOWS:
     AS TO CRA#02-10-0929, THE DEFENDANT'S TIME AT LEVEL 3 PROBATION IS
     REDUCED FROM 18 MONTHS TO 12 MONTHS EFFECTIVE 1/20/04 CONSECUTIVE TO
     THE LEVEL 4 WORK RELEASE SENTENCE IMPOSED BY JUDGE BRADLEY ON
     0210012355A.
ʔ9   10/04/2005                            GRAVES T. HENLEY
     LETTER FROM JUDGE GRAVES TO THE DEFENDANT.
     RE:  AS A RESULT OF RULE 35(A) MOTION FOR CORRECTION OF SENTENCE,
```

A3

SUPERIOR COURT CRIMINAL DOCKET          Page    4
( as of   05/10/2007 )

State of Delaware v.  JOHN H BENGE                     DOB: 10/22/1948
State's Atty: MELANIE C WITHERS , Esq.      AKA:
Defense Atty: JOSEPH A HURLEY , Esq.

```
       Event
No.    Date              Event                           Judge
--------------------------------------------------------------------------
       ENCLOSED IS A COPY OF THE COURT'S CORRECTED SENTENCE ORDER DATED TODAY
       BUT EFFECTIVE 1/20/04.  AS TO 02-10-0929, THE EIGHTEEN MONTHS GIVEN AT
       LEVEL 3 HAS BEEN REDUCED TO 12 MONTHS.   THAT PROBATION WILL BE
       CONSECUTIVE TO THE LEVEL 4 WORK RELEASE IMPOSED BY JUDGE BRADLEY ON
       10/10/03
31     10/13/2005                            GRAVES T. HENLEY
       MOTION FOR REARGUMENT FILED BY DEFENDANT.
32     10/24/2005                            GRAVES T. HENLEY
       MOTION FOR REARGUMENT IS DENIED.
33     11/01/2005
       MOTION FOR REARGUMENT OF 10/24/05 RULING FILED BY DEF.
35     11/07/2005
       CORRECTED SENTENCE FILED.
34     11/10/2005                            GRAVES T. HENLEY
       LETTER/ORDER ISSUED BY JUDGE GRAVES / MOTION FOR REARGUMENT
       RE: THE SENTENCE IS CORRECTED TO LEVEL 3 PROBATION IN CRA #02-10-0929
       TO RUN CONCURRENT NOT CONSECUTIVE TO CRA# 03-01-0361.
36     12/05/2006
       MOTION FOR CORRECTION OF ILLEGAL SENTENCE FILED BY DEFENDANT.
37     12/05/2006
       MOTION FOR POSTCONVICTION RELIEF FILED BY DEFENDANT.
38     02/21/2007                            GRAVES T. HENLEY
       LETTER FROM JUDGE GRAVES TO MS. WITHERS AND DEFENDANT
       RE: DEFENDANT'S MOTIONS THAT HAVE BEEN FILED.   STATE TO ANSWER
       LEGAL ARGUMENTS BY 3/30/07 AND DEFENDANT SHOULD REPLY NO LATER THAN
       4/25/07
39     03/05/2007
       TRANSCRIPT OF PROCEEDINGS HELD BEFORE JUDGE GRAVES ON JANUARY 20, 2004
       FILED BY KATHY PURNELL.
40     04/02/2007
       LETTER FROM MELANIE C. WITHERS, DAG TO THE HON. T. HENLEY GRAVES
       RE: THE STATE RESPECTFULLY REQUESTS A FIVE DAY EXTENSION OF THE DUE
       DATE OF ITS RESPONSE.
       4/2/07 JUDGE GRAVES RESPONDS "OK".
41     04/05/2007
       STATE'S AFFIDAVIT AND RESPONSE TO DEFENDANT'S MOTION FILED PURSUANT TO
       SUPERIOR COURT CRIMINAL RULES 35 & 61 FILED BY MELANIE WITHERS, ESQ.
42     04/25/2007
       DEFENDANT'S RESPONSE FILED.
       MEMMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO STATE'S RESPONSE AND
       AFFIDAVIT TO DEFENDANT'S RULE 35(A) MOTION.
43     04/25/2007
```

A4

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    5
                       ( as of  05/10/2007 )

State of Delaware v.  JOHN H BENGE                      DOB: 10/22/1948
State's Atty: MELANIE C WITHERS , Esq.       AKA:
Defense Atty: JOSEPH A HURLEY , Esq.


      Event
 No.  Date           Event                           Judge
 -----------------------------------------------------------------------
      DEFENDANT'S RESPONSE FILED.
      MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO STATE'S RESPONSE AND
      AFFIDAVIT TO DEFENDANT'S RULE 61 MOTION.
 14   04/27/2007                           GRAVES T. HENLEY
      DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO STATE'S
      RESPONSE AND AFFIDAVIT TO DEFENDANT'S RULE 35(A) MOTION.
 5    05/02/2007                           GRAVES T. HENLEY
      MOTION FOR POSTCONVICTION RELIEF DENIED AS BEING PROCEDURALLY BARRED
      OR, IN THE ALTERNATIVE, IS DENIED AS TO THE MERITS.
 6    05/02/2007                           GRAVES T. HENLEY
      MOTION FOR CORRECTION OF SENTENCE DENIED AS BEING PROCEDURALLY BARRED
      OR IN THE ALTERNATIVE, IS DENIED AS TO THE MERITS. LIKEWISE, THE RULE
      35 MOTION IS DENIED FOR THE REASONS STATED ABOVE.

            *** END OF DOCKET LISTING AS OF  05/10/2007 ***
                PRINTED BY: CSCJMIT
```

A5

# Superior Court of the State of Delaware, _Sussex_ County

## PLEA AGREEMENT

State of Delaware v. _John H. Benge_

Case No(s): _0210010155_ (Cr.A.#s)

☐ Title 11 HAB. OFFENDER _____     ☐ BOOT CAMP ELIGIBLE     ☐ INELIGIBLE

☐ RULE 11(e)(1)(C) — If out of guideline, reason is as follows: _____
☑ Title 11, §4336, sex offender notification required     ☐ Title 11, §9019(e), forensic fine ☐ $100(F), ☐ $50(M)

**Defendant will plead guilty to:**

| Count | Cr.A.# | Charge [LIO if applicable] |
|---|---|---|
| ① | IV6 0210010129 | PFBPP |
| ② | 11 0302014108 | Cont. of a PFA |
| ③ | 12 0302020416 | Cont. of a PFA |

Upon the sentencing of the defendant, a **nolle prosequi** is entered on ☐ the following charges/☐ all remaining charges on this indictment:

| Count | Cr.A.# | Charge |
|---|---|---|
| | | N/A |

**Sentence Recommendation/Agreement:**     ☐ PSI     ☑ Immediate Sentencing

① 2yrs L5 susp for 1yr L3   ② 1yr L5. After serving 15 days, balance susp for 1yr L3.   ③ 1yr L5. After serving 15 days, balance susp for 1yr L3. The level 3 sentences may run concurrent.

**State and Defendant agree to the following:**

☐ Restitution: _____
☑ No _____ contact w/ _Donna Benge or_
☑ Other Conditions: _Stacey Smith_
_Forfeit firearms to BBPD._

DAG: _____
PRINT NAME: _McQuinston Witis_
SIGNATURE

DEF. COUNSEL: _Joe Hurley_
PRINT NAME
SIGNATURE

DEFENDANT: _____

Date: _1-20-04_

XC: Attorney for Defendant, Defendant
Attorney General, Attorney General Worksheet

Page ___ of ___

A6

# TRUTH-IN-SENTENCING GUILTY PLEA FORM
## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
### IN AND FOR ___Sussex___ COUNTY

STATE OF DELAWARE            )    ID: _0210 0929_

v.   _John H. Benge_      )    CRA: _0210 0929, 0302 11016_,

                                       _0304 1112_

*The defendant must answer the following questions in his or her own handwriting.*

Date of Birth _10/22/48_     Last grade in school completed _Law School_

| | Yes | No |
|---|---|---|
| Have you ever been a patient in a mental hospital? | ☐ | ☑ No |
| Are you under the influence of alcohol or drugs at this time? | ☐ | ☑ No |
| Have you freely and voluntarily decided to plead guilty to the charges listed in your written plea agreement? | ☑ Yes | ☐ |
| Have you been promised anything that is not stated in your written plea agreement? | ☐ | ☑ No |
| Has your attorney, the State, or anyone threatened or forced you to enter this plea? | ☐ | ☑ No |

Do you understand that because you are pleading guilty you will not have a trial, and you therefore waive (give up) your constitutional right:
    (1) to be **presumed innocent** until the State can prove each and every part of the charge(s) against you beyond a reasonable doubt;
    (2) to a **speedy and public trial**;
    (3) to **trial by jury**;
    (4) to **hear and question the witnesses** against you;
    (5) to **present evidence** in your defense;
    (6) to **testify** or not testify yourself; and,
    (7) to **appeal** to a higher court?        ☑ Yes   ☐ No

| | | | |
|---|---|---|---|
| Poss. Firearm Prohibited | 0-2 | Disc | Up to 2 yr Lv 3 |
| Criminal Contempt | 0-1 | 2300 | 15 day min |
| Criminal Contempt | 0-1 | 2300 | 15 day min |

**TOTAL CONSECUTIVE MAXIMUM PENALTY:** Incarceration: _4 yrs_    Fine: _Disc_

*NON-CITIZENS: Conviction of a criminal offense may result in deportation, exclusion from the United States, or denial of naturalization.*

| | Yes | No |
|---|---|---|
| Do you understand that, if incarcerated, you will not be eligible for parole, and the amount of early release credits which you may earn will be limited to a maximum of ninety (90) days per year? | ☐ | ☑ No |
| Is there a **minimum mandatory penalty**? | ☑ Yes | ☐ |
| If so, what is it? _3.5 days_ | | |
| Is there a **mandatory revocation of driver's license or privileges** for this offense or as a result of your plea? | ☐ | ☑ No |
| If so, what is the **length of revocation**? _N/A_ years | | |
| Has anyone promised you what your sentence will be? | ☐ Yes | ☑ No |
| Were you on **probation or parole** at the time of this offense? (A guilty plea may constitute a violation.) | ☐ | ☑ No |
| Do you understand that a guilty plea to a felony will cause you to **lose your right to vote, to be a juror, to hold public office,** and other **civil rights**? | ☑ Yes | ☐ |
| Have you been advised that this is an offense which results in the loss of the **right to own or possess a deadly weapon**? | ☑ Yes | ☐ |
| Have you been advised that this is an offense which requires **registration as a sex offender**? _N/A_ | ☐ Yes | ☐ No |
| Are you satisfied with your lawyer's representation of you and that your lawyer has **fully advised you of your rights** and of your guilty plea? | ☑ Yes | ☐ |
| Have you read and understood all the information contained in this form? | ☑ Yes | ☐ |

_____    _1/2/03_    _____
Defense Counsel        Date        Defendant

Print name: _Joe Hurley_        Print name: _John H. Benge_

Copies: Superior Court, Attorney General, Attorney for Defendant, Defendant     Document No.: 02-03-10-00-05-01 (Rev. 03/09/00)

A7

```
 1                    P R O C E E D I N G S
 2              THE COURT:  What do we have, a plea?
 3              THE BAILIFF:  Yes, sir.  Mr. Benge?
 4              THE COURT:  Is Mrs. Withers here
 5    somewhere?
 6              MS. TSANTES:  I'll get her, Your Honor.
 7              MR. HURLEY:  Do you wish to await her
 8    arrival?
 9              THE COURT:  Thank you.
10              MRS. WITHERS:  Good morning, Your Honor.
11              THE COURT:  Good morning.
12              MRS. WITHERS:  I believe that Mr. Benge is
13    prepared to enter a plea this morning to the three
14    charges that are scheduled for trial today, which
15    are two counts of contempt of a PFA, the possession
16    of a firearm by a person prohibited, the
17    prohibition being the fact that he was under the
18    PFA at the time.  The State has recommended what I
19    believe to be the minimum mandatory on the two
20    contempts, which are 15 days each, because a person
21    was injured as a result of him violating that PFA.
22    But the State was prepared to follow the
23    recommendations of the Truth-in-Sentencing as to
```

```
 1    the person prohibited, which is probation.  But I
 2    understand the Court wants to use its own
 3    discretion this morning, of course, in sentencing
 4    Mr. Benge.
 5            THE COURT:  The general policy is,
 6    Mr. Benge -- the lawyers are aware of it and you
 7    may be aware of this also -- that on the morning of
 8    trial, the Court accepts basically a plea as
 9    charged with no binding recommendation.  I will
10    obviously hear from everyone, but the Court is not
11    bound -- in any guilty plea, the Court is not
12    bound.  Rule 11(e)(1)(c) has been abandoned
13    probably two years ago.  So if you wish to
14    proceed -- is he prepared to take the plea, Mr.
15    Hurley?
16            MR. HURLEY:  Yes.
17            THE COURT:  Mr. Benge, I am told that you
18    wish to plead guilty to Count 6, possession of a --
19    I guess the correct name is possession of a deadly
20    weapon by a person prohibited, because it is under
21    1448(a)(6), having a firearm in your possession
22    while being under a Family Court Protection From
23    Abuse Order, that occurring on October 20, 2002.
```

4

```
 1              Is it your personal decision to plead

 2    guilty to this, sir?

 3              THE DEFENDANT:  Yes, sir, Your Honor, it

 4    is.

 5              THE COURT:  Did you commit that offense?

 6              THE DEFENDANT:  Yes.

 7              THE COURT:  As to Count 11, it charges

 8    criminal contempt, that you knowingly violated or

 9    failed to obey a provision of a protective order

10    issued by Family Court by having contact with Donna

11    Benge, in violation of the Court order and the

12    appropriate statute.  Did you commit this?

13              THE DEFENDANT:  Yes, Your Honor.

14              THE COURT:  What is the difference, Mrs.

15    Withers, between Count 12 and Count 6?

16              MRS. WITHERS:  The existence of the PFA,

17    Your Honor.

18              THE COURT:  But isn't that the same

19    element as Count 6?  That is part of that motion to

20    dismiss this morning.  It looks to me like under

21    the Blockberger statute, you have a PFA saying

22    don't have a possession, and he had possession.  It

23    seems to me that they are duplicates of each other.
```

1          MR. HURLEY:  Your Honor, this is our

2     position, but we're waiving that and we want to

3     argue it to you in the sentencing.  I'll be making

4     a recommendation.

5          THE COURT:  All right.  Sir, are you

6     guilty of that offense?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Are you satisfied with your

9     lawyer?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Have you had enough time to

12     discuss this with him?

13          THE DEFENDANT:  Yes, Your Honor, I have.

14          THE COURT:  Is your lawyer or anyone on

15     earth forcing you to enter this plea today?

16          THE DEFENDANT:  No.

17          THE COURT:  This is your personal

18     decision?

19          THE DEFENDANT:  Correct.

20          THE COURT:  And you understand that you

21     expose yourself to up to four years in jail by

22     entering this plea?

23          THE DEFENDANT:  Yes, sir.

```
1              THE COURT:  Two years on the deadly weapon
2     by a person prohibited, and a year each on the
3     criminal contempts.
4              THE DEFENDANT:  I understand, Your Honor.
5              THE COURT:  Has anybody promised you what
6     the sentence would be?
7              THE DEFENDANT:  No.
8              THE COURT:  Do you understand that once
9     the plea is accepted, that your attorney and the
10    State will both take positions, but it ultimately
11    will be up to the sentencing judge to make the
12    determination of what the sentence should be?
13             THE DEFENDANT:  I understand that, yes.
14             THE COURT:  If you get a sentence that you
15    do not like, that you think is unfair, the sentence
16    still sticks.  Do you understand that?  You cannot
17    withdraw your plea?
18             THE DEFENDANT:  I understand, Your Honor.
19             THE COURT:  You graduated from law school,
20    so I presume that you could understand and read the
21    Guilty Plea Form.
22             THE DEFENDANT:  Yes.
23             THE COURT:  You went through this line by
```

```
 1    line with your attorney?

 2              THE DEFENDANT:  Yes, I did.

 3              THE COURT:   Is there anything in there

 4    that you did not understand?

 5              THE DEFENDANT:  No, Your Honor.

 6              THE COURT:   Is there anything you want to

 7    ask me any questions about?

 8              THE DEFENDANT:  No.

 9              THE COURT:   You have had a trial

10    concerning the other charges, so you know what a

11    trial is about.  By pleading guilty, there will be

12    no trial ever, and, therefore, you give up the

13    rights that attach to a trial.  Do you understand

14    that?

15              THE DEFENDANT:  Yes, Your Honor.

16              THE COURT:   Including the right to be

17    presumed innocent until the State can establish

18    your guilt beyond a reasonable doubt to a jury of

19    twelve citizens of Sussex County.  If the State

20    cannot meet its burden of proof, proof beyond a

21    reasonable doubt, then the jury must find you not

22    guilty.  If they meet the burden of proof, then you

23    can be found guilty beyond a reasonable doubt.
```

KATHY S. PURNELL
OFFICIAL COURT REPORTER

A 13

```
1              Do you understand that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  You have a right to a speedy

4    trial, a public trial, the assistance of your

5    attorney on the trial throughout the process.  If

6    convicted, you have the right to an appeal with the

7    benefit of an attorney.  But when you plead guilty,

8    there is no appeal.  Do you understand that?

9              THE DEFENDANT:  Yes, I do, Your Honor.

10             THE COURT:  At your trial the jury would

11   hear from the State's witnesses.  We are prepped

12   and ready to go this morning with witnesses here

13   and with the jury in the other courtroom.  Those

14   witnesses would be called, placed under oath,

15   questioned and be subject to cross-examination by

16   your attorney.

17             You would have the opportunity to present

18   a defense, if you so-choose, by calling witnesses

19   and by testifying.  If you choose not to testify,

20   no one can infer your guilt from that, and the jury

21   is instructed accordingly.  For the jury to reach a

22   verdict, all twelve have to be in complete

23   agreement; it must be a unanimous verdict.
```

KATHY S. PURNELL
OFFICIAL COURT REPORTER

```
 1           If you choose not to testify, however, you
 2    cannot be forced to testify and the jury cannot use
 3    that against you.
 4           All of these rights are waived, given up
 5    forever, when you enter a guilty plea.  Do you
 6    understand that?
 7           THE DEFENDANT:  Yes, Your Honor.
 8           THE COURT:  And this is what you want to
 9    do?
10           THE DEFENDANT:  That's correct.
11           THE COURT:  All right.  I accept the plea
12    as knowingly, voluntarily and intelligently
13    offered.
14           What I would like to do is get the
15    presentence and briefly look over that.  Instead of
16    coming down again, I presume you would like to take
17    care of this this morning.
18           MR. HURLEY:  I'd like to, as well as for
19    his state of mind.
20           THE COURT:  We will go ahead and gather
21    that information, and then I will come out and hear
22    from each of you and proceed with it this morning.
23           MR. HURLEY:  Thank you.
```

18

1               THE COURT:  All right.  Thank you.

2               (Whereupon, the proceedings in the

3          above-entitled matter were recessed.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

```
 1                  P R O C E E D I N G S

 2            THE COURT:  Mr. Hurley?

 3            MR. HURLEY:  I will be brief in my

 4       comments.

 5            First, so that there is a proper record

 6       set, I had prepared three motions in anticipation of

 7       the matter being tried.  One of the motions was that

 8       Counts 11 and 12 were multiplicious, since they

 9       represented different provisions of the same PFA.

10       And if one were to carry that to its logical

11       conclusion, and twelve mandates or orders in a single

12       court order, then somebody could commit twelve

13       separate crimes, and I took the position that when

14       you violate an order, no matter which provision

15       violates, the order itself has been violated, and it

16       was multiplicious.

17            And in addition, I indicated in the motion

18       that Counts 6 and 12 were multiplicious since they

19       both have violations of the same PFA.

20            Thirdly, I took the position that the

21       Commissioner was not empowered under the statutory

22       authority to issue a PFA.  It was an invalid PFA.

23       If that were the case, all three of the counts were
```

1    invalid.

2         Whether or not they are, I don't need to

3    address it at this time.  I simply put it out there

4    because my client has waived the ability to make

5    those arguments premised upon what he believes is a

6    fair sentencing recommendation by the State and

7    knowing that the Court is not bound by the

8    recommendation.

9         I do point out, however, that with regard

10   to sentencing, it really is slicing the same apple

11   with three different slices since it's one act

12   basically out of one court order that has been

13   violated.  It is fair to say, and I assume that you

14   have seen the presentence report at this time and, of

15   course, in this courthouse hear bits and pieces as

16   the trial goes on.

17        It's fair to say John Benge was in a tree

18   fall in 2002, and the mental eruption that overtook

19   him caused him to do a lot of stupid, foolish things

20   that he would not normally have done, including

21   violated the court order, and his past, even when he

22   was under disciplinary action, does not suggest a

23   person that would take on the court system.

1              Analytically, as I understand is how you

2     should be viewing things, I am not presumptive to --

3     I would respectfully suggest that how you view it is

4     to look at the moment that he had a gun in his hand

5     and to look at the moment that he said hello to

6     Donna Benge.  That is when the violation took place

7     because he has already been punished for the other

8     acts at this time that took place thereafter.

9              So what you have then is a portrait of a

10    person who never violated the law, who ignored a

11    court order with contacting the ex-spouse and having

12    a weapon in his possession.

13             The only indication I could locate where

14    there was an attorney who violated a PFA was the

15    Melvin case.  He similarly violated the PFA and also

16    was convicted of hindering prosecution, two Class A

17    misdemeanors, and he received two years of probation

18    with regard to a year on each.

19             So I am suggesting to the Court that

20    ignoring the ugliness that John Benge created in a

21    lot of lives of people occurred later after he

22    violated these orders.  This is a person who has

23    never before violated the law, who has made a



5

1    technical violation of the court order, and who is

2    asking the Court to sentence him to 30 days

3    incarceration.

4         THE COURT:  But for the violation of the

5    person prohibited, the criminal activity wouldn't

6    have occurred.  The other criminal activity, somebody

7    wouldn't have gotten shot.

8         MR. HURLEY:  That is correct.  But he's been

9    punished for that.

10        THE COURT:  Does your client wish to address

11   the Court?

12        I've read the presentence investigation.  I

13   have not read all the reports, the police reports,

14   things of that nature.  I read the most perfect

15   portion, which to me is basically the interviews,

16   the summary from the presentence officer as to what

17   occurred, the victim impact statements, Mr. Benge's

18   letter to Judge Bradley, and the lack of record.

19        You are not required to address the Court,

20   sir, but it's your privilege to if you wish too.

21        THE DEFENDANT:  I understand, Your Honor,

22   and I will not take the Court's time.  I have

23   expressed my thoughts and feelings in what I wrote to

```
 1    Judge Bradley as well as in speaking with the
 2    presentence officer.  You've read those.  You know
 3    from those what my state of mind was and is and
 4    continues to be.
 5              THE COURT:  And I presume the State is bound
 6    by its plea recommendation in the agreement?
 7              MS. WITHERS:  Your Honor, we feel it's a
 8    fair conclusion to what has been a long drawn out
 9    painful saga in both the defendant's life as well as
10    the life of the two victims.  He entered a guilty
11    plea in New Castle County last week and is facing --
12    awaiting a presentence investigation in front of
13    Judge Ableman up there.  So he still has things
14    hanging over his head.  He is potentially facing more
15    incarceration on those charges.
16              The State has always known that these
17    three remaining counts here were not likely to get
18    him any additional jail time, if any, but it was a
19    matter of principle for the State that had he abided
20    by those court orders none of this would have
21    happened in that he is an intelligent man and was a
22    former attorney.  He certainly understood the PFA
23    that he was not to have any contact and that he had
```

1    handed over a number of fire arms, knew that he

2    wasn't supposed to be in possession of these two

3    handguns.

4            So it was a very blatant thumbing of the

5    nose to the court system in general.  As a matter of

6    principle, I wanted it on his record that he had done

7    that.

8            THE COURT:  Either one of you can respond.

9            What are the offenses to which he is waiting

10   sentencing in New Castle County?

11           MR. HURLEY:  Four counts of unlawful

12   interception.  I don't represent him there.

13           THE DEFENDANT:  It's two counts of burglary

14   third, three counts of unlawful interception of oral

15   communication, one count of attempted unlawful

16   interception of oral communications.

17           THE COURT:  All right.

18           This is where I am.  I looked at everything,

19   and you all know more about this than I do because

20   you all have had the full trial on it.  But one of

21   the things that I look at is that he appears to

22   have gotten every day that Judge Bradley could give

23   him.

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A22

1          MS. WITHERS:  Yes, sir.

2          THE COURT:  And I have not spoken to Judge

3     Bradley about this sentencing today.  I went back and

4     looked at his order because it has a K in there.  It

5     is a reasonable inference, I think, from that that

6     Judge Bradley thought that he was a danger and that

7     Mr. Benge should be removed from society for that

8     long a period of time as could be possible.

9          I don't pretend to know what juries do.

10    Juries have spoken, and juries have found him not

11    guilty of certain offenses, and it is not my job to

12    make up for that.  But it is my job to take into

13    consideration the offense, and one of the things

14    that I keep in mind, as I said earlier, but for the

15    ball rolling, those other crimes to which you are

16    now serving time would have never occurred.

17         Therefore, as to 02-10-0929, and I think

18    that section is possession of a deadly weapon during

19    the commission of a felony, Madam Clerk.  It is

20    labeled as possession of a firearm, but the section

21    that they site is 1448.  I think that is the straight

22    up deadly weapon possession.

23         Two years incarceration.  Madam Clerk,


                    CHRISTINE L. QUINN
                  OFFICIAL COURT REPORTER


                        423

1    there is no credit time because the time that he is   .

2    serving is already being credited to his previous

3    sentence.

4         After serving nine months -- strike that.

5    After serving six months, but under 4204(k), the

6    balance is suspended for 18 months Level 3 probation.

7    It is a crime of violence so it should be consecutive

8    to any other probation he is serving.

9         As to the 02-11-0168, 15 days.

10        As to the second PFA, 03-04-1012, 15 days.

11        During the probationary period, the same

12    conditions imposed by Judge Bradley shall be

13    imposed.

14        There is to be no contact with Donna Benge

15    or Stacey Smith.

16        There was a letter as to the forfeiting of

17    the firearms.  There was a letter from a member of

18    his family saying that those firearms were -- I read

19    that quickly and didn't know whether they wanted them

20    back or not.

21        MS. WITHERS:  Under oath when he testified,

22    he testified that those handguns belonged to his

23    uncle, who is deceased, and he asked his father if he

1       could take those guns for his own and that they

2       belonged to him.  I have no information that they

3       belong to anyone else, but, Your Honor, I would ask

4       they be destroyed.

5                THE DEFENDANT:  Your Honor, may I clarify

6       that?

7                THE COURT:  Yes.

8                THE DEFENDANT:  I think the letter speaks

9       to other antique firearms in the possession of the

10      New Castle County Police Department.

11               With respect to the two weapons in the

12      possession of the Rehoboth Beach Police Department,

13      there is no reason why they can't be forfeited and

14      destroyed.

15               THE COURT:  Forfeit the weapons to Rehoboth

16      Beach Police Department.  Pay the costs.

17               For purposes of explanation, while none is

18      required, I have used the K not so much as because I

19      am trying to mirror image Judge Bradley's sentence

20      but because I think something, in addition to his

21      sentence, is appropriate.

22               And if I don't use K, then any sentence I

23      give him, even giving him the max, is meaningless

1    because of the way they calculate.  He will have        .

2    done so much time on K.  They look at the whole

3    package.  He will have done so much time on K when he

4    is finished.  The initial K time he will be

5    immediately eligible for parole or probation that

6    next day.  That is why I reduced it to six months but

7    used a K.

8         MR. HURLEY:  I do have a question if you

9    care to comment.  You made the observation of

10    speculation keeping him in as long as possible.  One

11    could always -- that nine years was the appropriate

12    sentence.  He only had ten years whatever it is.  So

13    I am not sure whether or not that is a logical

14    conclusion.

15         THE COURT:  You could argue that since you

16    are a betting man, and I would bet on my inference.

17    We could go ask the Judge and find out, but that

18    doesn't make any difference because I've made an

19    independent determination that that is a felony

20    count that the Legislature has added on.  While they

21    may argue that it is piling on, yellow flag, to be

22    out there, something of that nature.  I think that

23    some additional punishment is appropriate.

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A26

```
 1          Thank you both.
 2          JUDGE'S SECRETARY:  Your Honor, we need to
 3   clarify on the fist charge.  Did you say that should
 4   be possession of a deadly weapon by a person
 5   prohibited?
 6          THE COURT:  Yes, 1448.  They charge it as a
 7   firearm.  There is a distinction between those
 8   1448(a)(6) I think is the --
 9          MR. HURLEY:  That's correct.  It is a deadly
10   weapon.  That is how the statute reads.
11          JUDGE'S SECRETARY:  In that situation, we
12   may need the State to send a new charge over
13   electronically.
14          THE COURT:  All they have to do is move to
15   amend.
16          The section number is possession and
17   purchase of a deadly weapon by a person prohibited,
18   and it's (a)(6), and that's the correct number.
19          MS. WITHERS:  That's what is in --
20          THE COURT:  But charged possession of a
21   firearm.
22          MS. WITHERS:  We move to amend the caption
23   of the charge.
```

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

1          JUDGE'S SECRETARY:  If the charge in the
2     computer is firearm --
3          THE COURT:  They can amend it because I
4     don't think there is a possession of a firearm by a
5     person prohibited.
6          MR. HURLEY:  There is not.
7          THE COURT:  They are all in one section.
8          JUDGE'S SECRETARY:  Okay.
9          THE COURT:  There is no such charge as
10    possession of a firearm by a person prohibited.  It
11    is possession of a deadly weapon, and firearm is
12    included in deadly weapon.
13         JUDGE'S SECRETARY:  Can we check the
14    computer and let her know if we need them to do
15    something.  I want to note on the record if that
16    does have to be done, it will be a different criminal
17    action number.
18         THE COURT:  Well, hopefully, Oz can be
19    satisfied as by the sacrifice of amending it.
20    Hopefully.  Oz, the great computer, is a strange
21    being.
22         All right.  I understand that Commissioner
23    Howard is going to do something for you all.

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A28

1          Thank you.

2          (Whereupon, the proceedings in the above-

3     entitled matter were concluded.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A29

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR SUSSEX COUNTY

STATE OF DELAWARE

    VS.

JOHN H BENGE

Alias: See attached list of alias names.

DOB: 10/22/1948
SBI: 00494395

CASE NUMBER:
0210012355B

CRIMINAL ACTION NUMBER:
  IS02-10-0929
  PDWBPP FC-PFA(F)
  IS02-11-0168
  CR CON PRO ORD(M)
  IS03-04-1012
  CRIM CNTMPT DVP(M)

COMMITMENT
SEE NOTES FOR FURTHER COURT ORDER-TERMS/CONDITIONS

## SENTENCE ORDER

NOW THIS 20TH DAY OF JANUARY, 2004, IT IS THE ORDER OF THE
COURT THAT:

The defendant is adjudged guilty of the offense(s) charged.
The defendant is to pay the costs of prosecution and all
statutory surcharges.

