# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN H. BENGE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 08-78-GMS |
| | ) | |
| G.R. JOHNSON, Warden, and | ) | |
| JOSEPH R. BIDEN, III, Attorney General | ) | |
| of the State of Delaware, | ) | |
| | ) | |
| Respondents. | ) | |

---

John H. Benge. *Pro se* petitioner.

Elizabeth R. McFarlan Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware. Attorney for respondents.

---

## MEMORANDUM OPINION

March 31, 2011
Wilmington, Delaware

Sleet, Chief Judge

# I. INTRODUCTION

Petitioner John H. Benge ("Benge") is an inmate at the Sussex Correctional Center in

Georgetown, Delaware. Benge filed the pending petition for a writ of habeas corpus ("petition")

pursuant to 28 U.S.C. § 2254. (D.I. 1) For the reasons that follow, the court will dismiss his

petition.

# II. FACTUAL AND PROCEDURAL BACKGROUND

The facts of Benge's case are as follows:

In response to a 911 call, the Rehoboth Beach Police arrived at the Oak Grove
Motor Court Inn to find Benge and Edward Stacey Smith involved in an altercation
outside the motel. Smith, who was on top of Benge at the time the police arrived, had
sustained a gunshot wound to his chest. At the scene, the police recovered two loaded
handguns, two speed loaders, several live, loose .22 caliber rounds, and two holsters
which were attached to Benge's belt.

This incident was the result of the deterioration and later dissolution of the
marriage between Benge, and his ex-wife, Donna Kay Lovett. Lovett informed Benge
that she wanted to separate and moved into her brother's North Wilmington home. In
fact, Benge had checked her phone records, and placed a recording device under Lovett's
bed with a microphone attached to the mattress. After some time, Lovett returned to the
couple's home in Centreville. From that point on, Benge continually sought reassurance
from Lovett that she had not fallen in love with someone else.

In October 2001, Lovett filed for divorce, left the Centreville home, and
permanently moved to her brother's house in North Wilmington. After Lovett left, Benge
took a set of her new house keys and duplicated them. He then used those duplicate keys
to enter the North Wilmington home on several occasions, continuing to do so even after
the divorce had become final. On one of these occasions he placed a voice-activated tape
recorder in the dresser located in Lovett's bedroom. Furthermore, her brother, the owner
of the North Wilmington home, saw Benge driving near the house around the time of the
break-in.

After the divorce was final, Lovett began a new relationship with Smith, a man
whom she had known for several years. Smith was an elementary school teacher and
worked during the summer as a maintenance man at Oak Grove, which Lovett's family

1

owned.

In October 2002, Benge drove to the motel and took with him two loaded handguns with holsters, extra ammunition in two speed-loaders, a pair of wirecutters, and a can of high-intensity pepper spray. When Benge reached the motel, he illegally entered room number five, using a duplicate set of keys. After consuming alcohol, he left the motel room and went in search of Lovett and Smith. Once outside the motel, Benge cut the telephone line that ran to the facility. He then entered the motel office, which has separate apartments on each side. Benge entered one of the apartment bedrooms where he found Lovett. He confronted her, demanding to know where Smith was. After apparently failing to get the answer he wanted, Benge sprayed Lovett in the face with pepper spray. Lovett ran from the bedroom to the living room and tried to unlock the door of the apartment. Benge then pulled her back and sprayed her again.

Smith heard Lovett screaming and entered the room from the other apartment. When Smith entered the room Benge released Lovett, whom he had been holding with a weapon at her face. Lovett then fled to the motel office and managed to call the police on her cell phone. Lovett observed Benge and Smith struggling in the apartment and heard two gunshots.

After Benge released Lovett, he sprayed Smith in the face and chest with the pepper spray. A struggle ensued and Benge drew one of his handguns. Smith heard gunshots and tried to push Benge out the door. As a result of the struggle, Smith sustained a gunshot wound to his chest, a punctured right eardrum, irritated eyes, a gouge in his left foot, and other less serious injuries.

At trial, Benge testified that he had been so distraught over the divorce that he had decided to kill himself and claimed that he wanted to commit suicide in front of Lovett and Smith. Benge expressly denied any intention to harm anyone else. Benge further claimed that once inside the motel office, however, he decided against suicide, but panicked when he saw Lovett and as a result sprayed her with the pepper spray. When Smith charged him, he also sprayed Smith. Benge also testified that during the struggle, he could not see what was going on because his sweatshirt was pulled over his head. Although Benge acknowledged that his gun went off, he denied pulling the trigger. Benge did admit, however, that he had duplicated Lovett's keys and used those keys to enter the North Wilmington home where he had placed the tape recorder.