  AS TO IS02-10-0929- : TIS
  PDWBPP FC-PFA

Effective January 20, 2004  the defendant is sentenced
as follows:

 - The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

 - Suspended after serving 6 month(s)  at supervision level
5

 - For 18 month(s)  supervision level 3

 The first 6 MONTHS  of this sentence is a mandatory term
of incarceration pursant to DE114204000k .

**APPROVED ORDER**     1     January 20, 2004 16:01

A30

**STATE OF DELAWARE**
          **VS.**
**JOHN H BENGE**
**DOB: 10/22/1948**
**SBI: 00494395**

 Probation is consecutive to any probation now serving

 **AS TO IS02-11-0168- : TIS**
 **CR CON PRO ORD**

 - The defendant is placed in the custody of the Department
of Correction for 15 day(s) at supervision level 5

 **AS TO IS03-04-1012- : TIS**
 **CRIM CNTMPT DVP**

 - The defendant is placed in the custody of the Department
of Correction for 15 day(s) at supervision level 5

SPECIAL CONDITIONS BY ORDER

STATE OF DELAWARE
   VS.
JOHN H BENGE
DOB: 10/22/1948
SBI: 00494395

CASE NUMBER:
   0210012355B

The defendant shall pay any monetary assessments ordered during the period of probation pursuant to a schedule of payments which the probation officer will establish.

Should the defendant be unable to complete financial obligations during the period of probation ordered, the defendant may enter the work referral program until said obligations are satisfied as determined by the Probation Officer.

While at Level 3, the defendant shall perform 5 hour(s) to 35 hours of community service per week unless fully employed.

Have no contact with Donna Benge.

Have no contact with Stacey Smith.

Forfeit firearms to Rehoboth PD.

Zero tolerance for contact with victims.

Participate and complete a certified domestic violence intervention program.

The defendant shall undergo mental health evaluation and follow recommendation for counseling and treatment.

Be evaluated for substance abuse and follow any recommendations for counseling, testing or treatment deemed appropriate.

The length of probation imposed in this sentence today exceeds SB 50 sentencing guidelines pursuant to 11 Del.C. 4333(d)( 2 )

**APPROVED ORDER**     3       January 20, 2004 16:01

A32

**STATE OF DELAWARE**
    VS.
**JOHN H BENGE**
**DOB: 10/22/1948**
**SBI: 00494395**

Defendant shall successfully complete anger management, counseling, treatment program.


## NOTES

1)  Conditions imposed by Judge Bradley on his sentence order dated 10/10/03 are reimposed on this sentence order.

2)  The defendant is specifically advised that he is to have no contact with the victims in this matter, by any means. Any communication necessary with his former wife concerning their children shall be carried out through a third party, or in a manner that Family Court directs. There will be zero tolerance for violations of this condition.

3)  An additional aggravating factor present is that, at the time of this incident, the offender was subject to a Protection From Abuse Order issued by Family Court, which prohibited him from contacting victim, Donna Benge.

**JUDGE T. HENLEY GRAVES**

FINANCIAL SUMMARY

STATE OF DELAWARE
     VS.
JOHN H BENGE
DOB: 10/22/1948
SBI: 00494395

CASE NUMBER:
0210012355B


SENTENCE CONTINUED:


TOTAL DRUG DIVERSION FEE ORDERED

TOTAL CIVIL PENALTY ORDERED

TOTAL DRUG REHAB. TREAT. ED. ORDERED

TOTAL EXTRADITION ORDERED

TOTAL FINE AMOUNT ORDERED

FORENSIC FINE ORDERED

RESTITUTION ORDERED

SHERIFF, NCCO ORDERED                 30.00

SHERIFF, KENT ORDERED               15.00

SHERIFF, SUSSEX ORDERED          60.00

PUBLIC DEF, FEE ORDERED

PROSECUTION FEE ORDERED         100.00

VICTIM'S COM ORDERED

VIDEOPHONE FEE ORDERED          3.00

                                208.00

TOTAL

January 20, 2004 16:01

**APPROVED ORDER**     5

A34

## LIST OF ALIAS NAMES

**STATE OF DELAWARE**
**        VS.**
**JOHN H BENGE**
**DOB: 10/22/1948**
**SBI: 00494395**

**                    CASE NUMBER:**
**                        0210012355B**


JOHN BENGE

**APPROVED ORDER**       6       January 20, 2004 16:01

A 35

## AGGRAVATING-MITIGATING

**STATE OF DELAWARE**
  **VS.**
**JOHN H BENGE**
**DOB: 10/22/1948**
**SBI: 00494395**

     **CASE NUMBER:**
     **0210012355B**


**AGGRAVATING**
OTHER
UNDUE DEPRECIATION OF OFFENSE


**APPROVED ORDER**  7  January 20, 2004 16:01

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR SUSSEX COUNTY

STATE OF DELAWARE

     VS.

JOHN H BENGE

Alias: No Aliases

DOB: 10/22/1948
SBI: 00494395

CASE NUMBER:                        CRIMINAL ACTION NUMBER:
0210012355B                           IS02-10-0929
                                      PDWBPP FC-PFA(F)
                                      IS02-11-0168
                                      CR CON PRO ORD(M)
                                      IS03-04-1012
                                      CRIM CNTMPT DVP(M)

COMMITMENT
SEE NOTES FOR FURTHER COURT ORDER-TERMS/CONDITIONS

CORRECTED SENTENCE ORDER

NOW THIS 7TH DAY OF NOVEMBER, 2005, IT IS THE ORDER OF
THE COURT THAT: THE ORDER DATED October 3, 2005 IS
HEREBY CORRECTED AS FOLLOWS:

The defendant is adjudged guilty of the offense(s) charged.
The defendant is to pay the costs of prosecution and all
statutory surcharges.

  AS TO IS02-10-0929- : TIS
  PDWBPP FC-PFA

Effective January 20, 2004 the defendant is sentenced
as follows:

 - The defendant is placed in the custody of the Department
of Correction for 2 year(s) at supervision level 5

 - Suspended after serving 6 month(s) at supervision level
5

 - For 12 month(s) supervision level 3

**APPROVED ORDER**      1      November 7, 2005 11:11

A 37

**STATE OF DELAWARE**
        **VS.**
**JOHN H BENGE**
**DOB: 10/22/1948**
**SBI: 00494395**

The first 6 MONTHS   of this sentence is a mandatory term
of incarceration pursant to DE114204000k .

Probation is concurrent to criminal action number
03-01-0361 .

**AS TO IS02-11-0168- : TIS**
**CR CON PRO ORD**

- The defendant is placed in the custody of the Department
of Correction for 15 day(s) at supervision level 5

**AS TO IS03-04-1012- : TIS**
**CRIM CNTMPT DVP**

- The defendant is placed in the custody of the Department
of Correction for 15 day(s) at supervision level 5

## SPECIAL CONDITIONS BY ORDER

STATE OF DELAWARE
      VS.
JOHN H BENGE
DOB: 10/22/1948
SBI: 00494395

CASE NUMBER:
0210012355B


The defendant shall pay any monetary assessments ordered
during the period of probation pursuant to a schedule of
payments which the probation officer will establish.


Should the defendant be unable to complete financial
obligations during the period of probation ordered, the
defendant may enter the work referral program until said
obligations are satisfied as determined by the Probation
Officer.


Have no contact with Donna Benge.


Have no contact with Stacey Smith.


Forfeit firearms to Rehoboth PD.


Zero tolerance for contact with victims.


Participate and complete a certified domestic violence
intervention program.


The defendant shall undergo mental health evaluation and
follow recommendation for counseling and treatment.


Be evaluated for substance abuse and follow any
recommendations for counseling, testing or treatment deemed
appropriate.


Defendant shall successfully complete anger management,
counseling, treatment program.


### NOTES

1   Conditions imposed by Judge Bradley on his sentence
order dated 10/10/03 are reimposed on this sentence order.
**APPROVED ORDER**    3    November 7, 2005 11:11

A39

STATE OF DELAWARE
      VS.
JOHN H BENGE
DOB: 10/22/1948
SBI: 00494395

2)  The defendant is specifically advised that he is to
have no contact with the victims in this matter, by any
means. Any communication necessary with his former wife
concerning their children shall be carried out through a
third party, or in a manner that Family Court directs.
There will be zero tolerance for violations of this
condition.

3)  An additional aggravating factor present is that, at
the time of this incident, the offender was subject to a
Protection From Abuse Order issued by Family Court, which
prohibited him from contacting victim, Donna Benge.
==========
Now this 3rd day of October, 2005, the Court's original
sentence dated 1/20/04 is corrected as follows:  As to CRA
#02-10-0929, the defendant is placed in the custody of the
Department of Correction for 2 years at Level 5. Suspended
after serving 6 months at Level 5, pursuant to 11 Del. C.
4204(k), for 12 months Level 3 probation (not 18 months as
originally imposed), consecutive to the 6 months Level 4
Work Release under CRA #03-01-0361, Case No. 0210012355A,
in the sentence imposed by Judge Bradley on 10/10/03.  All
other terms and conditions remain as previously imposed.
==========
Now this 7th day of November, 2005, the Court's corrected
sentence dated 10/3/05 is again corrected to change the
Level 3 probation in CRA #02-10-0929 to concurrent to CRA
#03-01-0161 (instead of consecutive as previously order),
as the original sentence was imposed prior to the
enactment of SB50.  All other terms and conditions remain
as previously imposed.
==========

                              JUDGE T. HENLEY GRAVES

## FINANCIAL SUMMARY

**STATE OF DELAWARE**
**        VS.**
**JOHN H BENGE**
**DOB: 10/22/1948**
**SBI: 00494395**

                          **CASE NUMBER:**
                          **0210012355B**


SENTENCE CONTINUED:


TOTAL DRUG DIVERSION FEE ORDERED

TOTAL CIVIL PENALTY ORDERED

TOTAL DRUG REHAB. TREAT. ED. ORDERED

TOTAL EXTRADITION ORDERED

TOTAL FINE AMOUNT ORDERED

FORENSIC FINE ORDERED

RESTITUTION ORDERED

SHERIFF, NCCO ORDERED                      30.00

SHERIFF, KENT ORDERED                      15.00

SHERIFF, SUSSEX ORDERED                    60.00

PUBLIC DEF, FEE ORDERED

PROSECUTION FEE ORDERED                   100.00

VICTIM'S COM ORDERED

VIDEOPHONE FEE ORDERED                      3.00

---

TOTAL                                     208.00


**APPROVED ORDER**      5      November  7, 2005 11:11

A41

## AGGRAVATING-MITIGATING

**STATE OF DELAWARE**
       **VS.**
**JOHN H BENGE**
**DOB: 10/22/1948**
**SBI: 00494395**

                              **CASE NUMBER:**
                                 **0210012355B**

**AGGRAVATING**
OTHER
UNDUE DEPRECIATION OF OFFENSE

**APPROVED ORDER**    6    November  7, 2005 11:11

A42

## Offender Status Sheet

Date: 02/04/2004

BI #: __00494395__    Name: __JOHN H BENGE__

Location(s): __SCI__    Level(s): 5,0    Race: __WHITE__    DOB: __10/22/1948__

AKA:

Offender Type: __Sentenced__    Officer(s):

| Level: 5 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

**Start Date:** 10/09/2002    **MED:** 06/01/2012    **STRD:** 05/04/2012    **ADJ:** 05/04/2012    **PED:**    **Statutory Days Earned:** 338.00

| CASE#/ Court | CRA#/ Judge | Charge Desc/ Sen. Type/ Sentence Date | | Status/ Eff. Date | Length | | | Start Dt | MED | STRD | Adj Date | CR | Wk |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Y | M | D | | | | | | |
| 0210012355 | IS03010361 | ASSAULT 2ND <6 | | Current | 8 | 0 | 0 | 10/09/2002 | 10/08/2010 | 10/08/2010 | 10/08/2010 | | |
| U9 | E. Scott Bradley | 4204K NEW | 10/10/2003 | 10/09/2002 | | | | | | | | | |
| 0210012355 | IS02100928 | CRIM TRES 1ST | | Current | 1 | 0 | 0 | 10/08/2010 | 10/07/2011 | 10/07/2011 | 10/07/2011 | | |
| U9 | E. Scott Bradley | 4204K NEW | 10/10/2003 | 10/09/2002 | | | | | | | | | |
| 0210012355 | IS02100927 | OFF TOUCHING | | Current | | 0 | 30 | 10/07/2011 | 11/05/2011 | 11/05/2011 | 11/05/2011 | | |
| U9 | E. Scott Bradley | 4204K NEW | 10/10/2003 | 10/09/2002 | | | | | | | | | |
| 0210012355 | IS02100929 | POSSESS FIREARM | | Current | | 6 | 0 | 11/05/2011 | 05/04/2012 | 05/04/2012 | 05/04/2012 | | |
| U9 | E. Scott Bradley | 4204K NEW | 10/10/2003 | 10/09/2002 | | | | | | | | | |
| 0210012376 | IS02110168 | CR CON PRO ORD | | Current | | 0 | 15 | 05/04/2012 | 05/18/2012 | 05/04/2012 | 05/04/2012 | | |
| U9 | | STANDARD | 01/20/2004 | 05/04/2012 | | | | | | | | | |
| 0210012355 | IS03041012 | CRIM CNTMPT DVP | | Current | | 0 | 15 | 05/18/2012 | 06/01/2012 | 05/04/2012 | 05/04/2012 | | |
| U9 | E. Scott Bradley | STANDARD | 10/10/2003 | 10/09/2002 | | | | | | | | | |

Special Conditions:

| CRA# | Level | Code | Condition Description | Condition Comments |
|---|---|---|---|---|
| IS03010361 | 5 | CRT1 | Other Conditions: | Under 4204K - no goodtime - credit given for 356 days previously served - level 4 to follow - saj |
| IS02100928 | 5 | CRT1 | Other Conditions: | Under 4204K - no goodtime - saj |
| IS02100927 | 5 | CRT1 | Other Conditions: | Under 4204K - no goodtime - saj |
| IS02100929 | 5 | CRT1 | Other Conditions: | Under 4204K - no goodtime - level 3 to follow - saj |
| IS02110168 | 5 | CRT1 | Other Conditions: | saj |
| IS03041012 | 5 | CRT1 | Other Conditions: | saj |

## Offender Status Sheet

**Date:** 04/27/2004

**BI #:** 00494395    **Name:** JOHN H BENGE

**ocation(s):** SCI    **Level(s):** 5,0    **Race:** WHITE    **DOB:** 10/22/1948

**AKA:**

**ffender Type:** Sentenced    **Officer(s):**

### Level: 5

**Start Date:** 10/09/2002    **MED:** 05/31/2015    **STRD:** 03/13/2014    **ADJ:** 03/13/2014    **PED:**    **Statutory Days Earned:** 444.00

| ASE#/ Court | CRA#/ Judge | Charge Desc/ Sen. Type/ Sentence Date | | Status/ Eff. Date | Y | M | D | Start Dt | MED | STRD | Adj Date | CR | Wk |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 210012355 9 | IS03010361 E. Scott Bradley | ASSAULT 2ND <6 4204K NEW | 10/10/2003 | Current 10/09/2002 | 8 | 0 | 0 | 10/09/2002 | 10/08/2010 | 10/08/2010 | 10/08/2010 | | |
| 210012355 J9 | IS02100928 E. Scott Bradley | CRIM TRES 1ST 4204K NEW | 10/10/2003 | Current 10/09/2002 | 1 | 0 | 0 | 10/08/2010 | 10/07/2011 | 10/07/2011 | 10/07/2011 | | |
| 210012355 .9 | IS02100927 E. Scott Bradley | OFF TOUCHING 4204K NEW | 10/10/2003 | Current 10/09/2002 | | 0 | 30 | 10/07/2011 | 11/05/2011 | 11/05/2011 | 11/05/2011 | | |
| 210012355 9 | IS02100929 E. Scott Bradley | POSSESS FIREARM 4204K NEW | 10/10/2003 | Current 10/09/2002 | | 6 | 0 | 11/05/2011 | 05/04/2012 | 05/04/2012 | 05/04/2012 | | |
| 210012376 J9 | IS02110168 | CR CON PRO ORD STANDARD | 01/20/2004 | Current 05/04/2012 | | 0 | 15 | 05/04/2012 | 05/18/2012 | 05/04/2012 | 05/04/2012 | | |
| 210012355 .9 | IS03041012 E. Scott Bradley | CRIM CNTMPT DVP STANDARD | 10/10/2003 | Current 10/09/2002 | | 0 | 15 | 05/18/2012 | 06/01/2012 | 05/04/2012 | 05/04/2012 | | |
| 301005493 7 | IN03101048 Jerome O Herlihy | WIRETAPS STANDARD | 03/19/2004 | Current 06/01/2012 | 3 | 0 | 0 | 06/01/2012 | 05/31/2015 | 03/13/2014 | 03/13/2014 | | |

**pecial Conditions:**

| CRA# | Level | Code | Condition Description | Condition Comments |
|---|---|---|---|---|
| 503010361 | 5 | CRT1 | Other Conditions: | Under 4204K - no goodtime - credit given for 356 days previously served - level 4 to follow - saj |
| S02100928 | 5 | CRT1 | Other Conditions: | Under 4204K - no goodtime - saj |
| 502100927 | 5 | CRT1 | Other Conditions: | Under 4204K - no goodtime - saj |
| 502100929 | 5 | CRT1 | Other Conditions: | Under 4204K - no goodtime - level 3 to follow - saj |
| S02110168 | 5 | CRT1 | Other Conditions: | saj |
| 503041012 | 5 | CRT1 | Other Conditions: | saj |
| N03101048 | 5 | CRT1 | Other Conditions: | Level 3 to follow - saj |

A 44

## REQUIREMENT FOR TRANSCRIPT REQUEST

DATE: __March 9, 2005__

TO: __John H. Benge, Jr.__
S.B.I. # __00494395__
__Sussex Correctional Institution__
__P.O. Box 500__
__Georgetown, DE__   SLC Code: __N440__
__19947__

FROM: __Christine L. Quinn__
**Official Court Reporter**
**Sussex County Courthouse**
**1 The Circle, Suite 2**
**Georgetown, DE 19947**    **SLC Code: 8980D**

RE: I.D. # __0210018355B__

Caption: __State v. John Benge__

REQUESTED: __Sentencing__

DATE OF HEARING: __January 20, 2004__

ESTIMATE OF COST: __$45.00__
(Note: This is only an estimate. The final cost will be determined by the total pages.)

REQUIREMENT: MONEY ORDER made payable to __Christine L. Quinn__

or CASH in the amount of __$45.00__ or a SIGNED ORDER

by a SUPERIOR COURT JUDGE authorizing payment by the State

of Delaware. PERSONAL CHECKS ARE NOT ACCEPTED.

NOTE: Any motion for payment of transcript fees must be sent directly to the Judge!!

Exhibit A
A45

# FELONY D: VIOLENT

*Statutory Range:* 0 to 8 years    *Presumptive Range:* Up to 24 Months at Level V



# FELONY E: VIOLENT

*Statutory Range:* 0-5 years

*Presumptive Range:* Up to 15 Months at Level V





**FELONY F: VIOLENT** *(note: small sample size) Statutory Range: 0-3 years*
*Presumptive Range: Up to 9 Months at Level V*



**FELONY F: NON-VIOLENT** *Statutory Range: 0-3 Years Presumptive Range: Up to 21 Months at Level II*

ixB

A47

## ADMINISTRATIVE DIRECTIVE
## OF THE
## PRESIDENT JUDGE OF THE SUPERIOR COURT
## OF THE STATE OF DELAWARE

### NO. 2000-3

### ASSIGNMENT OF COMMISSIONERS' DUTIES

Effective January 1, 2000,

IT APPEARING THAT the duties of the Commissioners may be assigned by the President Judge consistent with *10 Del. C.* ' 512,

NOW THEREFORE, IT IS DIRECTED THAT:

(1)    The Superior Court Commissioners are assigned to perform all duties authorized by *10 Del. C.* ' 512, the Superior Court Rules of Criminal and Civil Procedure, and this Administrative Directive.

(2)    Criminal matters which may be assigned a Commissioner include:

     a)    Return of capiases
     b)    Call of Case Review Calendars
     c)    Video Bail Hearings
     d)    Video Control for Representation -
           Incarcerated Defendants
     e)    Control for Representation -
           Defendants on bail
     f)    Suppression Hearings



A 48

**ADMINISTRATIVE DIRECTIVE NO. 2000-3**
**ASSIGNMENT OF COMMISSIONERS- DUTIES**
Page 2

        g)      Pretrial Conferences - Criminal cases
        h)      Review of Habeas Corpus Petitions
        I)      Motions for Post Conviction Relief
        j)      Contempt of Court Hearings
        k)      Welfare Fraud Pleas
        l)      Restitution Hearings

(3)    Civil matters which may be assigned to a Commissioner include:

        a)      Involuntary Commitments
        b)      Case Scheduling Conferences
        c)      Pretrial conferences
        d)      Mediation of cases
        e)      Settlement Conferences
        f)      Status Conferences
        g)      Civil Motions
        h)      Return of Property Non-Jury Trials

(4)    Additional duties which may be assigned a Commissioner include:

        a)      Preliminary review of the jurisdictional
               basis for all appeals
        b)      Review of filings for compliance with
               Court Rules
        c)      Independent research as requested
        d)      Responses to *pro se* correspondence
        e)      Administrative management of problem cases

A 49

**ADMINISTRATIVE DIRECTIVE NO. 2000-3**
**ASSIGNMENT OF COMMISSIONERS DUTIES**
Page 3

(5)     The duties to be performed by the Commissioner in each county

shall be determined by the Judges resident in the county. The Resident Judge shall

supervise the work of the Commissioner.

(6)     All matters referred to a Commissioner for decision shall be

decided within 30 days of being submitted for decision, unless a written extension is

granted by the referring Judge. The Commissioners shall report to the President Judge

on the first of each month each matter held under advisement for more than 30 days.

(7)     All previous Administrative Directives regarding the assignment

of duties to Commissioners are hereby rescinded.

Dated:_____                    _____

President Judge

oc:   Prothonotaries
xc:   Superior Court Judges
      Superior Court Commissioners
      Presentence Office
      Thomas Ralston
      File



FORM 465

## THE FAMILY COURT OF THE STATE OF DELAWARE
FOR NEW CASTLE COUNTY

### ORDER OF PROTECTION FROM ABUSE
(CONSENT)

**PETITIONER**                    **RESPONDENT**

DONNA K. BENGE                JOHN H. BENGE JR              CASE:02-23296
203 FLORENCE AVENUE           16 SNUFF MILL RD.             FILE:CN01-10498
WILMINGTON, DE 19803          CENTERVILLE, DE 19807
DOB:12/30/1953 SSN: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 DOB:10/22/1948 SSN: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 ORDER:0025075

After a hearing with notice to the Respondent and an opportunity to
participate, by CONSENT OF THE PARTIES, pursuant to 10 Delaware Code, Section
1043(e), without a finding of abuse, IT IS ORDERED THAT, for a period up to
one year from the date of this Order, and subject to modification or
extension by the Court pursuant to 10 Delaware Code, Section 1045:

**The Respondent is PROHIBITED BY FEDERAL LAW for the duration of this Order
from PURCHASING, RECEIVING, TRANSPORTING or POSSESSING FIREARMS or AMMUNITION.**

**YOU ARE A PERSON PROHIBITED FROM POSSESSING AND PURCHASING DEADLY WEAPONS FOR
THE DURATION OF THIS ORDER PURSUANT TO 11 DEL. C. sec.1448(a)(6).**

**The Respondent is PROHIBITED for the DURATION of this ORDER from POSSESSING
FIREARMS. RESPONDENT HAS 1 BOLT ACTION RIFLE, 2 1858 REMINGTON 44 CALIBER**
REVOLVERS, 1 REPRODUCTION 44 CALIBER REVOLVER, 1 36 CALIBER PISTOL,
1 SPRINGFIELD RIFLE MUSKET, CENTRAL BOLT E PISTOLS, 1 COLT SHOTGUN,
1 1858 CALVARY CARBINE AND ALL AMMUNITION.
TO BE TURNED OVER BY 5 PM ON 8/30/2002 AT HOCKESSIN COUNTY POLICE SATELLITE
OR DELAWARE STATE POLICE TROOP I SUBSTATION.

The Respondent shall not threaten, molest, attack, harass or commit any
other act of abuse against the Petitioner and any minor child(ren) residing
in the Petitioner's household.

The Respondent shall stay 100 yards away from Petitioner's person, residence
and workplace EXCEPT DURING EXCHANGE OF J.P. FOR VISITATION.

The Respondent shall not contact or attempt to contact the Petitioner in any
way, including, but not limited to, by phone, by mail or by any other means
EXCEPT for telephone contact regarding the children only.

The Petitionner is granted the exclusive use and possession of the residence
specified herein EFFECTIVE NOVEMBER 15, 2002 OR 10 DAYS PRIOR TO THE DATE
THE HOME PETITIONER IS CURRENTLY RESIDING IN (203 FLORENCE AVE) GOES TO
SETTLEMENT, WHICHEVER DATE IS EARLIER. RESPONDENT WILL BE NOTIFIED BY
DOUG LOVETT.
ADDRESS: 16 SNUFF MILL ROAD, CENTREVILLE, DELAWARE
PETITIONER SHALL RETURN TO 16 SNUFF MILL ROAD TO BE ARRANGED THROUGH DOUG
LOVETT TO RETRIEVE HER PERSONAL BELONGINGS AND FILES.

Temporary custody of the minor child(ren) is awarded, with residence
determined, until further Order of the Court.

**A51**

PAGE    3

PETITIONER(S)        DONNA K. BENGE

RESPONDENT(S)        JOHN H. BENGE JR

_____
Respondent's Signature

Date: 08/30/2002

_____
MARTHA SACKOVICH
~~Judge~~/Commissioner/~~Master~~

This Order shall expire on 08/30/2003.
This Order modifies prior Order of _____.

                        CFCVBRI    08/30/2002

FAMILY COURT OF DELAWARE
FOR SUSSEX COUNTY
I hereby certify that the foregoing
is a true copy of the original as same
appears in the records of this Court this

Date _September 12, 2003_

By _____
Clerk of Court

A52

PAGE     2

**PETITIONER(S)**     DONNA K. BENGE

**RESPONDENT(S)**     JOHN H. BENGE JR

NAME/DOB of child(ren):  JOHN PAUL "J.P." BENGE 08/09/88
Custody awarded to: PARENTS JOINTLY
Residence with: PARENTS EQUALLY. J.P. WILL SPEND MONDAY & TUESDAY OVERNIGHTS
WITH FATHER, WEDNESDAY & THURSDAY OVERNIGHTS WITH MOTHER AND THE PARENTS
WILL ALTERNATE THE WEEKENDS WITH MOTHER HAVING THIS WEEKEND. THE PARTIES MAY
MAKE MUTUALLY ACCEPTABLE CHANGES TO THIS SCHEDULE.

The Respondent shall enroll in the following program(s): AN ALCOHOL
EVALUATION AT PETITIONER'S EXPENSE TO BE COMPLETED AT EITHER: SODAT, OPEN
DOOR, BRANDYWINE COUNSELING, PACE OR BY DR. MILICK.* RESPONDENT MAY CHOOSE
FROM THESE PROVIDERS AFTER RESEARCHING SAME.  RESPONDENT HAS AGREED THAT
PETITIONER MAY SPEAK WITH THE EVALUATOR. RESPONDENT WILL MAKE THE
APPOINTMENT FOR THE EVALUATION WITHIN 30 DAYS FROM TODAY, AUGUST 30, 2002.
*OR AS OTHERWISE MUTUALLY AGREED BY THE PARTIES

THIS ORDER WAS ADOPTED BY THE COURT WITHOUT AN EVIDENTIARY HEARING ON THE
MERITS OF THE PETITION.

The Respondent must participate in a substance abuse evaluation and must
comply with any recommended programs determined. Respondent must provide
written information within TWO WEEKS, through the Victim Advocacy Program,
regarding the name and phone number of the provider, anticipated start date
and anticipated completion date, if available.  This written information must
be sent within two weeks to:  Family Court Victim Advocacy Program
                              500 N. King St    Ste 700
                              Wilmington, De 19801-3747    Phone:
                                                           (302) 255-0420

Recommended Provider:

**MATTERS OF CUSTODY, VISITATION AND/OR SUPPORT ADDRESSED THROUGH THIS ORDER ARE
DONE SO ON A TEMPORARY BASIS.  SEPARATE CIVIL PETITIONS MUST BE FILED WITH THE
COURT IN ORDER TO HAVE PERMANENT ORDERS ENTERED ON THESE MATTERS.**
══════════════════════════════════════════════════════════════════
**THIS ORDER COMPLIES WITH ALL REQUIREMENTS OF 18 U.S.C. SECTION 2265 AND IS
ENTITLED TO FULL FAITH AND CREDIT IN ANY STATE, TERRITORY OR INDIAN NATION.**
══════════════════════════════════════════════════════════════════
**THIS ORDER IS EFFECTIVE IMMEDIATELY AND IS AN OFFICIAL COURT ORDER.  THIS
ORDER CANNOT BE WAIVED BY EITHER OF THE PARTIES.  YOU MUST FILE A MOTION WITH
THE COURT IN ORDER TO MODIFY, EXTEND OR RESCIND THIS ORDER.**

**FAILURE TO COMPLY WITH THIS ORDER MAY RESULT IN:**

     **1. A FINDING OF CONTEMPT;**
     **2. CRIMINAL PROSECUTION; AND**
     **3. IMPRISONMENT OR FINE OR BOTH.**

## COLLOQUY BETWEEN JUDICIAL OFFICER AND PARTIES TO AN ORDER OF PROTECTION FROM ABUSE BY AGREEMENT

Questions Addressed to Respondent:

1.  Are you ___John H. Berge Jr.___
    (Name of Respondent)

2.  Do you understand that ___Donna Kay Berge___ has filed a Petition
    (Name of Petitioner)
    for Protection from Abuse against you, which says you have abused her/him?

3.  Do you understand that you have a right to have a trial and present witnesses?

4.  Do you understand that by agreeing to this Order of Protection, you give up your right to a trial on the allegations of abuse?

5.  Do you understand that this Order of Protection is not enforceable against the Petitioner?

6.  Do you understand that by agreeing to this Order of Protection, you are bound to obey it and if you do not, you will be in contempt of the order and may be charged with a Class A misdemeanor punishable by up to one year in jail?

7.  Do you understand that by agreeing to this Order of Protection, you are subject to Federal law that places restrictions on receiving and transporting firearms and ammunition?

8.  Do you understand that agreeing to this Order of Protection from Abuse does not _____ _____ _____ _____ _____ _____ _____?

9.  Do you freely agree to this Order of Protection?  Do you agree that there has been no pressure, threats, promises or undue persuasion to cause you to agree to this Order of Protection?