*Benge v. State*, 862 A.2d 385 (Table), 2004 WL 2742314 (Del. Nov. 15, 2004).

In January 2003, the grand jury indicted Benge, charging him with various offenses

stemming from the October 20th incident. Three counts of the indictment charging Benge with

possession of a deadly weapon by a person prohibited (count six) and criminal contempt of a

domestic violence protective order (counts eleven and twelve) were severed from the other

counts in July 2003.[1] The severed counts were set for trial in January 2004, but on the day

scheduled for trial, Benge elected to plead guilty to all three counts. On count six, Benge was

originally sentenced to two (2) years at Level V, suspended after serving the mandatory term of

six (6) months, followed by eighteen (18) months of probation. Benge was sentenced to a

minimum mandatory term of fifteen (15) days at Level V on count eleven, as well as another

minimum mandatory term of fifteen (15) days at Level V on count twelve. (D.I. 14 at A170) On

November 7, 2005, the probationary portion of Benge's sentence for the weapons conviction

(count six) was modified from eighteen (18) to twelve (12) months, and was to run concurrently

with the non-incarcerative portion of the sentences imposed for his August 2003 convictions.

(D.I. 14)

Benge did not appeal. Instead, in December 2006, he filed a motion for post-conviction

relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") and a motion to

correct sentence pursuant to Delaware Superior Court Criminal Rule 35 ("Rule 35 motion"). The

---

[1]In August 2003, a Superior Court jury convicted Benge of second degree assault (Del.
Code Ann. tit. 11, 612(a)(2))(lesser included offense of attempted first degree murder), offensive
touching (Del. Code Ann. tit. 11, § 601(a))(lesser included offense of second degree assault), and
first degree criminal trespass (Del. Code Ann. tit. 11, § 823)(lesser included offense of second
degree burglary). Those convictions were affirmed on appeal. *See generally Benge*, 2004 WL
2742314 (Del. Nov. 15, 2004). In 2005, Benge filed in this court two separate habeas petitions
challenging different convictions. The court denied both petitions, and the Third Circuit Court of
Appeals refused to grant certificates of appealability for both cases. *See Benge v. Deloy*, 2007
WL 1810093 (D. Del. Jun. 2, 2007), *motion for recon. granted in part and denied in part*, 2007
WL 3378243 (D. Del. Nov. 14, 2007), *cert. of appealability denied,* C.A. No. 07-3229, Order (3d
Cir. May 22, 2008); *Benge v. Deloy*, 2007 WL 1948083 (D. Del. July 2, 2007), *cert. of
appealability denied,* C.A. No. 07-3317, Order (3d Cir. Dec. 10, 2007).

Superior Court denied both motions in May 2007. *State v. Benge*, 2007 WL 1520032 (Del. Super. Ct. May 2, 2007). The Delaware Supreme Court affirmed that decision on appeal in January 2008, and denied Benge's motion for reargument without comment in April 2008. *See Benge v. State*, 945 A.2d 1099 (Del. 2008).

Benge filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and the State filed an answer. (D.I. 1; D.I. 21) Benge filed a response. (D.I. 23)

Benge's petition is ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b);

4

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines*, 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are treated as

technically exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts,* 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner demonstrates actual prejudice by showing "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). To establish a miscarriage of justice, the petitioner must demonstrate actual innocence, not legal insufficiency, by presenting "new reliable evidence," such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence " not presented at trial. *Schlup v. Delo,* 513 U.S. 298, 324 (1995). This new reliable evidence must make it more likely than not that "no reasonable juror would find [the petitoner] guilty by a reasonable doubt." *House v. Bell,* 547 U.S. 518, 538 (2006).

## C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim is considered to have been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *reversed on other grounds by Rompilla v. Beard*, 545 U.S. 374 (2005).

When reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

7

## IV. DISCUSSION

Benge asserts the following four grounds for relief:[2] (1) he did not enter into his guilty plea knowingly and intelligently; (2) counts six and twelve of the indictment are multiplicitous, and therefore, his convictions on both counts violate his right to be protected against double jeopardy; (3) his sentences were imposed in violation of the rule announced in *Apprendi v. New Jersey*, 530 U.S. 296 (2004) and *Blakely v. Washington*, 542 U.S. 296 (2004); and (4) the prosecutor's comments at sentencing violated the plea agreement. The State contends that the petition should be dismissed as time-barred. Alternatively, the State contends that claims one and four should be denied as procedurally barred, and that claims two and three should be denied as meritless.

As an initial matter, the court rejects the State's contention that the petition is time-barred. Benge's sentence was corrected on November 7, 2005, and he did not appeal that decision. As a result, his conviction became final for § 2244(d)(1)(D) purposes on December 7, 2005, the day on which the thirty (30) day appeal period from Benge's re-sentencing expired. *See Cochran v. Phelps*, 600 F. Supp. 2d 603, 608 (D. Del. 2009)(in cases involving re-sentencings, petitioner's judgment becomes final for § 2244(d)(1)(A) purposes on the date on which direct review of a re-sentencing or an amended sentence expires). The Rule 35 and Rule 61 motions, filed on December 5, 2006, trigger statutory tolling because they were filed three days before the expiration of AEDPA's limitations period. These motions tolled the limitations period from December 5, 2006 through April 4, 2008, the date on which the Delaware Supreme

---

[2]The court has renumbered the claims without changing the substantive arguments contained therein.

Court denied Benge's motion for re-argument. *See Kindler v. Horn,* 542 F.3d 70, 76-8 (3d Cir. 2008), *vacated on other grounds by Beard v. Kindler,* 130 S.Ct. 612 (2009). Benge filed the instant petition on February 4, 2008,[3] during the statutorily tolled period, and also well before the expiration of the limitations period. Therefore, the petition is timely.

### A. Claims One and Four are Procedurally Barred

As part of the plea agreement, the State recommended a sentence of two (2) years imprisonment, suspended for one year of Level III probation, for the weapons conviction (count six, and one year at Level V, suspended after serving fifteen (15) days, for each of the criminal contempt convictions (counts eleven and twelve). The plea agreement stated that probationary terms could run concurrently.

At sentencing, the judge commented that the State was still presumably bound by the sentencing recommendation contained in the plea agreement. The prosecutor responded that the recommendation "[was] a fair conclusion" to the case, because Benge faced additional prison time in separate proceedings in New Castle County. The prosecutor observed that there was no expectation that the three charges would lead to "any additional jail time" being imposed on Benge, but "as a matter of principle," it was important that Benge's record show that he had disobeyed an order of a state court.

In claim one of the instant petition, Benge contends that his guilty plea was involuntary for the following reasons: (1) the maximum penalties applicable to the offenses were not explained to him; (2) the judge who presided over the plea proceeding and sentencing hearing

---

[3]The instant petition was signed and placed into the prison mailing system on February 4, 2008. Hence, applying the prison mailbox rule, the court adopts February 4, 2008 as the filing date.

indicated a maximum penalty that was not applicable to any of the offenses charged to Benge or

to any offense that could have been charged; and (3) the judge further confused the penalties

applicable to the offense of possession of a firearm with those for possession of a deadly weapon,

creating a record from which it is impossible to determine the applicable maximum penalty.

(D.I. 1) Benge raised this "involuntary plea" argument in his Rule 61 motion, and the Superior

Court denied the claim as procedurally defaulted under Rule 61(i)(3) because Benge did not raise

the issue direct appeal. Alternatively, the Superior Court denied the claim as meritless. On post-

conviction appeal, the Delaware Supreme Court affirmed the Superior Court's judgment that the

claim was procedurally defaulted.

In claim four, Benge asserts that the prosecutor's sentencing remarks violated the plea

agreement. Benge raised this same "violation of plea agreement" argument in his Rule 61

motion, and again, the Superior Court denied the claim as defaulted under Rule 61(i)(3) because

Benge did not raise it on direct appeal. The Superior Court also denied the claim as meritless,

explaining that the prosecutor's comments were entirely consistent with the plea agreement,

because they "were directed to why the thirty (30) days were appropriate and nothing more."

*Benge*, 2007 WL 1520032, at *3. On post- conviction appeal, the Delaware Supreme Court

affirmed the Superior Court's judgment that the claim was barred by Rule 61(i)(3) due to

Benge's failure to raise the issue on appeal. The Delaware Supreme Court additionally held that

the prosecutor's statement did not violate the plea agreement because it "merely served to explain

to the judge the rationale behind the State's sentencing recommendation." *Benge*, 945 A.2d at

1102.