_____
Respondent

8/30/02
Date

_____
Attorney

_____
Date

Revised April 11, 1996

A 54

09/12/2003   12:33   13022552234                    DE FAMILY COURT

# COLLOQUY BETWEEN JUDICIAL OFFICER AND PARTIES TO AN ORDER OF PROTECTION FROM ABUSE BY AGREEMENT

Questions Addressed to Petitioner:

1. Are you _____ Donna Kay Benge _____ ?
   (Name of Petitioner)

2. Do you understand that you have filed a Petition for Protection from Abuse against: _____
   _____ John H. Benge, Jr _____ saying that he/she has abused you?
   (Name of Respondent)

3. Do you understand that you have a right to have a trial where you will be able to explain in your own words the abuse that you stated in your Petition?

4. Do you understand that when you agree to allow the Court to enter this Order of Protection from Abuse against the respondent that you give up your right to a trial?

5. Do you understand that without a trial, the Court has no information as to whether the abuse occurred or not?

6. Do you understand that without a trial, the Court will not decide whether the abuse occurred?

7. Do you understand that because there has been no trial, this Order of Protection cannot be used as proof that this abuse ever occurred?

8. Do you understand that this Order of Protection is enforceable in the same manner as an order entered after a hearing, including, possibly, the arrest and imprisonment ...

9. Do you freely agree that the Court may enter this Order of Protection from Abuse against the respondent?  Do you agree that there has been no pressure, threats, promises or undue persuasion to cause you to agree to it?

10. Do you understand that agreeing to this Order of Protection from Abuse does not resolve any pending criminal matters?

11. Do you understand that an Order of Protection does not guarantee your safety and that it cannot protect you from someone who wants to disobey a court order?

_____          _____
        Petitioner                        Attorney

8/30/02                          8/30/02
_____          _____
        Date                              Date

Revised April 11, 1996

**A 55**

# IN THE SUPERIOR COURT OF THE STATE
# DELAWARE IN AND FOR SUSSEX COUNTY

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | |
| | ) | **CASE ID NO. 0210012355 B** |
| **v.** | ) | |
| | ) | **CR. ACTION NOS.** |
| **JOHN H. BENGE, JR.,** | ) | **IS-02-10-0929** |
| | ) | **IS-02-11-0168** |
| **Defendant** | ) | **IS-03-04-1012** |

## RULE 35(a) MOTION FOR CORRECTION OF ILLEGAL SENTENCES

**Comes Now**, John H. Benge, Jr. ("Defendant"), *pro se,* and pursuant to Rule 35(a) of the Superior Court Rules of Criminal Procedure ("SCRCP") moves for correction of this Court's sentences as set forth in a sentence order of this Court of January 20, 2004, as previously corrected.[1] The grounds for this motion are as follows:

---

[1] This motion is filed contemporaneously with a Motion under SCRCP Rule 61 which sets forth grounds for post-conviction relief substantially similar to Grounds One and Two of this motion; the reason for the filing of two motions is to avoid the kind of procedural complexity that can arise in attempting to determine the proper rule under which to proceed in cases such as this as is illustrated by *Wilson v. State*, Del. Supr., order, No. 549, 2005, (May 6, 2006)

A56

## THE SENTENCES UPON WHICH
## RULE 35(a) RELIEF IS SOUGHT

1). Following pleas of guilty pursuant to a plea agreement, Defendant was sentenced by the Court on January 20, 2004 on three judgments of conviction entered at the same time as follows:

(a) on the offense of possession of a deadly weapon by a person prohibited (Family Court PFA) [violation of 11 *Del. C.* §1448(a)(6)] in Criminal Action No. IS02-10-0929 to 2 years at Level V suspended after 6 months to be served pursuant to 11 *Del. C.* §4204(k) for 18 months Level III with probation consecutive to any probation Defendant was then serving;

(b) on the offense of criminal contempt of a Family Court order (violation of 11 *Del. C.* §1271A) in Criminal Action No. IS02-11-0168 to 15 days at Level V; and

(c) on the offense of criminal contempt of a Family Court order (violation of 11 *Del. C.* §1271A) in Criminal Action No. IS03-04-1012 to 15 days at Level V.

2). The sentences in paragraph 1) hereof were set forth in a single sentence order of this Court that was dated January 10, 2004. The Court's sentence order of January 10, 2004 was subsequently

corrected by this Court on October 4, 2004 to provide for the reduction of Defendant's probation in Criminal Action No. IS02-10-0929 from a term of 18 months to a term of 12 months and again further corrected by this Court on November 7, 2005 to provide for concurrent rather than consecutive periods of probation in Defendant's sentence orders.

## SUMMARY OF THE GROUNDS IN THIS MOTION

3). This motion presents separate and independent grounds for post-conviction relief under SCRCP Rule 35(a):

a) Ground One: the Double Jeopardy protection of the United States Constitution and the Constitution of the State of Delaware bars judgments of conviction and/or punishment on *each* of the two counts of the indictment in this case alleging criminal contempt of a Family Court protective order by possession of a deadly weapon – i.e., Count 6 *and* Count 12 of the superceding indictment; in addition to those constitutional grounds, the Delaware Criminal Code prohibits multiplicous prosecutions: see 11 *Del. C.* §206(a) and *Willis v. State*, 673 A.2d 1233 (Del. Super., 1995).

b) Ground Two: each of the three separate sentences imposed upon Defendant exceeds the maximum sentence permitted under *Apprendi v. New Jersey*, 530    US 466 (2001) and *Blakely v. Washington*, 542 US 296 (2004); such sentences therefore imposed contrary to the 6th Amendment jury trial protection of the United States Constitution and the jury trial protection of §4 of Article I of the Constitution of the State of Delaware;

### TIMELINESS OF THE PRESENT MOTION

4). A motion for correction of an illegal sentence may be filed "at any time." *Evans v. State*, No. 67, 2004, Del. Supr., *per curiam* (November 23, 2004) (*Evans* I), slip opinion, p.2; *Wilson v. State*, No. 549, 2005, order, Del Supr., (May 5, 2005), pp. 6-7.

### GROUND ONE

### DOUBLE JEOPARDY BARS CONVICTION AND PUNISHMENT ON BOTH COUNTS 6 AND 12

5). The first grounds upon which Defendant seeks relief under Rule 35(a) is that the Double Jeopardy protection of the United States Constitution (Amendment 5, cl.2) and the Constitution of the State of Delaware (Article I, §8) and, independently, 11 *Del. C.* §206(a) bar conviction and punishment of Defendant on both

Count 6 and Count 12 of the Superceding Indictment of April 23,

2003 in this case (the "Superceding Indictment"), Docket Entry

No. 3 in Case ID No. 0210012355 B filed April 28, 2003.

6) Count 6 of the of the Superceding Indictment in this case of

April 29, 2003 reads as follows:

### COUNT 6 – POSSESSION OF A FIREARM BY A PERSON PROHIBITED
### 02-10-0929

**JOHN H. BENGE**, on or about the 20th day of October, in the
County of Sussex, State of Delaware, did have in his possession a
handgun, a deadly weapon as defined under 11 Del. C., §222(5),
while being under a Family Court protection from abuse order, in
violation of Title 11, §1448(a)(6) of the Delaware Code.

 and Count 12 of the Superceding Indictment states:

### COUNT 12 – CRIMNAL CONTEMPT – 03-04-1012

**JOHN H. BENGE**, on or about the 20th day of October, in the
County of Sussex, State of Delaware, did commit the act of
criminal contempt when the defendant knowingly violated or
failed to obey any provision of a protective order issued by Family
Court, to wit: the defendant possessed firearms, in violation of
Title 11, §1271A of the Delaware Code.


7). As is manifestly plain from the language of Counts 6 and 12 of

the Superceding Indictment, the two counts set forth above

involve a single act of the Defendant and allege precisely the same



conduct as constituting two separate offenses – that is to say, the *face* of the Superceding Indictment contains two counts which allege the same facts – *precisely the same conduct* - as constituting the commission of *two* separate offenses.

8). When the same conduct of a defendant forms the basis for two separate offenses, the Double Jeopardy protection prohibits multiple prosecutions. *Blockburger v. United States*, 284 U.S. 299 (1932). "When the same act violates two distinct statutory provisions the test to determine whether there are multiple offenses is whether each statute requires proof of an additional fact which the other does not." *Id*, 284 U.S., at 304; see also, *United States v. Dixon*, 509 US 699 (1993); *United States v. Beckett*, 208 F. 3d 140 (3rd Cir., 2000); accord, *Poteat v. State*, 840 A.2d 599 (Del., 2003). Double jeopardy under both the Federal and State Constitutions, therefore, bars successive prosecutions for greater and lesser included offenses. *Rutledge v. United States,* 517 U.S. 292 (1996); *Payor v. Virginia*, 469 US 1062 (1989); *Brown v. Ohio*, 432 US 161 (1977) accord, *Poteat v. State, supra*; see also, *Spencer v. State*, 868 A.2d 821 (Del., 2005); *Washington v. State*,

836 A.2d 485 (Del., 2003) (Double Jeopardy protects against successive prosecutions; multiple charges under separate statutes requiring poof of the same elements; and multiple charges under the same statute); and *Stigars v. State*, 674 A.2d 477 (Del., 1996).

9). A protection similar to the principle embodied in the Federal and State constitutions is codified in 11 Del C. §206(a) and (b); see *Willis v. State*, 673 A.2d 1233 (Del.Super.,1996). That statute also operates to bar convictions in this case under both Counts 6 *and* 12 as a defendant "*may not*...be convicted of more than 1 offense" (emphasis supplied) if one offense is included in another [11 *Del. C.* §206(a)]; an offense is included in another when "it is established by the proof of the same or less than all the facts required to establish the commission of the offense charged" [11 *Del. C.*§206(b)(1)] or "it involves the same result but differs in [that]..a lesser kind of culpability suffices to establish its commission." [11 *Del. C.* §206(b) (1) and (3)].

10). The elements of the offenses alleged in Count 6 and Count 12 of the Superceding Indictment are identical: that is, that Defendant possessed a deadly weapon while subject to a Family

Court protective order. Neither offense requires proof of a fact that

the other offense does not. Prosecution and punishment for both

offenses is therefore barred under the *Blockburger* test (and

therefore the Federal and State Constitutions) and §206.

11). The fact that Defendant pleaded guilty to each of the offenses

that Defendant now collaterally attacks by this motion is no bar to

the relief sought herein: a guilty plea to separate counts in an

indictment, while admitting the facts therein, does not bar a later

claim based upon Double Jeopardy where the counts in an

indictment are facially duplicative. *Menna v. New York*, 423 U.S.

61 (1975); *Blackledge v. Perry*, 417 US 21 (1974); *United States v.

Broce*, 488 U.S. 563 (1989); *United States v. Pollen*, 978 F.2d 78

(3rd Cir., 1992). Collateral estoppel arising as a result of the

operation of the guilty plea precludes only a claim of Double

Jeopardy in cases where a factual hearing would be necessary to

determine whether the offenses were identical. *Menna v. New

York, supra.* In cases where the indictment on its *face* violates the

double jeopardy protection, as is the case with the Superceding

Indictment, the entry of a guilty plea does not foreclose

subsequent collateral attack: no waiver of the double jeopardy protection occurs by entry of the plea. *United States v. Broce, supra*; *United States v. Pollen, supra*.

12). Prosecution and the imposition of punishment under both Count 6 and Count 12 of the Superceding Indictment is barred by the Double Jeopardy protection of the Federal and State Constitutions and §206. This Court's judgment of conviction under Count 12 must be vacated and the charge in that count dismissed as barred by Double Jeopardy.

### GROUND TWO

### THE SENTENCES WERE IMPOSED CONTRARY TO THE RIGHT TO TRIAL BY JURY

13). The second grounds in this motion for Rule 35(a) relief arises because each of the sentences imposed upon Defendant in this case were enhanced by the sentencing judge upon the basis of facts that were neither admitted by the Defendant nor found by a jury beyond a reasonable doubt:

(a) the Level V sentence of imprisonment for the offense of possession of a deadly weapon under a Family Court protective order was made subject to 11 *Del. C.* §4204(k) and Defendant was

9



therefore denied any diminution of that sentence for earned goodtime; Sentence order, page 1. Use of §4204(k) is a sentence enhancement above the SENTAC presumptive sentence: see ¶34 of the SENTAC statement of policy in the Truth In Sentencing Benchbook (2001) which states that

> Because such sentences add significant complexity to the management of the population of incarcerated offenders, and, if used indiscriminately, would substantially increase the prison population, Section 4204(k) should be used by judges only in exceptional circumstances.
>
> Since imposition of a sentence pursuant to 11 Del. C., sec. 4204(k) is, in effect, a departure from the presumptive sentencing guidelines, the reason for use of Sec 4204(k) must be stated on the record and included in the sentencing order.[2]

The sentencing judge enhanced Defendant's sentence by use of §4204(k) on the basis of facts not found by a jury or admitted by Defendant, i.e., that the sentence was required to prevent "undue depreciation of the offense." Sentence order, page 7.

(b) the sentences imposed in both Count 6 and Count 12 of the indictment for the two alleged violations of the offense of criminal contempt of a Family Court protective order were enhanced to a fifteen day minimum Level V sentence pursuant to 11 *Del. C.*

---

[2] The TIS Benchbook is a recognized aid to the construction of Delaware's sentencing statutes; *see, Evans v. State*, No.67, 2004, Del. Supr., *per curiam* (April 11, 2005) (*Evans* II) slip opinion, p. 34.

A65

§1271A (c) (see Sentence Order, page 2) which states that the

fifteen day minimum sentence follows findings of fact as follows:

> (c) a person found guilty of criminal contempt of a domestic
> violence protective order shall receive a minimum sentence
> of 15 days incarceration if:
> > (1) Such contempt resulted in physical injury; or
> > (2) Such contempt involved the use or threatened
> > use of a deadly weapon; or
> > (3) The defendant was convicted of criminal contempt
> > of a domestic violence protective order under this
> > section on 2 or more occasions prior to this offense.

14). Enhanced penalties for violation of 11 *Del. C.* §1271A are

also applicable when:

> children are present during the crime OR are the victims of
> the offense; against a co-defendant if a conspirator was
> under the age of 14 and the codefendant was 4 or more years
> older that the child at the time of the crime.

> > TIS Benchbook 2001, p. 46,
> > "Special Domestic Violence Category."

15). In this case:

(a) the sentence on the offense of possession of a deadly weapon

while under a Family Court protective order was enhanced based

upon a finding of fact – that a sentence less than incarceration

would "unduly depreciate" the offense – that was neither admitted

by the Defendant (as it was not charged in the Superceding

Indictment) nor tried to a jury. *Blakely* limits the maximum sentence to that may which be imposed *without* the finding of additional facts by the sentencing judge. The sentence imposed on this offense was contrary to the 6th Amendment protection.

(b) the sentences on each of the criminal contempt offenses were enhanced contrary to both *Apprendi* and *Blakely*: *Apprendi,* because as with the hate crime in *Apprendi,* not all of the facts necessary to the enhanced penalty under §1271A were tried to a jury or admitted and *Blakely* because the sentence was enhanced above the presumptive sentence mandated by 11 *Del. C.* §4204(m) [now 11 *Del. C.* §4204(n)] and SCRCP Rule 11 on the basis of facts not charged in the Superceding Indictment and therefore not admitted by the Defendant.

16). Each of the sentences imposed in this case was enhanced above the SENTAC presumptive sentence or, with respect to the §1271A offenses, enhanced on the basis of statutory factors, that were neither charged in the Superceding Indictment, tried to a jury and proven beyond a reasonable doubt, nor admitted by the Defendant as part of the plea process. Those sentences were

therefore imposed contrary to the right to trial by jury of the United States and Delaware Constitutions.

**Wherefore**, Defendant moves for an order of this Court correcting this Court's sentence order of January 20, 2004, as previously corrected, as follows:

(a) vacating of the judgment of conviction and sentence in Criminal Action No. IS 03-04-1012 and dismissing of the charge of violation of 11 *Del. C.* §1271A in that action; and

(b) correction of the sentences imposed by this Court in:

> (i) Criminal Action No. IS 02-10-0929 to eliminate the 11 Del. C. §4204(k) provision therein; and

> (ii) Criminal Action No. IS 02-11-0168 to make such sentence consistent with 11 Del. C. §4204(m) [now (n)] to impose a sentence within the SENTAC presumptive sentence of no more than a term of 12 months probation at Level I.

Date:_____                     John H. Benge, Jr.
                                          P.O. Box 500
                                          Georgetown, DE 19947

i

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE IN AND FOR SUSSEX COUNTY

| | |
|---|---|
| **STATE OF DELAWARE** | ) |
| | ) **CASE ID NO. 0210012355 B** |
| | ) |
| **v.** | ) |
| | ) **CR. ACTION NOS.** |
| **JOHN H. BENGE, JR.,** | ) **IS-02-10-0929** |
| **Defendant** | ) **IS-02-11-0168** |
| | ) **IS-03-04-1012** |
| | ) |

---

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO STATE'S RESPONSE AND AFFIDAVIT TO DEFENDANT'S RULE 35(a) MOTION

---

**Comes Now,** John H. Benge, Jr., defendant above *pro se*

("Defendant") and replies to the Response and Affidavit filed by

the State in answer to Defendant's motion under Superior Court

Rules Of Criminal Procedure Rule 35 (a).[1]

### 1. Defendant's Rule 35(a) Motion Is Not Procedurally Barred

1a). The State assets that "...defendant's applications, filed

pursuant to Superior Court Rule 61 (sic), are procedurally barred

---

[1] For the reasons stated in footnote 1, page 1 of Defendant's Rule 35(a) motion, Defendant has filed motions under both Rule 35(a) and Rule 61. The State has filed a single responsive pleading addressing both motions. Because the Court has not directed that the separate motions be treated as one, Defendant has therefore filed a separate reply on each motion.

and should be denied." [State's Affidavit and Response ("Af. And Resp."), ¶ 7, p. 2.

1b). To the extent that the State's assertion above contends that Defendant's motion under Superior Court Rules of Criminal Procedure ("SCRCrP") Rule 35(a) or the claims set forth therein are procedurally barred under SCRCrP 61 or otherwise, the State is in error. Rule 35(a) provides that an illegal sentence may be corrected "at any time:" the Rule 35(a) remedy is thus open-ended. *Defoe v. State,* 750 A.2d 1200 (Del., 2000). Indeed, it has been held that a motion under SRCCrP Rule 35(a) faces *no* procedural bars. *Fatir v. Thomas,* 106 F. Supp.2d. 572 (D. Del., 2000), at 582. Rule 35(a) therefore stands in contrast to a motion filed under Rule 61. See *Brittingham v. State,* 705 A.2d 577 (Del., 1998), at 578. Perhaps the sole recognized exception to the "no bar" precept of Rule 35(a) consists of the "law of the case" doctrine[2] which bars Rule 35 (a) relief where the basis for an illegal sentence claim has previously been decided by the Delaware Supreme Court. *Id.,* at p. 579. That exception, of course, has no application here.

---

[2] The "law of the case" doctrine is itself not absolute. See, *e.g., Weedon v. State*, Del. Supr., No. 246, 1999, Walsh, J. (April 14, 2000): *Brittingham v. State, supra.*

1c). Even if this Court were to apply a Rule 61-like procedural bar to Defendant's Rule 35(a), such a bar would be inapplicable to Defendant's claims as: i) Defendant's Double Jeopardy claims were raised in this Court previously; see pages 2-3, sentencing transcript of January 10, 2004; ii) "cause" is present as to Defendant's Rule 35(a) Ground Two claim as the Delaware Supreme Court did not recognize the principle underlying that claim until the decision in *Capano v. State*, Del. Supr. No.131, 2005, Ridgeley, J. (January 10, 2006), which was decided nearly two years after the entry of Defendant's original sentence order but four years after the decision in *Apprendi v. New Jersey,* 530 US 466 (2001):[3] and iii) "prejudice" is present as Defendant's sentence, as imposed, is more severe and, as corrected, will be less so. *Cf.*, *Blackwell v. State,* Del. Supr., No. 53, 1999, Holland, J. (September 10, 1999). The procedural bars of Rule 61 are inapplicable to a right first recognized after a case is decided

---

[3] *Cf., Capano v. State, supra* ("...non-capital defendants...are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment...[A] statutory aggravating circumstance that qualifies a defendant for [enhanced punishment] is itself the "functional equivalent of an element of a greater offense"...[T]he Delaware Constitution requires that a jury must unanimously find a statutory aggravating circumstance...") with *State v. Capano*, Del. Super., No. 9711006198 (R-1), Graves, J. (March 9, 2005) ("...the jury's finding of a statutory aggravator does not have to be unanimous."), slip opinion, at p. 49, and *Capano v. State*, 781 A.2d 556 (Del., 2001) ("...the holding in *Apprendi* does not bear on any issue in this case.").

under both the "cause" exception and the "fundamental fairness" exceptions to those bars, *Maxion v. State,* 686 A.2d 148 (Del., 1996); *Younger v. State,* 580 A.2d 550 (Del., 1992).

**2. Defendant's Rule 35(a) Motion Attacks "Illegal" Sentences**

2 a).  The 1987 changes to former Rule 35 were procedural only. *Bailey v. State,* 588 A.2d 1121 (Del., 1991). The definition of an "illegal sentence" as that term is employed in SCRCrP Rule 35(a) therefore includes not only the types of sentences delineated by the State (Af. And Resp., ¶ 13, p. 8, a sentence that "exceeds the statutorily authorized limit," violates Double Jeopardy, or constitutes a sentence the judgment of conviction "does not authorize"), but also encompasses as an "illegal sentence" a sentence that was imposed contrary to constitutional guarantees. *Defoe v. State, supra: Johnson v. State*, 280 A.2d (Del., 1971); *Gural v. State*, 243 A.2d 692 (Del., 1968); *Hodsdon v. State*, 239 A.2d 222 (Del., 1968); *Fatir v. Thomas, supra,* at p. 582, including a sentence imposed contrary to the 6th Amendment right to jury trial, as Defendant asserts in his Rule 35(a) motion.  See *Capano v. State, supra.* See also, *Porter v.*

*State,* Del. Supr., No. 32, 2005, Holland, J. (August 15, 2005) (sentence in violation of "*ex post facto*" law must be corrected).[4]

2 b). Defendant's Rule 35(a) Double Jeopardy claim regarding the two convictions of alleged criminal contempt of a Family Court protective order in Counts 6 and 12 of the superceding indictment clearly raises an illegal sentence claim within the definition above. See Defendant's Rule 35(a) motion, pp. 4-9.

2 c). As to Ground Two in Defendant's Rule 35(a) motion – the *Apprendi* claim for relief – the sentences imposed upon Defendant were "illegal" because those sentences were enhanced beyond the sentence permitted solely by the guilty plea. Judicial fact-finding was necessary to the sentence enhancements in each of those sentences. Under *Apprendi v. New Jersey, supra,* and *Blakely v. Washington,* 542 U.S. 296 (2004): "...the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." In Defendant's case, the penalties imposed by the Court were based upon facts not

---

[4] Although the Rule 35 (a) claim in *Porter* was characterized in the Delaware Supreme Court's opinion as violative of the "*ex post facto*" protection, *Porter* was in fact a Double Jeopardy/Due Process case as the defendant was re-sentenced to a more severe penalty than initially imposed.

admitted by the Defendant. Those sentences were therefore "illegal" under *Apprendi* and thus under Rule 35(a) not 35(b).

### 3. Defendant's Double Jeopardy Claims Were Neither Effectively Waived Nor "Mooted"

3a). As set forth in Defendant's Rule 35(a) motion, a guilty plea does not bar a Double Jeopardy claim in a case where the offenses charged are facially duplicative. See Rule 35(a) motion, ¶ 5) through 12), pp. 4 – 9. The State does not now contend that the offenses in Counts 6 and 12 of the indictment are somehow *not* duplicitous.

3 b). In citing *Scott v. State*, Del. Supr.,, No. 41, 2003, order (October 21, 2003)  (see Af. And Resp., ¶ 8, p. 4), the State: i) conflates the distinct protections afforded by Double Jeopardy as manifest by the State's contention that "...jeopardy had not attached.."; and ii) incorrectly relies upon *Scott's* holding.

3 c). As is quite apparent from the procedural history recited in *Porter v. State, supra*, a Rule 35(a) claim based upon violation of a constitutional guarantee survives all procedural bars.

3  d). Double Jeopardy protects against i) successive prosecutions; ii) mutiplicious charges under separate statutes;

vi



and iii) multiplicious charges under the same statute. See, *e.g.,* *Washington v. State*, 836 A.2d 485 (Del., 2003). *Scott* involved the first of those three distinct protections – not the second as Defendant asserts  in his Rule 35(a) motion and as was the claim in *Menna v. New York*, 423 U.S. 61 (1975) and the related cases cited in Defendant's Rule 35(a) motion at ¶ 11, p. 8 which are controlling in this case as to matters of federal law, anything in *Scott* to the contrary notwithstanding. In any event, *Scott* is inapposite: the Delaware Supreme Court expressly held that *Scott* presented no viable Double Jeopardy claim. *Scott v. State, supra*, order, ¶ 6, p. 3.

3 e). Further, as is clear from the written plea agreement and the *prosecutor's* account of that agreement as set forth in the sentencing transcript, Defendant did not waive Double Jeopardy as part and parcel of a plea agreement with the State: waiver of Double Jeopardy is no where mentioned in the written plea agreement and the prosecutor did not recite waiver of Double Jeopardy as part of the understanding as to the plea. Any remarks to the contrary by Defendant's counsel were both gratuitous and legally erroneous under *Menna*.

𝔚𝔥𝔢𝔯𝔢𝔣𝔬𝔯𝔢, Defendant respectfully submits that the relief

granted in Defendant's SCRCrp Rule 35(a) motion be granted.


Dated: _____        _____

                               John H. Benge, Jr.
                               P.O. Box 500
                               Georgetown, DE 19947

# Certificate of Service

The undersigned hereby certifies that two copies of the motion attached were served on _____, 2007 by depositing the same in the United States Postal service, first class mail, postage prepaid, and addressed to:

Melanie A. Withers
Department of Justice
114 East Market Street
Georgetown, DE 1947

Date: _____

_____
John H. Benge, Jr.

# IN THE SUPERIOR COURT OF THE STATE OF
# DELAWARE IN AND FOR SUSSEX COUNTY

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | |
| | ) | **CASE ID NO. 0210012355 B** |
| **v.** | ) | |
| | ) | **CR. ACTION NOS.** |
| **JOHN H. BENGE, JR.,** | ) | **IS-02-10-0929** |
| | ) | **IS-02-11-0168** |
| **Defendant** | ) | **IS-03-04-1012** |

## RULE 61 MOTION FOR POST-CONVICTION RELIEF FROM JUDGMENTS OF CONVICTION

**Comes Now,** John H. Benge, Jr. ("Defendant"), *pro se,* and pursuant to Rule 61[1] of the Superior Court Rules of Criminal Procedure ("SCRCP") moves for post-conviction relief from this Court's judgments of conviction and sentences of January 20, 2004, as corrected. The grounds for this motion are as follows:

### THE CONVICTIONS UPON WHICH
### RULE 61 RELIEF IS SOUGHT

---

[1] This motion is filed contemporaneously with a Motion under Rule 35(a) which sets forth grounds for correction of sentence substantially similar to Grounds One and Two of this motion; the reason for the filing of two motions is to avoid the kind of procedural complexity that can arise in attempting to determine the proper rule under which to proceed in cases such as this as is illustrated by *Wilson v. State*, Del. Supr., order, No. 549, 2005, (May 6, 2006).

**A78**

1). Following pleas of guilty pursuant to a plea agreement, Defendant was sentenced by the Court on January 20, 2004 on three judgments of conviction entered at the same time as follows:

(a) on the offense of possession of a deadly weapon by a person prohibited (Family Court PFA) [violation of 11 *Del. C.* §1448(a)(6)] in Criminal Action No. IS02-10-0929 to 2 years at Level V suspended after 6 months to be served pursuant to 11 *Del. C.* §4202(k) for 18 months Level III with probation consecutive to any probation Defendant was then serving;

(b) on the offense of criminal contempt of a Family Court order (violation of 11 *Del. C.* §1271A) in Criminal Action No. IS02-11-0168 to 15 days at Level V; and

(c) on the offense of criminal contempt of a Family Court order (violation of 11 *Del. C.* §1271A) in Criminal Action No. IS03-04-1012 to 15 days at Level V.

2). The sentences in paragraph 1) hereof were set forth in a single sentence order of this Court that was dated January 10, 2004. The Court's sentence order of January 10, 2004 was subsequently corrected by this Court on October 4, 2004 to provide for the

reduction of Defendant's probation in Criminal Action No. IS02-10-0929 from a term of 18 months to a term of 12 months and again further corrected by this Court on November 7, 2005  to provide for concurrent rather than consecutive periods of probation in Defendant's sentence orders.

### SUMMARY OF THE GROUNDS IN THIS MOTION

3). This motion presents  separate and independent grounds for post-conviction relief under SCRCP Rule 61:

a) Ground One: the Double Jeopardy protection of the United States Constitution and the Constitution of the State of Delaware bars judgments of conviction and/or punishment on *each* of the two counts of the indictment in this case alleging criminal contempt of a Family Court protective order by possession of a deadly weapon – i.e., Count 6 *and* Count 12 of the superceding indictment; in addition, the Delaware Criminal Code prohibits multiplicous prosecutions: see 11 *Del. C.* §206(a) and *Willis v. State*, 673 A.2d 1233 (Del. Super., 1995);

b) Ground Two: each of the three separate sentences imposed upon Defendant exceeds the maximum sentence permitted under

*Apprendi v. New Jersey,* 530    US 466 (2001) and *Blakely v. Washington,* 542 US 296 (2004); such sentences therefore were imposed contrary to the 6th Amendment jury trial protection of the United States Constitution and the jury trial protection of §4 of Article I of the Constitution of the State of Delaware;

c) Ground Three: each of the three separate pleas of guilty entered by Defendant was not made knowingly, voluntarily, and intelligently in the circumstances of this case as is required by due process under the Fifth Amendment to the United States Constitution and the "law of the land" protection of §8 of Article I of the Constitution of the State of Delaware and, accordingly, Defendant should be permitted to withdraw such pleas: and

(d) the prosecution breached the plea agreement made by the parties by failing to perform its promise to recommend a sentence of probation for the Defendant; as a consequence of such breach, due process under the Federal Constitution and the "law of the law" under the Delaware Constitution therefore permits Defendant to withdraw his pleas of guilty.

## TIMELINESS OF THE PRESENT MOTION

4). Defendant's instant Rule 61 motion is filed within the three year period fixed by SCRCP 61 for the filing of motions for post-conviction relief under that rule of Court.[2]

## GROUND ONE

## DOUBLE JEOPARDY BARS CONVICTIONS ON BOTH COUNTS 6 AND 12

5). The first grounds upon which Defendant seeks post-conviction relief is that the Double Jeopardy protection of the United States Constitution (Amendment 5, cl.2) and the Constitution of the State of Delaware (Article I, §8) and, independently, 11 *Del. C.* §206(a) bar conviction and punishment of Defendant on both Count 6 and Count 12 of the Superceding Indictment of April 23, 2003 in this case (the "Superceding Indictment"), Docket Entry No. 3 in Case ID No. 0210012355 B filed April 28, 2003.