To begin, the court notes that the Delaware Supreme Court's alternative denial of claim

four as meritless does not prevent the court from relying on the Delaware Supreme Court's explicit holding that Benge procedurally defaulted the claim under Rule 61(i)(3). *See Johnson v. Pinchak*, 392 F.3d 551, 558 (3d Cir. 2004). In turn, by affirming the Superior Court's application of the procedural bar in Rule 61(i)(3) to claims one and four, the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1989) that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the court cannot review the merits of claims one and four absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claims are not reviewed.

Benge attempts to establish cause for his default by alleging that the prosecutor's remarks during sentencing caused confusion about the nature of the offenses to which he pled guilty as well as the maximum penalties for those offenses. Benge asserts that he was unable to determine if there were any appealable issues without referring to the sentencing transcript, which was not available until ninety (90) days after the sentencing hearing. Consequently, Benge contends that the alleged confusion and unavailability of a sentencing transcript prevented him from filing an appeal within the thirty (30) day appeal period.

The court is not persuaded by this argument. Benge is a former attorney who was present at both the plea colloquy and sentencing hearing. Benge's defense counsel during both proceedings was an extremely experienced criminal defense attorney. The transcript of the plea colloquy clearly demonstrates that Benge knew he was pleading guilty to "possession of a deadly

11

weapon by a person prohibited," not to "possession of firearm by a person prohibited." (D.I. 14 at A9-A10)  During the plea colloquy, the judge noted that count six read "possession of a firearm by a person prohibited," but that the "correct name is possession of a deadly weapon by a person prohibited, because it is under [Delaware Code Ann. tit. 11,] § 1448(a)(6), having a firearm in your possession while being under a Family Court Protection From Abuse Order, that occurring on October 20, 2002." (D.I. 14 at A9)  During the sentencing hearing, the prosecutor, defense counsel, and judge discussed the fact that, although Benge was charged with possession of a firearm by a person prohibited, the wording of the statute actually read "possession of a deadly weapon by a person prohibited." (D.I. 14 at A-37, A-38)  The judge stated that the State could move to amend the caption of the charge because "there is no such charge as possession of a firearm by a person prohibited. It is possession of a deadly weapon, and firearm is included in deadly weapon." (D.I. 14 at A28)  The State so moved, and the judge granted that amendment. Simply stated, given Benge's and defense counsel's counsel awareness of any discrepancy between the wording of count six as charged and as sentenced, the court fails to comprehend how the ninety (90) day transcription period **prevented** Benge or his attorney from timely filing a direct appeal or raising this issue on appeal if, indeed, that was their wish.[4]  Therefore, the court concludes that Benge's convoluted argument fails to establish cause.

In the absence of cause, the court will not address the issue of prejudice.  Moreover, the

---

[4]The ninety (90) day period allowed for the transcription of court proceedings appears to be standard for Delaware criminal cases. Interestingly, this ninety (90) day transcription period did not prevent Benge from timely filing direct appeals from his other convictions. *See, e.g., Benge v. Deloy*, 2007 WL 1810093 (D. Del. Jun. 2, 2007), *motion for recon. granted in part and denied in part*, 2007 WL 3378243 (D. Del. Nov. 14, 2007); *Benge v. Deloy*, 2007 WL 1948083 (D. Del. July 2, 2007).

court rejects Benge's attempt to trigger the miscarriage of justice exception to the procedural default doctrine because he has failed to establish his actual innocence. Benge contends that counts six, eleven, and twelve of the indictment fail to state the commission of criminal acts because the counts were dependent upon an invalid "protection from abuse" order; according to Benge, the Family Court Commissioner who issued the order lacked jurisdiction to do so. However, the alleged invalidity of the protection order is not the type of "new reliable" evidence of actual innocence contemplated by the miscarriage of justice exception, especially because Benge knew that order was issued by a Family Court Commissioner when he entered his guilty plea. Accordingly, the court will deny claims one and four should as procedurally barred.