6) Count 6 of the of the Superceding Indictment in this case of April 29, 2003 reads as follows:

---

[2] The current one year limitation set forth in SCRCP Rule 61 applies only to convictions occurring after July 1, 2005; *See*, ¶ 2 of this Court's order of June 20, 2005 amending Rule 61.

## COUNT 6 – POSSESSION OF A FIREARM BY A PERSON PROHIBITED
### 02-10-0929

**JOHN H. BENGE**, on or about the 20th day of October, in the County of Sussex, State of Delaware, did have in his possession a handgun, a deadly weapon as defined under 11 Del. C., §222(5), while being under a Family Court protection from abuse order, in violation of Title 11, §1448(a)(6) of the Delaware Code.

and Count 12 of the Superceding Indictment states:

## COUNT 12 – CRIMNAL CONTEMPT – 03-04-1012

**JOHN H. BENGE**, on or about the 20th day of October, in the County of Sussex, State of Delaware, did commit the act of criminal contempt when the defendant knowingly violated or failed to obey any provision of a protective order issued by Family Court, to wit: the defendant possessed firearms, in violation of Title 11, §1271A of the Delaware Code.

7). As is manifestly plain from the language of Counts 6 and 12 of the Superceding Indictment, the two counts set forth above involve a single act of the Defendant and allege precisely the same conduct as constituting two separate offenses – that is to say, the *face* of the Superceding Indictment contains two counts which allege the same facts – *precisely the same conduct* - as constituting the commission of *two* separate offenses.

8). When the same conduct of a defendant forms the basis for two separate offenses, the Double Jeopardy protection prohibits multiple prosecutions. *Blockburger v. United States,* 284 U.S. 299 (1932). "When the same act violates two distinct statutory provisions the test to determine whether there are multiple offenses is whether each statute requires proof of an additional fact which the other does not." *Id,* 284 U.S., at 304; see also, *United States v. Dixon*, 509 US 699 (1993); *United States v. Beckett*, 208 F. 3d 140 (3rd Cir., 2000); accord, *Poteat v. State*, 840 A.2d 599 (Del., 2003). Double jeopardy under both the Federal and State Constitutions, therefore, bars successive prosecutions for greater and lesser included offenses. *Rutledge v. United States,* 517 U.S. 292 (1996); *Payor v. Virginia*, 469 US 1062 (1989); *Brown v. Ohio*, 432 US 161 (1977) accord, *Poteat v. State, supra*; see also, *Spencer v. State*, 868 A.2d 821 (Del., 2005); *Washington v. State*, 836 A.2d 485 (Del., 2003) (Double Jeopardy protects against successive prosecutions; multiple charges under separate statutes requiring poof of the same elements; and multiple charges under the same statute); and *Stigars v. State*, 674 A.2d 477 (Del., 1996).



9). A protection similar to the principle embodied in the Federal and State constitutions is codified in 11 *Del C.* §206(a) and (b); see *Willis v. State*, 673 A.2d 1233 (Del.Super.,1996). That statute also operates to bar convictions in this case under both Counts 6 *and* 12 as a defendant "may not...be convicted of more than 1 offense" if one offense is included in another [11 *Del. C.* §206(a)]; an offense is included in another when "it is established by the proof of the same or less than all the facts required to establish the commission of the offense charged" [11 *Del. C.*§206(b)(1)] or "it involves the same result but differs in [that]..a lesser kind of culpability suffices to establish its commission." [11 *Del. C.* §206(b)(1) and (3)].

10). The elements of the offenses alleged in Count 6 and Count 12 of the Superceding Indictment are identical: that is, that the defendant possessed a deadly weapon while subject to a Family Court protective order. Neither offense requires proof of a fact that the other offense does not. Prosecution and punishment  for both offenses is therefore barred under the *Blockburger* test (and therefore the Federal and State Constitutions) and §206.



11). The fact that Defendant pleaded guilty to each of the offenses that Defendant now collaterally attacks by this motion is no bar to the relief sought herein: a guilty plea to separate counts in an indictment, while admitting the facts therein, does not bar a later claim based upon Double Jeopardy where the counts in an indictment are facially duplicative. *Menna v. New York*, 423 U.S. 61 (1975); *Blackledge v. Perry*, 417 US 21 (1974); *United States v. Broce*, 488 U.S. 563 (1989); *United States v. Pollen*, 978 F.2d 78 (3rd Cir., 1992). Collateral estoppel arising as a result of the operation of the guilty plea precludes only a claim of Double Jeopardy in cases where a factual hearing would be necessary to determine whether the offenses were identical. *Menna v. New York, supra*. In cases where the indictment on its *face* violates the Double Jeopardy protection, as is the case with the Superceding Indictment, the entry of a guilty plea does not foreclose subsequent collateral attack: no waiver of the Double Jeopardy protection occurs by entry of the plea. *United States v. Broce, supra*; *United States v. Pollen, supra*.



12). Prosecution and the imposition of punishment under both Count 6 and Count 12 of the Superceding Indictment is barred by the Double Jeopardy protection of the Federal and State Constitutions and §206. This Court's judgment of conviction under Count 12 must be vacated and the charge in that count dismissed as barred by Double Jeopardy

## GROUND TWO

### THE SENTENCES WERE IMPOSED CONTRARY TO THE RGIHT TO TRIAL BY JURY

13). The second grounds in this motion for post-conviction relief arises because each of the sentences imposed upon Defendant in this case were enhanced by the sentencing judge upon the basis of facts that were neither admitted by the Defendant nor found by a jury beyond a reasonable doubt:

(a) the Level V sentence of imprisonment for the offense of possession of a deadly weapon under a Family Court protective order was made subject to 11 *Del. C.* §4204(k) and Defendant was therefore denied any diminution of that sentence for earned goodtime; Sentence order, page 1. Use of §4204(k) is a sentence enhancement above the SENTAC presumptive sentence: see ¶34

of the SENTAC statement of policy in the Truth In Sentencing

Benchbook (2001) which states that:

> Because such sentences add significant complexity to the
> management of the population of incarcerated offenders,
> and, if used indiscriminately, would substantially increase
> the prison population, Section 4204(k) should be used by
> judges only in exceptional circumstances.
>
> Since imposition of a sentence pursuant to 11 Del. C.,
> sec. 4204(k) is, in effect, a departure from the presumptive
> sentencing guidelines, the reason for use of Sec 4204(k) must
> be stated on the record and included in the sentencing
> order.[3]

The sentencing judge enhanced Defendant's sentence by use of

§4204(k) on the basis of facts not found by a jury or admitted by

Defendant, i.e., that the sentence was required to prevent "undue

depreciation of the offense."   Sentence order, page 7.

(b) the sentences imposed in both Count 6 and Count 12 of the

indictment for the two alleged violations of the offense of criminal

contempt of a Family Court protective order were enhanced to a

fifteen day minimum Level V sentence pursuant to 11 Del. C.

§1271A (c) (se Sentence Order, page 2) which states that the

fifteen day minimum sentence follows findings of fact as follows:

(c) a person found guilty of criminal contempt of a domestic

---

[3] The TIS Benchbook is a recognized aid to the construction of Delaware's sentencing statutes; see *Evans v. State*, No. 6 , 2004, Del. Supr., *per curiam*, ( April 11, 2005 ) ("*Evans II*") slip opinion, p. 34.

> violence protective order shall receive a minimum sentence of 15 days incarceration if:
>> (1) Such contempt resulted in physical injury; or
>> (2) Such contempt involved the use or threatened use of a deadly weapon; or
>> (3) The defendant was convicted of criminal contempt of a domestic violence protective order under this section on 2 or more occasions prior to this offense.

14). Enhanced penalties for violation of 11 *Del. C.* §1271A are

also applicable when:

> children are present during the crime OR are the victims of the offense; against a co-defendant if a conspirator was under the age of 14 and the codefendant was 4 or more years older that the child at the time of the crime.

> TIS Benchbook 2001, p. 46,
> "Special Domestic Violence Category."

15). In this case:

(a) the sentence on the offense of possession of a deadly weapon

while under a Family Court protective order was enhanced based

upon a finding of fact – that a sentence less than incarceration

would "unduly depreciate" the offense – that was neither admitted

by the Defendant (as it was not charged in the Superceding

Indictment) nor tried to a jury. *Blakely* limits the maximum

sentence to that may which be imposed *without* the finding of

12

additional facts by the sentencing judge. The sentence imposed on this offense was contrary to the 6th Amendment protection.

(b) the sentences on each of the criminal contempt offenses were enhanced contrary to both *Apprendi* and *Blakely*: *Apprendi*, because as with the hate crime in *Apprendi*, not all of the facts necessary to the enhanced penalty under §1271A were tried to a jury or admitted and *Blakely* because the sentence was enhanced above the presumptive sentence mandated by 11 *Del. C.* §4204(m) [now 11 *Del. C.* §4204(n)] and SCRCP Rule 11 on the basis of facts not charged in the Superceding Indictment and therefore not admitted by the Defendant.

16). Each of the sentences imposed in this case was enhanced above the SENTAC presumptive sentence or, with respect to the §1271A offenses, enhanced on the basis of statutory factors, that were neither charged in the Superceding Indictment, tried to a jury and proven beyond a reasonable doubt, nor admitted by the Defendant as part of the plea process. Those sentences were therefore imposed contrary to the right to trial by jury of the United States and Delaware Constitutions.

## GROUND THREE

## DEFENDANT SHOULD BE PERMITTED TO WITHDRAW THE GUILTY PLEAS BECAUSE NONE OF THE PLEAS WERE MADE VOLUNTARILY, INTELLIGENTLY AND/OR KNOWINGLY BECAUSE OF CONFUSION AS TO THE OFFENSES TO WHICH THE PLEAS WERE TAKEN

16). To be consistent with the requirements of due process, a plea of guilty must be made voluntarily, intelligently, and knowingly. *Brady v. United States*, 397 US 742 (1970). This principle is also embodied in the "law of the land" protection in the Delaware Constitution.

17) Explicit in a voluntary, intelligent, and knowing plea of guilty is the concept that the defendant, before such plea is made and accepted, will know what offense the defendant is pleading guilty to and the maximum penalty of the offense to which the plea of guilty is taken. Delaware has both embodied that principle in the Superior Court Rules of Criminal Procedure and recognized its significance in caselaw:

(a) SCRCP Rule 11(c) provides that the Court is to ascertain that a defendant is aware of the nature of the charge and maximum possible penalties and further state that the Court is to advise the

14

A9/

defendant that "the court is required to consider any applicable sentencing guidelines and may depart from those guidelines under some circumstances." Rule 11(c)(1), SCRCP.

(b) the maximum possible sentence is the "most important consequence of the plea" and must be "spelled out clearly." *State v. Insley,* 141 A.2d 619 (Del., 1958); *see also, Wells v. State,* 396 A.2d 161 (Del., 1978); *and Allen v. State,* 509 A.2d 87 (Del., 1986).

18). In the instant case, the parties entered into a plea agreement dated January 20, 2004 that was accompanied by a "Truth-In-Sentencing Guilty Plea Form" (copies of each of such documents are attached hereto).

19) The plea agreement provided for Defendant to plea guilty to three offenses: two violations of 11 *Del. C.* §1271A criminal contempt and a single violation of 11 *Del. C.* §1448(a)(6), possession of a deadly weapon by a person prohibited (Family Court PFA). The §1448(a)(6) charge was set forth in Criminal Action No. IS 02-10-0929 Count 6 above – that count was styled in the indictment as possession of a "firearm."

20). §1448(a)(6) in fact establishes in the same statute two distinct offenses: one such offense is a Class D felony and the other offense is a Class F felony; see 11 *Del C.* §1448(c); however, the statute under which a defendant is charged for either offense is numbered in the identical way. These two offenses are distinguished by the type of deadly weapon possessed by a defendant, i.e., whether the weapon is a "firearm" or ammunition or other deadly weapon as defined by the Delaware Criminal Code. The maximum sentence for a Class D felony differs significantly from that of a Class F felony as do the SENTAC presumptive sentences. See 11 *Del. C.* §4204. Class D felonies are punishable by 0-8 years at Level V and carry a SENTAC presumptive sentence of up to 2 years at Level V; Class F felonies are punishable from 0-3 years at Level V with a SENTAC presumptive sentence of up to 9 months. No crime with which Defendant might have been charged has the statutory penalties or SENTAC presumptive sentence set forth on the TIS guilty plea form prepared by the prosecution in this case.

21). The plea agreement does not reflect whether Defendant was pleading guilty to a Class D or Class F felony; however, the TIS

guilty plea from sets forth the maximum penalty as: " Poss. Firearm Person Prohib. Incarceration: 0-2: Amount of Fine: Disc. TIS GUIDELINE: up to 2 yrs. L-3" and for all of the offenses combined: **"Total Consecutive Maximum Penalty**: 4 yrs." Neither a Class D felony nor a Class F felony have statutory or presumptive sentences that correspond to those set forth on the TIS guilty plea from. That same from also indicated a 15 day minimum sentence on each of the criminal contempt offenses.

22). The transcript of the January 20, 2004 sentencing proceeding reflects that confusion persisted to that stage of the proceedings against Defendant as to what offense he was pleading guilty to and being sentenced for, i.e., the Class D or Class F felony under §1448(a)(6):

(a) the prosecution disclosed the offense on the TIS guilty plea form as a Class D felony as was charged in the indictment; "poss. Firearm person prohib." are the exact words chosen by the prosecutor to describe the offense to which the Defendant was to plead. As noted by the Court during sentencing, there is no such crime in the Delaware Criminal Code;

(b) however, at sentencing the prosecution "moved to amend" the indictment, presumably to change the caption from "firearm" to "deadly weapon;" and

(c) an unnamed judge's secretary, noting a "need to clarify on the first charge," initiated an exchange between counsel and the Court about the nature of the offense.; this left the Court puzzling about how "Oz" (apparently the Superior Court's computer system) would recognize the offense. (Sentencing transcript, pp. 12-13). Rather than clarify the situation, the exchange between counsel and the Court failed to lessen the confusion, as no one spoke directly to the question that had been raised.

23) The records of the Department of Correction indicate that the offense for which Defendant was sentenced was the Class D felony, possession of a firearm; see the DOC status sheet attached hereto[4]

24) Prior to entering the pleas, Defendant had maintained his legal innocence of each of the charges against him, as set forth in pretrial motions filed by his counsel. The essence of those motions

---

[4] The records of the Delaware Department of Correction have been recognized as being relevant to a determination of the nature of the sentence being served by a defendant and hence the offense for which that sentence was meted out. *Evans v. State*, (*Evans* II), *supra*, p.39.

and the defenses raised in them were discussed in very brief form at the January 20, 2004 sentencing proceeding. See sentencing transcript, pp. 2-3.

25). Prior to sentencing, Defendant was aware of the 2000 decision in *Apprendi* and the pending proceedings in *Blakely* and relied upon the representations set forth in the TIS guilty plea form as being accurate.

26). As a result of ht confusion at sentencing, Defendant has been prejudiced as Defendant was misled as to the statutory maximum sentence as well as the SENTAC presumptive sentence applicable to each of the three offenses to which Defendant was to plead guilty. Defendant pleaded guilty under the belief that the maximum penalty in IS 02-10-0929 (possession of a deadly weapon by a person prohibited) was 0-2 years imprisonment – not 0-8 or 0-3 – and that the SENTAC presumptive sentence was up to 2 years at Level III –not 0-2 years or up to 9 months Level V.

27). Because of the confusion as to the offenses to which Defendant was to plead guilty, as generated by the TIS plead guilty form and the exchanges between the Court and counsel at

sentencing, Defendant should be permitted to withdraw his guilty pleas.

28) There is no prejudice to the prosecution in the relief sought by Defendant as the evidence relevant to the case has been preserved (at the express request of Defendant's counsel, made on at least two separate occasions by letter to the Prothonotary), each of the witnesses remain available, and the prosecution has been on notice of the Defendant's defenses since January, 2004 if not sooner. *Cf., State v. Barnett,* Case ID NO. 0311017379, Del. Super., Graves, J. (October 12, 2006).

## GROUND FOUR

## THE PROSECUTION BREACHED DEFENDANT'S PLEA AGREEMENT

29). A plea agreement is a "contract and when it contains a promise of a prosecutor it must be fulfilled or relief will be granted when there is reliance and a breach." *Santobello v. New York,* 404 US 257 (1971); *accord, Dunn v. Colleran,* 247 F.3d 450 (3rd Cir., 2001). Due process also requires that any ambiguities in a plea

agreement be construed against the prosecution. *United States v. Gebbie*, 294 F.3d 549 (3rd Cir., 2002).

30). In the instant case, the prosecution entered into a plea agreement (a copy of which is attached hereto) dated January 20, 2004 in which it expressly agreed as follows:

Sentence Recommendation/Agreement

(1) 2 yrs. L 5 susp. For 1 yr. L3 (2) 1 yr L5. After serving 15 days, balance susp for 1 yr. L3.(3) 1 yr. L5, After serving 15 days, balance sis for 1 yr. L3. The level 3 sentence may run concurrently

31). Despite the parties' agreement, which was in fact drafted by the prosecution, at no point during the January 20, 2004 sentencing proceeding did the prosecution, or anyone speaking for it directly or indirectly, recommend to the Court that it sentence Defendant to probation as agreed. Rather, the prosecution's remarks were addressed exclusively to a purported aggravating factor; i.e., that Defendant was under a Family Court PFA at the time of the alleged offenses.

> ...it was a matter of principle for the State that had he abided by those court orders none of this would have happened...So it was a very blatant thumbing of his nose to the court system in general. As a matter of principle, I wanted it on his record that he had done that.

Sentencing transcript, pp. 6-7

32). In response to the prosecution's argument that Defendant had deliberate distain for the judicial system, the Court sentenced Defendant to imprisonment rather than the probation called for in the plea agreement.

33). The failure of the prosecution at sentencing to make a recommendation for a sentence of probation as agreed upon by the parties in the plea agreement constituted a breach of that agreement by the prosecution. As Defendant had relied upon the prosecution to recommend probation, the breach was material and should be redressed through an order of this Court permitting Defendant to withdraw his pleas of guilty.

**Wherefore**, Defendant moves for an order of this Court granting Defendant post-conviction relief from this Court's sentence order of January 20, 2004, as previously corrected, as follows:

(a) vacating the judgment of conviction and sentence in Criminal Action No. IS 03-04-1012 and dismissing of the charge of violation of 11 *Del. C.* §1271A in that action; and

22
**A99**

(b) correcting the sentences imposed by this Court in:

    (i) Criminal Action No. IS 02-10-0929 to eliminate the 11 Del. C. §4204(k) provision therein; and

    (ii) Criminal Action No. IS 02-11-0168 to make such sentence consistent with 11 Del. C. §4204(m) [now (n)] to impose a sentence within the SENTAC presumptive sentence of no more than a term of 12 months probation at Level I; and

(c) alternatively, permitting Defendant to withdraw his pleas of guilty and setting the above case for such further proceedings as shall be ordered by the Court.

Date:_____

    John H. Benge, Jr.
    P.O. Box 500
    Georgetown, DE 19947

i

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE IN AND FOR SUSSEX COUNTY

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | |
| | ) | **CASE ID NO. 0210012355 B** |
| | ) | |
| **v.** | ) | |
| | ) | **CR. ACTION NOS.** |
| **JOHN H. BENGE, JR.,** | ) | **IS-02-10-0929** |
| **Defendant** | ) | **IS-02-11-0168** |
| | ) | **IS-03-04-1012** |
| | ) | |

---

### DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO STATE'S RESPONSE AND AFFIDAVIT TO DEFENDANT'S RULE 61 MOTION

---

**Comes Now,** John H. Benge, Jr., defendant above *pro se* ("Defendant") and replies to the Response and Affidavit filed by the State in answer to Defendant's motion under Superior Court Rules Of Criminal Procedure ("SCRCrP") Rule 61.[1]

### A. The Grounds For Relief In Defendant's Rule 61 Motion Are Not Procedurally Barred

### 1.The Filing Of Defendant's Prior Rule 35(a) Motion Does Not Bar The Pending Rule 61 Claims

---

[1] For the reasons stated in footnote 1, page 1 of Defendant's Rule 35(a) motion, Defendant has filed motions under both Rule 35(a) and Rule 61. The State has filed a single responsive pleading addressing both motions. Because the Court has not directed that the separate motions be treated as one, Defendant has filed a separate reply on each motion.

A-101

1a). To the extent that the State's Affidavit and Response ("Af. and Resp.") contends that Defendant's Rule 61 claims for relief are procedurally bared by Defendant's filing of a prior SCRCrP Rule 35(a) motion, (i.e., Docket Entry No. 28, 9/20/05), the State asks this Court to impose a procedural rule not previously recognized in Delaware courts.

1b). A motion filed under Rule SCRCrP Rule 61 addresses fundamentally different matters than a motion filed under Rule 61: the former, a sentence: the latter, a conviction. Nothing in either the language of Rule 35(a) or Rule 61 or any case decided under those rules suggests that a Rule 61 motion is procedurally barred whether in whole or part by a previously filed unsuccessful, partly successful, or fully successful motion under Rule 35 (a).

1c). The history of Rule 35 bears out the notion that any contention that there is a "cross-bar" relationship between Rule 35 (a) and Rule 61 is inaccurate. SCRCrP Rule 35 is based upon former (i.e., pre-1987) Federal Rule of Criminal Procedure Rule 35. Under the progenitor federal rule, successive Rule 35 (a) motions were permissible provided

that different issues were raised. See, e.g., *United States v. Quon*, 241 F.2d 161 (2nd Cir., 1957) *cert. denied* 354 U.S. 913 (1958); *United States v. Hamilton*, 391 F. Supp. 1090 (D. Mo., 1975);    *United States v. Moskovits*, 815 F. Supp. 147 (E.D. Pa., 1990) *after remand* 844 F. Supp. 202 (1993). If the filing of a successive application under Rule 35 (a) is not barred by a prior filing asserting different grounds, distinct claims filed under Rule 61 and resting on separate legal grounds cannot be barred simply because of a prior Rule 35 (a) motion.

### 2. Cause, Prejudice And Manifest Injustice – Defendant's Rule 61 Motion Grounds One And Two

2a). With respect to the presence of cause, prejudice, and manifest injustice rendering the procedural bars of SCRCrP Rule 61 (i)  inapplicable to Defendant's Rule 61 Grounds One and Two, Defendant relies upon the argument set forth in paragraphs 1 a) through 3 e) inclusive of Defendant's reply memorandum to his Rule 35 (a) motion.  For the convenience of the Court and to avoid duplicating in this reply that which the Court has already read once, those paragraphs of

Defendant's Rule 35(a) motion are set forth in the Appendix attached hereto and incorporated herein by reference.

### 3. Cause, Prejudice And Manifest Injustice – Defendant's Rule 61Motion Ground Three

3a). Cause: Numerous Delaware cases (virtually all unreported) recite the necessity for circumstances establishing both cause and prejudice under SCRCrP 61 (i) (3) (A) and (B) to be present in order to render the procedural bar of Rule 61 (i) (3) inapplicable to a claim for post-conviction relief. Precious few of those Delaware cases find "cause" or "prejudice" to be present or attempt to detail to any appreciable extent by what facts "cause" and/or "prejudice" may be established. The Delaware Supreme Court has described the concepts only in a generic way: i.e., Rule 61 (i) (3) (a) "cause" may be established by something "external" to the defense. See, *e.g., Younger v. State,* 580 A.2d 552 (Del., 1990) and Flamer v. State, 585 A.2d 736 (Del., 1990). Both *Younger* and *Flamer* were decided shortly after the 1987 amendments to the Superior Court rules; since those cases, the "cause" and "prejudice" jurisprudence of both the Delaware Supreme Court and this

Court consists in large part of cases finding the *absence* of circumstances establishing either cause or prejudice or both.

2b). However, despite the nature of Delaware cases under SCRCrP Rule 61 defining "cause" and "prejudice" almost exclusively by what they are *not*, it is quite clear that both "cause" and "prejudice" are concepts borrowed from federal law. See, *Reynolds v. Ellingsworth*, 843 F.2d 712 (3rd Cir., 1982) explaining that the concepts of "cause" and "prejudice" were abruptly introduced into criminal procedure in Delaware by the decision of the Delaware Supreme Court in *Conyers v. State*,422 A.2d 345 (Del., 1980) (*per curiam*). *Conyers* applied the "cause" and "prejudice" doctrine of *Wainwright v. Sykes,* 433 U.S. 72 (1977). The decision in *Conyers* prompted the Third Circuit Court of Appeals to remark:

> It is ironic that Delaware's courts have imposed a procedural bar on themselves, based upon a line of cases that tortuously distinguishes between situations where a federal court can review claims arising from state convictions and those when that same federal court must defer out of comity to state court adjudication of the claims...As a matter of law, this unexpected application of *Sykes* is, of course, not our concern.
>
> *Reynolds v. Ellingsworth, supra,*
> 843 F.2d, at 719



Under federal court procedure, "cause" – something "external" to the defense – may be established by conduct of the prosecutor. See, e.g., *Murray v. Carrier*, 477 U.S. 478 (1986); *Amadeo v. Zant*, 486 U.S. 214 (1988); *Newell v. Hanks*, 283 F.3d 827 (7th Cir., 2002); and *Dorman v. Wainwright*, 798 F.2d 1358 (11th Cir., 1986).

3c). In the case at bar, Rule 61 (i) (1) (A) "cause" is present as to Defendant's Ground Three in the following circumstances brought about by the conduct of the prosecutor – matters "external" to the defense:

i) the *prosecutor*, not the Defendant, is chargeable with creating the confusion surrounding the plea agreement in this case: the prosecutor did not seek to correct the errors in the TIS guilty plea from; the prosecutor did not state the degree of the offense on the record at sentencing (i.e., whether a Class D or Class F felony); the prosecutor did not at sentencing state the maximum penalties applicable to the offenses for which Defendant was to be sentenced; the prosecutor created the misnomer of the offense in Count 6 of the indictment; and the prosecutor did not lend her voice to clarify the confusion as to

the charge other than to belatedly and confusingly "move to amend;" had the prosecutor done as much as clearly and unambiguously state that the Defendant was to be sentenced after pleading "guilty as charged," the confusion would not have been ameliorated. As a matter of due process, any ambiguity in the plea must be construed against the charging authority. *United States v. Gebbie*, 294 F.3d 540 (3rd Cir., 2002);

ii) the historically long and illegal sentence imposed upon Defendant on August 10, 2004 in Case ID No. 0210012355A induced Defendant to plead guilty in the instant case for fear of a similar disposition if he were to again be convicted even of a lesser included offense as before; and

iii) even if Defendant had promptly sought to review the sentencing proceeding transcript to determine exactly what had transpired or had sought to obtain a copy of his sentencing order to determine the class of felony that he was sentenced for, the time involved would have foreclosed a timely appeal (sentencing proceeding transcript required 90 days to prepare: ordered shortly after March 9, 2005 and not docketed

until June 29, 2005 – see Exhibit A hereto and Docket Entry No. 27, 6/29/05). See *Dorman v. Wainwright, supra.*

3d). Prejudice: As to Defendant's Rule 61 Ground Three, "prejudice" [i.e., a circumstance that worked to the Defendant's substantial disadvantage, "...infecting [the proceedings] with error of constitutional magnitude." See *United States v. Frady*, 456 U.S. 152 (1982)], is present as Defendant, although presenting a colorable claim of innocence in the motions described by his counsel (sentencing proceeding transcript, pp. 2 -3), was induced to accept a plea resulting in a Level V sentence based upon a plea agreement that was confused and confusing to the point that the plea was "involuntary' in a constitutional sense.

3f). Manifest Injustice/Fundamental Fairness: "Manifest injustice" warranting application of the SCRCrP Rule 61(i)(5) fundamental fairness rule is also present as to Defendant's Rule 61 Ground Three. Defendant has recited in Ground Three objectively verifiable facts and circumstances *from the record of the sentencing proceeding* in this case that more than amply demonstrate that confusion, not clarity, reigned at that

proceeding. The *lack of evidence* that a guilty plea was entered voluntarily creates a colorable claim that there was a miscarriage of justice. *Webster v. State,* 604 A.2d 1364 (Del., 1992). That Defendant's claim is supported by the transcript, not bare allegations, distinguishes this case. Defendant's plea was not "voluntary" in a constitutional sense as defined in *Brady v. United States,* 397 U.S. 742 (1970) and cannot be permitted to stand as the penalties were not made clear to him.  As the latest available statistics available (1992-1999) compiled by the Delaware Sentencing Accountability Commission ("SENTAC"), overleaf ixA and ixB, make clear, Defendant would have been far less likely to receive a Level V sentence if the sentencing court had clearly understood that the lead offense was a Class F felony, not a Class D felony (Class D: 66% rate of Level V sentence, average sentence at Level V, 15¼ months; Class F: 52.5% Level V rate, average Level V sentence, 11.8 months).

3g). In the State's reply, no effort is made to refute the facts relied upon by the Defendant in Ground Three of his Rule 61 motion (see Af. and Resp., ¶ 10, p. 6). Rather, and predictably,

# FELONY D: VIOLENT

*Statutory Range:* 0 to 8 years    *Presumptive Range:* Up to 24 Months at Level V



# FELONY E: VIOLENT

*Statutory Range:* 0-5 years

*Presumptive Range:* Up to 15 Months at Level V



**FELONY F:  VIOLENT** *(note: small sample size).  Statutory Range: 0-3 years*
*Presumptive Range: Up to 9 Months at Level V*



**FELONY F:  NON-VIOLENT** *Statutory Range: 0-3 Years  Presumptive Range: Up to 21 Months at Level II*





the State relies upon bare, generalized assertions as to what "everyone understood" (with only one possible exception being allowed by the State) (Af. and Resp., ¶ 10, p. 6); the "tone" of Defendant's post-sentencing filings (without explaining how that "tone" impacts what occurred at sentencing); Defendant's purported experience and character traits ("not meek;" "isn't capable of being intimidated' – but, how about subject to being mislead?); even a suggested diagnosis as the cause for Defendant's woes (Dr. Mel on depression and self-medication ). The State venture so far as to suggest an entirely new standard for plea withdrawal (no relief "...without strong evidence [of] something physically wrong with the defendant" Af. And Resp., ¶ 10, p. 6).  The State's arguments do not blunt the basis for relief in Ground Three,

## B. Cause, Prejudice, And Manifest Injustice – Defendant's Rule 61 Ground Four.

4a).  Remarkably, the State has attempted to refute Defendant's Rule 61 Ground Three claim for relief (based upon breach of the plea agreement) by arguing that there was no legally enforceable agreement between the state and Defendant

x

**A-112**

[the State's "...[sentencing] comments did not amount to a violation of a *supposed "contract"* between the State and defendant." Af. And Resp., ¶ 11, p. 7; (quotations in original; emphasis supplied).