## B. Claim Two: Double Jeopardy

In this case, defense counsel filed pretrial motions asserting that count six (weapons offense) and count twelve (contempt) were multiplicitous, as were counts eleven and twelve (both contempt charges). During the plea colloquy, the Superior Court judge explicitly asked the prosecutor of there was any difference between counts six and count twelve. The prosecutor replied, "The existence of the PFA [protection from abuse order]." (D.I. 14 at A10) The judge responded that the PFA order appeared to be the same element that was contained in count six, and that counts six and twelve were duplicates of each other. *Id.* Before the prosecutor responded, defense counsel stated, "Your Honor, this is our position, but we're waiving that and we want to argue it to you in the sentencing. I'll be making a recommendation." (D.I. 14 at A11) However, during the sentencing hearing, defense counsel expressly withdrew the multiplicity objection, explaining that Benge was waiving the argument because he believed in the fairness of

13

the State's sentencing recommendation embodied in the plea agreement.[5]

Benge raised the double jeopardy/multiplicity argument regarding counts six and twelve in his Rule 35 motion and in his first Rule 61 motion. With respect to Benge's Rule 61 motion, both the Superior Court and Delaware Supreme Court found that the claim was procedurally defaulted under Rule 61(i)(3) due to Benge's failure to raise the issue on direct appeal. However, both courts also alternatively denied the claim on the merits, concluding that the double jeopardy argument was waived by the entry of Benge's guilty plea.

Now, in claim two of this proceeding, Benge contends that the Delaware Supreme Court erred, and that his convictions for the weapons possession and criminal contempt (counts six and twelve of the indictment) violate the double jeopardy clause because the counts are multiplicitous. The State explicitly waives the procedural default defense, and contends that the court should deny the claim under § 2254(d)(1) because the Delaware Supreme Court's decision was neither contrary to, nor involved an unreasonable application of, Supreme Court precedent.

Multiplicity occurs where an indictment charges a single offense repeatedly in multiple counts. *United States v. Haddy*, 134 F.3d 542, 548 (3d Cir. 1998). "[M]ultiplicity may result in multiple sentences for a single offense in violation of double jeopardy, or otherwise prejudice the defendant." *Id.* at 548 n.7. According to well-settled Supreme Court precedent, a defendant who knowingly and voluntarily pleads guilty waives any non-jurisdictional defenses and defects that arose before he entered his guilty plea, as well as certain constitutional rights. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). However,

---

[5] The negotiated plea recommendation was for probation on count six and for fifteen (15) days of imprisonment each for counts eleven and twelve.

the Supreme Court has articulated an exception to this rule in the double jeopardy context if the plain language of the charging document demonstrates that a charge "is one which the State may not constitutionally prosecute." *Broce,* 488 U.S. at 575-76; *see also Menna v. New York,* 423 U.S. 61, 62 (1975).

Benge asserts two arguments to support his contention that the Delaware State Courts erred in holding that he waived his double jeopardy/multiplicity argument. First, citing *Menna,* he contends that a defendant's double jeopardy claim is never waived by the entry of a guilty plea when the counts in an indictment are facially duplicative. (D.I. 13 at 36) Second, he contends that his defense counsel's withdrawal of the double jeopardy/multiplicity argument did not constitute a waiver of the argument on his behalf, because the right to be protected against double jeopardy is a fundamental right that must be personally waived by a defendant. (D.I. 13 at 38)

The court is not persuaded. The narrow *Menna* exception applies only where the government is prevented from "haling" the defendant into court at all. For instance, in *Menna,* the Supreme Court held that the defendant's counseled guilty plea did not waive his double jeopardy claim because the indictment to which the defendant pled guilty "was facially duplicative of the earlier offense of which the defendant had been convicted and sentenced so that the admissions made by [the] guilty plea could not conceivably be construed to extend beyond a redundant confession to the earlier offense." *Broce,* 488 U.S. at 575-76. The defect in *Menna* was that the defendant had been previously convicted, and therefore, the State did not have the ability to bring the defendant into court again on facially duplicative charges. Here, Benge was not convicted and sentenced for criminal contempt or for the possessing a deadly weapon before pleading guilty to those charges; rather, the allegedly duplicative charges were

contained in the same indictment. Moreover, where two statutory sections operate independently of one another, "there is no bar to the Government's proceeding with prosecution simultaneously under the two statutes." *Ball v. United States*, 470 U.S. 856, 860 (1985). In such circumstances, "the Double Jeopardy Clause imposes no prohibition to simultaneous prosecutions." *Id.* at 860 n.7. In short, "a claim of multiplicity . . . does not bar prosecution or prevent the government from haling a defendant into court . . ." *United States v. Weathers*, 186 F.3d 948, 957 (D.C. Cir. 1999). Therefore, Benge's double jeopardy claim does not fall within the narrow *Menna* exception.