4b). Whether a plea agreement constitutes a "contract" between a defendant and a prosecutor – for purposes of due process – is an issue not admitting of serious debate. *Santobello v. New York,* 404 U.S. 257 (1971); ("... a plea agreement is a contract..."); *Mabry v. Johnson,* 476 U.S. 504 (1984); *Dunn v. Collleran,* 247 A.2d 450 (3rd Cir., 2001); *United States v. Nolan-Cooper, 155 F.3d 221* (3rd Cir., 1998) (plea agreement breach governed by law of contracts); *Zebroski v. State,* 715 A.2d 75 (Del., 1998); *Washington v. State,* 844 A.2d 293 (Del., 2004).

4c). If, however, the State contends in the instant case that it never intended to enter into a legally enforceable agreement with the Defendant – that is, that the Defendant pleaded guilty to all three offenses charged in exchange for nothing pledged by the State in return from the State – then the short answer to Defendant's Ground Four is that the contract prerequisite of

"intent to be bound" is missing here, 17 CJS, Contracts, §56, and the Court should summarily grant to Defendant leave to withdraw his guilty plea.

4d). As with all matters of contract, the plea bargaining system is based upon good faith dealing and therefore "...presupposes fairness in securing agreement between an accused and a prosecutor." *Santobello v. New York, supra,* at 261. When a plea agreement contains promises that are "unfulfilled or unfulfillable," such an agreement was procured by "misrepresentation" and cannot be permitted to stand. *Brady v. United States, supra,* at 755. "When the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false promise, and hence his conviction cannot stand." *Mabry v. Johnson, supra,* at 509. The State offers nothing in this case that would justify taking it out of the scope of the generally applicable rules.

4e). A prosecutor breaches a plea agreement by not fulfilling the promises therein; this includes:

i) providing information that could only be used to enhance a sentence. See, *e.g., United States v. Vaval*, 404 F.3d 144 (2nd Cir., 2005);

ii) endorsing facts suggesting an enhanced sentence; See, *e.g., United States v. Rivera,* 375 F.3d 290 (3rd Cir., 2004); and

iii) going beyond the information in a plea agreement to suggest enhancement of a sentence. See, *e.g., United States v. Munoz,* 408 F.3d 222 (5th Cir., 2005). Each of these types of breach are present in the instant case (Defendant's Rule 61 motion, ¶ 31, p. 21).

4f). When confronted with a record demonstrating a clear breach by the State of the plea agreement with Defendant (see Defendant's Rule 61 motion, ¶ 31, p. 21 ), in a case where the prosecutor was extremely disappointed with the outcome of the August, 2003 trial in case ID No. 0210012355A, the State, somewhat predictably:

i). argues that the sentence recommendation it agreed to make was somehow "...just a ...recommendation" (Af. and Resp. ¶ 11, p. 7); the prosecution dissembles in making this argument: when confronted by this self-same "end-run" around a plea

bargain promise in *Dunn v. Colleran, supra*, the Third Circuit Court of Appeals held that the prosecution was bound to make "nothing more, noting less" than the "recommendation" in the plea and, in contending that a "recommendation" was somehow not part of a binding promise began "...sliding down a slippery slope on her way to denouncing her legal obligation:" starting with what the prosecutor agreed to do in the instant case (see, *e.g., Dunn v. Colleran, supra*), the plea agreement called for a recommendation of *probation* – not argument referring to Defendant's conduct as a "very blatant thumbing of the nose to the court system" (sentencing transcript, p. 7), an impassioned remark inviting a severe and certain sentence; and

ii). invents dialogue not occurring at sentencing: *cf.*, Af. and Resp., ¶ 11, p. 7 ("...the State responded yes" to the Court's question regarding the State's recommendation) with the sentencing transcript, pp. 6-7.

4g). As in *Dunn v. Colleran, supra*, the prosecutor in the instant case breached the "letter and the spirit" of the plea agreement by an "impassioned statement" that would clearly

justify imprisonment while not once calling for probation as agreed or *even using the word "probation"* as she addressed the Court. The prosecutor did all she could do to marginalize the recited recommendation in the plea agreement. Such conduct was thoroughly condemned by the court in *Dunn v. Colleran, supra,* and should not be excused in this case.

4h). Cause And Prejudice: "Cause" and "prejudice" are present as to Defendant's Ground Four and established by the same circumstances recited in paragraphs 3 c). and 3 d) above.

4i). Manifest Injustice and Fundamental Fairness: Moreover, "manifest injustice" is particularly clear here. Breach of a plea agreement "strikes at public confidence in the fair administration of justice and, in turn, the integrity of our criminal justice system." *Dunn v. Colleran, supra.* In imposing a sentence, a judge may not rely upon a recommendation in violation of the plea agreement. *Id.* Where there has been a breach of the plea agreement, "relief will be granted." *Santobello v. New York, supra.* A conviction in such a case "cannot stand." *Mabry v. Johnson, supra,* p. 509. This case – one in which the prosecutor does not contend that breach of

A17

the plea agreement was somehow "inadvertent" and feels unconstrained by any obligation to the present to deny being bound by the express terms of the written plea agreement that she drafted and agreed to, and yet denies the impact of the words she spoke at sentencing contrary to the recommendation that she agreed to make (raising the question of why she spoke those words in the first instance) – is a particularly deserving case for application of the "manifest injustice" precept.

𝔚𝔥𝔢𝔯𝔢𝔣𝔬𝔯𝔢, Defendant respectfully submits that the relief granted in Defendant's SCRCrP Rule 61 motion be granted.

Dated:                                    _____
                                          John H. Benge, Jr.
                                          P.O. Box 500
                                          Georgetown, DE 19947

## REQUIREMENT FOR TRANSCRIPT REQUEST

DATE: March 9, 2005

TO: John H. Benge Jr.
S.B.I. # 00494395
Sussex Correctional Institution
PO Box 500
Georgetown De.   SLC Code: N440
19947

FROM: Christine L. Quinn
**Official Court Reporter**
**Sussex County Courthouse**
**1 The Circle, Suite 2**
**Georgetown, DE 19947**   SLC Code: S980D

I.D.#: 0210018355 B

Caption: State v. John Benge

REQUESTED: Sentencing

DATE OF HEARING: January 20, 2004

ESTIMATE OF COST: $45.00
(Note: This is only an estimate. The final cost will be determined by the total pages.)

REQUIREMENT: MONEY ORDER made payable to Christine L. Quinn

or CASH in the amount of $45.00 or a SIGNED ORDER

by a SUPERIOR COURT JUDGE authorizing payment by the State

of Delaware. PERSONAL CHECKS ARE NOT ACCEPTED.

NOTE: Any motion for payment of transcript fees must be sent directly to the Judge!!

EXHIBIT A   A 110

# Appendix To Rule 61 Reply

## 1. Defendant's Rule 35(a) Motion Is Not Procedurally Barred

1a). The State assets that "...defendant's applications, filed pursuant to Superior Court Rule 61 (sic), are procedurally barred and should be denied." [State's Affidavit and Response ("Af. And Resp."), ¶ 7, p. 2.

1b). To the extent that the State's assertion above contends that Defendant's motion under Superior Court Rules of Criminal Procedure ("SCRCrP") Rule 35(a) or the claims set forth therein are procedurally barred under SCRCrP 61 or otherwise, the State is in error. Rule 35(a) provides that an illegal sentence may be corrected "at any time:" the Rule 35(a) remedy is thus open-ended. *Defoe v. State,* 750 A.2d 1200 (Del., 2000). Indeed, it has been held that a motion under SRCCrP Rule 35(a) faces *no* procedural bars. *Fatir v. Thomas,* 106 F. Supp.2d. 572 (D. Del., 2000), at 582. Rule 35(a) therefore stands in contrast to a motion filed under Rule 61. See *Brittingham v. State,* 705 A.2d 577 (Del., 1998), at 578. Perhaps the sole recognized exception to the "no bar" precept of Rule 35(a) consists of the "law of the case" doctrine[1] which bars Rule 35 (a) relief where the basis for an illegal sentence claim has previously been decided by the Delaware Supreme Court. *Id.,* at p. 579. That exception, of course, has no application here.

1c). Even if this Court were to apply a Rule 61-like procedural bar to Defendant's Rule 35(a), such a bar would be inapplicable to Defendant's claims as: i) Defendant's Double Jeopardy claims were raised in this Court previously; (see pages 2-3, sentencing transcript of January 10, 2004); ii) "cause" is present as to Defendant's Rule 35(a) Ground Two claim as the Delaware Supreme Court did not recognize the principle underlying that claim until the decision in *Capano v. State,* Del. Supr. No.131, 2005, Ridgeley, J. (January 10, 2006), which was decided nearly two years after the entry of Defendant's original sentence order but four years after the decision in *Apprendi v. New Jersey,* 530 US 466 (2001):[2] and iii) "prejudice" is present as Defendant's sentence, as imposed, is more severe and, as corrected, will be less so. *Cf., Blackwell v. State,* Del. Supr., No. 53, 1999, Holland, J. (September 10, 1999). The procedural bars of Rule 61 are inapplicable to a right first recognized after a case is decided under both the "cause" exception and the "fundamental fairness" exceptions to those bars,

---

[1] The "law of the case" doctrine is itself not absolute. See, *e.g., Weedon v. State,* Del. Supr., No. 246, 1999, Walsh, J. (April 14, 2000): *Brittingham v. State, supra.*

[2] *Cf., Capano v. State, supra* ("...non-capital defendants...are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment...[A] statutory aggravating circumstance that qualifies a defendant for [enhanced punishment] is itself the "functional equivalent of an element of a greater offense"...[T]he Delaware Constitution requires that a jury must unanimously find a statutory aggravating circumstance...") with *State v. Capano,* Del. Super., No. 9711006198 (R-1), Graves, J. (March 9, 2005) ("...the jury's finding of a statutory aggravator does not have to be unanimous."), slip opinion, at p. 49, and *Capano v. State,* 781 A.2d 556 (Del., 2001) ("...the holding in *Apprendi* does not bear on any issue in this case.").

**A120**

*Maxion v. State,* 686 A.2d 148 (Del., 1996); *Younger v. State,* 580 A.2d 550 (Del., 1992).

### 2. Defendant's Rule 35(a) Motion Attacks "Illegal" Sentences

2 a). The 1987 changes to former Rule 35 were procedural only. *Bailey v. State,* 588 A.2d 1121 (Del., 1991). The definition of an "illegal sentence" as that term is employed in SCRCrP Rule 35(a) therefore includes not only the types of sentences delineated by the State (Af. And Resp., ¶ 13, p. 8, a sentence that "exceeds the statutorily authorized limit," violates Double Jeopardy, or constitutes a sentence the judgment of conviction "does not authorize"), but also encompasses as an "illegal sentence" a sentence that was imposed contrary to constitutional guarantees. *Defoe v. State, supra: Johnson v. State,* 280 A.2d (Del., 1971); *Gural v. State,* 243 A.2d 692 (Del., 1968); *Hodsdon v. State,* 239 A.2d 222 (Del., 1968); *Fatir v. Thomas, supra,* at p. 582, including a sentence imposed contrary to the 6th Amendment right to jury trial, as Defendant asserts in his Rule 35(a) motion. See *Capano v. State, supra.* See also, *Porter v. State,* Del. Supr., No. 32, 2005, Holland, J. (August 15, 2005) (sentence in violation of *"ex post facto"* law must be corrected).[3]

2 b). Defendant's Rule 35(a) Double Jeopardy claim regarding the two convictions of alleged criminal contempt of a Family Court protective order in Counts 6 and 12 of the superceding indictment clearly raises an illegal sentence claim within the definition above.  See Defendant's Rule 35(a) motion, pp. 4-9.

2 c). As to Ground Two in Defendant's Rule 35(a) motion – the *Apprendi* claim for relief – the sentences imposed upon Defendant were "illegal" because those sentences were enhanced beyond the sentence permitted solely by the guilty plea. Judicial fact-finding was necessary to the sentence enhancements in each of those sentences. Under *Apprendi v. New Jersey, supra,* and *Blakely v. Washington,* 542 U.S. 296 (2004): "...the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." In Defendant's case, the penalties imposed by the Court were based upon facts not admitted by the Defendant. Those sentences were therefore "illegal" under *Apprendi* and thus under Rule 35(a) not 35(b)

### 3. Defendant's Double Jeopardy Claims Were Neither    Effectively Waived Nor "Mooted"

3a). As set forth in Defendant's Rule 35(a) motion, a guilty plea does not bar a Double Jeopardy claim in a case where the offenses charged are facially duplicative. See Rule 35(a) motion, ¶ 5) through 12), pp. 4 – 9. The State does not now contend that the offenses in Counts 6 and 12 of the indictment are somehow *not* duplicitous.

---

[3] Although the Rule 35 (a) claim in *Porter* was characterized in the Delaware Supreme Court's opinion as violative of the *"ex post facto"* protection, *Porter* was in fact a Double Jeopardy/Due Process case as the defendant was re-sentenced to a more severe penalty than initially imposed.

3 b). In citing *Scott v. State*, Del. Supr., No. 41, 2003, order (October 21, 2003) (see Af. And Resp., ¶ 8, p. 4), the State: i) conflates the distinct protections afforded by Double Jeopardy as manifest by the State's contention that "...jeopardy had not attached.."; and ii) incorrectly relies upon *Scott's* holding.

3 c). As is quite apparent from the procedural history recited in *Porter v. State, supra*, a Rule 35(a) claim based upon violation of a constitutional guarantee survives all procedural bars.

3 d). Double Jeopardy protects against i) successive prosecutions; ii) mutiplicious charges under separate statutes; and iii) multiplicious charges under the same statute. See, *e.g., Washington v. State*, 836 A.2d 485 (Del., 2003). *Scott* involved the first of those three distinct protections – not the second as Defendant asserts in his Rule 35(a) motion and as was the claim in *Menna v. New York*, 423 U.S. 61 (1975) and the related cases cited in Defendant's Rule 35(a) motion at ¶ 11, p. 8 which are controlling in this case as to matters of federal law, anything in *Scott* to the contrary notwithstanding. In any event, *Scott* is inapposite: the Delaware Supreme Court expressly held that *Scott* presented no viable Double Jeopardy claim. *Scott v. State, supra*, order, ¶ 6, p. 3.

3 e). Further, as is clear from the written plea agreement and the *prosecutor's* account of that agreement as set forth in the sentencing transcript, Defendant did not waive Double Jeopardy as part and parcel of a plea agreement with the State: waiver of Double jeopardy is no where mentioned in the written plea agreement and the prosecutor did not recite waiver of Double Jeopardy as part of the understanding as to the plea. Any remarks to the contrary by Defendant's counsel were both gratuitous and legally erroneous under *Menna*.

# Certificate of Service



The undersigned hereby certifies that two copies of the motion attached were served on _____, 2007 by depositing the same in the United States Postal service, first class mail, postage prepaid, and addressed to:

> Melanie A. Withers
> Department of Justice
> 114 East Market Street
> Georgetown, DE 1947

Date:                                    _____

                                         John H. Benge, Jr.

# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| John H. Benge, Jr., | ) | |
| Defendant Below- | ) | |
| Appellant | ) | No. ___, 2007 |
| | ) | |
| v. | ) | On appeal from the Superior Court of the State of Delaware in and for Sussex County |
| | ) | |
| | ) | |
| The State of Delaware, | ) | |
| Appellee | ) | |

# BRIEF FOR APPELLANT

Date: August 7, 2007

John H. Benge, Jr.
P.O. Box 500
Georgetown, DE 19947

A124

## TABLE OF CONTENTS

Page

Table of Citations....................................................... iv

Statement Of The Nature
And Stage Of The Proceeding.............................. 1

Summary Of Argument........................................... 5

Statement Of Relevant Facts................................ 7

      The Indictment.................................................. 7

      The Plea Agreement And Its Documents.......... 8

      The Underlying Offenses.................................. 9

      The Plea Proceeding....................................... 10

      The Sentencing Proceeding............................. 11

Argument

I. The Holding Of The Court Below
   That Defendant's Rule 35(a)
   "Multiple Punishments"
   Double Jeopardy Claim Was Waived
   By Guilty Plea Is Contrary
   To *Menna v. New York* And
   Erroneous As A Matter Of Law............................ 13

A. Statement Of the Standard
   And Scope Of Review....................................... 13

B. The Double Jeopardy Claim Is
   Not Procedurally Barred.................................... 13

C. Defendant's Rule 35(a) Double
   Jeopardy Claim Attacks An
   "Illegal Sentence".......................................... 14

D. Double Jeopardy Bars Sentences
   On Both Counts 6 And 12.................................. 14

E. There Was No Waiver Of
   Defendant's Double Jeopardy Claim.................. 16



II. The Enhanced Sentences Imposed By
     The Court Below Violate The
     *Apprendi/Blakely/Capano III* Rule
     Requiring Sentences To Be Based
     Upon Jury Verdicts Or Admitted Facts............................    18

A. Statement Of The Standard
   And Scope Of Review.............................................    18

B. The *ApprendiBlakely/CapanoIII* Claims..........................    18

C. Defendant's Rule 35(a) Motion
   Attacks "Illegal" Sentences....................................    19

D. The Rule 61 Bars Are Inapplicable:
   "Cause" And "Prejudice" And
   "Manifest Injustice" Are All
   Present In This Case...........................................    19

1. "Cause"........................................................    20

2. "Prejudice"...................................................    21

3. "Manifest Injustice"..........................................    21

E. Each Sentence Violates
   *Apprendi/Blakely/Capano III*..................................    21

1). The Use of §4204(k).........................................    21

2). Enhancement To The Non-suspendable
    Minimum §1271A(c) Sentence...................................    22

III. The Record Reflects Such Confusion
     As To Which Felony Defendant Was
     To Plead Guilty And As To The Applicable
     Maximum Sentences As To Render
     Defendant's Pleas Involuntary
     As A Matter Of Law Under *Brady v. United States*..........    24

A. Statement Of The Standard
   And Scope Of Review.............................................    24

B. Cause, Prejudice And Manifest
   Injustice - Defendant's Rule 61
   Motion Ground Three............................................    24

1. "Cause" Under SCRCrP Rule 61:
   A Precept Borrowed From Federal Law............................    24

2. "Cause"........................................................    26

3. "Prejudice"..................................................................... 27

4. "Manifest Injustice"....................................................... 27

C. Defendant's Plea Was Not "Voluntary"
   Under *Brady v. United States*....................................... 28

IV. The Prosecution Breached The Plea
    Agreement By Arguing Against The
    Recommendation It Had Agreed To
    Make To The Court Below............................................... 30

A. Statement Of The Standard
   And Scope Of Review..................................................... 30

B. Cause, Prejudice, And Manifest
   Injustice – Defendant's Rule 61 Ground Four.............. 30

1. "Cause" And "Prejudice"............................................... 30

2. "Manifest Injustice"..................................................... 30

C. Plea Agreement As Contract......................................... 31

D. The Content Of The Agreement..................................... 32

E. Breach Of The Plea Agreement By The State.............. 32

Conclusion........................................................................... 35


May 2, 2007 Letter Opinion of the Court Below

Certificate of Service

**A·127**

# TABLE OF CITATIONS

**Page**

## CASES

*Allen v. State,* 509 A.2d 87 (Del., 1986)................................. 29

*Amadeo v. Zant,* 486 U.S. 214 (1988)................................................. 25

*Apprendi v. New Jersey*, 530 U.S. 466 (2001)........................... 3,
                                                        *passim post*-19

*Blackledge v. Perry*, 417 U.S. 21 (1974)........................................ 16

*Blackwell v. State,* Del. Supr. No. 53, 1999,
Holland, J. (September 10, 1999)................................................... 21.

*Blakely v. Washington*, 542 U.S. 296 (2004)............................. 3
                                                        *passim post*-11

*Blockburger v. United States, 284 U.S. 299 (1932)*............ 14

*Boykin v. Alabama*, 395 U.S. 238 (1969)........................................ 28

*Brady v. United States*, 397 U.S. 742 (1970)........................... 28

*Brittingham v. State,* 705 A.2d 577 (Del., 1998)................. 13

*Brown v. Ohio,* 432 U.S. 161 (1971)............................................... 15

*Capano v. State*, 781 A.2d 552 (Del., 2001)................................ 13

*Capano v. State,* Del. Supr., No. 131, 2005
Ridgely, J. (January 10, 2006)...................................................... 3
                                                        *passim post*-19

*Conyers v. State,* 422 A.2d 345 (Del., 1980)............................ 25

*Cunningham v. California,* __ U.S. __ (2007)............................ 19

*Defoe v. State,* 750 A.2d 1200 (Del., 2000)................................ 13

*Dorman v. Wainwright,* 798 U.S. 1358
(11th Cir., 1986................................................................................. 25

*Downer v. State,* 543 A.2d 309 (Del. Super., 1988)............ 16

iv

**A 128**

*Dunn v. Colleran*, 247 F.3d 459 (3rd Cir., 2001) ................. 30
passim post-30

*Engles v. Issac*, 456 U.S. 107 (1982) ................................ 20

*Evans v. State*, Del. Supr. No. 64, 2004,
*Per curiam*, (April 11, 2005) ...................................... 12

*Fatir v. Thomas*, 106 F. Supp.2d 572 (D. Del., 2000) ....... 13

*Flamer v. State*, 585 A.2d 736 (Del., 1990) .................. 25

*Genecor International, Inc. v. NOVO Nordisk
A/S*, 766 A.2d 8 (Del., 2000) .................................... 13

*Gural v. State*, 243 A.2d 692 (Del., 1968) .................. 19

*Henderson v. Morgan*, 426 U.S. 637 (1976) .................. 28

*Hodson v. State*, 239 A.2d 222 (Del., 1968) .................. 19

*Johnson v. Pinchak*, 392 F.3d 151 (3rd Cir., 2005) ........ 20

*Johnson v. State*, 280 A.2d 712 (Del., 1971) .................. 19

*Jones v. United States*, 526 U.S. 277 (1999) ................ 19

*Lilly v. State*, 649 A.2d 1055 (Del., 1994) .................. 24

*Lines v. Larkin*, 208 F.3d 153 (3rd Cir., 2000) ............ 20

*Maxion v. State*, 686 A.2d 148 (Del., 1996) .................. 21

*Mabry v. Johnson*, 476 U.S. 504 (1984) ........................ 30

*MCA, Inc. v. Matsushita Industrial Co., Ltd.*,
785 A.2d 625 (Del., 2001) ........................................ 24

*Menna v. New York*, 423 U.S. 61 (1975) ........................ 16

*Murray v. Carrier*, 477 U.S. 478 (1986) ...................... 25

*Newell v. Hanks*, 283 F.3d 827 (7th Cir., 2002) ............ 25

*Newtowne Village Service Corp. v. Newtowne Road
Development Co., Inc.*, 772 A.2d 172 (Del., 2001) ......... 13

A124

*Ohio v. Johnson*, 467 U.S. 493 (1984) ............................................ 17

*Patterson v. State*, 724 A,.2d 558 (Del., 1999) .................... 24

*Payor v. Virginia,* 469 U.S. 1062 (1989) ............................... 15

*Poteat v. State,* 840 A.2d 599 (Del., 2003) ............................... 15

*Reed v. Ross*, 468 U.S. 1 (1981) ................................................ 20

*Reynolds v. Ellingsworth,* 843 F.2d 712
(3ʳᵈ Cir., 1982) ..................................................................................... 25

*Rutledge v. United States,* 517 U.S. 292 (1996) ................... 15

*Santobello v. New York,* 404 U.S. 257 (1971) ........................... 30

*Saudi Basic Industries Corp. v. Mobil Yanbu*
*Petrochemical Industries Corp.,* 866 A.2d
(Del., 1999) ........................................................................................ 24

*Smith v. Horn*, 120 F.3d 400 (3ʳᵈ Cir., 1995) ........................ 20

*Somerville v. State*, 703 A.2d 629 (Del., 1997) .................... 29

*Spencer v. State,* 868 A.2d 821 (Del., 2005) ........................... 15

*State v. Insley*, 141 A.2d 619 (Del., 1958) ........................... 29

*Stigars v. State,* 674 A.2d 477 (Del., 1996) ........................ 15

*Stricker v. Green,* 527 U.S. 263 (1990) ............................... 26

*Tatem v. State,* 787 A.2d 80 (Del., 2001) ......................... 14

*United States v. Beckett,* 208 F.3d 140
(3ʳᵈ Cir., 200) ...................................................................................... 14

*United States v. Blocker,* 8902 F.2d 1102
(9ᵗʰCir.,1986) ....................................................................................... 17

*United States v. Broce,* 488 U.S. 563 (1989) ........................ 16

*United States v. Dixon,* 509 U.S. 699 (1993) ....................... 14

*United States v. Frady*, 456 U.S. 152 (1982) ...................... 27



*United States v. Gebbie*, 294 F.3d 540
(3rd Cir., 2002) .......................................................................... 26

*United States v.Munoz, 408 F.3d 222 (5th Cir., 2005)* ....... 32

*United States v. Nolan-Cooper*, 155 F.3d 221
(3rd Cir., 1998) ........................................................................ 31

*United States v. Pollen*, 978 F.2d 78
(3rd Cir., 1992) ........................................................................ 16

*United States v. Rivera,* 375 F.3d 290
(3rd Cir., 2004) ........................................................................ 32

*United States v. Vaval,* 404 F. 3d 144
(2nd Cir., 2005) ........................................................................ 32

*Washington v. State*, 836 A.2d 485 (Del., 2003) ..................... 15

*Washington v. State,* 844 A.2d 293 (Del., 2004) ..................... 31

*Webster v. State*, 604 A.2d 1364 (Del., 1992) ......................... 27

*Wells v. State*, 396 A.2d 161 (Del., 1978) .................................. 29

*Willis v. State,* 673 A2d 1233 (Del., 1996) ................................. 15

*Younger v. State,* 580 A.2d 552 (Del., 1980) ............................ 13

*Zebroski v. State*, 715 A.2d 75 (Del., 1998) ............................. 31

## CONSTITUTIONAL PROVISIONS

### FEDERAL

Amendment 5 ........................................................................... 14

Amendment 6 ....................................................................*passim*

### STATE

ARTICLE I, § 8 ...................................................................... 14

## STATE STATUTES

11 *Del. C.* §206(a) ................................................................. 3

11 *Del. C.* §1271A ..............................................................*passim*

11 *Del. C.* §1271A(c) ..........................................................*passim*

11 *Del. C.* §1448(a)(6) ........................................................*passim*

11 *Del. C.* §1448(c) ......................................................*passim*

11 *Del. C.* §4202(k) ..........................................................*passim*

11 *Del. C.* §4202(m) ............................................... 23

## STATE COURT RULES

Superior Court Rules of Criminal Procedure

    Rule 11............................................................................*passim*

    Rule 35(a) .......................................................................*passim*

    Rule 61.............................................................................*passim*

## OTHER

    SENTAC BENCHBOOK, 2001............................................ 21,22

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Following an October, 2002 confrontation in Rehoboth Beach with the paramour of his former wife, Defendant[1] was charged with 10 felonies and 2 misdemeanors. The statutory maximum sentences for those charges exposed Defendant to life plus 144 years in prison.

Two first degree kidnapping and two possession of firearms charges were dismissed on a pretrial motion. After a two week jury trial in August, 2003, Defendant was acquitted of attempted first degree murder, assault first degree, burglary, assault second degree (chemical spray), and two firearms charges. Despite the jury's rejection after deliberations of just two hours of the prosecution's attempted 1st° murder theory (the only offense argued to the jury by the prosecution), Defendant was sentenced to a historically long maximum prison term totaling 9 years and 30 days on the second degree assault, trespassing, and offensive touching offenses on which the jury did convict him.

Prior to the 2003 trial, three additional charges against Defendant had been severed from the main body of offenses alleged in the indictment. Those alleged offenses – which underlie this appeal – consisted of a single felony count of possession of a deadly weapon by a person prohibited (i. e., a person subject to a Family Court protection from abuse order) and two misdemeanor counts of criminal contempt of a Family Court order. The allegations in one misdemeanor charge were facially duplicative of the "person prohibited" felony charge.

---

[1] Appellant will be referred to in this brief as "Defendant."

**A133**

Confronted with the prospect of Defendant receiving a second lengthy prison sentence on the severed charges despite the jury's previous acquittals, Defendant's counsel attempted to structure a plea agreement. That plea agreement and the proceedings relevant thereto are more fully detailed in the Statement of Relevant Facts and Arguments III and IV of this brief.

On January 20, 2004, Defendant entered pleas of guilty to three charges and was sentenced to 6 months in prison on the felony weapons possession charge and 15 days at Level V on each of the two criminal contempt charges. The 6 month Level V sentence was made subject to 11 *Del. C.* §4202(k), *i.e.*, not subject to "goodtime" credit or other diminution, and the two 15 day sentences were imposed as minimum non-suspendable sentences as requested by the prosecutor. The court also ordered a period of probation. Those sentences were embodied in the Superior Court's initial sentence order in the case below of January 20, 2004 [Appendix to Appellant's Brief ("Appendix"), A30-36].

Defendant filed no direct appeal. On September 20, 2005, Defendant filed a motion for correction of sentence under Superior Court Rules of Criminal Procedure ("SCRCrP") Rule 35(a)(docket entry no. 28) That motion was addressed to the length of the probation ordered by the court below and its "consecutive" rather than "concurrent" condition. Defendant's Rule 35(a) motion was granted in part (as to the length of probation) and denied in part (as to concurrency) on October 3, 2005 (docket entry no. 30). Defendant moved on October 13, 2005 for reargument of this initial ruling (docket entry no. 31). Although reargument was initially denied by the court

below (docket entry no. 32), a renewed motion for reargument was eventually granted and the order below again corrected (as to the concurrent running of probation) on November 10, 2005 (docket entry no. 35; "corrected order," Appendix A37-43). No appeal by either party was lodged from this second "corrected" order.

Defendant filed a second Rule 35(a) motion on December 5, 2006 (docket entry no. 36). That motion sought relief on completely separate and distinct grounds from the October, 2005 motion. Defendant's Rule 35(a) motion was accompanied by a motion under SCRCrP Rule 61 (docket entry no. 37).

Defendant's 2005 Rule 35(a) and Rule 61 motions set forth a total of four claims for relief. The first two of those claims were the basis of Defendant's Rule 35(a) motion while all four claims were asserted in the Rule 61 motion. The claims presented in the motions were: i) Ground One: that the Double Jeopardy protection of the United States Constitution, the Constitution of the State of Delaware, and 11 *Del. C.* §206(a) independently bar judgments of conviction and/or punishment on *each* of the two counts of the indictment in this case alleging possession of a deadly weapon while subject to a Family Court protective order – i.e., both Count 6 *and* Count 12; ii) Ground Two: each of the three separate sentences imposed upon Defendant exceeds the maximum sentence permitted under *Apprendi v. New Jersey,* 530 US 466 (2001), *Blakely v. Washington*, 542 US 296 (2004), and *Capano v. State*, Del. Supr. No.131, 2005, Ridgeley, J. (January 10, 2006)("*Capano III*"); such sentences therefore were imposed contrary to the jury trial protection of the

3

state and federal constitutions; iii) Ground Three: each of the three separate pleas of guilty entered by Defendant was not made knowingly, voluntarily, and intelligently in the circumstances of this case as is required by due process under the state and federal constitutions and, accordingly, Defendant sought to withdraw such pleas: and iv) the prosecution breached the plea agreement by arguing against probation for the Defendant; as a result of that breach, due process under the state and federal constitutions were the bases upon which Defendant sought to withdraw his pleas of guilty.