In any event, even if Benge's argument concerns the power of the State to hale him into court, the court concludes that the Delaware Supreme Court's holding that Benge waived the argument does not warrant habeas relief. Simply stated, neither *Broce* nor *Menna* prevent a defendant from **expressly** waiving his right to raise a double jeopardy objection regarding a voluntary and knowing guilty plea. In addition, the court has not found any Supreme Court precedent establishing a rule that the protection against double jeopardy is a right that must be personally waived by a defendant rather than waived by defense counsel. In fact, in *Broce*, the Supreme Court explained that its "decisions have not suggested that conscious waiver is necessary with respect to each potential defense relinquished by a plea of guilty. Waiver in that sense is not required." *Broce*, 488 U.S. at 573. Although it is true that certain fundamental rights must be personally waived by the defendant,[6] counsel may waive certain tactical rights,

---

[6]"Whether a particular right is waivable; whether the defendant must participate personally in the waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *United States v. Olano*, 507 U.S. 725, 733 (1993). There are certain fundamental rights that must be personally waived by the defendant; these rights include the right to counsel, the right to plead guilty, the right to waive a jury, the right to testify in his or her own behalf, and the right to take an appeal. *See Gonzalez v. United States*, 553 U.S. 242, 248 (2008); *Florida v. Nixon*, 543 U.S. 175, 187 (2004); *Taylor v. Illinois*, 484

such as deciding what arguments to pursue, defenses to raise, and evidentiary objections to assert. *See Gonzalez v. United States*, 553 U.S. 242, 248 (2008). Considering that a claim of double jeopardy is an affirmative defense that must be raised properly in order to avoid being deemed waived, it would be illogical to conclude that counsel cannot expressly waive a double jeopardy defense on a defendant's behalf. *See Peretz v. United States,* 501 U.S. 923, 936-7 (1991)(listing double jeopardy as a fundamental constitutional right which may be waived if not timely raised); *United States v. Young*, 503 F.2d 1072, 1074 (3d Cir. 1974).

Given counsel's explicit withdrawal of the double jeopardy/multiplicity objection during Benge's sentencing hearing, and after reviewing Benge's argument within the framework established by the aforementioned principles, the court concludes that the Delaware Supreme Court's denial of Benge's double jeopardy/multiplicity argument was neither contrary to, nor an unreasonable application of clearly established Federal law, nor did it involve an unreasonable determination of facts. Accordingly, the court will deny the claim for failing to satisfy § 2254(d).

### C. Claim Three: *Blakely* and *Apprendi* Violations

To reiterate, Benge was convicted on one count of possession of a deadly weapon by a person prohibited and two counts of criminal contempt of a domestic violence protective order. On the weapons offense, Benge was sentenced to two (2) years of imprisonment, suspended after a mandatory six (6) month term of imprisonment for probation. For each of the criminal contempt charges, Benge was sentenced to a minimum mandatory fifteen (15) day term of imprisonment.

In his Rule 61 motion, Benge challenged his sentence as being invalid under *Apprendi v. New Jersey* and *Blakely v. Washington*. Noting that neither of the counts of the indictment

---

U.S. 400, 417-18 (1988).

alleged physical injury or domestic violence, he argued that the imposition of the mandatory six (6) month sentence on his weapons conviction (count six) pursuant to 11 Del. Code Ann. § 4204(k) was not based on facts admitted by him or found by a jury, and also that the minimum mandatory fifteen (15) day sentences for his contempt convictions were not based on facts admitted by him or found by a jury. The Superior Court denied the claim as procedurally defaulted under Rule 61(i)(3) due to Benge's failure to raise the issue on direct appeal. The Superior Court alternatively denied the claim as meritless, explaining that *Apprendi* does not limit a Delaware court's authority to sentence up to the statutory maximum, and that Delaware's SENTAC guidelines are just that – guidelines. On appeal, the Delaware Supreme Court denied the *Apprendi* argument as time-barred, and alternatively, as meritless. Citing *Harris v. United States*, 536 U.S. 545, 563-64 (2002), the Delaware Supreme Court explained that "a jury need not consider facts that impact the length of a sentence that is within the statutory range." *Benge*, 945 A.2d at 1102. The Delaware Supreme Court further explained "that *Apprendi* and its progeny do not impact the Delaware sentencing scheme due to the voluntary and nonbinding character of the Truth-in-Sentencing guidelines." *Id.*

Now, in claim three, Benge asserts the same argument that his sentences were imposed in violation of *Apprendi* and *Blakely*. The State waives the procedural default defense, and asks the court to reject claim three as foreclosed by the retroactivity doctrine of *Teague* because Benge's conviction became final prior to the Supreme Court's decision in *Blakely*.