On May 2, 2007, the court below in a single letter opinion denied both of Defendant's motions (docket entry no. 45, 46). The Superior Court found all grounds for relief to be procedurally barred and, in the alternative, to be insufficient to warrant relief under either Rule 35(a) or Rule 61.

This appeal followed. This is Defendant's opening brief. The issues raised herein are identical to those below. The claims under SCRCrP Rule 35(a) are presented first herein and are followed by the Rule 61 claims.

Each of the separate and distinct grounds for relief relied upon by Defendant in this appeal is independently based upon all applicable Federal constitutional protections, applicable Delaware state constitutional protections, and decisional and statutory law of the State of Delaware.

## SUMMARY OF ARGUMENT

1.    The court below failed to properly apply the constitutional precept of Double Jeopardy and erroneously found Defendant's Double Jeopardy claim to be procedurally barred. A Double Jeopardy claim is an "illegal sentence" within the meaning of SCRCrP Rule 35(a) and is not subject to any procedural bar. Under *Menna v. New York*, a Double Jeopardy claim is not subject to "waiver" by a guilty plea as the state is constitutionally prohibited from imposing multiple punishments.

2.    The sentences of the court below were imposed contrary to *Apprendi/Blakely/Capano III* as: i) not all facts necessary to the enhanced 15 day non-suspendable minimum sentence imposed under 11 *Del. C.* § 1271A(c) were tried to a jury or admitted by Defendant; and ii) each of the sentences was enhanced above the SENTAC guidelines based upon facts not admitted and/or tried to a jury. Sentences imposed contrary to *Apprendi/Blakely/Capano III* are illegal sentences within the meaning of SCRCrP Rule 35(a). Procedural bars, if applicable to Defendant's *Apprendi/Blakely/Capano III* claims, are overcome in the circumstances of this case by the presence of "cause," "prejudice," and "manifest injustice."

3.    The court below erred in refusing to permit Defendant to withdraw his guilty pleas because the record establishes that there was such confusion as to both the nature of the offenses to which Defendant was to plead guilty and the maximum penalties for those offenses as to render those pleas involuntary in a constitutional

sense under *Brady v. United States*. Any applicable procedural bars of SCRCrP Rule 61 are overcome in the circumstances of this case by the presence of "cause," "prejudice," and "manifest injustice."

4.    The court below erred in refusing to permit Defendant to withdraw his guilty pleas because the prosecutor breached the plea agreement by failing to recommend probation as promised in the plea agreement. Any applicable procedural bars of SCRCrP 61 are overcome in the circumstances of this case by the presence of "cause," "prejudice," and "manifest injustice."

## Statement of Relevant Facts

**The Indictment:** The pertinent parts of the twelve count indictment in this case read as follows:

### COUNT 6 – POSSESSION OF A FIREARM BY A PERSON PROHIBITED
### 02-10-0929

**JOHN H. BENGE,** on or about the 20th day of October, in the County of Sussex, State of Delaware, did have in his possession a handgun, a deadly weapon as defined under 11 Del. C., §222(5), while being under a Family Court protection from abuse order, in violation of Title 11, §1448(a)(6) of the Delaware Code.

### COUNT 12 – CRIMNAL CONTEMPT – 03-04-1012

**JOHN H. BENGE,** on or about the 20th day of October, in the County of Sussex, State of Delaware, did commit the act of criminal contempt when the defendant knowingly violated or failed to obey any provision of a protective order issued by Family Court, to wit: the defendant possessed firearms, in violation of Title 11, §1271A of the Delaware Code.

(Superceding Indictment, docket entry no. 3)

It is significant in this case that neither of these two counts contains any allegation of physical injury, domestic violence, or the presence of children during the course of the commission of the offense alleged.

**The Plea Agreement And Its Documents:** The plea agreement in this case was negotiated on the day of trial [transcript of January 20, 2007 plea agreement ("Plea Trans."), Appendix A8-9]. The prosecutor was quite busy that day and was unable to be present in the courtroom when the court below was ready to proceed with the plea (Plea Trans., Appendix A8).

Prior to the plea, Defendant's counsel had prepared three motions, which the judge had read, in support of Defendant's claim that he was innocent of the three PFA related charges. Defense

7

**A139**

counsel described these three motions as follows [January 20, 2004 sentencing transcript ("Sent. Trans."), Appendix A17-18):

> …I had prepared three motions in anticipation of the matter being tried. One of the motions was that Counts 11 and 12 were multiplicious…In addition, I indicated in the motion that Counts 6 and 12 were mutiplicious…Thirdly, I took the position that the Commissioner was not empowered under the statutory authority to issue a PFA. It was an invalid PFA. …[a]ll three of the counts were invalid.

The plea agreement entered into by the parties, accompanied by a "Truth-in-Sentencing Guilty Plea Form," was the only document in the trial court that related to the plea.    Neither the plea transcript nor that of the sentencing proceeding contains an account in any detail of the parties' negotiations leading to the plea.

The plea agreement (Appendix A6) provides as follows: "Defendant will plead guilty to:

| Count | Cr.A.## | Charge | [LIO if applicable] |
|---|---|---|---|
| 1. 6 | 021000929 | PFBPP | |
| 2. 11 | 03 02 110168 | Cont. of a PFA | |
| 3. 12 | 03 02 0304 1012 | Cont. of a PFA | |

Sentence Recommendation/Agreement:

(1) 2 yrs. L 5 susp. For 1 yr. L3 (2) 1 yr L5. After serving 15 days, balance susp for 1 yr. L3.(3) 1 yr. L5, After serving 15 days, balance sis for 1 yr. L3. The level 3 sentence may run concurrently"

The TIS guilty plea form (Appendix A7) contained the following entries:

| OFFENSE | STATUTORY PENALTY | | TIS GUIDELINE |
|---|---|---|---|
| | Incarceration | Fine (range if applicable) | |
| Poss.Firearm Person Prohib. | 0-2 | Disc | up to 2 yrs. L-3 |
| Criminal contempt | 0-1 | 2300 | 15 day min. |
| Criminal contempt | 0-1 | 2300 | 15 day min. |

**TOTAL CONSECUTIVE MAXIMUM PENALTY:Incarceration:4 yrs.Fine:Disc.**

Contrary to the finding of the court below, the record contains no indication of who prepared any of the plea documents.

In sum, the plea agreement provided for Defendant to plea guilty to three offenses: two violations of 11 *Del. C.* §1271A criminal contempt and a single violation of 11 *Del. C.* §1448(a)(6), possession of a deadly weapon by a person prohibited (Family Court PFA). In exchange, the prosecutor promised to recommend probation. The plea agreement was silent as to whether sentencing was to be enhanced pursuant to 11 *Del. C.* §1448(c) or §1271A(c).

**The Underlying Offenses:** §1448(a)(6) in fact establishes two distinct-offenses: one such offense is a Class D felony and the other offense is a Class F felony; see 11 *Del C.* §1448(c). However, the statute under which a defendant *is charged* – as opposed to the statue under which a defendant *is to be sentenced* – for either offense is numbered identically in the Delaware Criminal Code. The separate and enhanced Class D sentence prescribed by §1448(c) is distinguished by the type of deadly weapon possessed by a defendant, i.e., whether the weapon is a "firearm" or ammunition or other deadly weapon as defined by the Delaware Criminal Code. The maximum sentence for a Class D felony differs significantly from that of a Class F felony as do the SENTAC presumptive sentences. See 11 *Del. C.* §4204. Class D felonies are punishable by 0-8 years at Level V and carry a SENTAC presumptive sentence of up to 2 years at Level V; Class F felonies are punishable from 0-3 years at Level V with a SENTAC presumptive sentence of up to 9 months.

A141

No crime with which Defendant might have been charged has the statutory penalties (0-2 years Level V) or SENTAC presumptive sentence (up to two years) set forth on the TIS guilty plea form used in this case or stated by the presiding judge (Plea Trans., Appendix A11).

Similarly, the offense styled criminal contempt of a Family Court protective order by 11 *Del. C.* §1271A actually defines two separate offenses with two separate punishments: one is punishable by up to one year at Level V and the second offense within that statute carries a minimum fifteen day non-suspendable Level V sentence under §1271A (c). The enhanced penalty follows *judicial* findings of fact at sentencing as follows:

(c) a person found guilty of criminal contempt of a domestic violence protective order shall receive a minimum sentence of 15 days incarceration if:
> (1) Such contempt resulted in physical injury; or
> (2) Such contempt involved the use or threatened use of a deadly weapon; or
> (3) The defendant was convicted of criminal contempt of a domestic violence protective order under this section on 2 or more occasions prior to this offense.

Enhanced penalties for violation of 11 *Del. C.* §1271A(c) are also applicable when:

> children are present during the crime OR are the victims of the offense; against a co-defendant if a conspirator was under the age of 14 and the codefendant was 4 or more years older that the child at the time of the crime.
>> TIS Benchbook 2001, p. 46,
>> "Special Domestic Violence Category."

**The Plea Proceeding:** The transcript of the January 20, 2004 sentencing proceeding reflects that confusion reigned in that proceeding against as to what offense Defendant was pleading guilty

to and being sentenced for, i.e., the Class D or Class F felony under §1448(a)(6) or under §1488(c).

During the plea proceeding, the presiding judge (also later the sentencing judge) referred to the felony offense as "possession of a deadly weapon by a person prohibited." (Plea Trans. Appendix A9) and noted that Defendant had been "charged with" possession of a firearm (Sent. Trans., Appendix A27).

At no point prior to the court's acceptance of Defendant's plea did the presiding judge advise Defendant that he was pleading guilty to "possession of a firearm;" or a Class D felony; or that Defendant would be sentenced under §1448(c); or that Defendant was pleading guilty to any offense alleging facts within the scope of 11 Del. C. §1271A(c); or that Defendant would be sentenced under §1271A(c).

The prosecutor, on the other hand, referred to the felony involved in the plea agreement as "possession of a firearm by a person prohibited" (Plea Trans., Appendix, A 8) – a title not borne by any offense in the Delaware Criminal Code.

**The Sentencing Proceeding**: At sentencing, the confusion continued unabated. The prosecution "moved to amend" the indictment, but without specifying the precise amendment sought, i.e., whether to change the *caption* of Count 6 of the indictment from "firearm" to "deadly weapon" or to somehow otherwise amend.

An unidentified judge's secretary, noting a "need to clarify on the first charge," initiated an exchange between counsel and the Court about the nature of the offense. This exchange left the Court

puzzling about how "Oz" (apparently the Superior Court's computer system) would recognize the offense. (Sent. Trans., Appendix A27–29). Rather than clarify the situation, the exchange between counsel and the Court added to the confusion, as no one spoke directly to the question that had been raised by court staff.

The records of the Department of Correction indicate that the offense for which Defendant was sentenced was the Class D felony, possession of a firearm; see the DOC status sheet attached hereto.[2]

The table overleaf (and in the Appendix hereto in enlarged form) summarizes the references to the two separate felony offenses at sentencing. For ease of reference, the areas shaded in blue reflect a reference to the Class D felony while the areas shaded in buff show references to the Class F offense. The offense was referred to, primarily by the prosecutor, as a "firearm" offense a total of 7 times. Conversely, the felony to which Defendant was to plead guilty was referred to 10 times by the trial judge as the "deadly weapon" offense. (see, Table A, overleaf). The two transcripts are remarkable only in what is *not present*: there is no instance in either the plea or the sentencing transcript in which the prosecutor and the presiding judge indicated that they were referring to the same offense.

---

[2] The records of the Delaware Department of Correction have been recognized as being relevant to a determination of the nature of the sentence being served by a defendant and hence the offense for which that sentence was meted out. *Evans v. State*, No. 67, 2005 (April 11, 2005) ("*Evans* II"), slip opinion, p. 39.

12

A144

| Reference To | Indictment | Plea Agreement | TIS Plea Form | Plea Transcript | Sentencing Transcript | Sentence Order | DOC Status Sheet |
|---|---|---|---|---|---|---|---|
| Reference To Title 11 $ No. of Offense | YES Count 6 §1448(a)(6) | NO | NO | YES @p.3: §1448(a)(6) | YES §1448(a)(6) @p.8:p.12 | NO | NO |
| Reference To Offense Name | YES Count 6 "Poss. Of a firearm by a person prohibited." | YES "PFBPP." "Poss. Firearm Person Prohib." | NO | YES By the State:@p.2: "possession of a firearm by a person prohibited" By the court:@p.3: "possession of a deadly weapon by a person prohibited." | YES By the court:@p.8: "...straight up deadly weapon possession." By the court:@p.12-13: "...possession of a deadly weapon..." By the court: @p.12: "But charged possession of a firearm." By the court:@p.13: "...firearm included in deadly weapon." | YES "PDWBPP FC-PFFA" | YES "possess firearm." |
| Reference To Felony And Class D/Class F | NO | NO | NO | NO | NO | NO | NO |
| Reference To Maximum Penalty | | | | | | | |
| Two Years L5 | NO | NO | YES:"0-2" | YES:@pp.5-6: "two years" | NO | NO | NO |
| Eight Years L5 | NO | NO | NO | NO | NO | NO | NO |
| Three years L5 | NO | NO | NO | NO | NO | NO | NO |
| Reference To Presumptive Sentence | | | | | | | |
| 0-2 years | NO | NO | YES:2yrs.@L3 | NO | NO | NO | NO |
| 0-3 YEARS L5 | NO | NO | NO | NO | NO | NO | NO |
| Reference To Sentence Being Imposed For Class D Felony Under 11 Del.C.§1448(c) | NO | NO | NO | NO | NO | NO | NO |

A145

## ARGUMENT

**I.   The Holding Of The Court Below That Defendant's Rule 35(a) "Multiple Punishments" Double Jeopardy Claim Was Waived By Guilty Plea Is Contrary To *Menna v. New York* And Erroneous As A Matter Of Law**

**A.   Statement of the Standard and Scope of Review:** Review of an inferior court's formulation and application of legal precepts is plenary. *Genecor International, Inc. v. NOVO Nordisk A/S*, 766 A.2d 8 (Del., 2000); *Newtowne Village Service Corp. v. Newtowne Road Development Co., Inc.*, 772 A.2d 172 (Del., 2001).

This Court reviews claims alleging infringement of a constitutionally protected right on a *de novo* basis. *Capano v. State,* 781 A.2d 556 (Del., 2001).

Procedural bars to post-conviction claims are examined before the merits. *Younger v. State,* 580 A.2d 552 (Del., 1980).

**B.   The Double Jeopardy Claim Is Not Procedurally Barred:** To the extent that Defendant's multiple punishments claim was found by the court below to be procedurally barred under SCRCrP Rule 35(a) or 61 or otherwise, there was  clear error by that court in applying a precept of law.

Rule 35(a) provides that an illegal sentence may be corrected "at any time:" the Rule 35(a) remedy is thus open-ended. *Defoe v. State,* 750 A.2d 1200 (Del., 2000). Indeed, it has been held that a motion under SRCCrP Rule 35(a) faces *no* procedural bars. *Fatir v. Thomas,* 106 F. Supp.2d. 572 (D. Del., 2000), at 582. Rule 35(a) therefore stands in contrast to SCRCrP Rule 61. See *Brittingham v. State,* 705 A.2d 577 (Del., 1998), at 578. There is no procedural bar in existing law to the relief sought by the challenge to the legality of the sentence.

13

**A 141**

**C. Defendant's Rule 35(a) Double Jeopardy Claim Attacks An "Illegal Sentence:"** The first grounds upon which Defendant seeks post-conviction relief is that the Double Jeopardy protection of the United States Constitution (Amendment 5, cl.2) and the Constitution of the State of Delaware (Article I, §8) and, independently and as well, 11 *Del. C.* §206(a) bar conviction and punishment of Defendant on both Count 6 and Count 12 of the Superceding Indictment of April 23, 2003 in this case.

The decisions of this Court have consistently held that a sentence imposed in violation of the Double Jeopardy protection is an "illegal sentence" within the meaning of SCRCrP Rule 35(a). See, e.g., *Tatem v. State*, 787 A.2d 80 (Del., 2001).

**D.    Double Jeopardy Bars Sentences On Both Counts 6 And 12:** Counts 6 and 12 of the Superceding Indictment (set forth above in full at p7) involve a single act of the Defendant and allege precisely the same conduct as constituting two separate offenses – that is to say, the *face* of the Superceding Indictment contains two counts which allege the same facts – *precisely the same conduct on the same day* – as constituting the commission of *two* separate offenses.

The Double Jeopardy protection prohibits multiple prosecutions. *Blockburger v. United States*, 284 U.S. 299 (1932). "When the same act violates two distinct statutory provisions the test to determine whether there are multiple offenses is whether each statute requires proof of an additional fact which the other does not." *Id.*, 284 U.S., at 304; see also, *United States v. Dixon*, 509 U.S. 699 (1993); *United*

\

14
A147

*States v. Beckett*, 208 F. 3d 140 (3rd Cir., 2000); accord, *Poteat v. State*, 840 A.2d 599 (Del., 2003) (conviction *and* sentence both void).

Double Jeopardy under both the Federal and State Constitutions, therefore, bars successive prosecutions for greater and lesser included offenses. *Rutledge v. United States,* 517 U.S. 292 (1996); *Payor v. Virginia*, 469 U.S. 1062 (1989); *Brown v. Ohio*, 432 U.S. 161 (1977) *accord, Poteat v. State, supra; see also, Spencer v. State*, 868 A.2d 821 (Del., 2005); *Washington v. State*, 836 A.2d 485 (Del., 2003), and *Stigars v. State*, 674 A.2d 477 (Del., 1996).

A protection similar to the principle embodied in the Federal and State constitutions is codified in 11 *Del C.* §206(a) and (b); *see Willis v. State*, 673 A.2d 1233 (Del.Super.,1996). That statute also operates to bar convictions in this case under both Counts 6 *and* 12 as a defendant "may not...be convicted of more than 1 offense" if one offense is included in another [11 *Del. C.* §206(a)]; an offense is included in another when "it is established by the proof of the same or less than all the facts required to establish the commission of the offense charged" [11 *Del. C.*§206(b)(1)].

The elements of the offenses alleged in Count 6 and Count 12 of the Superceding Indictment are *identical*: that is, both allege that Defendant possessed a deadly weapon while subject to a Family Court protective order. Neither offense requires proof of a fact that the other offense does not. Prosecution and punishment for *both* offenses separately − *i. e., each* − is therefore barred under the *Blockburger* test (*i.e.,* both the Federal and State Constitutions) and 11 *Del. C.* §206(a).

**E. There Was No Waiver Of Defendant's Double Jeopardy Claim:** The Superior Court employed a remarkable – if unannealed by 5th Amendment jurisprudence – legal precept in holding that Defendant's "multiple punishment" Double Jeopardy claim was waived: "[i]f a person can plead guilty to a charge that does not exist, *Downer v. State*, 543 A.2d 309 (Del. Super., 1988), he can surely waive his known constitutional rights pursuant to a plea." (May 2, 2007 letter opinion of Superior Court, p. 4)    The court below did not cite *Menna v. New York*, 423 U.S. 61 (1975), the basis of Defendant's argument below, nor did that court suggest a basis to distinguish this case from the *Menna* rule.[3]

The _fact that Defendant pleaded guilty to the offense now collaterally attacked is no bar to the Rule 35(a) relief sought: a guilty plea to separate counts in an indictment does not bar a later claim based upon Double Jeopardy where the counts in an indictment are facially duplicative. *Menna v. New York, supra,* (specifically noting the New York Court of Appeals reliance on an alleged "waiver" of the Double Jeopardy claim: "We simply hold that a plea of guilty to a charge does not waive a claim that – judged on its face – the charge is one which the State may not constitutionally prosecute." *Id.,* ftnt. 2); see also, *Blackledge v. Perry*, 417 US 21 (1974); *United States v. Broce*, 488 U.S. 563 (1989); *United States v. Pollen*, 978 F.2d 78 (3rd Cir., 1992).    Collateral estoppel arising as a result of the operation

---

[3] Reliance by the court below on one of the seemingly endless line of *Haskins* cases was misplaced; *Haskins* involved waiver of a "retrial after appeal" Double Jeopardy claim, a matter of a completely different equine hue; *see, e.g., Haskins v. State*, Del. Supr., No.70, 1993, Moore, Justice (September 7, 1993).

of the guilty plea precludes only a claim of Double Jeopardy in cases where a factual hearing would be necessary to determine whether the offenses were identical. *Menna v. New York, supra.* No such hearing is necessary in this case. "Where the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even of the conviction was entered pursuant to a counseled plea of guilty." *Menna v. New York*, 423 U.S., at 62. One court has stated the controlling law in unambiguous terms: there is simply "no merit" to the contention that failure to object at sentencing results in a waiver of Double Jeopardy. *United States v. Blocker*, 802 F.2d 1102 (9th Cir., 1986). A sovereign is constitutionally barred from cumulative punishment, *Ohio v. Johnson*, 467 U.S. 493 (1984), irrespective of any purported "waiver;" *Menna v. New York, supra.* Defendant may not, consistently with the Double Jeopardy protection, be punished for both the offense alleged in Count 6 and that in Count 12. *Downer v. State, supra*, notwithstanding, the judgment of conviction and sentence of the court below under Count 12 must be vacated and the charge in that count dismissed as barred by Double Jeopardy under this Court's rule as announced in *Stigars v. State, supra*.

**II.  The Enhanced Sentences Imposed By The Court Below Violate The *Apprendi/Blakely/Capano III* Rule Requiring Enhanced Offenses And Sentences To Be Based Upon Jury Verdicts Or Admitted Facts**

**A.  Statement Of The Standard And Scope Of Review:** Review of an inferior court's formulation and application of legal precepts is plenary. *Genecor International, Inc. v. NOVO Nordisk A/S, supra; Newtowne Village Service Corp. v. Newtowne Road Development Co., Inc., supra.*

This Court reviews claims alleging infringement of a constitutionally protected right on a *de novo* basis. *Capano v. State, supra.*

Procedural bars to post-conviction claims are examined before the merits. *Younger v. State, supra.*

**B.  The *ApprendiBlakely/CapanoIII* Claims:** The second grounds in Defendant's Rule 35(a) motion arises because each of the sentences imposed upon Defendant in this case were enhanced by the sentencing judge upon the basis of facts that were neither admitted by the Defendant nor found by a jury beyond a reasonable doubt contrary to *Apprendi, Blakely,* and *Capano III*. This grounds for Rule 35(a) relief is a diptyph: the first aspect is that the sentence on the felony possession of a deadly weapon offense was enhanced pursuant to 11 *Del. C.* §4204(k) (i.e., no diminution by goodtime or otherwise) on the basis of facts not tried to a jury or admitted; the second aspect is that the court below enhanced the misdemeanor contempt offense to a greater level requiring a non-suspendable minimum sentence under 11 *Del. C.* §1271A(c) without jury findings of fact or admissions by the Defendant that are necessary to an enhanced offense level or sentence.

**C. Defendant's Rule 35(a) Motion Attacks "Illegal" Sentences:** As sentences imposed contrary to *Apprendi/Blakely/Capano III* are "illegal sentences" within the meaning of SCRCrP Rule 35(a) as explained below, no procedural bars are applicable to those claims for relief – see Argument I A. and B. above.

The definition of an "illegal sentence" as that term is employed in SCRCrP Rule 35(a) therefore includes a sentence that was imposed contrary to constitutional guarantees. *Defoe v. State, supra: Johnson v. State*, 280 A.2d 712 (Del., 1971); *Gural v. State*, 243 A.2d 692 (Del., 1968); *Hodsdon v. State*, 239 A.2d 222 (Del., 1968); *Fatir v. Thomas, supra,* F. Supp.2d, at p. 582.

A sentence imposed contrary to the 6th Amendment and the state constitution right to trial by jury is quite simply more than just a "sentence imposed in an illegal manner." *Apprendi, Blakely, and Capano III*, as well as *Jones v. United States*, 526 U.S. 277 (1999), *Ring v. Arizona*, 536 U.S. 584 (2002), and *Cunningham v. California*, __U.S.__ (2007), all clearly establish that "because the [state's] sentencing procedure did not comply with the Sixth Amendment, [the] sentence is *invalid*" (emphasis supplied) not just procedurally flawed because the right to jury trial is "no mere procedural formality." *Blakely v. Washington, supra*. A judge thus "acquires [the] authority" under *Brittingham v. State, supra*, in a 6th Amendment and Article 4, §I sense to exceed a presumptive sentence only when a jury's verdict or admitted facts permit the exercise of that authority. *Id.*

**D. The Rule 61 Bars Are Inapplicable: "Cause" And "Prejudice" And "Fundamental Fairness" Are All Present In This Case:** Should this Court

impose a procedural bar to Defendant's Rule 35(a) *Apprendi/Blakely/Capano III* claims, such a bar would be inapplicable to Defendant's claims as "cause" and "prejudice" are both present in the circumstances of this case as well as is "manifest injustice" rendering procedural bars inapplicable.

1.**"Cause:"** "Cause" is present as to Defendant's Rule 35(a) Ground Two claim as the Delaware Supreme Court did not recognize the *Apprendi* principle that underlies Claim Two until the 2005 decision in *Capano III*, which was decided well after the entry of Defendant's 2004 sentence order.

Prior to *Capano III*, this Court consistently foreclosed operation of the jury trial right in Delaware's sentencing scheme, expressly rejecting *Apprendi* and what the Court viewed as its "formalistic" approach. *Capano II*, at P. The Court continues to reject *Blakely's* applicability to presumptive sentences under 11 Del. C. §2404(m).

When a state's highest court has ruled unfavorably on a claim involving materially identical issues – and there is no plausible reason to believe that a "replay will persuade the court  to reverse its field" – the "futility" doctrine establishes "cause" excusing a procedural default. *Lines v. Larkin,* 208 F.3d 153 (3rd Cir., 2000), *cert. denied* 531 U.S. 1082 (2000); *see also Johnson v. Pinchak,* 392 F.3d 551 (3rd Cir., 2005) *cert. denied* ___ U.S. ___ (2005); *Smith v. Horn*, 120 F.3d 400 (3rd Cir., 1997) *cert. denied* 522 U.S. 1109 (1998). "Futility" is a corollary to the "novelty" doctrine constituting "cause." *Engle v. Isaac*, 456 U.S. 107  (1982); *Reed v. Ross*, 468 U.S. 1 (1984).

2. **"Prejudice:"** "Prejudice" is present as Defendant's sentence, as imposed, is more severe and, as corrected, will be less so. *Cf.*, *Blackwell v. State,* Del. Supr., No. 53, 1999, Holland, J. (September 10, 1999).

3. **"Manifest Injustice:"** Procedural bars are also inapplicable to a right first recognized after a case is decided under the "fundamental fairness" exception to those bars, *Maxion v. State,* 686 A.2d 148 (Del., 1996); *Younger v. State, supra.*

**E. Each Sentence Violates *Apprendi/Blakely/Capano* III:1). The Use of §4204(k):** The Level V sentence of imprisonment for the offense of possession of a deadly weapon under a Family Court protective order was made subject to 11 *Del. C.* §4204(k) and Defendant was therefore denied any diminution of that sentence for earned goodtime; Sentence order, page 1. (Appendix, A37-43, docket entry no. 34) Use of §4204(k) is a sentence enhancement above the SENTAC presumptive sentence: see ¶34 of the SENTAC statement of policy in the Truth In Sentencing Benchbook (2001) which states that:

> Because such sentences add significant complexity to the management of the population of incarcerated offenders, and, if used indiscriminately, would substantially increase the prison population, Section 4204(k) should be used by judges only in exceptional circumstances.
> Since imposition of a sentence pursuant to 11 Del. C., sec. 4202(k) is, in effect, a departure from the presumptive sentencing guidelines, the reason for use of Sec 4204(k) must be stated on the record and included in the sentencing order.

The sentencing judge enhanced Defendant's sentence by use of §4202(k) on the basis of facts not found by a jury or admitted by Defendant, i.e., that the sentence was required to prevent "undue

21

A·I54

depreciation of the offense." (Corrected sentence order, Appendix A37-43).

**2). Enhancement To The Non-suspendable Minimum §1271A (c) Sentence:**
The sentences imposed in both Count 6 and Count 12 of the indictment for the two alleged violations of the offense of criminal contempt of a Family Court protective order were enhanced to a fifteen day non-suspendable minimum Level V sentence pursuant to 11 Del. C. §1271A (c) (see Sentence Order, page 2) which states that the fifteen day minimum sentence follows findings of fact as follows:

(c) a person found guilty of criminal contempt of a domestic violence protective order shall receive a minimum sentence of 15 days incarceration if:
    (1) Such contempt resulted in physical injury; or
    (2) Such contempt involved the use or threatened use of a deadly weapon; or
    (3) The defendant was convicted of criminal contempt of a domestic violence protective order under this section on 2 or more occasions prior to this offense.

Enhanced penalties for violation of 11 *Del. C.* §1271A are also applicable when:

children are present during the crime OR are the victims of the offense; against a co-defendant if a conspirator was under the age of 14 and the codefendant was 4 or more years older that the child at the time of the crime.
                TIS Benchbook 2001, p. 46,
            "Special Domestic Violence Category."

The sentences on each of the criminal contempt offenses were enhanced contrary to both *Apprendi/Capano III* and *Blakely*: *Apprendi/Capano III* because as with the hate crime in *Apprendi*, not all of the facts necessary to the enhanced penalty under §1271A(c) were tried to a jury or admitted and *Blakely* because the sentence was enhanced pursuant to §1217A (c) by statute (not the SENTAC guidelines)

on the basis of facts not charged in the Superceding Indictment and therefore not admitted by the Defendant. This Court's previously decided *Blakely* cases do not impact the enhanced sentence imposed in this case under §1271A(c).

In this case, the specific facts necessary to enhancement of the §1271A(c) offense – those facts set forth in that statute or the SENTAC Benchbook – were not alleged in the indictment andnever so as mentioned in passing by the prosecution at either the plea or sentencing proceedings. Under *Apprendi* and *Capano III* the penalty enhancement was contrary to the right to jury trial.

This Court's precedents refusing to apply *Blakely v. Washington* to the presumptive sentence scheme established by 11 *Del. C.* §4204(m) do not impact Defendant's claim under §1271A(c) because that claim is an *Apprendi/Capano* III claim as it involves an enhanced offense level.

Each of the sentences imposed in this case was enhanced above the SENTAC presumptive sentence or, with respect to the §1271A offenses, enhanced as to offense level, on the basis of facts that were neither charged in the Superceding Indictment, tried to a jury and proven beyond a reasonable doubt, nor admitted by the Defendant as part of the plea process. Those sentences were therefore imposed contrary to the right to trial by jury of the United States and Delaware Constitutions and must be vacated as illegal sentences.