The State's *Teague* analysis/argument was premised on its determination that Benge's conviction became final for § 2244 purposes on February 19, 2004. However, as previously explained, the court has concluded that Benge's conviction became final for AEDPA purposes on

December 7, 2005, which came *after* the Supreme Court decided *Blakely* on June 24, 2004. In these circumstances, *Teague*'s retroactivity analysis is inapplicable. Thus, given the Delaware Supreme Court's alternate ruling on the merits and the State's explicit waiver of the procedural bar, the court will review claim three under § 2254(d) to determine if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, *Apprendi* and *Blakely*.

Pursuant to *Apprendi*, any fact other than the fact of a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490. In *Blakely*, the Supreme Court clarified that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303. In other words, the relevant "statutory maximum" is the maximum a judge may impose without any additional findings. *Id.*

In this case, Benge's sentences do not implicate *Apprendi* and/or *Blakely* because he was not sentenced beyond the statutory maximum for any of his three convictions.[7] Moreover, as this

---

[7] When Benge entered his guilty plea, a violation of 11 Del. Code Ann. § 1271A (2004) (counts eleven and twelve: criminal contempt of a domestic violence protective order) constituted a class A misdemeanor, for which the maximum statutory sentence was one year at Level V. 11 Del. Code Ann. § 4206(a)(2004)(class A misdemeanor). However, pursuant to 11 Del. Code Ann. § 1271A(c)(2004), a person found guilty of violating a domestic violence protective order was sentenced to a minimum statutory sentence of fifteen (15) days at Level V if the contempt resulted in physical injury; the contempt involved the use or threatened use of a deadly weapon; or the defendant was convicted of criminal contempt of a domestic violence protective order under the section on two or more occasions prior to this violation.

In turn, the maximum statutory sentence for violating 11 Del. Code Ann. § 1448(a)(6)(2004) (count six: possession of a deadly weapon by a person prohibited) was either three years at Level V for a class F felony, *see* 11 Del. Code Ann. 4205(6), or, if the deadly weapon was a firearm, as much as eight years at Level V for a class D felony. *See* 11 Del. Code Ann. § 1448(c) (possession of firearm constitutes class D felony); 11 Del. Code Ann. § 4205(b)(4)(2004)(sentence for class D felony is 8 years at Level V).

Here, Benge was sentenced to two years at Level V for his conviction under § 1448(a)(6) (count six), suspended for probation after serving a mandatory six months at Level V, and he was

court previously held in one of Benge's other habeas proceedings, *Blakely* is inapplicable to Delaware's advisory and voluntary sentencing scheme. *See Benge v. DeLoy*, 2007 WL 1948083, at *4 (D. Del. July 2, 2007), *cert. of appealability denied*, C.A. No. 07-3317, Order (3d Cir. Dec. 10, 2007). Accordingly, the court concludes that the Delaware Supreme Court's denial of Benge's *Apprendi/Blakely* argument does not warrant relief under §2254(d).

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2008). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court concludes that Benge's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Benge's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

---

sentenced to the minimum fifteen (15) day statutory sentence at Level V for each of his two contempt convictions (counts eleven and twelve). All three of these sentences were well below the applicable statutory maximum sentences.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN H. BENGE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 08-78-GMS |
| | ) | |
| G.R. JOHNSON, Warden, and | ) | |
| JOSEPH R. BIDEN, III, Attorney General | ) | |
| of the State of Delaware, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, **IT IS HEREBY**

**ORDERED** that:

1. Petitioner John H. Benge's petition for the writ of habeas corpus filed pursuant to 28

U.S.C § 2254 is **DISMISSED**, and the relief requested therein is **DENIED**. (D.I. 1)

2. The court declines to issue a certificate of appealability due to Benge's failure to

satisfy the standards set forth in 28 U.S.C. § 2253(c)(2).

Dated: March 31 , 2011

CHIEF, UNITED STATES DISTRICT JUDGE