**III. The Record Reflects Such Confusion As To Which Felony Defendant Was To Plead Guilty And As To The Applicable Maximum Sentences As To Render Defendant's Pleas Involuntary Under *Brady v. United States***

**A. Statement Of The Standard And Scope Of Review**: This Court's review of an inferior court's formulation and application of legal precepts is plenary. *Genecor International, Inc. v. NOVO Nordisk A/S*, *supra; Newtowne Village Service Corp. v. Newtowne Road Development Co., Inc., supra.*

This Court reviews claims alleging infringement of a constitutionally protected right on a *de novo* basis. *Capano v. State, supra.*

Denial of a post-sentence motion to withdraw a guilty plea has been reviewed for abuse of discretion. *Patterson v. State,* 724 A.2d 558 (Del., 1999). Application of that standard of review involves measuring the result below against the rule of reasonableness. *Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical Co.*, 866 A.2d 1 (Del., 200%); *MCA, Inc. v. Matsushita Industrial Co., Ltd.*, 785 A.2d 625 (Del., 2001); *Lilly v. State*, 649 A.2d 1055 (Del., 1994). A court abuses its discretion when it exceeds the bounds of reason in light of the circumstances of the case and has so ignored recognized rules of law or practice as to produce injustice. *Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical Co., supra.*

Procedural bars to post-conviction claims are examined before the merits. *Younger v. State, supra.*

**B. Cause, Prejudice And Manifest Injustice – Defendant's Rule 61 Motion Ground Three 1. "Cause" Under SCRCrP Rule 61: A Precept Borrowed From Federal Law**: Numerous Delaware cases (virtually all

24

**A-157**

unreported) recite the necessity for the presence of both "cause" and
"prejudice" under SCRCrP 61 (i) (3) (A) and (B) to render the
procedural bar of Rule 61 (i) (3) inapplicable to a claim for post-
conviction relief. Precious few of those Delaware cases find "cause"
or "prejudice" to be present or attempt to detail to any appreciable
extent by what facts "cause" and/or "prejudice" may be established.
This Court has described the concepts only in a generic way: i.e.,
Rule 61 (i) (3) (a) "cause" may be established by something "external"
to the defense. See, *e.g., Younger v. State, supra* and *Flamer v.
State*, 585 A.2d 736 (Del., 1990). Post-1990 opinions by this Court are
noteworthy for finding the *absence* of circumstances establishing
either cause or prejudice or both.

Although Delaware caselaw defines "cause" and "prejudice" almost
exclusively by what they are *not*, it is quite clear that both "cause"
and "prejudice" as used in SCRCrP Rule 61 are concepts borrowed from
federal law. See, *Reynolds v. Ellingsworth,* 843 F.2d 712 (3rd Cir.,
1982) explaining that the concepts of "cause" and "prejudice" were
abruptly introduced into Delaware criminal jurisprudence by the
decision of the Delaware Supreme Court in *Conyers v. State,* 422 A.2d
345 (Del., 1980).

Under federal law, "cause" – something "external" to the defense
– may be established by conduct of the prosecutor. See, e.g., *Murray
v. Carrier*, 477 U.S. 478 (1986); *Amadeo v. Zant*, 486 U.S. 214 (1988);
*Newell v. Hanks*, 283 F.3d 827 (7th Cir., 2002); and *Dorman v.
Wainwright*, 798 F.2d 1358 (11th Cir., 1986). Conduct attributable to

25
**A159**

the State that impedes access to the facts necessary to assert a claim constitutes "cause." *Strickler v. Green*, 527 U.S. 263 (1999).

**2. "Cause" In The Instant Case:** In the case at bar, Rule 61 (i) (1) (A) "cause" is present as to Defendant's Ground Three as a result of circumstances brought about by the conduct of the prosecutor in connection with the plea proceedings – *i. e.*, matters "external" to the defense.

As a matter of due process, the *prosecutor*, not the Defendant, is chargeable under due process with creating the confusion surrounding the plea agreement in this case. *United States v. Gebbie*, 294 F.3d 540 (3rd Cir., 2002). The prosecutor did not seek to correct the now-acknowledged errors in the TIS guilty plea form; the prosecutor did not state the degree of the offense on the record at sentencing (i.e., whether a Class D or Class F felony); the prosecutor did not at sentencing state – accurately or otherwise – the maximum penalties applicable to the offenses for which Defendant was to be sentenced; the prosecutor created the misnomer of the offense in Count 6 of the indictment; and the prosecutor did not lend her voice to clarify the confusion as to the charge other than to belatedly and confusingly "move to amend" the name of the felony offense in the indictment. Even had the prosecutor done as much as state that the Defendant was to be sentenced after pleading "guilty as charged," the confusion would not have been ameliorated because of the misnomer of the offense and the section under which Defendant was to be sentenced.

Even if Defendant had promptly sought to review the sentencing proceeding transcript to determine exactly what had transpired or had

sought to obtain a copy of his sentencing order to determine precisely what transpired at sentencing and the class of felony that he was sentenced for, the time involved would have foreclosed a timely appeal (the sentencing proceeding transcript required 90 days to prepare: it was ordered shortly after March 9, 2005 and not docketed until June 29, 2005 - see Appendix A45 and docket Entry No. 27, 6/29/05). See *Dorman v. Wainwright, supra*.

**3. "Prejudice:"** As to Defendant's Rule 61 Ground Three, "prejudice" [i.e., a circumstance that worked to the Defendant's substantial disadvantage, "…infecting [the proceedings] with error of constitutional magnitude, *United States v. Frady*, 456 U.S. 152 (1982)], is present in this case as Defendant, although presenting a colorable claim of innocence in the motions described by his counsel (Sent. Trans., Appendix A17-18), was induced to accept a plea resulting in a Level V sentence based upon a plea agreement that was confused and confusing to the point that the plea was "involuntary' in a constitutional sense.

**4. "Manifest Injustice:"** "Manifest injustice" warranting application of the SCRCrP Rule 61(i) (5) fundamental fairness rule is also present as to Defendant's Rule 61 Ground Three. Defendant has recited in Ground Three objectively verifiable facts and circumstances *from the record of the sentencing proceeding* in this case that more than amply demonstrate that confusion, not clarity, prevailed at that proceeding. The *lack of evidence* that a guilty plea was entered voluntarily creates a colorable claim that there was a miscarriage of justice. *Webster v. State,* 604 A.2d 1364 (Del., 1992). That Defendant's claim

27

AIGO

is supported by the plea and sentencing proceeding transcripts, not bare allegations, distinguishes this case.

**C.    Defendant's Plea Was Not "Voluntary" Under *Brady v. United States*:**

To be consistent with the requirements of due process, a plea of guilty must be made voluntarily, intelligently, and knowingly. *Brady v. United States*, 397 U.S. 742 (1970). This principle is also embodied in the "law of the land" protection in Article I of the Delaware Constitution.

Explicit in a voluntary, intelligent, and knowing plea of guilty is the concept that a defendant, before a guilty plea is made and accepted, will at a minimum know what offense that defendant is pleading guilty to and the maximum penalty of the offense to which the plea of guilty is taken. A voluntary, knowing, and intelligent plea of guilty can only be made "with sufficient awareness of the relevant circumstances." Brady, 397 U.S., at 748. This includes the necessity for being advised of the elements of the crime involved. *Henderson v. Morgan*, 426 U.S. 637 (1976).

The judge accepting a plea of guilty is constitutionally responsible for ensuring "a record adequate for any review that may later be sought." *Boykin v. Alabama,* 395 U.S. 238 (1969), at 244. As is clear from both transcripts, the court in this case did not rely upon counsel's representations as to what Defendant had been advised.

Delaware has both embodied the *Brady* principle in the Superior Court Rules of Criminal Procedure and recognized its significance in caselaw. SCRCrP Rule 11(c) provides that the Court is to ascertain that a defendant is aware of the nature of the charge and maximum possible penalties and further state that the Court is to advise the

defendant that "the court is required to consider any applicable sentencing guidelines and may depart from those guidelines under some circumstances." Rule 11(c)(1), SCRCrP.

As summarized at pages 7 – 12 of the Statement of Facts in this brief, there was no clarity as to the offenses to which Defendant was to plead guilty or the maximum penalty for those offenses. Because the maximum possible sentence is the "most important consequence of the plea" and must be "spelled out clearly" *State v. Insley,*141 A.2d 619 (Del., 1958); *see also, Wells v. State,* 396 A.2d 161 (Del., 1978); *and Allen v. State,* 509 A.2d 87 (Del., 1986), the plea proceeding here was so infected with confusion as to render the resultant convictions unconstitutional.

In the oft-cited case of *Somerville v. State*, 703 A.2d 629 (Del., 1997), this Court stated that absent clear and convincing evidence "to the contrary," a defendant is bound by answers given during a plea colloquy with the trial court and the TIS guilty plea from. In the instant case, however, given the clear and convincing evidence – capable of being graphically illustrated (Table A hereto) of confusion as to *both* the offenses involved and the maximum sentences, the answers given by Defendant cannot said to be knowingly and intelligently given.

**IV. The Prosecution Breached The Plea Agreement By Arguing Against The Recommendation It Had Agreed To Make To The Court**

**A.    Statement Of The Standard And Scope Of Review:** This Court's review of an inferior court's formulation and application of legal precepts is plenary. *Genecor International, Inc. v. NOVO Nordisk A/S*, supra; *Newtowne Village Service Corp. v. Newtowne Road Development Co., Inc., supra.*

This Court reviews claims alleging infringement of a constitutionally protected right on a de novo basis. *Capano v. State, supra.*

Procedural bars to post-conviction relief are examined before the merits. *Younger v. State, supra.*

Appellate review of a claim of breach of a plea agreement is plenary. *Dunn v. Colleran,* 247 F.3d 450 (3rd Cir., 2001).

**B. "Cause," "Prejudice," And "Manifest Injustice" – Defendant's Rule 61 Ground Four. 1. "Cause" And "Prejudice:"** "Cause" and "prejudice" are present as to Defendant's Ground Four and established by the same circumstances recited in Argument II D. above in this brief (pp. 20 – 21 herein).

**2."Manifest Injustice:"** Moreover, "manifest injustice" is particularly clear here. Breach of a plea agreement "strikes at public confidence in the fair administration of justice and, in turn, the integrity of our criminal justice system." *Dunn v. Colleran, supra.* In imposing a sentence, a judge may not rely upon a recommendation in violation of the plea agreement.    *Id.* Where there has been a breach of the plea agreement, "relief will be granted." *Santobello v. New York,*404 U.S. 257 (1971). A conviction in such a case "cannot stand." *Mabry v.*

*Johnson,*476 U.S. 504 (1984), at p. 509. This case – one in which the prosecutor maintains a belief that she is unconstrained by any obligation to deny being bound by the express terms of the written plea agreement that she drafted and agreed to see docket entry no. 13, April 25, 2007) is a particularly deserving case for application of the "manifest injustice" precept.

**C. Plea Agreement As Contract:** Remarkably, the State attempted in the court below to refute Defendant's Rule 61 Ground Four claim for relief (based upon breach of the plea agreement) by arguing that there was no legally enforceable agreement between the state and Defendant [the State's "…[sentencing] comments did not amount to a violation of a *supposed "contract"* between the State and defendant." (docket entry no.13, ¶ 11, p. 7) (quotations in original; emphasis supplied)

Whether a plea agreement constitutes a "contract" between a defendant and a prosecutor – for purposes of due process – is an issue not admitting of principled debate. *Santobello v. New York*, 404 U.S. 257 (1971); ("… a plea agreement is a contract…"); *Mabry v. Johnson*, 476 U.S. 504 (1984); *Dunn v. Colleran, supra; United States v. Nolan-Cooper, 155 F.3d 221* (3rd Cir., 1998) (plea agreement governed by law of contracts); *Zebroski v. State*, 715 A.2d 75 (Del., 1998); *Washington v. State*, 844 A.2d 293 (Del., 2004).

As with all matters of contract, the plea bargaining system is based upon good faith dealing and therefore "…presupposes fairness in securing agreement between an accused and a prosecutor." *Santobello v. New York, supra,* at 261. When a plea agreement contains promises that are "unfulfilled or unfulfillable," such an agreement was procured by

31

**A164**

"misrepresentation" and cannot be permitted to stand. *Brady v. United States, supra,* at 755. "When the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false promise, and hence his conviction cannot stand." *Mabry v. Johnson, supra,* at 509.

**D. The Content Of The Agreement:** In the instant case, the prosecution entered into a plea agreement (Appendix A7) in which it expressly agreed to recommend probation – nothing more, nothing less.

A prosecutor breaches a plea agreement by not fulfilling the promises therein; this includes: i) providing information that could only be used to enhance a sentence; see, *e.g., United States v. Vaval,* 404 F.3d 144 (2nd Cir., 2005); ii) endorsing facts suggesting an enhanced sentence; see, *e.g., United States v. Rivera,* 375 F.3d 290 (3rd Cir., 2004); and/or iii) going beyond the information in a plea agreement to suggest enhancement of a sentence. See, *e.g., United States v. Munoz,* 408 F.3d 222 (5th Cir., 2005).

**E. Breach Of The Plea In This Case:** When confronted with a record demonstrating a clear breach by the State of the plea agreement with Defendant, in a case where the prosecutor was extremely disappointed with the outcome of the August, 2003 trial, the State, predictably given its denial that its agreement with Defendant was legally enforceable, argued below that the sentence recommendation it agreed to make was somehow "…just a …recommendation" (docket entry no.13, ¶ 11, p. 7). The prosecution dissembles in making this argument: when confronted by this self-same "end-run" around a plea bargain promise in *Dunn v. Colleran, supra,* the Third Circuit Court of Appeals held

that the prosecution was bound to make "nothing more, noting less" than the "recommendation" in the plea and, in contending that a "recommendation" was somehow not part of a binding promise began "…sliding down a slippery slope on her way to denouncing her legal obligation." Starting with what the prosecutor agreed to do in the instant case (see, *e.g., Dunn v. Colleran, supra*), the plea agreement called for a recommendation of *probation* – not argument referring to Defendant's conduct as a "very blatant thumbing of the nose to the court system" (Sent. Trans., Appendix A22), an impassioned remark inviting a severe and certain sentence.

As in *Dunn v. Colleran, supra*, the prosecutor in the instant case breached the "letter and the spirit" of the plea agreement by an "impassioned statement" that would clearly justify imprisonment while not once calling for probation as agreed or *even using the word "probation"* as she addressed the Court. The prosecutor did all she could do to marginalize the recited recommendation in the plea agreement. Such conduct was thoroughly condemned by the court in *Dunn v. Colleran, supra,* and should not be excused in this case.

Despite the parties' agreement, which was in fact drafted by the prosecution, at no point during the January 20, 2004 sentencing proceeding did the prosecution recommend to the Court that it sentence Defendant to probation as agreed. Rather, the prosecution's remarks ignored the substantial evidence at trial of Defendant's emotional distress as she exclusively addressed to a purported aggravating factor; i.e., that Defendant deliberately defied the courts

> …it was a matter of principle for the State that had he
> abided by those court orders none of this would have

33

AICC

happened...So it was a very blatant thumbing of his nose
to the court system in general. As a matter of principle, I
wanted it on his record that he had done that.

Sent. Trans., Appendix A22.

In response to the prosecution's assertion that Defendant had
deliberate distain for the judicial system, the court below sentenced
Defendant to imprisonment rather than the probation called for in the
plea agreement.

The failure of the prosecution at sentencing to make a
recommendation for a sentence of probation as agreed upon by the
parties in the plea agreement while at the same time drawing the
sentencing judge's focus to aggravating factors constituted a breach
of that agreement by the prosecution. As Defendant had relied upon the
prosecution to recommend probation, the breach was material and should
be redressed by permitting Defendant to withdraw his pleas of guilty.

## Conclusion

The court below erred as a matter of both state and federal constitutional law in denying Defendant's motion to withdraw his guilty pleas. The alternative grounds of the involuntary nature of the plea due to the confusion as to the offense and the prosecution's breach of the plea agreement presented the court below with two grounds upon which the motion should have been granted. The procedural bars relied upon as an alternate to denying Defendant's claim on the merits are inapplicable to this case.

However this Court may dispose of the balance of Defendant's claims for relief, the conviction and sentence on Count 12 of the indictment must be vacated as violative of the Double Jeopardy protection under both the state and federal constitutions. The sovereign is constitutionally prohibited from imposing a double punishment and such a conviction and sentence contrary to that protection cannot be permitted to stand.

Each of the enhanced sentences imposed in this case also violated the 6th Amendment right to trial by jury and that same right as guaranteed by the Delaware Constitution.

Each of the rulings of the court below should be reversed and this case remanded for further proceedings.

Date: August 7, 2007

John H. Benge, Jr.
P.O. Box 500
Georgetown, DE 19947

A-168

SUPERIOR COURT
OF THE
STATE OF DELAWARE

**T. HENLEY GRAVES**
*RESIDENT JUDGE*

SUSSEX COUNTY COURTHOUSE
ONE THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947

May 2, 2007

John H. Benge, Jr.
SBI# 00494395
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947

      Re:    State v. John H. Benge, Jr.
             Def. ID# 0210012355B

Dear Mr. Benge:

Before the Court are two motions filed by John H. Benge, Jr., formerly John H. Benge, Jr., Esquire (hereinafter referred to as "Benge"). Benge attacks the guilty pleas entered on January 20, 2004, to Possession of a Deadly Weapon By a Person Prohibited and two counts of Criminal Contempt. He was sentenced on January 20, 2004, with the benefit of a presentence investigation. He was previously convicted of Assault in the Second Degree, lessor included offense of Attempted Murder in the First Degree, Criminal Trespass in the First Degree, lessor included offense of Burglary in the Second Degree and Offensive Touching, lessor included offense of Assault in the Second Degree and sentenced by the Honorable E. Scott Bradley to nine (9) years and thirty (30) days at level V pursuant to 11 Del. C. §4204K, followed by six (6) months of level IV work release.

The guilty pleas entered on January 20, 2004, were to charges that had been severed from those Benge went to trial on before the Honorable E. Scott Bradley.[1]

The guilty pleas on January 20, 2004, were made on the morning of trial and were taken as an exception to the Court's general policy on not allowing plea negotiations on the morning of trial. Benge was represented by Joseph A. Hurley, Esquire, an attorney specializing in criminal defense law.

---

[1]Benge also pled guilty to three counts of Wiretaps, two counts of Burglary in the Third Degree, lessor included offenses of Burglary in the Second Degree and Attempted Wiretaps in New Castle County Superior Court on January 13, 2004. Benge was sentenced in New Castle County Superior Court on March 19, 2004 to three (3) years at level V followed by probation.

A169

State v. John H. Benge
Def. ID# 0210012355B
May 2, 2007

In this case, Mr. Hurley filed pretrial motions arguing that count 6 (weapon offense) and count 12 (contempt) were "multiplicious." He also argued counts 11 and 12 (both contempt charges) were "multiplicious."

On January 20, 2004, the Court questioned the similarity of the weapon offense and the contempt offense. The defense then specifically waived this issue, seeking to pursue the plea bargain. The negotiated plea recommendation was for probation on the weapon offense and fifteen (15) days on each of the contempt offenses.

After accepting the plea, reviewing the presentence report generated for Judge Bradley's sentence, Benge ultimately[2] received the following sentences:

> Count 6 - Possession of a Deadly Weapon by a Person Prohibited - 2 years at level V suspended after serving 6 months under 11 Del. C. § 4204K, followed by 12 months level 2.
>
> Count 11 - Contempt/PFA - 15 days at level V.
>
> Count 12 - Contempt/PFA - 15 days at level V.

There was no appeal. In December, 2006, Benge filed a Motion for Post-Conviction Relief and a Motion for Rule 35 Relief. They tracked each other and perhaps were filed based on the cautiousness of what Benge learned as a practicing attorney, i.e. cover all bases.

### The Rule 61 Claims

(a) Count 6, the weapon offense, and count 12 are in reality the same charge and are barred by double jeopardy. Count 6 alleges he had a weapon but was prohibited from same by a Family Court PFA. Count 12 alleges he failed to obey the order by possessing a firearm.

(b) *Apprendi v. New Jersey, 530 U.S. 466 (2007)* and *Blakely v. Washington, 542 U.S. 296 (2004)* require a jury to make the factual determinations necessary before a judge can sentence above SENTAC guidelines.

(c) The pleas were not made knowingly, voluntarily and intelligently.

---

[2]The sentence was later corrected to reduce probation from 18 months to 12 months on Count 6.

2



State v. John H. Benge
Def. ID# 0210012355B
May 2, 2007

    (d) The State breached the plea agreement as to the recommendation.

The Rule 35 Claims

    (a) The same double jeopardy claim raised in the Rule 61 motion.

    (b) The same _Apprendi_ claim made in the Rule 61 motion.

The Plea

Prior to the plea, the Court told Benge that, although there was a recommendation as to the sentence, it was not binding on the Court. Being aware of same, Benge chose to proceed with the entry of the plea.

During the plea, the Court raised its concern, as raised in the earlier defense motion, that the weapon offense and contempt offense might be problematic under _Blockberger_.[3] The defense specifically waived this potential objection or problem.

Benge admitted he possessed a deadly weapon while prohibited from doing so, and that he was in contempt of two Protection from Abuse ("PFA") orders issued by Family Court. He knew he faced two (2) years on the weapon offense and one year each on the contempt offenses. He understood he could get up to four (4) years total.

He advised he had gone through the guilty plea form line by line with Mr. Hurley and that he understood it. He had no questions about it. After reviewing all of his trial rights, he advised the Court he wished to waive those rights and plead guilty.

With the agreement of the parties, the Court sentenced Benge, after reviewing the presentence report from the earlier trial.

At sentencing, Mr. Hurley laid out the position concerning its pretrial motions and then noted that "my client has waived the ability to make those arguments premised upon what he believes is a fair sentencing recommendation by the State and knowing that the Court is not bound by the recommendation."

---

[3]_Blockberger v. United States_, 284 U.S. 299 (1932).

3

**A171**

State v. John H. Benge
Def. ID# 0210012355B
May 2, 2007

Prior to the plea the State informed the Court of it's recommendation. In the comments at sentencing, the State did not recommend any additional time directly or by inference. When the defense was permitted to respond to the State's remarks, as is my custom, no complaints were voiced that the State had violated the recommendation by making it's comments.

<u>Procedural Bars</u>

Each of the claims made in Benge's Rule 61 motion were known at the time he was sentenced. This includes the claim that his plea was not knowingly, voluntarily and intelligently entered, because Benge states he knew the law, including <u>Apprendi</u>, at the time of his sentence and was confused. All of Benge's claims could have been raised on appeal, but he chose not to appeal. Therefore, Rule 61(i)(3) is applicable in that he has not shown cause for not pursuing an appeal of known claims, nor has he shown prejudice. The interest of justice exception contained in Rule 61(i)(5) should not be a door opener when the defendant, a legally trained individual, and/or his attorney, were aware of all of the above claims but chose not to appeal them. Under these facts, the claims are waived. Finally, I note that Benge does not attack his attorney as ineffective.

<u>Alternative Ruling - Merits</u>

In the event that it is determined that Benge's claims are not procedurally barred, I deny them based on the merits.

(a) Double jeopardy - I find that any claim that the charges were duplications were waived (i) by the entry of the guilty plea, <u>Haskins v. State</u>, *Del. Supr. 188, 1991, Moore, J. C. (August 19, 1001) (Order)*; and (ii) by Benge's knowing and voluntary waiver, done in order to obtain a plea recommendation. Benge is bound by his agreement and the waiver in open Court. If a person can plead guilty to a charge that does not exist, <u>Downer v. State</u>, *Del. Supr. 543 A.2d 309 (1988)*, he surely can waive his known constitutional rights pursuant to a plea. He is estopped from now taking a contrary position.

(b) <u>Apprendi</u> does not limit this Court's authority to sentence up to the statutory maximum, <u>Riego v. State</u>, *Del. Supr., 171, 2005, Jacobs, J. B. (October 4, 2005) (Order)*; <u>Shabazz v. State</u>, *Del. Supr., 545, 2004, Ridgely (June 14, 2005) (Order)*; <u>Benge v. State</u>, *Del. Supr., 137, 2004, Berger (November 12, 2004) (Order)*; <u>Siple v. State</u>, *Del. Supr., 453, 1996, Holland.* The SENTAC guidelines are just that, guidelines.

(c) The defendant claims his plea was not knowingly, intelligently and voluntarily entered as to Court 6, Possession of a Deadly Weapon By A Person Prohibited. He was charged in the indictment with this offense, specifically 11 <u>Del. C.</u> § 1448(a)(6). In the negotiations, as

4



State v. John H. Benge
Def. ID# 0210012355B
May 2, 2007

established on the record, and in the guilty plea form, the maximum penalty was stated to be two (2) years. Now Benge argues that, because it could have been eight (8) years because he possessed a firearm, his plea was not entered knowingly, voluntarily and intelligently. This argument is absurd and is denied for the following reasons:

> (1)  The statute contains two potential penalties. Benge's negotiations resulted in him being exposed to the lower of the two.

> (2)  The Court sentenced Benge to the lower of the possible sentences, i.e., he did not get anything more then he thought he was potentially going to get.

> (3)  Finally, he attacks the prosecutor for creating the problem in the guilty plea form. I note that the guilty plea form was filled out by the defendant and his lawyer, not the prosecutor. The guilty plea form tracks the plea as stated on the record. The only confusion is that which the defendant attempts to create.

(d) There is no factual basis to infer that the prosecutor violated the agreement. The Court was told by the prosecutor that the State was recommending fifteen (15) days each on the contempt charges and probation on the weapon offense. Her final sentencing comments were directed to why the thirty (30) days was appropriate and nothing more.

### Conclusion

In summary, Benge's Post Conviction Motion is denied as being procedurally barred. Alternatively, it is denied as to the merits. Likewise, the Rule 35 Motion is denied for the reasons stated above.

Very truly yours,

T. Henley Graves

THG:jfg
cc:     Prothonotary's Office
        Melanie Withers, Esquire, Department of Justice

5

**A173**

# 𝕮𝖊𝖗𝖙𝖎𝖋𝖎𝖈𝖆𝖙𝖊 𝖔𝖋 𝖘𝖊𝖗𝖛𝖎𝖈𝖊

The undersigned hereby certifies that two copies of the attached Brief for Appellant and the Appendix thereto were served pursuant to the rules of the Supreme Court of Delaware  on August  , 2007 by depositing the same in the dropbox maintained by Sussex Correctional Institution for the processing of outgoing inmate mail *via* the United States Postal Service, first class mail, postage prepaid, and addressed to the following person(s):

John R. Williams, Esq.
Delaware Department of Justice
102 West Water Street
Dover, DE 19904

Date: August 7, 2007

John H. Benge, Jr.

A174

# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **John H. Benge, Jr.,** | ) | |
| **Defendant Below-** | ) | |
| **Appellant** | ) | **No.262 , 2007** |
| | ) | |
| **v.** | ) | On appeal from the |
| | ) | Superior Court of the |
| | ) | State of Delaware in |
| **The State of Delaware,** | ) | and for Sussex County |
| **Appellee** | ) | |

# REPLY BRIEF FOR APPELLANT

Date:: October 22, 2007

John H. Benge, Jr.
P.O. Box 500
Georgetown, DE 19947



## TABLE OF CONTENTS

Page

Table of Citations……………………………………………………………………….. i

Argument

  I.   Double Jeopardy Is A Substantive
      Constitutional Protection That Bars
      A Sovereign From Imposing Multiple
      Punishments. The Protection Against
      Punishments Prohibited By The
      Constitution Is Not Subject To Waiver………………………….. 1

    A. Defendant's Double Jeopardy Claim…………………………….. 1

    B. The State's Answering Argument……………………………………. 2

    C. What The State Does Not Contest…………………………………. 3

    D. The State's Argument Provides No
       Constitutional Or Other Grounds
       Upon Which This Court May Base
       A Purported Waiver Of Double Jeopardy
       That Results In Multiple Sentences…………………………..3

  II. A Sentence Impose Contrary To
     The  Right To Jury Trial In Violation
     Of Apprendi/Blakely Is Not Simply A
     "Lawful Sentence Imposed In An Illegal Manner.".. 9

    A. Defendant's Jury Trial Claim…………………………………………… 9

    B. The State's Answering Argument……………………………………… 10

    C. A Sentence Imposed Upon Denial
       Of The Jury Trial Right
       Represents A Fundamental
       Constitutional Defect And
       An "Illegal Sentence."……………………………………………………… 10

III. The State's Argument Offers
No Clarification Of The Confusion
Below As To The Offense To Which
Defendant Pleaded Guilty.................................................................. 12

A. Defendant's Involuntary Plea Claim......................................... 12

B. The State's Answering Argument.............................................. 13

C. The Likely Consequences Of
A Plea Must Be Understood.......................................................... 13

IV. The Prosecutor's Comments To The
Court Below Constituted Sentence
Advocacy And Were made In Breach
Of The Plea Agreement................................................................ 14

A. Defendant's Breach Of Plea Agreement Claim....................... 14

B. The State's Answering Argument.............................................. 14

C. That The Prosecutor Was Responding
To A Question From The Bench
Does Not Insulate The Prosecutor's
Breach Of The Plea Agreement.................................................. 15

# TABLE OF CITATIONS

Page

CASES

Abercrombie v. Davies,
     123 A.2d 893,
cause remanded, 130 A.2d 338,
on remand 131 A.2d 822
(Del. Ch., 1956 ........................................................ 11

Apprendi v. New Jersey,
     530 US 466 (2000) ........................................... 10

Blakely v. Washington,
     542 US 296 (2004) ........................................... 10

Brittingham v. State,
     705 A.2d 577 (Del., 1998) ............................. 2

Cunningham v. California,
     ___ U.S. ___ (2007) ....................................... 10

Menna v. New York,
     423 U.S. 61 (1975) ......................................... 1

Miller v. French,
     530 U.S. 327 (2000) ....................................... 19

Porter v State,
     No. 32, 2005 August 15, 2005 (Del.)................ 11

Stigars v. State,
     674 A.2d 477 (Del., 1996) ............................. 17

United States v. Ahn,
     211 F.3d 26 (D.C., Cir.,2006) ....................... 14

United States v. Allen,
     434 F.3d. 1166 (9th Cir., 2006) ................... 14

United States v. Barnes,
     278 F.3d. 644 (6th Cir., 2002) ..................... 14



i
A 178

United States v. Booker,
    543 U.S. 220 (2005) ............................................................................ 10

United States v. Hand,
    913 F.3d 854 (10th Cir., 1990) ................................................ 14

United States v. Herzog,
    644 F.2d 713 (8th Cir., 1981) .................................................. 10

United States v. Lankford,
    196 F.3d 563 (5th Cir., 1999) ................................................. 14
  14
United States v. Marino,
    682 F.2d 449 (3rd Cir., 1982) ................................................. 3

United States v. Mastrangelo,
    733 F.2d 449 (3rd Cir., 1982) ................................................. 14

United States v. Mayak,
    789 F.2d 500 (7th Cir., 1986) ................................................. 3

United States v. Moreland,
    959 F.2d 1489 (10th Cir., 1992) ............................................ 14

United States v. Rosenbarger,
    536 F.2d 715 (6th Cir., 1976) ................................................. 14

United States v. Sickenger,
    179 F.3d 1091 (8th Cir., 1999) .............................................. 14

United States v. Scott,
    455 F.3d 1188 (10th Cir., 2006)
    rehearing en banc denied, 469 F.3d 1335 (2006) ............... 14

United States v. Vaval,
    404 F.3d 144 (2nd Cir., 2005) ................................................ 14

United States v. Weathers,
    186 F.3d 948 (D.C. Cir., 1999) .............................................. 3

A 179

## Constitutional Provisions

FEDERAL                                              Page

Sixth Amendment .................................................................................................. *passim*


### STATE STATUTES

11 Del. C. §1271 A ............................................................................. 12

11 Del. C. §1217 A (c) ....................................................................... 12

11 Del. C. §1448 (a) (6) .................................................................... 12


### Federal Court Rules

Federal Rules of Criminal Procedure 12 ............................................... 4

Federal Rules of Criminal Procedure 35(a) ......................................... 14


### State Court Rules

Superior Court Rule of Criminal Procedure 12...................................... 4

Superior Court Rule of Criminal Procedure 35 (a) ..................... passim

A 180

**TABLE OF CONTENTS**

Page

Table of Citations................................................................................ i

Argument

I.   Double Jeopardy Is A Substantive
     Constitutional Protection That Bars
     A Sovereign From Imposing Multiple
     Punishments. The Protection Against
     Punishments Prohibited By The
     Constitution Is Not Subject To Waiver........................ 1

     A. Defendant's Double Jeopardy Claim...................... 1

     B. The State's Answering Argument............................ 2

     C. What The State Does Not Contest........................... 3

     D. The State's Argument Provides No
        Constitutional Or Other Grounds
        Upon Which This Court May Base
        A Purported Waiver Of Double Jeopardy
        That Results In Multiple Sentences.....................3


II. A Sentence Impose Contrary To
    The   Right To Jury Trial In Violation
    Of Apprendi/Blakely Is Not Simply A
    "Lawful Sentence Imposed In An Illegal Manner.".. 9

A. Defendant's Jury Trial Claim.................................... 9

B. The State's Answering Argument.............................. 10

C. A Sentence Imposed Upon Denial
   Of The Jury Trial Right
   Represents A Fundamental
   Constitutional Defect And
   An "Illegal Sentence."........................................... 10

*A 181*

III. The State's Argument Offers
     No Clarification Of The Confusion
     Below As To The Offense To Which
     Defendant Pleaded Guilty……………………………………………………… 12

  A. Defendant's Involuntary Plea Claim……………………………………… 12

  B. The State's Answering Argument…………………………………………… 13

  C. The Likely Consequences Of
     A Plea Must Be Understood………………………………………………… 13

IV. The Prosecutor's Comments To The
    Court Below Constituted Sentence
    Advocacy And Were made In Breach
    Of The Plea Agreement………………………………………………………… 14

  A. Defendant's Breach Of Plea Agreement Claim………………………… 14

  B. The State's Answering Argument…………………………………………… 14

  C. That The Prosecutor Was Responding
     To A Question From The Bench
     Does Not Insulate The Prosecutor's
     Breach Of The Plea Agreement…………………………………………… 15

## ARGUMENT

**I. Double Jeopardy Is A Substantive Constitutional Protection That Bars A Sovereign From Imposing Multiple Punishments. The Protection Against Sentences Prohibited By The Constitution Is Not Subject To Waiver.**

### A. Defendant's Double Jeopardy Claim

Defendant's[1] first claim for relief on this appeal is that the Double Jeopardy protection of the state and federal constitutions bars sentencing on both Counts 6 and 12 of the Superceding Indictment of April 28, 2003 as the separate offenses underlying those offenses are based upon the same conduct and have identical elements. The guilty pleas that preceded the sentences entered below do not operate to bar the relief sought by Defendant under Rule 35(a) of the Superior Court Rules of Criminal Procedure ("SCRCrP") on the sentence imposed on Count 12 - whether by "waiver" or otherwise – because Count 6 and Count 12 are *facially* duplicative and therefore not subject to a waiver under the constitutional precept announced in *Menna v. New York*, 423 U.S. 61 (1975).

### B. The State's Answering Argument

In answer to Defendant's Double Jeopardy claim, the State advances the proposition that because Defendant's multiplicity

---

[1] This reply brief utilizes the same designations for the parties to this appeal as were used in the Brief for Appellant: appellant is "Defendant" and appellee is the "State.'

**A163**

claim was not raised prior to the entry of Defendant's guilty pleas, the Double Jeopardy claim was "waived" under SCRCrP 12. The State relies upon a purported procedural distinction – "curable" *versus* "non-curable" pleading defects – between multiplicious counts in an indictment and other forms of Double jeopardy problems.[2]

### C. What The State Does Not Contest On This Appeal

The State concedes the following points that are central to Defendant's Double Jeopardy claim:

> ➢ that Count 6 and Count 12 of the Superceding Indictment of April 28, 2007 are indeed facially duplicative;

> ➢ that Count 12, a misdemeanor, is indeed a lesser included offense of Count 6;

> ➢ that a sentence imposed in violation of the Double Jeopardy protection is included within the definition of "illegal sentence" in SCRCrP 35(a) as that term has been defined in this Court's previous decisions, *e. g.*, *Brittingham v. State*, 705 A.2d 577 (Del., 1998) and that correction of an illegal sentence under Rule 35(a), even when viewed in the narrowest possible

---

[2] What the State does not attempt to do is to provide this Court with a justification grounded in constitutional law as to how a sovereign may compel a defendant to serve two sentences for the same offense. For the analysis of federal courts on this issue, see Argument I D. of this reply brief.



terms, includes correction of a sentence that is contrary to Double Jeopardy. *Id.*

> that because the offenses alleged in Count 6 and Count 12 occurred at the same time and place and involved the same conduct, the State could not in fact "cure" the Superceding Indictment by alleging "different" conduct as constituting the offense charged in either count thus distinguishing this case from *United States v. Weathers*, 186 F.3d 948 (D.C. Cir, 1999); and

> that when sentences are within the definition of "illegal" as used in SCRCrP Rule 35(a), this Court has not heretofore recognized any procedural bar as applicable save for *res judicata*; *Brittinghsm v. State, supra.* This is consistent with the interpretation of Rule 35(a) of the Federal Rules of Criminal Procedure ("FRCrP") followed by federal courts. *See, e.g., United States v. Mazak*, 789 F.2d 580 (7th Cir., 1986).

**D. The State's Argument Provides No Constitutional Or Other Grounds Upon Which This Court May Base A Purported Waiver Of Double Jeopardy That Results In Multiple Sentences.**

The "waiver" argument offered by the State and grounded on *United States v. Weathers, supra*, reflects a grasp for a rope of sand. Unlike the instant case, the prosecution in *Weathers did*



*not* concede that the several counts of the indictment were *facially* multiplicious. Beyond that, however, the key finding of the District of Columbia Federal Court of Appeals in *Weathers* was that, if the defendant in that case had filed a timely Rule 12 objection to the indictment, the Government could have "cured" the "defective" indictment by obtaining a superceding indictment replacing Count Four and Five of the indictment in *Weathers* "with three new counts for making threats…on three separate occasions" and Counts Three and Six "with five new counts."

In the instant case, unlike the situation in *Weathers*, the State offers no suggestions as to how it might have "replaced" any counts in the Superceding Indictment of April 28, 2004. Such a response was not possible in this case because there *was no* "other" instance- *no other instances* - of alleged criminal behavior by Defendant that the State could substitute for Count 12. All possible charges that could have been brought against Defendant were brought against Defendant in the Superceding Indictment which was the third indictment obtained by the State against Defendant. *Weathers*, because of its central holding, is simply wholly inapposite to the State's waiver argument on this appeal.

Moreover, having suggested that this Court adopt principles from the *Federal* Rules of Criminal Procedure, the State does not



4

deign to examine the practice under those rules other than to the extent necessary to present a specious argument. Two significant aspects of the FRCrP bear directly on the arguments in this appeal.

The first of those two aspects is that the FRCrP 12 includes a "good cause" exception. Thus, where a defendant has in fact failed to move prior to trial to dismiss multiplicious counts in an indictment, good cause exits to excuse that procedural default under FRCrP Rule 12 because enforcement of a Rule 12 based "waiver" of Double Jeopardy would result in a defendant serving an unconstitutional sentence contrary to the 5th Amendment. *United States v. Marino*, 682 F.2d 449 (3rd Cir., 1982).

Further, the Double Jeopardy issue in Defendant's appeal, as the State is well aware, is addressed to the multiple sentences imposed upon Defendant. Federal courts of appeal recognize, virtually universally, that FRCrP Rule 12 does not bar a defendant from asserting for the first time on appeal, a Double jeopardy claim based upon *sentences* resulting from a multiplicious indictment. *See, e.g.,* in addition to *United States v. Marino, supra, United States v. Lankford,* 196 F.3d 563 (5th Cir., 1999); *United States v. Rosenbarger,* 536 F.2d 715 (6th Cir., 1976); *United States v. Morehead,* 959 F.2d 1489 (10th Cir.,

1992); *and United States v. Mastrangelo,* 733 F.2d 793 (11th Cir., 1984).

The practice employed by federal courts under FRCrP Rule 12 simply does not serve to defeat the Double Jeopardy protection as is urged upon this Court by the State.

The State raises two additional contentions in support of its "waiver" argument. The State suggests that Defendant has overlooked the fact that Defendant's plea was a counseled plea of guilty. This, the State asserts, reinforces the notion that the purported "waiver" of Double Jeopardy – a waiver by counsel, no less - should be enforced by this Court.

Defendant has not, as suggested by the State, sought to camouflage the fact that he was represented by counsel below having acknowledged that fact on the very first page of the argument in Defendant's opening brief on this appeal. However, the short answer is that Defendant's counsel – as well as the prosecutor and the presiding judge below – were frankly *wrong* as to the ability of a defendant to waive Double Jeopardy as to facially duplicative counts in an indictment under *Menna v. New York.* If the consequence of such an error must fall on one party to this appeal, the state and federal constitutions place that consequence on the State not a defendant.

Moreover, that the plea in this case was made pursuant to a plea bargain agreement, as the State indignantly points out in

6

A188

its answering brief[3], is of little moment to the "waiver" issue raised by the State on this appeal. The prosecutor did not dismiss any charges below pursuant to the plea agreement reached between the parties; it therefore cannot claim to have been overreached in the plea negotiations or in any other way prejudiced. *Cf., United States v. Herzog*, 644 F2d 713 (8th Cir., 1981)(plea bargain involved the dismissal of numerous counts of an indictment).

The prosecutor below had no reasonable expectation in any event that the plea agreement as to Count 12 would ultimately stand as the both Defendant's pretrial motions and the trial judge's pointed questioning of the duplicate penalties at sentencing foreshadowed that the constitutionality of that agreement would be questioned.

The State's argument does, however, lend itself to an entirely different remedy than the imposition of a sentence in violation of Double Jeopardy as sought by the State; rather than sustain an illegal sentence, if this Court is inclined to accept the State's argument, the plea agreement reached below should be rescinded to deprive Defendant of the benefit of both the plea agreement in which the State recommended a specific sentence *and* Double Jeopardy. While the remedy suggested by Defendant – that

---

[3] The sanctity that the State would afford to the plea agreement somehow evaporates in the State's response to Defendant's breach of plea claim in Argument IV of the Answering Brief.

the illegal part of the plea agreement calling for Defendant to be sentenced for a multiplicious count – should be excised, *Abercrombie v. Davies*, 123 A2d 893, *cause remanded*, 130 A.2d 338, *on remand*, 131 A.2d 822 (Del. Ch., 1956) – is well recognized, this Court may also void the agreement in it entirety if its central purpose has been thwarted. *Id.*

At the end of the day, the State's waiver argument requires a complete suspension of disbelief and the abrogation of this Court's existing body of caselaw holding that SCRCrP Rule 35(a) – an illegal sentence "may be corrected at any time" recently reaffirmed by the Court in *Porter v. State*, Del. Supr., No. 32, 2005 (August 15, 2005) – means just what it says: that there are no procedural bars to the presentation of an illegal sentence claim for the first time on post-conviction motion.  The State's effort to have Rule 35(a) effectively amended to read "may be corrected at any time except if it was not previously presented" should be rejected by this Court.

**II. A Sentence Impose Contrary To The Right To Jury Trial In Violation Of Apprendi/Blakely Is Not Simply A "Lawful Sentence Imposed In An Illegal Manner."**

**A. Defendant's Jury Trial Claim**

After obtaining an indictment under 11 Del. C. §1271A for criminal contempt of a Family Court order and securing Defendant's agreement to lead guilty to that offense, the prosecutor, like the prosecutor in *Cunningham v. California*, __ U.S. __ (2007), "switched gears" at sentencing. The prosecutor sought sentencing under 11 *Del. C.* §1271A(c) for an offense which required proof of elements not alleged in the Superceding indictment or admitted as part of the plea agreement: i) resulting physical injury; ii) use/threatened use of a deadly weapon; or iii) two or more previous contempt convictions. Despite the absence of allegations in the Superceding Indictment relating to such additional elements or the admission of such facts by the Defendant as part of the plea agreement or proceedings, Defendant was nonetheless sentenced to the enhanced minimum sentence of 15 days at Level V under §1271A(c).

In a similar manner – without a jury determination or an admission by the Defendant – the court below enhanced the sentence imposed on Count 6 of the Superceding Indictment pursuant to a finding of fact made by the court by making its

9

A191

six month Level V sentence on that offense subject to 11 *Del. C.* §4204(k) - no diminution by earned goodtime.

## B. The State's Answering Argument

Contrary to the repeated recent holdings of the United States Supreme Court on the role of the jury protection right in sentencing, the State contends that a sentence imposed in disregard of that protection is no more than a sentence "imposed in an illegal manner" - as if it were no more than the trial court's failure, for example, to strictly adhere to all requirements of SCRCrP Rule 11 - and that therefore Defendant's 6th Amendment claim is barred by SCRCrP Rule 35(b).

The State further begs the question on the Count 6 sentencing issue by assuming that the proper sentence was the "minimum sentence" under 11 *Del. C.* §1271A(c) and that therefore the jury trial right was in no way implicated.

## C. A Sentence Imposed Upon Denial Of The Jury Trial Right Represents A Fundamental Constitutional Defect And An "Illegal Sentence."

The decision of the United States Supreme Court in *Apprendi V. New Jersey*, 530 U.S. 466 (2001), *Blakely v. Washington*, 542 U.S. 296 (2004), and *Cunningham v. Washington*, *supra*, make abundantly clear, in the words expressly used in *Blakely*, that the jury trial right as application to sentencings is "no mere procedural formality." The sentences in each of those cases were held to be

10
A192

"invalid" as a matter of constitutional law as beyond the "authority" of the judge to impose.

SCRCrP Rule 35(a) is derived entirely from its federal counterpart; the language in that rule is identical to former FRCrP 35(a).[4] The federal rule afforded a remedy for defects in a sentence that were jurisdictional, constitutional, and fundamental. *Hill v. United States*, 368 U.S. 424 (1962); sentences are "illegal" when in excess of the penalty proscribed by relevant statues; multiple terms for the same offense; or sentences that are legally or *constitutionally invalid." Id.*, 368 U.S., at 472.

Having drunk the *Blakely* denial Kool-Aid , this Court is now compelled to compound the constitutional error to paper over the underlying flaw in it approach to the jury trial right in sentencing – a sentence imposed in derogation of that right – a sentence that "exceeds the judge's authority," Blakely – must under this Court's rulings become merely imposed in an illegal manner, despite the fact that SCRCrP Ruk2 35(a) has long been held to encompass within the meaning of "illegal sentence" a sentence that the judgment of conviction dose not authorize. *Brittingham v. State, supra.*

---

[4] Now superceded by 28 U.S.C.§2255.

**III.  The State's Argument Offers No Clarification Of The Confusion Below As To The Offense To Which Defendant Pleaded Guilty**

### A. Defendant's Involuntary Plea Claim

The use by the Superior Court judge and the prosecutor of the terms "deadly weapon" and "firearm" – terms that are not interchangeable for purposes of the offenses to which Defendant might have pleaded guilty – render it impossible to determine from the record below (created by the judge and prosecutor) whether Defendant was pleading to a Class D or a Class F felony under 11 *Del. C.* §1148(a)(6). A guilty plea made without an understanding of the potential maximum penalty is an involuntary plea as this Court has made abundantly clear.

### B. The State's Answering Argument

In its answering brief, the State abandons the argument below that a guilty plea is valid "unless there is something physically wrong" with a defendant. In place of that argument, the State introduces in its argument the concept of the "vicinity plea" – a plea of guilty is valid if it is in the vicinity of any arguably applicable offense to which a defendant might conceivably plea guilty.

### C. The "Likely Consequences" Of A Plea Must Be Understood

The United State Supreme Court reiterated in *Bradshaw v. Stumpf*, __ U.S. __ (2005) that a guilty plea is "valid only if

done voluntarily, knowingly, and intelligently "with sufficient awareness of the relevant circumstances and consequences." (emphasis supplied). The alternative standard suggested to this Court by the State – that a plea is valid when the defendant understands the elements of an offense (or several offenses) and not the maximum possible sentences involved invites this Court to substitute a different, lower standard. The Court should decline the State's invitation.

**IV. The Prosecutor's Comments To The Court Below Constituted Sentence Advocacy And Were made In Breach Of The Plea Agreement**

**A. Defendant's Breach Of Plea Agreement Claim**

At sentencing in the court below, the prosecutor breached the parties' plea agreement - which provided for the State to recommend Level IV probation, not Level V incarceration - by not only failing to expressly request a sentence of probation without actual service of a period of incarceration but also by engaging in "sentence advocacy" by making statements that served no purpose other than as an argument for a harsher sentence than that which was to be recommended under the plea agreement.

**A. The State's Answering Argument**

The State seeks to minimize as well as marginalize the prosecutor's breach of the plea agreement below by contending that the prosecutor's remarks were intended solely to explain the prosecution's "decision to pursue the remaining charges and the nature of the recommendation." (Answering Brief, p. 21). Apparently now abandoning the argument made below that a "recommendation" is, after all, just a "recommendation" and that a plea agreement is not a contract that binds a prosecutor in any manner, the State now seeks to justify the prosecutor's remarks below as permissible "because the judge asked a question." It matters little, according to the State's view of its agreement with Defendant, that the judge did not expressly

14
A196

ask for an explanation of the "decision to pursue the remaining charges" or the "nature of the State's recommendation." Accordingly, the State submits to this Court, the fact that the judge asked a question of the prosecutor justified her comment that Defendant's conduct was "a very blatant thumbing of his nose to the court system in general" and that the offering of such a comment was consistent with the parties' plea agreement.

C. **That The Prosecutor Was Responding To A Question From The Bench Does Not Insulate The Prosecutor's Breach Of The Plea Agreement**

Due process requires that a prosecutor adhere to the "highest standard of fairness" with respect to performance of a plea agreement because such an agreement involves the surrender of fundamental constitutional protections. *United States v. Vaval*, 404 F.3d 144 (2nd Cir., 2005) An agreement by a prosecutor to make a recommendation regarding the sentence to be imposed by the court is precisely that – an agreement to expressly request that a defendant be sentenced in the manner particularized in a plea agreement and the failure to expressly make the recommendation agreed to is in itself a breach of the plea agreement. *United States v. Barnes*, 278 F.3d 644 (6th Cir., 2002). That is the circumstance that obtains in the instant case as the prosecutor never expressly made the recommendation that the plea agreement called for her to make. That the prosecution may engage in some form of dissemblance – as by remarks made

purportedly to explain a recommendation – does not serve to excuse such a breach. *Id.*

The 10th Circuit Federal Court of Appeals has examined the same argument raised by the State in this case – that the sentencing judge elicited comments from a prosecutor regarding aggravating factors and that such a situation relieves the prosecutor from a clam of breach of the plea agreement. In *United States v. Scott*, 455 F. 3d 1188 (10th Cir., 2006) *rehearing en banc denied*, 469 F.3d 1335 (2006), the 10th Circuit rejected the proposition that responding to a judge's inquiry insulates the prosecution from a claim of breach: when a prosecutor in fact argues factors in aggravation, even under the guise of a response to a judge's question, a breach of the plea agreement occurs because such argument is an attempt to influence the judge to impose a greater sentence. *See also, United States v. Allen*, 434 F.3d 1166 (9th Cir., 2006) and *United States v. Ahn*, 211 F.3d 26 (D.C. Cir., 2000).

The State cannot rely upon a "rigidly literal construction of the plea agreement United *States v. Hand*, 913 F. 3d 854 (10th Cir., 1990). In the instant case, the prosecutor's comments – describing Defendant's conduct as the equivalent of an obscene gesture directed toward the judiciary as a whole – were not a simple "explanation." Those comments were a calculated "drive-by" attack on the recommendation in the plea agreement. The

comments served no purpose other than to advocate for a greater sentence and as with the remarks of the prosecutor in *United States v. Vaval, supra* – where the prosecutor used the adjective "appalling" to describe the defendant's prior record and conduct – the prosecutor breached the agreement to recommend probation when she advocated for a sentence departing from the plea agreement.

This Court should not countenance conduct by the State that is calculated to undermine a plea agreement because of the dominant – 90±% of cases – position occupied by plea agreements in the criminal justice system.

## CONCLUSON

On Defendant's Double Jeopardy claim, the State invites this Court to ignore the constitutional infirmities in Defendant's sentence "to the point of disingenuous evasion" Cf., Miller v. French, 530 U.S. 327 (2000). The sentence and conviction on Count 12 of the Superceding Indictment should be vacated. *Stigars v. State*, 674 A.2d 477 (Del., 1996).

The State's efforts to sidestep *Apprendi/Blakely* fare no better than its argument on Double Jeopardy. The prosecutor sought sentencing on the penalty for 11 Del. C. §1271A(c) after obtaining Defendant's plea of guilty to 11 Del. C. §1271A. The sentencing judge evoked 11 Del. C. §4204(k) after engaging in fact-finding prohibited by the 6th Amendment and the Delaware Constitution. The enhanced sentences are in each case unconstitutional – not just procedurally flawed – and cannot stand.

The record created below solely by the prosecutor and the presiding judge makes it impossible to determine if Defendant entered a plea of guilty to a Class D or a Class F felony. In such circumstances, unless the Court is determined to hold that the degree of the offense to which a plea is entered is immaterial as a matter of constitutional law – the plea cannot be permitted to stand.

Finally, the prosecutor's inflammatory remarks at sentencing – remarks that went well beyond the allegations in the indictment and plea agreement and which served the sole purpose of advocating a sentence enhancement – constitute a breach of the plea agreement warranting relief therefrom by this Court.

Date: _____

John H. Benge, Jr.
P.O. Box 500
Georgetown, DE 19947

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that two copies of Appellant's Reply Brief were served on October 17, 2007 by depositing the same in a receptacle maintained at Sussex Correctional Institution, Georgetown, Delaware as a part of the system for the processing of outgoing inmate mail via the United States Postal Service and addressed to :

Loren C. Meyers, Esq.
Delaware Department of Justice
820 North French Street
Wilmington DE 19801

October 17, 2007       _____

John H. Benge, Jr.

20
A202

# IN THE SUPREME COURT OF THE STATE OF DELAWARE

John H. Benge, Jr.,          )
**Defendant Below-**         )
**Appellant**                )          No. 262, 2007
                             )
    v.                       )
                             )
**The State of Delaware,**   )
**Appellee**                 )

# RULE 18 MOTION FOR REARGUMENT

**Comes Now,** John H. Benge, Jr., defendant below-appellant, *pro se* ("Defendant") and pursuant to Supreme Court Rule 18 and both respectfully and in a timely manner moves for reargument of this Court's opinion of January 25, 2008 in the above captioned appeal.  The grounds for this motion are as follows:

### Defendant's Claims on Appeal

1. In this appeal, Defendant raised four claims for relief under Superior Court Rules of Criminal Procedure ("SCRCrP") Rules 35) a) and 61. This motion addresses the first of those claims, i.e., that the Double Jeopardy protection bars the imposition by the court below of two distinct punishments on facially duplicative counts of the indictment.

### The Court's Ruling on the Double Jeopardy Claim

2. This Court's opinion of January 25, 2008 misapprehends the constitutional dimension of Defendant's Double jeopardy claim by disposing of that claim on precepts of pleading embodied in



A205

SCRCrP Rule 12(b)(2) and 12(f) (stating, *inter alia*, that defenses not raised prior to trial are deemed waived).

3. This Court's opinion is grounded on the notion that a multiplicity defect in an indictment might be "curable," citing as authority for that proposition *Hall v. State*, Del. Supr., order, No. 649 (October 30, 2007) which in turn cites *Downer v. State*, 543 A.2d 309 (Del., 1998).

4. *Hall v. State* is inapposite. In *Hall*, the defendant claimed that under Double Jeopardy a prior prosecution in Pennsylvania for offenses committed there precluded a subsequent prosecution in Delaware for offenses committed in Greenville, Delaware. However, Double Jeopardy has never been deemed to bar separate prosecutions by separate state sovereigns. *Heath v. Alabama*, 474 U.S. 82 (1985). Irrespective of SCRCrP Rule 12, since Delaware has claimed distinct sovereignty from Pennsylvania since, at least, the great separation in November, 1704, the "separate sovereigns" rule prevented any colorable claim of Double Jeopardy from being asserted in *Hall*. No genuine multiplicity issue was present in *Hall* therefore no true waiver issue.

5. The Supreme Court of the United States has clearly and unambiguously established as federal constitutional law that a defendant may not "waive" the Double Jeopardy protection and be punished twice on the basis of facially duplicative counts in an indictment *Menna v. New York*, 423 U.S. 61 (1975). This Court's ruling, the net effect is to authorize the double punishment of


A 204

Defendant for two counts comprising the very same offense is directly contrary to the intent of Double Jeopardy.

6. The State has beguiled the Court with two specious arguments in this appeal: first, that Defendant's counsel's purported "waiver" of Double Jeopardy at the guilty plea proceedings trumps the constitutional protection relied upon by Defendant; and further, that the multiplicity defect in the indictment in Defendant's case was somehow "curable."

7. Defendant's counsel was simply wrong with respect to the ability of a defendant to "waive" a defect of facially duplicative counts in an indictment. The presiding judge below pointedly recognized that fact and questioned the prosecutor directly as to the validity of the plea to the duplicative counts in the indictment. The State therefore had no reasonable basis to expect that the dual punishment would withstand principled scrutiny. Further, the error of Defendant's counsel regarding waiver of the Double Jeopardy protection against multiple punishments should afford no basis for the State to punish Defendant twice for the same conduct in contravention of constitutional protections. To the extent that the State deems itself to be prejudiced by the enforcement of Double Jeopardy in this case, this Court can simply void the plea agreement, remand the case, and send the parties back to Superior Court in *status quo ante*.

A205

8. The State further misleads this Court with the assertion that the multiplicity defect in the indictment in Defendant's case was somehow "curable." However, the hollowness of the State's position is amply demonstrated when the first question is asked on the road to deconstruction of the State's "curability" argument: precisely *how* might the State might have attempted to amend the indictment to charge distinct offenses in counts 6 and 12? The answer is that because the two counts refer to the same conduct at the same time in a singular factual context, the indictment could not have been recast to "cure" the multiplicity defect. The State has at no point even attempted to demonstrate how it would have "cured" that defect. Thus this case in the antithesis of *United States v. Herzog*, 644 F.2d 713 (8th Cir., 1981), the sole case cited by the State for the proposition that "curability" trumps Double Jeopardy. In *Herzog*, the Court of Appeals did what the State in this case is unable to do: state with particularity how a different set of facts constituting a different offense could have substituted for one of the counts in the indictment.

**Wherefore**, Appellant moves for reargument of this Court's opinion of January 25, 2008.

Date: February 4, 2008

John H. Benge, Jr.
P.O. Box 500
Georgetown, DE 19947



## IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| John H. Benge, Jr.,<br>Defendant Below-<br>Appellant | )<br>)<br>) | |
| | ) | No. 262, 2007 |
| | ) | |
|    v. | ) | |
| | ) | |
| The State of Delaware,<br>Appellee | )<br>) | |

### ORDER

AND NOW, to wit this ____ day of February, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that the State shall file a response to Appellant's Rule 18 Motion for Reargument on or before_____2008.

_____

Justice

A207

# Certificate of Service

The undersigned hereby certifies that two copies of the Rule 18 Motion For Reargument attached hereto were served on February 5, 2008 by depositing the same in the internal mail system maintained at Sussex Correctional Institution, Georgetown, Delaware for the processing of outgoing inmate mail via the United States Postal Service, first class mail, postage prepaid, and addressed to:

Loren C. Meyers, Esq.
Delaware Department of Justice
820 North French Street
Wilmington, DE 19801

Date: February 5, 2008        _____

John H. Benge, Jr.



| | Indictment | Plea Agreement | TIS Plea Form | Plea Transcript | Sentencing Transcript | Sentence Order | DOC Status Sheet |
|---|---|---|---|---|---|---|---|
| ference To le 11,§No. Offense | YES Count 5 §1448(a)(6) | NO | NO | YES @p.3 §1448(a)(6) | YES §1448(a)(6) @p.8:p.12 | NO | NO |
| ference To fense Name | YES Count 6 "Possession of a firearm by a person prohibited" | YES "..PFBPP.." | YES "..Poss. Firearm Person Prohib." | YES By the State:@p.2: "possession of a firearm person prohibited" By the court:@p.3: "possession of a deadly weapon by a person prohibited..." | YES By the court:@p.8: "..straight up deadly weapon possession." By the court:@p.12-13: "..possession of a deadly weapon." By the court:@p.12: "But charged Possession of a firearm." By the court:@p.13: "..firearm included in deadly weapon." | YES "PDWBPP FC-PFA" | YES "..possess firearm.." |
| ference To Felony As assD/ClassF | NO | NO | NO | NO | NO | NO | NO |
| ference To Maximum Penalty s:Two Years L5 | NO | NO | YES:"0-2" | YES:@pp.5-6: "two years" | NO | NO | NO |
| s:Eight Years L5 | NO | NO | | NO | NO | NO | NO |
| s:Three years L5 | NO | NO | NO | NO | NO | NO | NO |
| ference To Presumptive Sentence :0-2 years | NO | NO | YES:2yrs.@L3 | NO | NO | NO | NO |
| :0-3 YEARS L5 | NO | NO | NO | NO | NO | NO | NO |
| ference To Sentence Being Imposed For Class D Felony Under | | | | | | | |
| 1 Del.C.§1448(c) | NO | NO | NO | NO | NO | NO | NO |